**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE BANK OF NEW YORK MELLON,
SOLELY IN ITS CAPACITY AS TRUSTEE
FOR THE TV AZTECA, S.A.B. DE C.V. 8.25%
SENIOR NOTES DUE 2024,

               Plaintiff,

      v.

TV AZTECA, S.A.B. DE C.V., et al.,

               Defendants.

No. 22 Civ. 8164

Hon. Paul G. Gardephe

## THE TRUSTEE'S SUBMISSION IN SUPPORT OF
## ITS PROPOSED DISCOVERY PLAN

Justin M. Ellis
Mason E. Reynolds
Eric Rolston
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY  10022
Tel.: (212) 607-8160
jellis@mololamken.com

*Counsel for the Bank of New York Mellon, as
Trustee*

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

THE TRUSTEE'S PLAN FOR DISCOVERY ..................................................................... 1

THE PROPER SCOPE OF DISCOVERY ............................................................................ 2

I.      THRESHOLD ISSUES .............................................................................................. 2

        A.      New York, Not Mexican, Law Governs the Indenture ............................ 2

        B.      The Trustee Has No Duty To Maintain a List of Beneficial Owners ..................... 5

        C.      Neither the Indenture Nor the Note Prohibit U.S. Persons From Holding
                Beneficial Interests in the Note ...................................................................... 7

II.     DEFENDANTS' DISCOVERY IS IRRELEVANT AND
        DISPROPORTIONATE TO THE NEEDS OF THE CASE ............................................ 11

        A.      Discovery into Beneficial Owners ...................................................... 11

        B.      Discovery into the Trustee's Registrar Duties ...................................... 14

        C.      Discovery into the Parties' Intent ......................................................... 14

        D.      Discovery into Parallel Proceedings ..................................................... 14

        E.      Expert Discovery ................................................................................. 15

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Avon Sec. Litig.*,
   No. 91-cv-2287, 2004 WL 3761563 (S.D.N.Y. Mar. 29, 2004)................................8

*Beal Sav. Bank v. Sommer*,
   8 N.Y.3d 318 (2007) ........................................................................................9

*Beck v. Mfrs. Hanover Tr. Co.*,
   218 A.D.2d 1 (1st Dep't 1995) ....................................................................7, 11

*Cevasco v. Nat'l R.R. Passenger Corp.*,
   606 F. Supp. 2d 401 (S.D.N.Y. 2009) ..............................................................14

*Chen-Oster v. Goldman, Sachs & Co.*,
   No. 10-cv-6950, 2011 WL 803101 (S.D.N.Y. Mar. 1, 2011)..............................14

*Dresser-Rand Co. v. Petroleós de Venez., S.A.*,
   439 F. Supp. 3d 270 (S.D.N.Y. 2020)................................................................1

*Dresser-Rand Co. v. PDVSA Petróleo, S.A.*,
   No. 20-1990, 2021 WL 2878936 (2d Cir. July 9, 2021)......................................1

*Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*,
   111 F.3d 284 (2d Cir. 1997)........................................................................7, 11

*Glob. Reins. Co. of Am. v. Century Indem. Co.*,
   22 F.4th 83 (2d Cir. 2021) ..............................................................................15

*Hamilton v. Accu-Tek*,
   47 F. Supp. 2d 330 (E.D.N.Y. 1999) .................................................................5

*IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*,
   20 N.Y.3d 310 (2012) ......................................................................................3

*LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mex. S.A. de C.V.*,
   287 F.R.D. 230 (S.D.N.Y. 2012) ...............................................................10, 11

*Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*,
   41 N.Y.3d 462 (2024) ...................................................................................4, 5

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
   109 F.3d 850 (2d Cir. 1997)......................................................................10, 11

*Pure Diets India Ltd. v. Genco*,
   No. 18-cv-3086 (VEC), 2019 WL 428834 (S.D.N.Y. Feb. 4, 2019).........................7

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
   467 F.3d 107, 136 (2d Cir. 2006)..........................................................15

*W.W.W. Assocs., Inc. v. Giancontieri*,
   77 N.Y.2d 157 (1990) .......................................................................14

*Weiss v. La Suisse*,
   141 F. App'x 31 (2d Cir. 2005) .............................................................5

## STATUTES, RULES, REGULATIONS, AND EXECUTIVE MATERIALS

Fed. R. Civ. P. 26(a)(1)(A)(i) ...................................................................12

Fed. R. Civ. P. 26(a)(2)...........................................................................16

Fed. R. Civ. P. 26(b)(1)............................................................................7

U.C.C. § 8-110 .....................................................................................4

17 C.F.R. § 230.144 ...............................................................................8

17 C.F.R. § 230.901 ...............................................................................7

17 C.F.R. § 230.905 ...............................................................................8

Offshore Offers and Sales, Securities Act Release No. 6863, Exchange Act
   Release No. 122 (proposed Apr. 24, 1990)...............................................11

55 Fed. Reg. 18,306 (May 2, 1990) ...........................................................11

N.Y. Gen. Oblig. Law § 5-1401(1) ..............................................................3

## OTHER AUTHORITIES

Kylie Madry, *Mexican Broadcaster TV Azteca Will 'Soon' Make Owed Bond
   Payments, Says Salinas*, REUTERS (Feb. 15, 2024)......................................4

## INTRODUCTION

This case is ripe for prompt disposition. The Trustee's claim to enforce a promissory note is straightforward. Defendants do not contest that the Note is valid and that they failed to pay it when due. There is no reason to allow Defendants to drag out this case through protracted discovery. Defendants' planned defenses can, and should, be resolved now. Their planned topics for discovery can be narrowed or eliminated entirely. And even if discovery is necessary, the Trustee has already offered to produce everything Defendants purportedly need to fairly respond to the Trustee's claims. The Court should so-order the Trustee's proposed discovery schedule and set an expedited briefing schedule for summary judgment.

## THE TRUSTEE'S PLAN FOR DISCOVERY

As the Trustee described in the parties' October 14 joint letter, little or no discovery is necessary here. Dkt. 106 at 1-3. Defendants do not contest the elements of the Trustee's claim for recovery on a promissory note. *See id.* at 2; *Dresser-Rand Co. v. Petroleos de Venez., S.A.*, 439 F. Supp. 3d 270, 273 (S.D.N.Y. 2020), *aff'd sub nom. Dresser-Rand Co. v. PDVSA Petroleo, S.A.*, No. 20-1990, 2021 WL 2878936 (2d Cir. July 9, 2021); Hr'g Tr. 21:14-17. And as explained below, the defenses Defendants do plan to raise – (i) Mexican-law usury and public policy arguments, (ii) a claim that U.S. persons cannot hold beneficial interests in the Note, and (iii) an argument that the Trustee breached its duty to keep a registry – can be disposed of now. *See* pp. 2-11, *infra*.[1] Resolving those defenses forecloses much, if not all, of the discovery Defendants seek, including both their planned fact and expert discovery. *See* pp. 11-16, *supra*.

---

[1] Moreover, those theories cannot apply to the Guarantor Defendants, who waived all possible defenses in the Indenture. *See* Ex. A § 10.1(g). The Trustee intends to seek leave to file a separate summary judgment motion against the Guarantors to proceed in parallel with any discovery needed for TV Azteca.

Accordingly, the Court should order the parties to complete fact discovery within 30 days, followed by summary judgment briefing to be completed by February 2026.  The Trustee respectfully proposes the following schedule:

| Event | Proposed Deadline |
|---|---|
| Initial Disclosures | Complete |
| Initial Requests for Production | November 19, 2025 (T+7) |
| Interrogatories | November 19, 2025 (T+7) |
| Response to Requests for Production | December 6, 2025 (T+24) |
| Complete Depositions of Fact Witnesses | December 12, 2025 (T+30) |
| Serve Requests To Admit | No requests for admission |
| Close of Fact Discovery | December 12, 2025 (T+30) |
| Notice of Intent To Offer Expert Testimony | None needed |
| Expert Disclosures | None needed |
| Close of Expert Discovery | None needed |
| Settlement Discussion | January 6, 2026 (T+55) |
| Dispositive Motions | January 6, 2026 (T+55) |
| Opposition to Dispositive Motions | February 5, 2026 (T+85) |
| Reply re: Dispositive Motions | February 18, 2026 (T+98) |

## THE PROPER SCOPE OF DISCOVERY

## I.    THRESHOLD ISSUES

### A.    New York, Not Mexican, Law Governs the Indenture

Defendants agreed that the Indenture "shall be governed by, and construed in accordance with, the law of the State of New York."  Ex. A § 11.7 (capitalization removed); *see also* Ex. F at

10 (similar); Ex. E at 15 (similar).[2]    Yet Defendants argue that New York choice-of-law principles require applying Mexican law, so that in discovery they can explore Mexican usury and public-policy defenses to payment.    Hr'g. Tr. 43:14-44:14.    Defendants' argument is frivolous.

New York law permits parties entering contracts involving more than $250,000 to select New York law "whether or not such contract, agreement or undertaking bears a reasonable relation to this state."    N.Y. Gen. Oblig. Law § 5-1401(1).    The New York Court of Appeals has held that, under Section 5-1401, when the parties select New York law, the "need for a conflict-of-laws analysis is obviated by the terms of the parties' agreement."    *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 20 N.Y.3d 310, 312 (2012).    Section 11.7 of the Indenture therefore requires applying New York law regardless of Defendants' conflict-of-law arguments.    Ex. A § 11.7; *see also* Ex. F at 10 (similar).

Defendants argue that choice-of-law principles apply because Section 11.7 does not expressly say that they do not.    Hr'g. Tr. 42:3-5.    But the Court of Appeals has rejected Defendants' precise argument.    *See IRB-Brasil*, 20 N.Y.3d at 315-16.    In *IRB-Brasil*, a Brazilian company guaranteed a debt in a contract that, like the Indenture, specified New York law without explicitly referencing conflict-of-law principles.    *Id.* at 313.    Like Defendants, the guarantor argued that the "choice-of-law provision would have had to expressly exclude New York's conflict-of-laws principles in order for New York substantive law to apply; otherwise, [it] claim[ed] that the court must engage in a conflicts analysis" and apply Brazilian law instead.    *Id.* at 315.    The Court of Appeals disagreed:    "Express contract language excluding New York's conflict-of-laws principles is not necessary."    *Id.*    To the contrary, the court held that, if parties

---

[2] Citations to "Ex. [ ]" refer to the exhibits attached to the declaration of Justin M. Ellis filed contemporaneously with this submission.

"wish to employ New York's conflict-of-laws principles to determine the applicable substantive law, they can expressly so designate in their contract." *Id.* at 316 & 316 n.\*. *IRB-Brasil* is directly on point and forecloses Defendants' choice-of-law argument.

Moreover, this is not one of the limited cases where, by statute, the law of the issuer's jurisdiction governs the "validity" of the issuer's securities. *Cf. Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462 (2024) (applying U.C.C. § 8-110). "Validity" is carefully limited to the two questions of "(1) did the borrower have the power to enter the agreement, and (2) did the proper body or bodies within the borrower approve the agreement in the manner required." *Id.* at 478 (cleaned up). Defendants have conceded that the Note is valid and that they had authority to enter into the Indenture. *See, e.g.*, Ex. B ¶¶ 18-19 (stipulating that TV Azteca is "obligated" to pay the Note).[3]

In *MUFG*, the Court of Appeals "emphasize[d]" that where, as here, the contract has a New York choice-of-law clause, "in every other respect" other than the narrow subjects listed in U.C.C. § 8-110, "the governing documents are governed by New York law." 41 N.Y.3d at 476. TV Azteca's planned public policy and usury defenses do not raise any of the subjects governed by Section 8-110.[4] To the contrary, in *MUFG*, the Court of Appeals held that defenses of "enforceability" based on "whether the rights and duties created by contractual provisions are

---

[3] Indeed, TV Azteca has repeatedly acknowledged the Note's validity in public statements. Dkt. 48-6 (Aug. 8, 2022 press release); Dkt. 48-7 (Feb. 9, 2021 press release); Kylie Madry, *Mexican Broadcaster TV Azteca Will 'Soon' Make Owed Bond Payments, Says Salinas*, REUTERS (Feb. 15, 2024).

[4] *See* N.Y. U.C.C. § 8-110(a) (The law of the issuer's jurisdiction governs "(1) the validity of a security; (2) the rights and duties of the issuer with respect to registration of transfer; (3) the effectiveness of registration of transfer by the issuer; (4) whether the issuer owes any duties to an adverse claimant to a security; and (5) whether an adverse claim can be asserted against a person to whom transfer of a certificated or uncertificated security is registered or a person who obtains control of an uncertificated security."). This case does not involve the validity of the Note, any registration of transfer of the Note by TV Azteca, or any adverse claim to the Note.

contrary to local law" – for example, laws that "restrict certain interest rates" or "mandate various contractual provisions" – are controlled by the law specified in the choice-of-law clause. 41 N.Y.3d at 478-79.  The purported usury and public policy defenses Defendants describe go squarely to the Note's enforceability and are therefore controlled by New York law.[5]

### B.    The Trustee Has No Duty To Maintain a List of Beneficial Owners

Defendants claim that the Trustee was required to maintain a list of beneficial owners under the Indenture, and that the Trustee's failure to maintain such a list excuses Defendants' non-payment of the Note.  *See* Ex. G at 4; *see also* Hr'g Tr. 40:12-19; Ex. A § 2.3; Ex. C at 8-9. Defendants' argument relies on the theory that "Notes" under the Indenture means beneficial interests held by beneficial owners.  *See* Ex. G at 4.

Defendants' argument rests on a deliberate misreading of the Indenture.  The "Notes" were issued as a single Global Note registered in the name of the Common Depositary, the Bank of New York Depository (Nominees) Limited.  Ex. A § 2.1(c); *id.* at 9 ("Common Depositary"); *id.* § 2.1(c); *see also* Ex. F at 1; Ex. E at 134-35.  The Common Depositary is the "absolute owner" of the Global Note and acts as "depositary common to the Clearing Agencies."[6]  *Id.* § 2.6(b); *id.* at 9.   Thus, under Section 2.1(d), the Note was "deposited on behalf of the purchasers of the Notes with the Common Depositary and registered in the name of the Common Depositary or its nominee, as the case may be, for the accounts of Persons entitled thereto at the Clearing Agencies."  Ex. A § 2.1(d); *see also id.* at 124 (Form of Note); Ex. F (Global Note);

---

[5] The doctrine of *renvoi* is also not relevant. *Cf.* Hr'g Tr. 41:25-42:15.  *Renvoi* only comes into play "when a court applying foreign law includes the foreign state's conflicts rules, and these refer the issue back to the law of the forum." *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 338 (E.D.N.Y. 1999).  Defendants have not argued that **Mexican** choice-of-law principles apply. Even if they had, "[i]t is settled law that New York courts look to New York and not foreign conflicts provisions in order to avoid the prospect of renvoi." *Weiss v. La Suisse*, 141 F. App'x 31, 34 (2d Cir. 2005) (quotations omitted) (collecting cases).

[6] The "Clearing Agenc[ies]" are Euroclear and Clearstream.  Ex. A at 9.

5

Ex. E at 134.  Beneficial owners "hold" the Note only as credits to their accounts with the Clearing Agencies.  *See* Ex. E (Offering Circular) at 134;[7] Ex. A § 2.6(c) ("The rights of beneficial owners in any Global Note shall be exercised only through the Clearing Agencies").[8] Defendants know this, since they drafted the Offering Circular explaining this common "book-entry" structure to investors.  Ex. E at 134; *see id.* at 1 (the "Offering Circular [was] prepared solely by TV Azteca and the Guarantors"), 148 (similar).

Thus, under the Indenture, the only registered "Notes" for which the Trustee must maintain a registry is the Global Note held by the Common Depository.  The Trustee is not required to maintain a "Notes Register" for beneficial owners of the Note.  While beneficial holders obviously have economic interests in the Note, they only have legal rights for the Note, if any, through the Clearing Agencies.  Indenture §§ 2.6(b), (c) ("The rights of beneficial owners in any Global Note shall be exercised only through the Clearing Agencies"); *see also* Ex. E at 134.

Similarly, while Section 2.5 requires the Trustee (as Registrar) to maintain a list of the "names and addresses of Holders," "Holder" is defined as "the Person in whose name a Note is registered in the Note Register" – here, the Common Depository.  Ex. A § 2.5; *id.* at 15.  This structure makes sense, because while the Note is held in book-entry form, beneficial owners' accounts are maintained by the Clearing Agencies.  Ex. A §§ 2.6(b), (c).  The Trustee's registry would be needed only if Note is ever transferred to beneficial owners in the form of physical "Certificated Notes."  Ex. A §§ 2.8(b), (c)(iii).  If that happened, it would be appropriate for the registrar to keep track of who held Certificated Notes.  But Defendants do not claim that the Note

---

[7] As a practical matter, because the Trustee lacks access to the Clearing Agencies' data, it does not know and cannot know the full set of who holds beneficial interests in the Note at any given time.  Ex. A § 2.8(b); Ex. E at 143.

[8] The statements made herein should not be construed, in any wany, to impact the legal rights of the Note's beneficial owners.

has ever been held in anything but book-entry form.  They have not.  Nor do Defendants allege that the Global Note has ever been held by anyone other than the Common Depositary.  The Trustee thus has no obligation to maintain a register of any "Holder" other than the Common Depositary, which it indisputably does.

Finally, as already noted, to excuse Defendants from performing the contract, any purported failure in keeping the registry would have to "defeat[ ] the object of the parties in making the contract."  *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997); Dkt. 106 at 2-3.  Defendants still have not explained how a purported breach of record-keeping duties could so defeat the purpose of the Indenture that Defendants need not repay the hundreds of millions of dollars they owe.  It does not.  *See Beck v. Mfrs. Hanover Tr. Co.*, 218 A.D.2d 1, 12 (1st Dep't 1995) (the "fundamental . . . purpose of a bond indenture is to secure payment of the underlying obligation"); *cf. Pure Diets India Ltd. v. Genco*, No. 18-cv-3086, 2019 WL 428834, at *5 (S.D.N.Y. Feb. 4, 2019).  Because the registry cannot support any legitimate defense to default, it is not a relevant topic for discovery.  Fed. R. Civ. P. 26(b)(1).

### C.    Neither the Indenture Nor the Note Prohibit U.S. Persons from Holding Beneficial Interests in the Note

Defendants' claim that U.S. persons can never purchase beneficial interests in the Note is also baseless.  The Note and the Indenture say no such thing.  Ex. A; Ex. F at 1.  Instead, Defendants seize on the fact that the Note was originally offered under "Regulation S," which allows securities to be sold without registration if they are first sold to non-U.S. persons.  *See* Ex. E at 134, 143; 17 C.F.R. § 230.901.  Specifically, Defendants rely on a statement in the Note that "by its acquisition hereof or of a beneficial interest herein, ***the acquirer*** (1) represents that it is not a U.S. person (within the meaning of Regulation S under the Securities Act) . . ."  Ex. F at A-1 (capitalization removed and emphasis added).  But the Note's initial acquirer was the

Common Depositary, which is incorporated in the United Kingdom.[9]  Ex. A § 2.6(a); pp. 5-7, *supra*.  Defendants' cited language merely shows that the Note's initial acquirer could not be – and was not – a U.S. person in compliance with Regulation S.

In fact, the Note unambiguously allows U.S. persons to be assigned beneficial interests, as long as they comply with the U.S. securities laws.[10]  Immediately after Defendants' cited language, the Note states that the acquirer will not "offer, sell, pledge or otherwise transfer this Note or any beneficial interest therein except in accordance with the Securities Act and any applicable securities laws of any state of the United States."  Ex. F at 1 (capitalization removed). The Note goes on to list ways U.S. persons could permissibly acquire beneficial interests – for example, pursuant to a registration statement, under Rule 144's safe harbor for selling securities after a holding period, or under "any other available exemption from the registration requirements of the Securities Act."  *Id.* at 1-2; *see, e.g.*, 17 C.F.R. § 230.144.

Defendants' statements in the Note's Offering Circular are even clearer.  Ex. E at 143; *see In re Avon Sec. Litig.*, No. 91-cv-2287, 2004 WL 3761563, at *7 (S.D.N.Y. Mar. 29, 2004) (offering circular is "[a]dditional support" for contract reading).  The Offering Circular has a "Notice to Investors" stating that "the notes (and the guarantees) have not been registered under the Securities Act and may not be offered or sold within the United States or to, or for the account or benefit of, U.S. persons ***except as set forth below***."  Ex. E at 143 (emphasis added);

---

[9] Company Information: The Bank of New York Depository (Nominees) Limited, Government of the United Kingdom Companies House Registry, https://find-and-update.company-information.service.gov.uk/company/03227439 (last visited Nov. 12, 2025).

[10] Federal securities law likewise allows securities originally offered under Regulation S to be resold to U.S. persons, as long as the sale is "in accordance with this Regulation S . . . the registration requirements of the Act or an exemption therefrom."  17 C.F.R. § 230.905.

*see also* Ex. F (similar).  The notice then lists the same exemptions the Note lists under which U.S. persons may acquire beneficial interests.  Ex. E at 143.

The defendants' interpretation of the Note therefore conflicts with basic principles of contract law.  Their claim that the Note *per se* bars any U.S. persons from acquiring beneficial interests would render meaningless the Note's rules for how U.S. persons can do precisely that. *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) ("A reading of the contract should not render any portion meaningless." (citation omitted)).  These unambiguous statements that U.S. persons can acquire beneficial interests in the Note makes Defendants' discovery into beneficial owners' nationalities irrelevant.

Moreover, for four reasons, the Indenture's transfer restrictions cannot provide a defense to the Trustee's claims.  *First*, the Trustee has no duty under the Indenture to monitor transfers of beneficial interests, and absent a duty, there can be no breach.  Under Section 2.8(b):

> Neither the Trustee nor any Agent shall have any obligation or duty to monitor, determine or inquire as to compliance with any restrictions on exchange or transfer imposed under this Indenture or under applicable law with respect to any exchange or transfer of any interest in any Note (including any transfers between or among Agent Members or beneficial owners in any Global Note) other than to require delivery of such certificates and other documentation or evidence as are expressly required by, and to do so if and when expressly required by, the terms of this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof.

Ex. A §2.8(b).  The Indenture does not expressly require the Trustee to take delivery of, or examine, any documents about the beneficial owners' nationalities.  Thus, the Trustee has no duty to monitor or inquire into whether U.S. persons acquire beneficial interests.

*Second*, no discovery about the beneficial owners' actions or status could affect the Trustee's right to bring this suit.  Section 6.8 of the Indenture entitles the Trustee to "recover judgment in its own name and as trustee of an express trust against the Company and each Sub-sidiary Guarantor for the whole amount then due and owing."  Ex. A §6.8; *see also id.* §6.3 (in

9

an event of default, the "Trustee may pursue any available remedy to collect the payment of principal of and interest on the Notes"). That grant of authority does not depend on any action the beneficial owners take or do not take. *See id.* § 6.8; *see also id.* § 6.3.[11] By definition, any issues about beneficial owners' rights, such as the validity of a transfer of beneficial interests, do not affect the Trustee's right to collect all amounts due and owing from Defendants. And there is no serious dispute what is "due and owing"– the Note matured in August 2024, *id.* § 6.8; *id.* at 18 ("Maturity Date"), and is due in full.

*Third*, even if the beneficial owners' actions were relevant, and even if the Indenture's transfer restrictions had been violated, that still would not affect any transfer of interests, the validity of any beneficial owner's actions, or the beneficial owners' rights to be paid from a judgment. "Under New York law, only ***express*** limitations on assignability are enforceable." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis added). "[T]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, a contractual clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way." *Id.* (internal punctuation and quotation omitted). A contract does not meet that standard if it "contains no provision that the assignment made without consent should be void, that an assignee would acquire no rights by reason of any such assignment, or that the contractor shall not be required to recognize or accept any such assignment." *LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*, 287 F.R.D. 230, 235 (S.D.N.Y. 2012) (internal punctuation and quotation omitted).

---

[11] Moreover, while the Indenture permits the Holders to direct the Trustee to sue under certain circumstances, Ex. A § 6.5, it does not restrict the Trustee from suing absent a direction.

By contrast, the language in the Indenture that Defendants cite simply says that the acquirer "represents that it is not a U.S. person (within the meaning of Regulation S of the Securities Act)." Ex. F at 1. Because that language does not hint that any transfer to a U.S. person is void, it does not meet New York's high standard for invalidating transfers of beneficial interests. *Pravin*, 109 F.3d at 856; *LCE Lux,* 287 F.R.D. at 235. And indeed, Regulation S does not concern the validity of such securities or whether they must be repaid. *See* Offshore Offers and Sales, Securities Act Release No. 6863, 55 Fed. Reg. 18,306 (May 2, 1990). Thus, even if the Indenture did restrict assignment to U.S. beneficial holders, any violation of that restriction would not affect U.S. beneficial owners' interests in the Note, let alone whether Defendants' debts in respect of those owners' interests are "due and owing."

*Fourth*, like Defendants' registry theory, any breach connected to the beneficial owners' nationalities could not be material. *See. Austin Drugs*, *Inc.*, 111 F.3d at 289; pp. 5-7, *supra.* Even if the nationality of beneficial owners mattered, Defendants have never explained how the acquisition of a beneficial interest by a U.S. person could so defeat the purpose of the Indenture that they should not have to repay the Note. It could not. *See Beck*, 218 A.D.2d at 12. The Court should hold that the transfer restrictions are not relevant.

## II. DEFENDANTS' DISCOVERY IS IRRELEVANT AND DISPROPORTIONATE TO THE NEEDS OF THE CASE

Defendants have identified four areas in which they claim they need wide-ranging discovery. But none of those topics is relevant to any legitimate defense Defendants could raise. And their planned discovery is also wildly disproportionate to the needs of the case.

### A. Discovery into Beneficial Owners

For all beneficial owners, Defendants seek "identification of the bondholders;" the "bondholders' knowledge that U.S. persons were restricted from purchasing notes;" and "the

economics and circumstances of their acquisition of the notes." Ex. D at 1. Defendants apparently plan to pursue Mexican-law defenses that the beneficial owners' nationalities, purchase price, or other behavior somehow excuses Defendants' obligation to pay under the Indenture. The Defendants focus on the *ad hoc* group of beneficial owners that directed this suit. Ex. C at 2-8 (naming the group's members under Fed. R. Civ. P. 26(a)(1)(A)(i)). But because the Trustee seeks to recover all amounts due under the Note, Defendants also propose a discovery campaign into all beneficial owners, anywhere in the world, no matter how small their interests in the Note may be, and no matter whether they have anything to do with this case. *Id.* at 9; Ex. D at 1.

That campaign would be irrelevant, for two reasons. *First*, because New York law applies, *see* pp. 2-5, *supra*, Defendants' proposed Mexican-law theories are beside the point.[12] And *second*, the Trustee's right to sue does not depend on the status or actions of any beneficial owner. *See* Ex. A § 6.8; pp. 9-10, *supra*. Defendants do not contest the Trustee's authority to sue, only whether amounts are "due and owing," Ex. A § 6.8, to beneficial owners in light of their purported defenses. Hr'g Tr. 40:5-7, 44:22-45:1; Ex. D at 4. But those defenses are both meritless and not a defense to a suit by the Trustee. *See* pp. 9-11, *supra*.

In any event, before the most recent status conference, the *ad hoc* group offered to stipulate, or produce admissible evidence, in full satisfaction of Defendants' supposed concerns. Specifically, the group offered to disclose: (1) the identities and nationalities of its members' beneficial owners; (2) the dates on which each member acquired beneficial interests; and (3) the purchase prices paid for those beneficial interests. Ex. G at 5. Separately, the Trustee offered to identify the names of all beneficial owners known to it. Ex. G at 5. That said, the Trustee does

---

[12] They are also incorrect as a matter of Mexican law.

not and could not know the full set of beneficial holders.  See pp. 5-7, *supra*.  Together, those two offers resolve Defendants' stated concerns as to the *ad hoc* group's members other than their knowledge of any purported transfer restrictions, which can be discerned from the offering documents.  *See* Ex. A at § 2.8; Ex. E at 134-35.

Defendants refused to accept this offer as full satisfaction of discovery into the beneficial owners.  *See* Ex. G at 1.  Defendants' refusal to take yes for an answer shows that their true purpose is delay.  And the additional discovery they seek is both irrelevant and far out of proportion to the needs of this case.  Defendants have not explained why their purported usury and public-policy defenses require more discovery than what the *ad hoc* group has already offered to produce.  Defendants have also offered no reason to think their defenses could apply to other beneficial owners outside the group.

In addition, there is no practical way to seek discovery from beneficial owners outside the *ad hoc* group.  Because only the Clearing Agencies, not the Trustee, have the full list of custodians for the beneficial owners, the only way for Defendants to seek information about all beneficial owners is to first subpoena the Clearing Agencies, learn the identity of the custodians, and then subpoena the custodians in turn to identify the ultimate beneficial owners.  *See, e.g.*, Ex. H § 5.3.1.3.  Defendants then would have to subpoena the beneficial holders themselves if it wanted more information than the holders' names and amounts held.  Even assuming the Clearing Agencies, custodians, and beneficial owners all voluntarily comply with Defendants' subpoenas, the iterative process Defendants propose could take years.  There is no need to go down that rabbit hole.  The Court should deny any beneficial-owner discovery beyond what the Trustee and *ad hoc* group have already offered to produce.

### B.    Discovery into the Trustee's Registrar Duties

Defendants also seek discovery into whether the Trustee complied with its duties as Registrar. Ex. D at 4. But that, too, is irrelevant. As described above, the Trustee's duties as Registrar of a Global Note are sharply limited, and any purported breach of those duties could not justify non-payment of the Note. *See* pp. 5-7, *supra*. In any event, the Trustee has offered to produce all the information it is required to keep as part of the Registry – *i.e.*, records showing the Note's registered Holder is the Common Depositary. Ex. G at 2. And the Trustee also offered to produce the information held by the Common Depositary as to which Clearing Agencies hold which interests in the Note. *Id.* Beyond that information offered to the Defendants, the Court need not, and should not, allow further discovery on this topic.

### C.    Discovery into the Parties' Intent

Defendants next claim that they need discovery into the intent of the parties to the Indenture, both before and after the Indenture was executed. Ex. D at 1. Yet Defendants agree with the Trustee that the Indenture is unambiguous. *Id.* at 2; Hr'g Tr. 50:24-51:11. That renders Defendants' discovery irrelevant because, under New York law, extrinsic evidence is inadmissible to "add to or vary the writing" of an unambiguous contract. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990). And where, as here, there is no ambiguity, courts routinely deny discovery into irrelevant extrinsic evidence. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950, 2011 WL 803101, at *4 (S.D.N.Y. Mar. 1, 2011); *Cevasco v. Nat'l R.R. Passenger Corp.*, 606 F. Supp. 2d 401, 419 (S.D.N.Y. 2009). The Court should deny discovery into extrinsic evidence of intent as well.

### D.    Discovery into Parallel Proceedings

Defendants also seek discovery into the prior bankruptcy proceeding brought by certain members of the *ad hoc* group, as well as the ICSID arbitration brought by two beneficial owners'

investment managers against the Mexican government.  Ex. D at 1, 4.  Defendants claim this discovery would shed light on the *ad hoc* group's motives.  *Id.* at 1.  But the Court has already held that the ICSID arbitration "has no relevance here."  Hr'g Tr. 13:7-8.  And for both proceedings, because the beneficial owners' actions are irrelevant, *see* pp. 7-8, *supra*, their motives for those actions are also irrelevant.  Moreover, discovery into parallel litigation raises obvious privilege and work-product concerns.  The Court should deny discovery on this topic as well.

### E.    Expert Discovery

Finally, Defendants seek expert discovery concerning their Mexican-law defenses and industry custom.  Mexican law does not apply to the Indenture, *see* pp. 2-5, *supra*, so there is no reason to engage in expert discovery on that topic.  And "proof of custom and usage" is used only "to determine ambiguity."  *Glob. Reins. Co. of Am. v. Century. Indem. Co.*, 22 F.4th 83, 94 (2d Cir. 2021).  Because Defendants agree that the Indenture is unambiguous, there is no role for expert discovery on industry custom.  Hr'g Tr. 50:24-51:11.  Moreover, Defendants' proposed expert discovery on "securities industry" custom, *id.* at 40:20-41:11, amounts to whether there is a "general understanding" concerning the Indenture's beneficial interest and usury waiver provisions, which is "insufficient, on its own, to establish a fixed and invariable custom" regarding any disputed terms in the Indenture.  *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 136 (2d Cir. 2006) (citation omitted); *see* Hr'g Tr. 40:20-41:11.  The Court should deny expert discovery.

If the Court does permit Defendants to submit expert evidence, it should not permit that evidence to slow down the schedule.  Given the marginal role any expert testimony would play in this case, there is no need for a separate expert discovery period.  Rather, Defendants are free to submit whatever expert reports they wish (and supporting material under Fed. R. Civ. P.

26(a)(2)) together with their summary judgment papers.  Then, if necessary, the Trustee can take discovery of Defendants' expert(s) and consider submitting a rebuttal.

## **CONCLUSION**

The Court should order the Trustee's proposed discovery plan.

Dated: November 12, 2025
New York, New York

Respectfully submitted,

/s/ *Justin M. Ellis*
Justin M. Ellis
Mason E. Reynolds
Eric Rolston
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Tel.: (212) 607-8159
jellis@mololamken.com

*Counsel for the Bank of New York Mellon, as Trustee*