# GT GreenbergTraurig

Hal S. Shaftel
212.801.9200
shaftelh@gtlaw.com

November 12, 2025

The Honorable Paul G. Gardephe
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.,*
             Case No. 22-cv-8164 (PGG)

Dear Judge Gardephe:

On behalf of Defendants TV Azteca, S.A.B. de C.V. and certain affiliates (collectively, "TV Azteca"), we submit this letter pursuant to the Court's November 4, 2025 Order (ECF No. 124), directing the parties to "address[] in detail (1) their plan for discovery, and (2) the scope of anticipated discovery" and to set forth their areas of agreement and disagreement.[1]

      **I.**    **TV Azteca Unable to Reach Agreements:**

On November 6, 2025, the parties conferred following the Court's instructions. Although the parties had a lengthy discussion that appeared to be productive, Plaintiff's counsel's email, which purported to memorialize that discussion, misstated Defendants' position across many issues and impeded progress. Plaintiff at most offered to provide (it so far has ***not***) the identities/nationalities of the Noteholders (the so-called Ad Hoc Group) that its counsel also represents but insisted that TV Azteca accept the information in full satisfaction of discovery on the issue. That, however, was no meaningful offer, as TV Azteca could not accept information sight-unseen as full satisfaction of anything, and discovery concerning the other Noteholders is also necessary. Nor did Plaintiff offer to provide meaningful discovery on a multitude of other issues described below.

      **II.**    **Scope of Anticipated Discovery:**

While discovery regarding additional topics may be warranted, the following issues are central to the claims and defenses in this case.

      **1.**    **Restriction on U.S. Noteholders and Identities of Noteholders**. Although the restriction on U.S. parties from holding the Notes is explicit in the operative documents, Plaintiff appears to misread it. The Offering Circular issued by Defendants in 2016 (the document offering the Notes), clearly states that the Notes are available only to <u>non</u>-U.S. persons. *See* Exhibit 1,

---

[1] Plaintiff suggested (and Defendants rejected) 25-page briefs covering a plethora of issues, which is inconsistent with efficiency, the Court's directive for discovery submissions, not dispositive briefing, and Rule I.A. of the Court's Individual Rules of Practice for Civil Cases (authorizing 5-page letters). *At filing, we see Plaintiff attempts to ambush TV Azteca with an unauthorized length brief. TV Azteca accordingly reserves the right to file a corresponding opposition brief.*

Offering Circular, Legend ("Not for distribution to any U.S. Person. This offering is available only to Non-U.S. Persons…") (all caps removed). Consistent with the Offering Circular, the Global Note's legend likewise states the "Note . . . may not be offered, sold, pledged, or otherwise transferred" unless, among other things, the acquirer "represents that it is not a U.S. person (within the meaning of Regulation S under the Securities Act)[.]" Exhibit 3 (all caps removed).

The dispute over the application of this restriction against U.S. Noteholders creates a need for discovery concerning (among other things): the parties' understanding of its meaning at contract formation, TV Azteca's reliance on it, Plaintiff's compliance, as well as market practices (as likely established by experts) regarding its application. In addition, discovery is required concerning the identities/nationalities of all the Noteholders to determine the recoverable quantum of alleged damages. Because U.S. parties cannot hold the Notes, Plaintiff cannot pursue a recovery on their behalf. As Noteholders admitted in the ICSID Arbitration, U.S. parties hold a substantial majority of the Notes. *See* Exhibit 5, Counter Memorial on Jurisdiction ¶ 43. But recovery on U.S. holders' behalf is not permitted. *E.g.*, *Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*, 46 A.D.3d 377, 377 (1st Dep't 2007) ("the [plaintiff-]beneficial owner of a $1 million interest in an Unrestricted Global Note issued by defendant" "had no right to sue upon an indenture agreement for interest payments . . . since that document specifically reserved that right to the registered holder of the Note."); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.D.r.l.*, 142 A.D.3d 833, 834-35 (1st Dep't 2016) (plaintiff lacked standing to sue to recover principal and interest on notes because plaintiff obtained notes from transferor who did not follow the indenture's procedure and transferor did not expressly transfer "title or ownership" of the claims in selling the notes to plaintiff); *MacKay Shields LLC, Deltec Asset Mgmt. Corp. v. Sea Containers, Ltd.*, 300 A.D.2d 165, 166 (1st Dep't 2002) ("Standing to sue upon the indentures which plaintiffs seek to enforce is . . . expressly reserved to 'holders' . . . one in whose name a Senior Note is registered. Inasmuch as it is undisputed that plaintiffs are not registered holders, they are without standing to sue, regardless of whether they are beneficial holders").

To sidestep the U.S. restrictions, Plaintiff has raised several specious arguments. Plaintiff wrongly claims it can pursue recovery irrespective of nationalities under § 6.8 of the Indenture (Exhibit 4), which merely states the Trustee "may recover judgment . . . for the whole amount ***then due and owing*** . . ." (emphasis added). But § 6.8 recognizes that Plaintiff may not recover the entire face amount, but only what is "then due and owing"—and nothing is due U.S. Noteholders. Plaintiff also seeks to avoid this issue by wrongly arguing that there is only one Note and that all Noteholders are just beneficiaries of that single Note. This interpretation of the Indenture contradicts its plain terms and the Noteholders' previous representations (*see* Exhibit 2, ¶¶ 38-40 (repeatedly describing "Notes" in plural)). At the very least, a need exists for fact and expert discovery into the relationship between the Global Note and the Notes held by each Noteholder.

Although § 2.3 of the Indenture (Ex. 4) requires Plaintiff, who also performs the role of Registrar, to "keep a register of the Notes and of their transfer and exchange," Plaintiff only recently revealed (including during the November 6 meet-and-confer) that it does not maintain such a register. *See also* Exhibit 7, Hr'g Tr. at 38:5-12. Likewise, § 2.5 provides that "[t]he Registrar shall preserve in as current a form as is reasonably practicable the most recent list

Hon. Paul G. Gardephe
November 12, 2025
Page 3

available to it of the names and addresses of Holders" (Ex. 4); again, however, Plaintiff has no such register. To now track down the identities of the Noteholders, given the lack of a Registry, TV Azteca must seek third-party discovery. In particular, TV Azteca requires international discovery from clearing houses Clearstream (based in Luxembourg, a Hague signatory) and Euroclear (based in Belgium, not even a Hague signatory), as well as exchange SGX-ST (based in Singapore, a Hague signatory). *See* Ex. 4 at Form of Note (Legend); Ex. 3, Note (Legend). Such international discovery is necessary because Plaintiff did not maintain a list of Noteholders. TV Azteca also has limited publicly available information regarding some Noteholders' identities and is prepared to pursue Rule 45 discovery from those with U.S. offices.

Given these core issues, directly relevant to the quantum of recoverable damages, Defendants seek fact discovery regarding the purpose, understanding and significance of the restrictions against U.S. Noteholders, including Plaintiff's compliance with obligations regarding the restriction. TV Azteca also foresees the likelihood of expert discovery regarding market practices in respect of the restriction. Both party and non-party fact discovery also is needed concerning the identities/nationalities of the registered and beneficial owners of all Notes. Notably, Plaintiff essentially admitted the relevance of the inquiry by offering to produce responsive information to which TV Azteca clearly is entitled regarding the four Ad Hoc Group Noteholders. There is no reason why the same information for all other Noteholders is somehow not likewise pertinent.

**2.    Mexican Law on Usury and Public Policy**. Mexican law applies to Defendants' usury defense and public policy defense, which cannot be waived under Mexican law. Under Mexican law, it is a criminal offense to obtain disproportionate returns from debtors (measured against prevailing market practices) and it is against public policy for a secondary creditor to recover more than what paid for the debt. Plaintiff seeks over $600 million for Noteholders that have seemingly purchased the majority of the Notes at significant discounts (as high as 50%).

Under § 3.7 of the Indenture,

> The Company and each Subsidiary Guarantor covenants (*to the fullest extent permitted by applicable law*) that it will not at any time insist upon, or plead, or . . . claim or take the benefit or advantage of . . . any usury law or other law that would prohibit or forgive the Company or such Subsidiary Guarantor from paying all or any portion of the principal of or interest on the Notes . . .

Ex. 4 § 3.7 (emphasis added). Critically, § 3.7 refers to *applicable law*, not New York law. Nor can § 3.7 logically treat New York as the "applicable law" because New York's usury law exempts loans over $2.5 million and thus is facially inapplicable. *See* N.Y. General Oblig. L. § 5-501(b)(6). Given that the "applicable law" cannot mean New York law, it logically refers to Mexican law. Ex. 4 § 3.7. To the extent Plaintiff disputes the meaning of § 3.7 (or claims some kind of ambiguity), then discovery is necessary concerning the intent of the parties at contract formation as well as relevant market practices.

Further, § 11.7's choice-of-law provision does not contain any language excluding New York's choice of law rules. The absence of any such disclaimer to avoid a *renvoi* issue, together with the reference to "applicable law", corroborates that the parties invited the introduction of non-New York law. In determining whether a choice-of-law provision like the one found in § 11.7 applies, New York follows the "substantial relationship" approach provided for in the Restatement (Second) Conflict of Laws. *TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp. 3d 275, 281-83 (S.D.N.Y. 2016). Under the Restatement, the chosen law does not apply where:

> . . . the chosen state has no substantial relationship to the parties . . . or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state.

Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971). Where the most significant contacts are in another state, New York law allows courts to "disregard the parties' choice." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). And even where New York does have sufficient contacts, the court will still apply the law of another state if "(1) that state has a materially greater interest in the litigation than New York, and (2) application of New York law would be contrary to a fundamental policy of that state." *Hollett*, 224 F. Supp. 3d at 282. Sufficient contacts typically require more than one contact.

Here, the transaction's center of gravity clearly is Mexico: TV Azteca and its guarantors are Mexican, the Noteholders are barred from being U.S. persons, Plaintiff admits the Notes are investments in Mexico (Exhibit 5, Counter-Memorial on Jurisdiction ¶ 12), the Paying Agent is located in London, and clearing systems are in Europe and Asia. New York's only contact is the Trustee's location. Further, there is no question that Mexico has a "materially greater interest in the litigation than New York," given that TV Azteca is a Mexican company, and the resolution of this litigation is likely to have significant ramifications in Mexico. Indeed, the Noteholders in the ICSID Arbitration have argued that they have an investment "in Mexico" and that Mexican public policy is at issue here. (*Id*. ¶ 12.) Applying New York law—especially to nullify Mexican usury protections—would contravene Mexico's strong public policy and greater interest in this dispute. Courts routinely apply law not identified in choice-of-law clauses under similar circumstances. *See, e.g.*, *E. Cap. Invs. Corp. v. GenTech Holdings, Inc.*, 590 F. Supp. 3d 668, 676-80 (S.D.N.Y. 2022) (disregarding Nevada choice of law provision and applying Florida law where Nevada had connections and defendant borrower was incorporated in Florida and maintained its principal place of business in Florida, where it negotiated, executed, and issued the Notes); *Medicrea USA, Inc. v. K2M Spine, Inc.*, 2018 WL 3407702, at *8-10 (S.D.N.Y. Feb. 7, 2018) (disregarding New York choice of law clause and applying California law where employee worked and lived in California and New York law violated California's public policy); *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 144-45 (S.D.N.Y. 2000) (applying Chinese law, despite Delaware choice-of-law provision, because of limited Delaware connections, and agreement was illegal under Chinese law and violated China's public policy).

      As Plaintiff apparently disputes the primary position of Mexico in relation to the Notes and/or the fundamental public policy of Mexico, discovery is necessary regarding these issues. Accordingly, TV Azteca seeks party and non-party fact discovery concerning: (1) the dates and prices at which the current Noteholders purchased their Notes (from U.S. Noteholders, via Rule 45 discovery and from foreign Noteholders via Hague Convention requests); (2) communications regarding knowledge of Mexican usury law and public policy; and (3) communications regarding the Noteholders' expected return. Such communications exist and at least some of them have been publicly disclosed in the ICSID Arbitration. *See* Exhibit 6, Reply on Jurisdiction ¶ 18 (multiple emails indicating desire to purchase Notes for engaging in a hostile takeover of TV Azteca). TV Azteca also plans to offer expert evidence regarding Mexican law, including Mexican legal principles concerning usurious interest rates and related public policy, as well as market rates/returns, and the reasonability of the Noteholders' expected returns.

### III. Proposed Discovery Schedule:

| Discovery Item | Deadline |
|---|---|
| Defendants' Answer | November 24, 2025 |
| Parties to Serve Requests for Production / Interrogatories | 2 weeks after entry of scheduling order. |
| Parties to Serve Responses and Objections to Requests/Interrogatories | 30 days after service of requests |
| Date for Service of Hague Requests / Rule 45 Discovery Subpoenas | 21 days after entry of scheduling order. |
| Complete Fact Witness Depositions | 120 days after entry of scheduling order. |
| Complete Fact Discovery | 120 days after entry of scheduling order. |
| Complete Expert Discovery | 90 days after completion of fact discovery. |
| - Expert Rule 26(a)(2) Disclosures | 30 days after completion of fact discovery. |
| - Opponent 26(a)(2) Disclosures | 30 days after 26(a)(2) disclosures. |
| Serve Requests to Admit | 100 days after entry of scheduling order. |
| Settlement Discussion Face-to-Face | 14 days after closure of fact discovery. |
| Dispositive Motion Letters | 3 weeks after close of expert discovery. |

While certain of the proposed dates modestly exceed the Court's presumptive discovery time frames, the schedule reasonably and responsibly takes account of what is necessary with substantial efforts (even assuming Plaintiff's cooperation) to develop an appropriate record in light of a number of complexities: international party and non-party procedures, including in Mexico, Europe, and potentially elsewhere, and implicating time-consuming Hague discovery; the realities of the holiday season, which likely will impact the responsiveness of non-parties; and the multitude of issues warranting expert analysis based on a well-developed fact record.

      Having waited nearly 3 years to file its Complaint and thereby delaying discovery, Plaintiff has no basis to complain about a matter of months. It is far more prejudicial to deprive TV Azteca of critical discovery and jeopardize the record available to the Court in addressing the merits. We greatly appreciate the Court's attention to these highly significant matters.

Hon. Paul G. Gardephe
November 12, 2025
Page 6

                                          Respectfully submitted,

                                          */s/ Hal S. Shaftel*

                                        Hal S. Shaftel

cc:    Counsel of Record (via ECF)