UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>    Plaintiff,<br><br>    v.<br><br>TV AZTECA, S.A.B. DE C.V., ET AL,<br><br>    Defendants. | Case No.: 1:22-CV-08164 (PGG) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ISSUANCE OF LETTERS OF REQUEST AND LETTERS ROGATORY**

Defendants TV Azteca, S.A.B. de C.V. and certain affiliates (collectively, "Defendants" or "TV Azteca"), submit this reply in further support of their motions for letters of request to Clearstream[1] and the Singapore Exchange and letters rogatory to Euroclear in Belgium. ECF Nos. 139, 142, 145 (the "Motions").

## PRELIMINARY STATEMENT

In opposing the Motions, which seek narrow, straightforward third-party discovery presenting no burden or prejudice whatsoever to it, Plaintiff takes hypocritical and irresponsible positions: on one hand, Plaintiff is the party claiming, when convenient, to seek to expedite this case, while on the other hand, it raises inapt technical, procedural, and plainly erroneous and misleading arguments meant only to create unnecessary complication and delay. None of these arguments withstands scrutiny.

*First*, as a threshold matter, Plaintiff's arguments against the Motions must be disregarded, as Plaintiff lacks standing as a party to raise objections to third-party discovery on the basis of relevance or undue burden.

*Second*, contrary to Plaintiff's arguments, no decision of "threshold" issues is required before beginning discovery. The Court never ordered, and the November 4, 2025 transcript does not support, a moratorium on discovery pending resolution of the parties' "scope" submissions. To the contrary, the parties expressly contemplated that they would proceed with discovery while simultaneously submitting their proposed plans on the scope and timing of discovery.

*Third*, Plaintiff wrongly claims Defendants failed to satisfy an inapplicable meet-and-confer requirement covering discovery disputes. But here, particularly since Plaintiff has no standing, Defendants were not aware of any disputes when they filed their third-party motions;

---

[1] All capitalized terms shall have the meaning attributed to them in the Motions.

1

any disputes will involve the third party recipients. Even so, as an accommodation, Defendants, promptly after receipt of Plaintiff's papers, offered to confer with Plaintiff only to learn that Plaintiff's position is that Defendants should defer the Motions (and thus risk running out of time) until the District Court issues a ruling on Plaintiff's "threshold" arguments (i.e., arguments that Defendants' defenses are wrong and thus no discovery is warranted). But the District Court never conditioned discovery on the issuance of such a ruling, which would be tantamount to a summary judgment decision. Thus, the process argument is not only moot, but it is also wrong.

*Fourth*, the discovery sought is relevant to Defendants' defenses, as previously explained. See ECF No. 129. The information sought, which relates to the identity of the Noteholders and the price at which they purchased the Notes, is directly relevant to whether the Noteholders can recover on the Notes if they are U.S. persons or if they seek to obtain usurious returns, which are prohibited by Mexican law. Further, Plaintiff's choice of law arguments, recycled from previous briefing, lack merit and do not foreclose discovery. The Motions seek narrow—not disproportionate—discovery and Plaintiff's novel market disruption theory is wholly unsupported.

For these reasons, the Plaintiff's arguments opposing the Motion necessarily fail.

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO OPPOSE THE DISCOVERY DEFENDANTS SEEK

As a threshold matter, Plaintiff's objections to the requested discovery lack merit because under well-established precedent, parties lack standing to challenge third-party discovery based on relevance or undue burden. Rather, only the third-party discovery recipients can do so. *See Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 386-87 (S.D.N.Y. 2018) (quoting *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) ("A party's general desire to thwart disclosure of information by a non-party is simply not an interest

sufficient to create standing.")). To obtain relief, parties seeking to block third-party discovery—like Plaintiff— "must assert some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by disclosure." *PHL Variable*, 2012 WL 5395249, at *2.

Here Plaintiff does not and cannot assert any such rights, citing no privilege, proprietary interest, or confidentiality concern personal to it. Instead, Plaintiff seeks to block Defendants from obtaining plainly relevant third-party records. That is precisely the sort of generalized objection courts routinely reject. *Silverstone Holding Group, LLC v. Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd.*, 650 F. Supp. 3d 199, 202-203 (S.D.N.Y. 2023) ("a non-recipient . . . lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."); *Lively v. Wayfarer Studios LLC*, 2025 WL 662896, at *3 (S.D.N.Y. Feb. 28, 2025) (defendants had no standing to object to subpoenas seeking non-party phone records and could not challenge the subpoenas on breadth or relevance grounds).

This principle fully applies in cases, as here, involving letters rogatory or letters of request. *See In re Turquoise Hill Resources Ltd. Secs. Litig.*, 2023 WL 4362933, at *2 (S.D.N.Y. July 6, 2023) ("Plaintiff lacks standing to challenge the Letter of Request on grounds of relevancy or undue burden").

## II. DEFENDANTS' MOTIONS ARE PROCEDURALLY PROPER AND TIMELY

### A. The Court Did Not Order The Parties to Halt Discovery Pending a "Threshold Determination"

Plaintiff's suggestion that no discovery may proceed until the Court resolves certain "threshold issues" rests on a mischaracterization of the November 4, 2025 hearing. At no point did the Court state that "threshold" issues had to be resolved before beginning any discovery. Rather, the Court explained, in the context of setting a discovery schedule, that it would "have to

3

resolve what the scope of appropriate discovery was" in determining a "***particular period of discovery***" with the length of that period dependent upon the "subjects" to be addressed. ECF No. 129-7 at 49:8-15 (emphasis added). The Court then directed the parties to submit proposed discovery plans—a directive wholly inconsistent with Plaintiff's newly minted theory that discovery must await further judicial action. Plaintiff's own words at the hearing confirm this understanding. Plaintiff's counsel expressly urged that the parties should begin exchanging information immediately and stated that even though the parties would be making submissions on discovery scope, "at the same time" the parties would "try to get done what we can through discovery." ECF No. 129-7 at 50:7-8. He even expressly urged an exchange of initial disclosures and document requests, stating that "There's no reason to hold that back." *Id*. at 50:11–12. Plaintiff's counsel also stated that it "would be willing to provide" to Defendants "all the information that defendants have said that they need . . . about the holders, such as where they bought, when they bought, and for what price" with respect to a group of Noteholders that Plaintiff's counsel also represents. Plaintiff even said it would do it "fairly quickly" (though they have not yet done so). *Id*. at 38:17-24. Thus, Plaintiff's position, as expressed at the hearing, directly contradicts its new position that similar discovery, directed to Clearstream, Euroclear, and Singapore Exchange, must await further Court guidance.

Further, Plaintiff's "threshold" issues are that Defendants' defenses should be disregarded and that no discovery is warranted. As such, what Plaintiff is arguing is that the District Court should issue a ruling tantamount to a summary judgment ruling in response to the parties' November letters on the scope of discovery and that no discovery may proceed until the District Court issues that ruling. At no point during the November 4 hearing did the District Court indicate that it would be issuing a preliminary summary judgment ruling on Plaintiff's "threshold"

4

arguments and that the parties should sit on their hands and fail to conduct any discovery until such ruling was issued.

Defendants' pursuit of third-party discovery through the Motions represents precisely the type of proactive case management that Plaintiff itself has encouraged. Far from being premature, Defendants' efforts to advance discovery demonstrate good faith and a commitment to moving this case forward expeditiously. By filing these three Motions seeking letters rogatory and letters of request, Defendants are implementing exactly this approach—advancing discoverable matters while awaiting further Court guidance on scope parameters. Indeed, had Defendants instead done nothing, Plaintiff would have surely criticized Defendants for dragging their feet and failing to move discovery along. Plaintiff's attempts to obstruct and prevent Defendants from obtaining proper discovery in this case must be rejected.

**B. No Meet-and-Confer Was Required and Defendants Acted Reasonably in Any Event**

Plaintiff's procedural objections regarding an inapplicable meet-and-confer requirement fare no better for at least two independent reasons.[2] *First*, Plaintiff lacks standing to object to the Motions, and thus, Defendants were unaware of any dispute. Critically, under the Local Civil Rules and the Magistrate Judge's Individual Practices, there is no requirement to confer before seeking third party discovery. Indeed, it is no different than seeking third party discovery through a Rule 45 subpoena, which requires no meet-and-confer. *Second*, these motions arise under 28 U.S.C. § 1781, which governs letters rogatory and letters of request—not Rules-based discovery. The meet-and-confer rules cited by Plaintiff relate to discovery disputes arising under the Federal Rules of Civil Procedure. While Defendants referenced Rule 28 as being instructive in this

---

[2] The issue is also moot. Promptly on receipt of Plaintiff's opposition, Defendants contacted Plaintiff's counsel to propose a meet-and-confer. In the communications, it became clear Plaintiff's position is that Defendants should defer the Motions until the District Court issues a ruling on Plaintiff's November memorandum of law attacking Defendants' defenses. The impasse is clear, rendering Plaintiff's argument not only wrong, but also moot.

5

instance, that rule addresses depositions, which are not at issue as Defendants merely seek to obtain documentary evidence. While courts may reference general discovery principles, such as those in Rule 26, when analyzing letters rogatory or letters of request motions, such judicial consideration does not transform these statutory motions into Rules-based discovery requests requiring meet-and-confers or mandatory conferences.[3]

Defendants' objective remains to complete discovery as efficiently as possible. Upon receiving Plaintiff's opposition, out of an abundance of caution, Defendants acted diligently and immediately contacted Plaintiff to schedule a meet-and-confer but Plaintiff's counsel is unavailable until after this reply will be submitted. If, as Plaintiff now asserts, a meet-and-confer might have narrowed or resolved the issues, it is unclear why Plaintiff failed to initiate such discussions before filing its opposition.

### III. THE REQUESTED THIRD-PARTY DISCOVERY IS RELEVANT, PROPORTIONATE, AND NECESSARY TO DEFENDANTS' CORE DEFENSES

#### A. The Information Sought Through the Motions is Relevant to Defendants' Defenses

Rather than addressing the substantive merits of the Motions, Plaintiff attempts to relitigate previously submitted discovery scope issues currently pending before the Court. Plaintiff's recycled arguments lack merit for the reasons detailed in Defendants' previous submissions to the Court. *See* ECF No. 129. Notably, Plaintiff already submitted an unauthorized lengthy 25-page brief on discovery scope, which is really a summary judgment motion attempting to seek a ruling that Defendants' defenses should be denied. ECF No. 126.

The discovery sought concerns (1) the identities/nationalities of all current Holders of the Notes; and (2) the price at which the current Holders purchased their Notes. This information

---

[3] Indeed, Defendants articulated this position in its letter to Magistrate Judge Barbara Moses. ECF No. 136.

6

bears directly on whether Plaintiff may recover on behalf of certain Noteholders, including U.S. persons who are prohibited from holding the Notes, and Noteholders seeking returns that violate Mexican usury law or public policy. The authorities already cited by Defendants confirm that Plaintiff cannot pursue claims on behalf of U.S. Noteholders or those seeking usurious returns. *E.g.*, *Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*, 46 A.D.3d 377, 377 (1st Dep't 2007) ("[T]he [plaintiff-]beneficial owner of a $1 million interest in an Unrestricted Global Note issued by defendant" "had no right to sue upon an indenture agreement for interest payments . . . since that document specifically reserved that right to the registered holder of the Note."); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 142 A.D.3d 833, 834-35 (1st Dep't 2016) (plaintiff lacked standing to sue to recover principal and interest on notes because plaintiff obtained notes from transferor who did not follow the indenture's procedure and transferor did not expressly transfer "title or ownership" of the claims in selling the notes to plaintiff).

Here, Defendants have made a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence. In those circumstances, Courts routinely grant motions for letters rogatory or for letter of request. *See, e.g.*, *Philan Ins. LTD v. Frank B. Hall & Co.*, No. 87 Civ. 4624 (RPP), 1992 WL 183553, at *2 (S.D.N.Y. July 21, 1992) (granting motion for letters rogatory because the records sought might lead to relevant evidence and might assist plaintiffs in proving damages); *Elliott Associates v. Republic of Peru*, 96 CIV. 7916 (RWS), 1997 WL 436493 (S.D.N.Y. 1997) (granting motion for letters rogatory despite opposing party's claims that the testimony sought would be duplicative).

### B. Plaintiff's Choice of Law Arguments Do Not Foreclose Discovery

While Defendants have addressed the relevance of discovery in their previous submissions and incorporate those arguments herein, Defendants will briefly address certain of these

7

arguments. *First*, Plaintiff focuses on *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.,* 20 N.Y.3d 310, 312, 316 (2012) and claims that the case precludes application of Mexican law in this case. But that case is distinguishable, as even where choice of law provisions exist, New York courts may still choose to disregard the provision. Nor did *IRB-Brasil* involve, let alone address, the critical language in the Indenture, which refers to "applicable law" regarding usury law. ECF No. 129-4 § 3.7. On its face, the provision expressly invites the application of Mexican usury law since New York usury law does not even apply to a debt in the amount of the Notes. *See* N.Y. General Oblig. L. § 5-501(b)(6). The reference to "applicable law" thus invites non-New York law, which in this case only can mean Mexican law.

Further, in analyzing what law to apply, and whether to apply a choice-of-law clause, New York follows the "substantial relationship" approach provided for in the Restatement (Second) Conflict of Laws. Where, as here, the most significant contacts are in another state, New York law allows courts to "disregard the parties' choice." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). And for the reasons articulated in its prior submission (ECF No. 124), here the transaction's center of gravity clearly is Mexico, weighing heavily in favor of application of Mexican law.

### C. The Discovery Sought Through the Motions is Not Disproportionate

The discovery sought is not "grossly disproportionate to the needs of the case." ECF No. 151 at 9. Section 6.8 of the Indenture recognizes that Plaintiff may not recover the entire face amount, but only what is "then due and owing"—and nothing is due to U.S. Noteholders. For that reason, Defendants need to know the identities and nationalities of all the Noteholders. While Plaintiff asserts in hyperbolic fashion that Defendants are on a "worldwide discovery campaign" (ECF No. 151 at 11), Defendants are seeking discrete information from three entities that should

have it readily available.[4]  While Plaintiff asserts multiple times that discovery would "take years" or lead to "years-long delay," that is wholly unsupported.  Even if some delays may occur, delay is not a basis to deny otherwise proper third-party discovery.

### D.  Plaintiff's Market Disruption Theory is Unsupported

Plaintiff's claim that granting these Motions would create "perverse effects on the corporate debt market" borders on the frivolous.  ECF No. 151 at 10.  Defendants are not seeking to upend market structure—they are seeking to enforce contractual and statutory restrictions governing who may hold the Notes and what returns may lawfully be recovered.  Federal courts routinely permit discovery in complex financial matters, including those involving global securities holdings, without any disruption to capital markets.  Plaintiff's policy argument, supported by no relevant authorities, should be rejected.

### E.  Plaintiff Fails to Address that Defendants are Being Forced to Seek Third-Party Discovery Because of Plaintiff's Failure to Comply with its Obligations

The Indenture clearly states that Plaintiff—as Registrar—must keep a record of the Holders of the Notes.  ECF No. 129-4 § 2.3.  Plaintiff has admitted to Defendants that it failed to maintain that record.  In the absence of the record of Holders that Plaintiff should have kept, Defendants have been forced to seek this discovery elsewhere.  Defendants are doing so simultaneously via the international third-party discovery they are seeking from the Court and via Rule 45 subpoenas that are currently being served on all known prior or current Holders of the Notes.

---

[4] While Defendants argue that the Singapore Exchange would not have "any additional discovery" not produced by Clearstream or Euroclear, it does not explain why that is so.  ECF No. 151 at 10 n.5.  Without discovery, Defendants have no way to know what unique information is in the possession of the Clearstream, Euroclear, or the Singapore Exchange, and thus, seek discovery from each entity.

9

## **CONCLUSION**

In the interest of sound and time efficient case management, as well as a fair development of the record, Defendants request that this Court approve the relief sought in the Motions and issue the proposed letter rogatory to Euroclear and the proposed letters of request to Clearstream and Singapore Exchange. Defendants further request that after the Court has signed the letters rogatory, the Clerk of the Court authenticate the Court's signature under the seal of the Court and the letter rogatory be thereafter returned by the Clerk to Defendants' undersigned counsel. Defendants' counsel will promptly cause the letters rogatory to be translated into the appropriate language, and will transmit the letter, and its translation, to the U.S. Department of State for transmittal to the appropriate foreign authorities.

Dated: December 3, 2025
      New York, New York

**GREENBERG TRAURIG, LLP**

By:   */s/ Hal S. Shaftel*
      Hal S. Shaftel

Hal S. Shaftel
Daniel Pulecio-Boek
John C. Molluzzo Jr.
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
shaftelh@gtlaw.com
pulecioboekd@gtlaw.com
molluzzoj@gtlaw.com

*Counsel for Defendants TV Azteca, S.A.B. de C.V., et al.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 6.3's word count limit because it contains 2,926 words, excluding the sections exempted by Rule 7.1(c).  In making this certification, I relied on the word count of the word-processing program used to prepare this document.

/s/ *Hal S. Shaftel*