January 20, 2026

<u>VIA CM/ECF</u>

Hon. Barbara Moses
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY  10007

      Re:    *The Bank of N.Y. Mellon[1] v. TV Azteca, S.A.B. de C.V.*, No. 22 Civ. 8164

Dear Judge Moses:

      We write jointly on behalf of all parties.  We respectfully write in response to your order that "no later than January 20, 2026, the parties must submit a joint letter outlining their proposal(s) for promptly and efficiently placing [dispositive legal] issues before the Court for early resolution."  Dkt. 177 at 3.  Plaintiff and Defendants have conferred, but have not been able to reach a joint proposal.  Below are the parties' competing proposals for early resolution.

      ***The Trustee's Position***

      The Trustee agrees that the Court should promptly resolve "the merits issues underlying the key defenses raised by both TV Azteca and the Guarantor Defendants."  Dkt. 177 at 2-3.  Currently, there are four such purely legal issues for which early disposition could avoid needless discovery[2]:

> • Defendants have argued that, despite the Indenture's New York choice-of-law clause, Indenture § 11.7, the Indenture is governed by Mexican law.  On the basis of that argument, they have sought discovery into purported defenses to payment based on Mexican law and public policy, including third-party subpoenas to the Ad Hoc Group and its financial advisor.  *See* Dkt. 172 at 4-5.  Defendants have also claimed that expert discovery is needed on this topic.  *See id.*  This issue was already

---

[1] Per the full caption, "The Bank of New York Mellon, solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024."

[2] That includes both discovery served by Defendants and any discovery the Trustee must serve to defend its claims on the facts.  The Trustee acknowledges that, at the January 6 conference, the Court directed that "discovery into the citizenship and the purchase price issues should be permitted if not unduly burdensome until and unless Judge X says those issues are irrelevant to any claim or defense."  Tr. 46:15-18.  However, the scope of discovery can and should change once the Court is able to resolve these threshold issues.

Hon. Barbara Moses
January 20, 2026
Page 2

addressed by both parties in their November briefs on the scope of discovery. Dkt. 126 at 6-9; Dkt. 129 at 3-5.

- Defendants have argued that the Indenture and form of Note prohibit U.S. persons from holding beneficial interests in the Note.  The Trustee has argued that any breach of these purported transfer restrictions could not excuse Defendants' repayment of the Notes.  *See* Dkt. 126 at 15-16.

  To pursue this theory, Defendants have served several dozen subpoenas on beneficial owners of the Note which are members of the Ad Hoc Group.  In response, entities affiliated with Cyrus, Contrarian, and Fidelity have produced securities-law disclosures stating that they are U.S. persons and have offered to stipulate to that fact.[3]  Another member, Plenisfer, has provided disclosures showing that it is not a U.S. person.  In addition to this discovery, Defendants obtained leave to serve letters rogatory and letters of request to two international clearing agencies in an attempt to identify the nationality of other beneficial owners of the Notes.  *See* Dkt. 179.  Defendants also claim that expert discovery is needed on this topic.  *See* Dkt. 172 at 4-5.  This issue was already addressed by both parties in their briefs on the scope of discovery.  Dkt. 126 at 19-20; Dkt. 129 at 2-3, 5.

- Defendants have asserted that Cyrus and Contrarian conspired with the President of Mexico to control a decision of the Mexican Supreme Court in a tax dispute involving certain companies affiliated with Ricardo Salinas.  In addition to their third-party complaint against Cyrus and Contrarian, Defendants have argued that this alleged conduct allows them to invoke New York's impossibility defense because it made it more difficult for them to pay the Notes.  *See* Dkt. 172 at 3.  Apart from its factual defenses, the Trustee has argued that financial difficulty in performing does not justify the defense, *407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 281-82 (1968) (collecting cases), and Defendants do not (and cannot) assert that they "took virtually every action within [their] power to perform," as New York law requires, *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

  Nevertheless, Defendants have served numerous third-party subpoenas on entities affiliated with Cyrus and Contrarian and have also indicated that they will seek international discovery in Mexico, as well as expert discovery.  Tr. 35:3-8, 41:2-4; *see* Dkt. 129 at 5.  This issue has been addressed by the Trustee in connection with its pending pre-motion letter for leave to seek summary judgment against the Guarantor defendants.  Dkt. 161 at 3.

- Defendants have also asserted an unclean-hands defense on the basis of their theory involving the Mexican Supreme Court.  *See* Dkt. 172 at 3.  Apart from its factual defenses, the Trustee has asserted that this defense fails because, among other

---

[3] Defendants have not responded to this offer.

Hon. Barbara Moses
January 20, 2026
Page 3

reasons, unclean hands are not a defense to a contract claim under New York law. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 607 (2d Cir. 2005). To pursue this theory, Defendants have sought the same discovery as they seek to justify their impossibility defense. This issue has been addressed by the Trustee in connection with its pending pre-motion letter for leave to seek summary judgment against the Guarantor defendants. Dkt. 161 at 3.

At the January 6 conference, the Court proposed three potential means for resolving these issues early: (1) moving for partial summary judgment on stipulated facts, such as on the nationality of certain beneficial owners as concerns the Indenture's purported transfer restrictions; (2) consenting to Your Honor's dispositive resolution of those issues pursuant to 28 U.S.C. § 636(c)(1); or (3) scheduling briefing on partial summary judgment on non-stipulated facts. Tr. 65:14-23. In the interest of efficiency, the Trustee is open to any of these options.

Further, because many of these issues have already been addressed in the scope-of-discovery briefing ordered by the Court, the Court can and should also rule on those papers before additional resources are needlessly expended in discovery. If necessary, the Trustee also respectfully requests that the Court clarify whether that briefing is subject to the Court's November 18, 2025 order of reference so that the appropriate judge can rule on the issues provided on those papers now. *See* Dkt. 133. The Trustee likewise stands ready to provide additional expedited briefing on the impossibility and unclean-hands issues should that be helpful to the Court.

Finally, the Trustee notes that the "stipulation" Defendants propose is unworkable. Many of the claims for which Defendants seek a "stipulation" are factually false, and at least four of them – specifically, "stipulations" numbers 1, 4, 5, and 6 – appear to ask the Trustee to concede that Defendants' interpretation of the Indenture is correct and the Trustee's interpretation is wrong. Nor have Defendants meaningfully explained why these "stipulations" are necessary when their affirmative defenses can, and should, be decided now as a matter of law. By making proposals that Defendants knew the Trustee would not and could not accept, Defendants are trying to forestall a merits resolution, not expedite it.[4]

**Defendants' Position**

At the January 6, 2026 conference, Your Honor directed the parties to confer and submit proposals "as to how best to promptly and efficiently tee up the dispositive rulings that both parties really do need early." 1/6/2026 Hr'g Tr. 64:19–65:9. To efficiently yet fairly adjudicate this case, it is necessary to develop an appropriate record either through discovery, both fact and expert, or through appropriate stipulated facts. It is our view that the best way to do so—consistent with what is generally done in most cases—is to complete at least party/domestic discovery over the next four months, followed by expert discovery, without the detour and risk of inefficiency created by front-loading certain issues. None of the issues that the Plaintiff characterizes as "threshold issues"—including those involving whether U.S. persons may purchase the Notes, whether the

---

[4] In addition, the Trustee notes that Defendants' continued use of the term "Noteholder" to refer to beneficial owners is incorrect. As previously explained, the term "Holder" is defined in the Indenture to refer to the Common Depositary. *See, e.g.*, Dkt. 126 at 5-6.

Hon. Barbara Moses
January 20, 2026
Page 4

Noteholders purchased the Notes seeking usurious returns, and the choice-of-law—are purely legal; rather, they require factual development. Plaintiff seeks to rush the process and short-circuit discovery on these points as a means to deprive Defendants from fairly developing the record in support of their positions. Moreover, Plaintiff now seeks abbreviated adjudication of virtually all of Defendants' affirmative defenses. That again is improper, as Plaintiff passed on timely moving to strike those affirmative defenses. As such, they are part of the operative pleadings and fairly subject to factual development.

It cannot be that Plaintiff has a new-found need to expedite, since it (1) delayed filing a proper pleading to allow discovery to begin for over three years; and (2) even recently, taken multiple positions to object to basic discovery and hinder progress. Nor can Plaintiff credibly claim disproportionate costs from allowing discovery to fairly unfold, given that, by its computation, it seeks recovery of over $600 million. Indeed, Plaintiff nowhere asserts undue burden or seriously could. While Plaintiff seeks to rush to summary judgment to sidestep the normal discovery process, that is highly prejudicial to Defendants without first allowing sufficient discovery to develop a fair record on the issues identified for potential expedited resolution.

*First*, although the restriction on U.S. persons' ability to own or control the Notes is explicit, Plaintiff posits that the clear-cut prohibition means something else. In support of its strained reading (and presumably because of it), Plaintiff wants to put the cart before the horse: to decide what the language means before taking basic discovery about it. But in the ordinary course, which should hold here, discovery (which is just that, discovery) proceeds before a substantive determination of the conflicting contract interpretations when, as here, they are well-pled. *Garcia v. Benjamin Group Enterprise Inc.*, 800 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) (where parties disputed contract language, court, "allow[ed] some discovery on the issue rather than to preclude the development of this potential claim and/or defense."); *Brooks v. Macy's, Inc.*, 2011 WL 1793345, at *2 (S.D.N.Y. May 6, 2011) ("I need not (and cannot) reach the ultimate issue of whether the plan is actually ambiguous . . . At this stage, the issue is only whether plaintiff is entitled to discover matters that will be relevant if the plan is found to be ambiguous. Ordinarily, discovery concerning all relevant or potentially relevant issues is permitted, even if some of the discovery may ultimately prove unnecessary"); *Yorktown Indus., Inc. v. Aster Graphics, Inc.*, 2023 WL 6541317, at *3 (N.D. Ill. Oct. 5, 2023) (where recovery depended on meaning of contract's terms, the court permitted discovery regarding the interpretation of those terms because it was "of no moment that the Court has not yet determined, as a matter of law" whether the contract at issue was ambiguous").

Relevant facts include the parties' understanding of the restriction at the negotiation/formation stage; TV Azteca's reliance on it; Plaintiff's compliance with it; and market practices (likely through expert evidence) concerning how the restriction is applied. Moreover, if U.S. persons cannot own or control the Notes, Plaintiff cannot pursue recovery on their behalf, making such discovery crucial. Even further, under the terms of the Indenture, a majority of the Noteholders "have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or of exercising any trust or power conferred on the Trustee." ECF 129-4 § 6.5. Thus, discovery into whether a majority of the Noteholders are U.S. persons is

Hon. Barbara Moses
January 20, 2026
Page 5

crucial.  Indeed, Plaintiff itself has opened the door to discovery on this issue, having served third-party subpoenas requesting documents on this very issue.

   *Second*, Defendants argue that the Noteholders'[5] recovery under the Notes is barred because the Noteholders seek usurious returns, which are barred by Mexican law and public policy. Defendants argue that this defense should be governed by Mexican law, whereas Plaintiff says New York law applies.  But choice-of-law questions are fact-intensive.  To begin, under Section 3.7 of the Indenture,

> The Company and each Subsidiary Guarantor covenants (***to the fullest extent permitted by applicable law***) that it will not at any time insist upon, or plead, or . . . claim or take the benefit or advantage of . . . any usury law or other law that would prohibit or forgive the Company or such Subsidiary Guarantor from paying all or any portion of the principal of or interest on the Notes . . .

*See* ECF No. 129-4.  Critically, Section 3.7 refers to ***applicable law***, not New York law.  Nor can § 3.7 logically treat New York as the "applicable law" because New York's usury law exempts loans over $2.5 million and thus is facially inapplicable.  *See* N.Y. General Oblig. L. § 5-501(b)(6). Given that the "applicable law" cannot mean New York law, it logically refers to Mexican law. *See* ECF No. 129-4 § 3.7.

   Even aside from Section 3.7, fact issues arise in applying a contractual choice-of-law clause.  New York follows the Restatement (Second) of Conflict of Laws "substantial relationship" framework. *TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp. 3d 275, 281–83 (S.D.N.Y. 2016). Under the Restatement, the chosen law does not apply where:

> . . . the chosen state has no substantial relationship to the parties . . . or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state.

Where the most significant contacts are elsewhere, New York law permits courts to "disregard the parties' choice." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).  And even where New York has sufficient contacts, the court will apply another jurisdiction's law if "(1) that state has a materially greater interest in the litigation than New York, and (2) application of New York law would be contrary to a fundamental policy of that state." *Hollett*, 224 F. Supp. 3d at 282.  Sufficient contacts typically require more than a single contact.

---

[5] Plaintiff repeats its argument that there is only one "Holder" of the Note, the Common Depository.  This argument is based solely on its specious interpretation of the Indenture, under which there are no Holders of the Notes but merely beneficial interest owners of a single Global Note.  That argument is inconsistent with the plain language of the Indenture itself, which repeatedly uses the term "Holders" (plural)—more than 130 times. *See, e.g.* ECF 129-4 at §§ 2.5, 2.6, 3.8(h), 5.5, 6.2.  Indeed, under Plaintiff's interpretation of "Holders" as meaning only the Common Depository, many provisions of the Indenture would make no sense.

Hon. Barbara Moses
January 20, 2026
Page 6

Accordingly, discovery into these contacts is crucial before the Court can decide this issue. As explained in prior briefing, the transaction's center of gravity is indisputably Mexico, and the contacts with New York are limited. *See* ECF No. 129 at 3-5. But that analysis necessarily turns on the parties' and transaction's contacts with New York and Mexico—facts that can only be fully established through fair discovery.

For these reasons, Defendants do not believe the Court will be able to resolve these so-called threshold issues (the usury defense and whether U.S. persons may purchase the Notes and thus collect the debt) without an appropriate factual record (or detailed stipulation) addressing the following:

1. That the Indenture lacks a meaningful nexus to New York and that Mexico is the transaction's center of gravity, which is relevant to the choice-of-law analysis;

2. That a majority of the Notes are owned or controlled by U.S. persons (as that term is defined by the Global Note and Regulation S);

3. That a majority of the Noteholders acquired the Notes at a significant discount—sometimes exceeding 60% of face value;

4. That the parties' intent in entering into the Indenture was to apply Mexican law to certain defenses and to restrict ownership or enforcement by U.S. persons;

5. That Noteholders who are U.S. persons purchased the Notes with knowledge of the Indenture and the Global Note's express restriction;

6. That Noteholders who purchased the Notes at a steep discount did so with knowledge of Mexican laws that could prohibit or restrict that practice; and

7. That Noteholders who purchased at a steep discount intended to recover value beyond their principal investment, including by seeking control or ownership interests in TV Azteca.

As a means to try to avoid much of the discovery, Defendants proposed a stipulation regarding these items. Defendants are still waiting for Plaintiff's position on the stipulation. But Plaintiff cannot have it both ways: neither stipulate to essential facts nor, in the alternative, allow for essential discovery.

Defendants understand that the Plaintiff is not willing to stipulate to these facts. Thus, an appropriate factual record on these issues must be developed so that the parties can present the Court with a full record on which it can then decide these issues. Defendants are committed to working with Plaintiff to ensure a prompt—but fair—discovery process.

Hon. Barbara Moses
January 20, 2026
Page 7

                                        Respectfully submitted,

                                        */s/ Justin M. Ellis*
                                        Justin M. Ellis

                                        */s/ Hal S. Shaftel*
                                        Hal S. Shaftel