**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE TV AZTECA, S.A.B. DE C.V. 8.25% SENIOR NOTES DUE 2024,<br><br>Plaintiff,<br><br>v.<br><br>TV AZTECA, S.A.B. DE C.V., et al.,<br><br>Defendants. | No. 22 Civ. 8164<br><br>Hon. Paul G. Gardephe<br><br>Hon. Barbara Moses |

**THE TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANTS' THIRD-PARTY COMPLAINT**

Justin M. Ellis
Mason E. Reynolds
Eric Rolston
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
Tel.: (212) 607-8160
jellis@mololamken.com

*Counsel for the Bank of New York Mellon, as Trustee*

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 5

I. The Court Should Strike Defendants' Third-Party Complaint ..... 5

A. Defendants' Third-Party Complaint Is Procedurally Improper ..... 6

B. Defendants' Third-Party Complaint Offers No Grounds for Impleader ..... 8

C. The Discretionary Factors Also Weigh Against Impleader ..... 10

II. In the Alternative, The Court Should Sever the Third-Party Complaint ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Page(s)

## CASES

*839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*,
No. 15 Civ. 4516, 2016 WL 5372804 (E.D.N.Y. Sept. 26, 2016) .......... 6

*Bank of India v. Trendi Sportswear, Inc.*,
239 F.3d 428 (2d Cir. 2000) .......... 8

*Bletas v. Deluca*,
No. 11 Civ. 1777, 2012 WL 251965 (S.D.N.Y. Jan. 17, 2012) .......... 7

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) .......... 11, 12

*Certain Underwriters at Lloyd's London v. Art Crating, Inc.*,
No. 12 Civ. 5078, 2014 WL 123488 (E.D.N.Y. Jan. 10, 2014) .......... 12

*Coastal States Mktg., Inc. v. Hunt*,
694 F.2d 1358 (5th Cir. 1983) .......... 5, 12

*Cowie v. SodexoMagic LLC*,
No. 20 Civ. 3151, 2021 WL 11709765 (S.D.N.Y. Feb. 15, 2021) .......... 5, 6, 10, 11

*Dery v. Wyer*,
265 F.2d 804 (2d Cir. 1959) .......... 9

*Endo Pharms. Inc. v. Amneal Pharms., LLC*,
No. 12 Civ. 8060, 2016 WL 1732751 (S.D.N.Y. Apr. 29, 2016) .......... 7

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
422 F. Supp. 2d 357 (S.D.N.Y. 2006) .......... 8, 9

*iBasis Glob., Inc. v. Diamond Phone Card, Inc.*,
278 F.R.D. 70 (E.D.N.Y. 2011) .......... 10

*Kenneth Leventhal & Co. v. Joyner Wholesale Co.*,
736 F.2d 29 (2d Cir. 1984) .......... 8, 9

*Kraus USA, Inc. v. Magarik*,
No. 17 Civ. 6541, 2018 WL 4682016 (S.D.N.Y. Sept. 28, 2018) .......... 6, 8, 9

*Meisels v. Meisels*,
No. 19 Civ. 4767, 2021 WL 1924186 (E.D.N.Y. May 13, 2021) .......... 2

*Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*,
No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024) ........ 8, 9

*Red Rock Sourcing, LLC v. JGX, LLC*,
No. 21 Civ. 1054, 2025 WL 524024 (S.D.N.Y. Feb. 18, 2025) ........ 11

*Republic of Hungary v. Simon*,
604 U.S. 115 (2025) ........ 5, 12

*Singh v. NYCTL 2009-A Tr.*,
683 F. App'x 76 (2d Cir. 2017) ........ 5, 12

*Tatintsian v. Vorotyntsev*,
No. 16 Civ. 7203, 2018 WL 3130599 (S.D.N.Y. June 25, 2018) ........ 8, 9

*Wilson v. Pasquale's DaMarino's, Inc.*,
No. 10 Civ. 2709 (PGG), 2013 WL 12446760 (S.D.N.Y. Mar. 22, 2013) ........ 6, 7

**RULES**

Fed. R. Civ. P. 12(b)(6) ........ 2

Fed. R. Civ. P. 14(a)(1) ........ 3, 5, 6, 7

Fed. R. Civ. P. 14(a)(4) ........ 6, 12

Hon. P. Gardephe Individual Practices § IV(A) ........ 3, 6, 7

**OTHER AUTHORITIES**

6 C. Wright & A. Miller, Fed. Prac. & Proc. Civ. §1446 (3d ed.) ........ 8, 9

## INTRODUCTION

Defendants' third-party complaint is a frivolous attempt to further prolong what should be a simple case. After three years of litigation, and extensive briefing on threshold issues, Defendants have never contested that the now matured Notes are valid and have been in default for more than four years. Instead, Defendants have repeatedly tried to distract from those uncontested facts in violation of the substantive law and the Court's procedural rules. This latest attempt is no different. Defendants have filed their third-party complaint without seeking the leave that the Federal Rules or this Court's Individual Practices require. And rather than asserting claims against third parties who might be liable for Defendants' debt on the Note – claims that might be a proper subject for a third-party complaint – Defendants instead allege an outlandish global conspiracy. They assert that Cyrus Capital Partners and Contrarian Capital Management, two investment advisers for a minority of beneficial owners of the Note, have conspired with the President of Mexico to improperly influence decisions of the Mexican Supreme Court in a tax dispute. In effect, Defendants seek to transform this straightforward action on a promissory note into a debate about whether the actions of the highest levels of the Mexican government are invalid under Mexican law. By doing so, Defendants hope to further delay judgment on the Notes with months, if not years, of discovery into Mexican politics and law.

There is no reason to sink this case into the quagmire that Defendants propose. Because Defendants failed to seek leave before filing their third-party complaint, that pleading can and should be struck by this Court. Moreover, Defendants' complaint does not raise the sort of derivative claims that are proper for a third-party suit. And the Court's discretion weighs heavily against allowing Defendants to turn this straightforward action on a promissory note into a cross-border free-for-all. Defendants' third-party claims have no proper place in this action. The Court should therefore strike, or in the alternative, sever Defendants' claims.

## STATEMENT OF FACTS

Defendants' third-party complaint arises from Mexican tax litigation.[1] *See* Dkt. 164 ("TVA Compl.") ¶2. In that litigation, companies owned and controlled by Ricardo Salinas challenged tax liabilities assessed by the Mexican government for the fiscal years 2008 to 2013.[2] The tax dispute primarily involves Grupo Elektra, which is not a party to this litigation, and dates to the early 2010s – years before TV Azteca defaulted on the Notes at issue in 2021.[3]

Defendants originally did not raise their tax liabilities as an issue in this case. In their first case management plan submitted in 2022, Defendants stated that they would challenge only the "redemption premium" sought by the Trustee at that time, as well as damages. Dkt. 22 at 3. Likewise, in the joint letter and discovery briefing ordered by the Court in connection with its November 2025 conference, Defendants asserted defenses relating to purported Mexican public policy and other issues, but not the Mexican tax litigation. *See* Dkt. 106 (letter) at 3; Dkt. 129 (Defendants' scope-of-discovery submission) at 1-5. Only after the Trustee explained at length why those defenses were meritless, *see* Dkt. 126, did Defendants accuse the beneficial owners of the Notes of "conspiring with the Mexican government." Dkt. 148 (answer) at 12. At that time,

---

[1] While the Trustee disputes the factual claims made in the third-party complaint, they are taken as true for purposes of this motion to strike, similar to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). However, this Court also can and should consider the same materials outside the complaint that it could consider on a Rule 12(b)(6) motion, including materials referenced or incorporated in the complaint and information subject to judicial notice. *See Meisels v. Meisels,* No. 19 Civ. 4767, 2021 WL 1924186, at *2 (E.D.N.Y. May 13, 2021) (citing *Neo4j, Inc. v. PureThink, LLC*, 480 F. Supp. 3d 1071, 1075 (N.D. Cal. 2020)).

[2] *See* Michael O'Boyle, *Mexico' Top Court Votes Against Salinas on Major Tax Claims*, BLOOMBERG (Nov. 13, 2025).

[3] *Id.*; *see also* Santiago Pérez, *Mexican Tycoon's Retail Chain Ordered to Pay $1 Billion in Back Taxes*, WALL ST. J. (June 13, 2024).

Defendants had twice proposed in case management plans in 2022 and 2025 that "[n]o additional parties may be joined except with leave of the Court." Dkt. 22 ¶ 3; Dkt. 106-2 ¶ 3.

Defendants filed their original answer on November 26. Dkt. 148. On December 17 – three weeks later – Defendants then filed their third-party complaint against Cyrus and Contrarian. Dkt. 164. Although the Federal Rules require that "a third-party plaintiff ***must***, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer," Fed. R. Civ. P. 14(a)(1) (emphasis added), Defendants did not move for leave to file their third-party complaint. Moreover, while this Court's Individual Practices state that "pre-motion conferences are required for . . . motions to file a third party complaint," Hon. P. Gardephe Individual Practices § IV(A), Defendants did not seek a pre-motion conference, either. This is the fourth filing Defendants have made in the last month without seeking a pre-motion conference in violation of the Court's rules. *See* Dkts. 137, 140, 143 (motions for letters rogatory before a pre-motion conference); Dkt. 151 (describing Defendants' violation).

In their third-party complaint, Defendants do not assert that Cyrus and Contrarian are liable for the Trustee's claims against them. Nor do Defendants allege that Cyrus or Contrarian are the "registered Holders" of the Notes, since those entities only hold beneficial interests in the book-entry Global Note. *See* Dkt. 80-1 (Indenture) § 2.6; *id.* § 2.3(a) (explaining the Notes' book-entry system). For that matter, Defendants do not even allege that the investors associated with Cyrus and Contrarian beneficially own more than a minority of interests in the Note. Instead, Defendants allege that Cyrus and Contrarian are liable to them because those entities engaged in a "lobbying campaign" with Claudia Sheinbaum, the President of Mexico. TVA Compl. ¶ 15. According to Defendants, the chairman of TV Azteca and controlling shareholder, Ricardo Salinas, is a "vocal critic" and "one of the most high-profile opposition figures" to President Sheinbaum and her

political party, MORENA. *Id.* ¶¶ 17-18. Defendants therefore allege that President Sheinbaum and MORENA have treated Mr. Salinas and his corporate conglomerate, Grupo Salinas – which includes TV Azteca – as "political adversaries." *Id.* ¶ 17. Defendants allege that Contrarian and Cyrus "lobbied against Defendants and Grupo Salinas in [this] highly polarized and volatile political environment." *Id.* ¶ 18. But Defendants do not allege that Contrarian or Cyrus could have induced the President of Mexico to take any actions which she would not otherwise have taken. To the contrary, they allege that the President is already "bias[ed] towards" and "attacking" Grupo Salinas for domestic political reasons. *Id.* ¶¶ 18-19.

Defendants also allege that the President of Mexico announced plans to meet with representatives of Cyrus and Contrarian in or around October 2025. Compl. ¶ 23. About one month later, the Mexican Supreme Court issued a ruling against Grupo Salinas in its tax dispute. *Id.* ¶ 26. Defendants allege – without supporting factual detail – that a recent judicial election held in Mexico "effectively placed the Mexican Supreme Court (and the majority of Mexican judiciary) under MORENA's control." *Id.* ¶ 29. Defendants also allege that Contrarian's and Cyrus's lobbying "directly or indirectly resulted in the Mexican Supreme Court's November 13" ruling. *Id.* ¶ 35. However, Defendants do not allege any facts showing that the Mexican Supreme Court is anything but an independent judicial body. Nor do Defendants allege any facts showing how Cyrus and Contrarian could have caused the President of Mexico to in turn cause the Mexican Supreme Court to rule against Grupo Salinas in a tax dispute.

Based on these allegations, Defendants assert a count for "negligence" against Cyrus and Contrarian under Mexican law. TVA Compl. ¶¶ 32-37. Although Defendants invoke the Indenture's choice-of-forum and venue clauses to bring claims in this Court, *see id.* ¶¶ 9-10, they do not attempt to square their Mexican-law theory with the Indenture's New York choice-of-law

clause, *see* Dkt. Indenture § 11.7; *see also* Dkt. 126 at 2-5.[4] Defendants also do not explain how their theory that a decision of the Mexican Supreme Court violates Mexican law is compatible with the act of state doctrine. *Cf. Republic of Hungary v. Simon*, 604 U.S. 115, 121 (2025) (the doctrine "precludes the United States courts from deciding the validity of a foreign sovereign's public acts"). In addition, while Defendants accuse Cyrus and Contrarian of acting "recklessly," TVA Compl. ¶ 34, they do not allege what duty of care those entities could have breached by lobbying the Mexican government. Nor do Defendants explain how, consistent with the First Amendment, Cyrus and Contrarian could be held liable for petitioning the Mexican government. *See Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) (describing how, under the "*Noerr-Pennington* doctrine," the First Amendment "protects efforts to influence governmental action through litigation and lobbying" from civil liability); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1364 (5th Cir. 1983) (the *Noerr-Pennington* doctrine protects lobbying foreign governments).

Defendants seek damages of $400 million. TVA Compl. ¶ 5.

## ARGUMENT

### I. THE COURT SHOULD STRIKE DEFENDANTS' THIRD-PARTY COMPLAINT

A defendant may only "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1). Whether to allow impleader is committed to the Court's discretion. *See Cowie v. SodexoMagic LLC*, No. 20 Civ. 3151, 2021 WL 11709765, at *1

[4] Moreover, while Defendants argue that Cyrus and Contrarian consented to this Court's personal jurisdiction and venue "through" the Trustee, TVA Compl. ¶¶ 9-10, they cite no provision of the Indenture, or any other authority, for that claim.

(S.D.N.Y. Feb. 15, 2021). That said, "the party seeking to implead a third-party bears the burden of showing that impleader is appropriate." *839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Tr. Co.*, No. 15 Civ. 4516, 2016 WL 5372804, at *4 (E.D.N.Y. Sept. 26, 2016) (citing *Schoenholtz v. Doniger*, No. 83 Civ. 2740, 1984 WL 374, at *5 (S.D.N.Y. May 4, 1984)).

"Any party" may move to strike a third-party complaint. Fed. R. Civ. P. 14(a)(4). Grounds for striking a third-party complaint include where the third-party plaintiff does not allege that the third-party defendants are liable for the claims he himself faces, *Kraus USA, Inc. v. Magarik*, No. 17 Civ. 6541, 2018 WL 4682016, at *8 (S.D.N.Y. Sept. 28, 2018), or where the third party plaintiff was required to, but did not, seek the court's permission to file third-party claims, *Wilson v. Pasquale's DaMarino's, Inc.*, No. 10 Civ. 2709, 2013 WL 12446760, at *2 (S.D.N.Y. Mar. 22, 2013) (Gardephe, J.). Other factors courts in this District consider are "(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted." *Cowie*, 2021 WL 11709765, at *1.

Under these principles, the Court should strike the third-party complaint for three reasons. *First*, Defendants' complaint is procedurally improper because Defendants did not file either the required motion or pre-motion letter. *Second*, Defendant's third-party complaint does not – and cannot – allege any derivative claim against Cyrus and Contrarian. And, *third*, the discretionary factors also counsel towards striking the complaint.

### A. Defendants' Third-Party Complaint Is Procedurally Improper

Under Rule 14, the "third-party plaintiff ***must***, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. P. 14(a)(1) (emphasis added). Moreover, this Court's Individual Practices require a would-be third-

party plaintiff to seek a pre-motion conference before filing a motion for leave under Rule 14(a)(1). Hon. P. Gardephe Individual Practices § IV(A). Defendants filed their third-party complaint 21 days after their original answer. *See* Dkt. 148, 164.[5] However, Defendants neither filed a motion for leave nor sought a pre-motion conference with this Court.

Where a party "was required to obtain permission before filing a third-party complaint," and "did not do so," "[f]or this reason alone, the Court may strike [it]." *Wilson*, 2013 WL 12446760, at *2 (citing *Austin Snapper Power Equipment*, No. 90 Civ. 320, 1992 WL 28141, at *3 (S.D.N.Y. Feb. 7, 1992)). Likewise, Defendants' failure to seek a pre-motion conference also, by itself, warrants striking the third-party complaint. *Endo Pharms. Inc. v. Amneal Pharms., LLC*, No. 12 Civ. 8060, 2016 WL 1732751, at *9 (S.D.N.Y. Apr. 29, 2016) (striking filing that was made in violation of court's individual practices); *Bletas v. Deluca*, No. 11 Civ. 1777, 2012 WL 251965, at *1 (S.D.N.Y. Jan. 17, 2012) (similar).

Striking Defendants' complaint for failing to seek leave is particularly appropriate given Defendants' knowledge and prior behavior in this case. Defendants could have asserted this theory at the time they filed their original answer, since in that pleading they also (baselessly) accused Cyrus and Contrarian of "conspiring" with the Mexican government. Dkt. 148 at 12. They also twice proposed in 2022 and two months ago that "[n]o additional parties may be joined except with leave of the Court." Dkt. 22 ¶ 3; Dkt. 106-2 ¶ 3. Yet Defendants have offered no excuse for filing third-party claims late, without seeking leave, or even seeking a pre-motion conference. Worse, Defendants' violation of the Court's Individual Practices is part of a larger pattern. This

[5] While Defendants filed an amended answer on the same day as their would-be third party complaint, Dkt. 166, a defendant's ability to file third-party claims as of right expires 14 days after service of the "original answer," Fed. R. Civ. P. 14(a)(1). In any event, Defendants' amended answer makes no substantive changes to their original answer other than amending their caption and introductory statements to note the would-be third-party claims. *See* Dkt. 166.

is the fourth time in the last month that Defendants have violated this Court's rules by making filings without first seeking pre-motion conferences. Dkts. 137, 140, 143 (filing motions for letters rogatory before a pre-motion conference); Dkt. 151 (describing Defendants' violation). And Defendants also repeatedly violated the Court's anti-suit injunction, requiring the Trustee to twice seek leave to file a motion holding Defendants in contempt. Dkt. 111, 125. Defendants' repeated failure to comply with the Court's rules and orders is more reason not to excuse their latest violation.

**B. Defendants' Third-Party Complaint Offers No Grounds for Impleader**

Even if Defendants had complied with the Federal Rules and this Court's practices, impleader would still be improper. An "impleader action must be dependent on, or derivative of, the main or third-party claim." *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000) (collecting cases). "[A] third-party claim is not permissible simply because it arises out of the same nucleus of facts as the main claim." *Tatintsian v. Vorotyntsev*, No. 16 Civ. 7203, 2018 WL 3130599, at *3 (S.D.N.Y. June 25, 2018) (quoting *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 380 (S.D.N.Y. 2006) (citation and internal punctuation omitted). Rather, the third party "must necessarily be liable over to the defendant" for all or part of the plaintiff's recovery. *Bank of India*, 239 F.3d at 438; *see also* C. Wright & A. Miller, 6 Fed. Prac. & Proc. Civ. § 1446 (3d ed.) ("Wright & Miller") (similar). Thus, if a third-party claim "is separate or independent from the main action, impleader will be denied." Wright & Miller § 1446; *see Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 23-947, 2024 WL 2720235, at *3 (2d Cir. May 28, 2024) (affirming dismissal of third-party claim that was not derivative of main claim); *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984) (same); *see also Kraus USA*, 2018 WL 4682016, at *8 (similar).

Defendants do not allege that Cyrus and Contrarian are responsible for the debt the Defendants owe on the Note. They could not do so. Cyrus or Contrarian are not registered Holders of the Notes under the Indenture. Instead, Cyrus's and Contrarian's funds are beneficial owners of the Global Note that are indirectly owed a portion of the money that Defendants have failed to pay. There is no logical way that Cyrus and Contrarian could be derivatively liable for Defendants' debt on the Note.[6] Nor does Defendants' third-party complaint explain how the tax liabilities of Grupo Salinas companies such as Grupo Elektra – which are not even parties in this case – is remotely related to the Notes. At worst, the only apparent connection is that the Trustee has brought an action that, if successful, would provide a recovery to beneficial owners of the Global Note, a minority of which allegedly "conspired" against Defendants in ways that have nothing to do with the Indenture. But that tenuous factual overlap is not enough to justify a third-party claim; derivative liability to the third-party plaintiff is required. *Tatintsian*, 2018 WL 3130599, at *3; *Fed. Ins. Co.*, 422 F. Supp. 2d at 380. Because Defendants' third-party claims are independent of the Trustee's claims on the Notes, impleader is not appropriate. *Now-Casting Econ., Ltd.*, 2024 WL 2720235, at *3; *Kenneth Leventhal & Co.*, 736 F.2d at 31; *Kraus USA*, 2018 WL 4682016, at *8; Wright & Miller § 1446.

Rule 14's purposes underscore why striking the complaint is warranted here. The rule is designed to "avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant." *Dery v. Wyer*, 265 F.2d 804,

---

[6] In particular, given that funds associated with Cyrus and Contrarian have beneficial rights in only a minority of the Note, Defendants do not explain how those advisers could be liable for the Notes' full amount.

806-07 (2d Cir. 1959) (quotation omitted). For that reason, the "traditional grounds for a third-party action are indemnification, contribution, or subrogation." *iBasis Glob., Inc. v. Diamond Phone Card, Inc.*, 278 F.R.D. 70, 74 (E.D.N.Y. 2011) (collecting cases). But nothing about Defendants' third-party claims would prevent duplicate litigation about the Trustee's claims on the Notes. Instead, Defendants seek to turn a simple debt-collection claim into a cross-jurisdictional free-for-all about Mexican domestic politics and the legitimacy of the Mexican judicial system. There is little or no conceivable overlap in evidence between that would-be case and the proof of the Trustee's claims. Efficiency counsels heavily towards striking Defendants' claim, not toward making this case far more complex than it was before.

**C. The Discretionary Factors Also Weigh Against Impleader**

While Defendants' procedural violations and lack of derivative claims are reason enough to strike the complaint, the discretionary factors considered by courts in this District point towards the same result. *See Cowie*, 2021 WL 11709765, at *1.

*First*, permitting Defendants' third-party complaint to proceed would unduly delay judgment to the Trustee's prejudice. *See Cowie*, 2021 WL 11709765, at *1 (courts should consider "(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial"). As described above, Defendants could have, but did not, raise their claims earlier. *See* p. 2, *supra*. Moreover, Defendants raised this theory shortly before a scheduling conference in which the Trustee has asked for expedited discovery and early summary judgment. *See* Dkt. 135. Yet Defendants will almost certainly seek broad-ranging fact and expert discovery into Mexican domestic politics and the judiciary to support their claim that Cyrus and Contrarian somehow controlled two branches of the Mexican

government.[7] Adding such a complex and politically-fraught cross-border negligence claim would be sure to delay the resolution of this case.

For similar reasons, impleader should be denied because of the prejudice to the Trustee, and the beneficial holders. *Cowie*, 2021 WL 11709765, at *1 (courts should consider prejudice to the parties in permitting impleader). Permitting Defendants' new claims – and the discovery that it could entail – would prejudice the Trustee by needlessly prolonging a simple action on a promissory note that has been pending for more than three years. *Red Rock Sourcing, LLC v. JGX, LLC*, No. 21 Civ. 1054, 2025 WL 524024, at *8 (S.D.N.Y. Feb. 18, 2025) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)) ("significantly delay[ing] the resolution of the dispute" is prejudice weighing against impleader). Likewise, all beneficial owners of the Global Note – not just the minority of interests represented by the Cyrus and Contrarian funds – would be prejudiced by delaying judgment until separate and far more factually complex claims under a different sovereign's law are decided. There is no reason for that outcome when Defendants do not even contest the Notes' validity or their failure to pay their obligations under the Notes.

Finally, the merits of Defendants' claims weigh against impleader. *See Cowie*, 2021 WL 11709765, at *1 (considering "whether the proposed third-party complaint states a claim upon which relief can be granted"). The Court need not and should not reach the merits of Defendants' complaint, given the many other grounds for striking it and the fact that Contrarian and Cyrus have not yet had an opportunity to appear and make their own arguments. Moreover, Defendants' complaint raises extraordinary threshold issues that the Court should not address without good reason. There is no need, for example, to wade into whether the act of state doctrine permits claims

[7] For that reason, the Trustee has filed a motion with Magistrate Judge Moses to stay discovery on Defendants' third-party claims pending the disposition of this motion to strike.

that the official acts of the President of Mexico and the Mexican Supreme Court are tortious under Mexican law. *See Simon*, 604 U.S. at 121. Nor is there any need to address whether, consistent with the First Amendment, Contrarian and Cyrus could be held liable for alleged lobbying in Mexico. *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x at 77; *Hunt*, 694 F.2d at 1364. And even if Defendants could surmount those issues, their Mexican-law claim cannot survive if, as the Trustee has argued, the Indenture is governed by New York law. Dkt. 126 at 2-5. Despite Defendants' repeated efforts, there is no need to make this simple promissory-note action as complex as they insist. The Court should therefore strike the third-party complaint.

## II. IN THE ALTERNATIVE, THE COURT SHOULD SEVER THE THIRD-PARTY COMPLAINT

In the alternative, if the Court does not strike Defendants' third-party complaint altogether, it should sever that complaint and have it proceed as a separate action. *See* Fed. R. Civ. P. 14(a)(4) ("[a]ny party" may move to "sever" a third-party claim). Whether to sever claims, including third-party claims, is in the Court's discretion. *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12 Civ. 5078, 2014 WL 123488, at *20-21 (E.D.N.Y. Jan. 10, 2014) (citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988)). In exercising that discretion, courts in this Circuit consider "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Art Crating, Inc.*, 2014 WL 123488, at *20-21.

Those factors support severance here. The Trustee's claims against Defendants are not related in any meaningful sense to Defendants' claims against Cyrus and Contrarian. *See* pp. 8-10, *supra*. There are no questions of law or fact in common between the simple – and undisputed – issue of TV Azteca's failure to pay the Notes and Defendants' theory that Cyrus and Contrarian

"conspired" with the Mexican government. Nor would judicial economy be served by turning a simple contract case into a wide-ranging cross-border political dispute. Different witnesses and proof will obviously be required for those two claims. And for the reasons given above, the Trustee and beneficial holders will all be prejudiced. *See* pp. 10-11, *supra*. Thus, if the Court does not strike the third-party complaint altogether – and it should – it should at a minimum sever Defendants' claims so that they can proceed (if at all) on a separate track.

**CONCLUSION**

The Court should strike, or in the alternative, sever Defendants' third-party complaint.

Dated: December 30, 2025
New York, New York

Respectfully submitted,

*/s/ Justin M. Ellis*

Justin M. Ellis
Mason E. Reynolds
Eric Rolston
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
Tel.: (212) 607-8160
jellis@mololamken.com

*Counsel for the Bank of New York Mellon, as Trustee*