UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE TV AZTECA, S.A.B. DE C.V. 8.25% SENIOR NOTES DUE 2024,<br><br>    Plaintiff,<br><br>v.<br><br>TV AZTECA, S.A.B. DE C.V. ET AL.,<br><br>    Defendants. | Case No. 1:22-cv-08164-PGG<br><br>Hon. Paul G. Gardephe |
| TV AZTECA, S.A.B. DE C.V., ET AL.<br><br>    Defendants and<br>    Third-Party Plaintiffs,<br><br>v.<br><br>CYRUS CAPITAL PARTNERS, L.P. AND CONTRARIAN CAPITAL MANAGEMENT, LLC<br><br>    Third-Party Defendants. | |

**DEFENDANTS/THIRD-PARTY PLAINTIFFS' REPLY IN SUPPORT OF MOTION
<u>FOR LEAVE TO FILE THIRD-PARTY COMPLAINT</u>**

Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9200
Fax: (212) 801-6400

Defendants/Third-Party Plaintiffs TV Azteca, S.A.B. de C.V. and certain affiliates (collectively, "Defendants" or "TV Azteca"), by and through their undersigned counsel, hereby submit this Reply in further support of their Motion for Leave to File a Third-Party Complaint.

## PRELIMINARY STATEMENT

TV Azteca's Third-Party Complaint asserts a single negligence claim against Cyrus Capital Partners, L.P. ("Cyrus") and Contrarian Capital Management, LLC ("Contrarian") based on conduct that directly exacerbated the alleged harms at issue and that will be central to fact discovery irrespective of impleader. Plaintiff's objections—that the claim exceeds Rule 14's scope, creates prejudice, and lacks merit—misapply Rule 14's liberal standard, overlook Cyrus and Contrarian's central involvement in this dispute, and mischaracterize Defendants' well-founded claims against them. Even worse, Plaintiff ignores the substantial overlap between its claim and the claim Defendants assert in the Third-Party Complaint. Specifically, Cyrus and Contrarian are not strangers; they are the largest Holders of the Notes and directed Plaintiff to bring this suit. They are also the same parties that tried—and failed—to force Defendants into involuntary bankruptcy, causing delay in this proceeding.

For these reasons, and as set forth more fully below, TV Azteca's Motion for Leave to File a Third-Party Complaint should be granted, and the third-party claims should proceed in this action. No argument is made that the third-party claim is not legally viable or fails to state a claim.

## ARGUMENT

### I. THE THIRD-PARTY CLAIM FALLS WITHIN RULE 14'S LIBERAL SCOPE

Defendants' Opening Brief explained that the third-party claim is derivative of the one at bar because Cyrus and Contrarian's tampering directly exacerbated the injury at issue by impairing Defendants' ability to satisfy their obligations. ECF No. 202 at 12–13. The third-party claim alleges that Cyrus and Contrarian's negligent conduct directly exacerbated the injury at issue by

1

impairing Defendants' ability to satisfy those obligations through the imposition of hundreds of millions of dollars in tax liability on Defendants. *See* ECF No. 164 ¶¶ 33–34. Permitting impleader under these circumstances will thus "promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." *Hines v. Citibank, N.A.*, 1999 WL 440616, at *2, 1999 U.S. Dist. LEXIS 9671 (S.D.N.Y. June 28, 1999); *accord Graham-Johnson v. City of Albany*, 2021 WL 1614763, at *8 (N.D.N.Y. Apr. 26, 2021) (observing that impleader is appropriate wherever it "will promote judicial economy and eliminate the need for separate actions.").

In Plaintiff's view, notwithstanding the common nucleus of actors and Cyrus and Contrarian's central role in this case, Defendants' prospective third-party claim is too attenuated from the facts at bar to qualify as derivative, would "remove all meaningful limits on third-party claims" and a defendant "could turn any lawsuit it faces into a pseudo-bankruptcy accounting of what other debts the defendant might be owed." ECF No. 206 at 3. But Plaintiff's hypothetical is not tied to the facts and circumstances here. It merely speculates about future discovery, which can be handled in the normal course of discovery.

The proposed third-party negligence claim arises directly from Plaintiff's efforts to collect on the debt at issue: the same Noteholders who directed Plaintiff's conduct in this action are the Noteholders who allegedly and recklessly lobbied the Mexican government to harm TV Azteca based on the alleged nonpayment of the Notes. The Third-Party Defendants are therefore not "some nonparty," but the very parties who instructed Plaintiff to sue Defendants in the first place. There is nothing "tangential" about the third-party claim in this case.

Additionally, the proposed third-party claim will not cause undue delay or prejudice. Plaintiff filed this action in 2022 and then prolonged its resolution—first by waiting until 2025 to file a complaint, and further through the Noteholders' direction of Plaintiff's litigation strategy, including the filing of involuntary bankruptcy proceedings, that added additional delay.

Nor is it credible to suggest the Third-Party Defendants are being brought in late or without notice. As the Noteholders directing Plaintiff's conduct in this litigation, they have been aware of the case from the outset. Indeed, they acquired the Notes with the express purpose of initiating litigation to attempt to gain control of TV Azteca. As reflected in filings in the ICSID arbitration the Third-Party Defendants brought against Mexico—seeking the same relief they pursue here— they "intended to obtain equity in TV Azteca and its subsidiaries and, in 2022, take over the company" and "facilitate TV Azteca's involuntary bankruptcy filing in U.S. courts." ECF No. 129-6 ¶ 18 ("among the issues discussed were how they could receive more than 49% of the equity in TV Azteca and what would happen to the television broadcasting concessions if the insolvency proceeding were to take place in Mexico"). Indeed, an agenda from February 25, 2022 for a meeting called "Cyrus/Contrarian Meeting Agenda - TV Azteca," included as an item to be discussed "how/should we make public bid to acquire TV Azteca?" *Id*. Other topics of discussion included bringing the ICSID arbitration. *Id*.

These facts also undermine Plaintiff's argument that Cyrus and Contrarian did not exacerbate Defendants' harms because, according to Plaintiff, Defendants allegedly failed to take steps to "pay the Notes from 2021 to 2025, let alone take every action within their powers" to do so. ECF No. 206 at 4. Plaintiff's argument is illogical. Any alleged lack of payment by Defendants from 2021 to 2025 does not preclude a claim that Cyrus and Contrarian exacerbated Plaintiff's damages. Further, the Third-Party Defendants' main goal was not repayment of the Notes, but

3

rather control of TV Azteca. This is why Cyrus and Contrarian bought the notes in the first place (see ECF No. 129-6 ¶ 18) and initiated involuntary bankruptcy proceedings, adding to delay in this case. *See In re Genger*, 2025 WL 1222580, at *4 (S.D.N.Y. Apr. 24, 2025) (the automatic-stay provision of the Bankruptcy Code, 11 U.S.C. § 362, "operates to prevent certain creditors from pursuing their own remedies against the debtor's property") (*quoting In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017) (citation omitted)). Further, that Cyrus and Contrarian harmed Defendants through reckless actions in 2024 and 2025 makes them no less culpable for the resulting damage. Thus, to the extent Plaintiff complains about delay, it was a self-inflicted wound. And it further highlights the overlapping parties, issues, and factual predicate at the heart of this dispute—confirming that impleader is appropriate.

## II.   EACH RULE 14 FACTOR FAVORS IMPLEADER

Impleader should be "freely granted" where, as here, the movant neither deliberately delayed nor was derelict in seeking impleader and impleader would not prejudice any party or unduly complicate the action. *See* ECF No. 202 at 2–9.

### A.   TV Azteca Was Not "Deliberate" or "Derelict"

Highlighting this case's procedural history and relying upon this Court's precedent, Defendants' Opening Brief explained why TV Azteca was neither deliberate nor derelict in filing its proposed Third-Party Complaint. ECF No. 202 at 3–6. For its part, Plaintiff fails to dispute the point, effectively conceding it. *See Bigsby v. Barclays Capital Real Estate, Inc.*, 298 F. Supp. 3d 708, 727 (S.D.N.Y. 2018) ("the plaintiffs failed to respond to Barclay's arguments, and therefore forfeited these claims"); *Brandon v. City of NY*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (holding that plaintiff abandoned a claim where his opposition brief did not address the defendants' arguments); *see also Johnson v. City of NY*, No. 15-cv-8195, 2017 WL 2312924, at *17 (S.D.N.Y. May 26, 2017) (collecting cases). This factor thus supports impleader.

4

### B.  Impleader Does Not Risk Prejudice or Delay to Plaintiff but is Essential to Protecting Defendants from Prejudice

For the most part, Plaintiff's response equates delay with prejudice. *See* ECF No. 206 at 4–6. For many of the same reasons that impleader does not threaten prejudice, it also does not risk undue delay.

Defendants' Opening Brief explained that impleading Cyrus and Contrarian—the largest holders of the Notes at issue and the parties who directed Plaintiff to bring this action—will promote efficiency in multiple respects. Among other reasons to doubt the purported delays that Plaintiff envisions, Cyrus and Contrarian are inextricably entwined with these proceedings and will play a pivotal role in at least one of TV Azteca's affirmative defenses (which Plaintiff declined to strike). *See* ECF No. 202 at 6–7; *see also* Section I, *supra*. And, of course, Cyrus and Contrarian have already been served with third-party subpoenas and have already responded to that discovery. *See* ECF No. 202 at 6.

In response, Plaintiff points to its own ongoing discovery burdens—all of which are contemplated by and consistent with this Court's own procedures—to claim prejudice. *See* ECF No. 206 at 5 (deriding Defendants' "scorched-earth discovery campaign" and the prospect of "cross-border discovery"); *id*. ("Defendants have served 23 document requests on the Trustee").[1] That ignores (1) that no trial has been scheduled; (2) discovery has just begun; and (3) Cyrus and Contrarian have already been subpoenaed. *See* ECF No. 202 at 7 (citing *Olshan Frome Wolosky LLP v. Comm. to Restore Nymox S'holder Value Inc.*, 2025 U.S. Dist. LEXIS 52885, at *23–25

---

[1] Plaintiff claims that Defendants are engaged in a "scorched-earth discovery campaign," including issuing 100 subpoenas. While not at issue here, it has been necessary for Defendants to identify Holders of the Notes in this fashion because Plaintiff was unable to provide this basic information, even though the Indenture requires them to maintain it. Additionally, Defendants service of 23 narrow document requests on Plaintiff in a case in which Plaintiff seeks over $600 million is hardly excessive.

5

(S.D.N.Y. Mar. 21, 2025), *In re Lifetrade Litig.*, 2022 U.S. Dist. LEXIS 212022, at *13–16 (S.D.N.Y. Nov. 21, 2022), *Aarne v. Long Island R.R. Co.*, 2020 U.S. Dist. LEXIS 239797, at *2 (S.D.N.Y. Dec. 19, 2020)). Any impact of adding these already-involved central actors is marginal, especially compared to the benefits of consolidation. *See id.* It also ignores Plaintiff's own proclamation, elsewhere, that a merits ruling in Plaintiff's favor would "leave little or no discovery required to resolve this simple action." ECF No. 206 at 7. So, either discovery is an insurmountable burden or else "little or no merits discovery is necessary" to resolve this "simple action." *See id*. It cannot be both.

Plaintiff is also wrong to highlight "the prejudice to the Trustee from further delaying a recovery effort and litigation that has been going on for nearly four years." ECF No. 206 at 5. That turns a blind eye to the Plaintiff's and the Third-Party Defendants' role in these protracted proceedings. It was Cyrus and Contrarian, after all, that stalled this litigation by refusing to file a complaint in the action until 2025 and also pursuing their failed involuntary bankruptcy petition. True enough, "the Trustee has the undisputed power to sue in its own name regardless of a direction." ECF No. 206 at 5. The suit at bar, though, was not simply of Plaintiff's own volition. Rather, Cyrus and Contrarian directed Plaintiff to bring the suit (*see* ECF No. 28-3 (referencing Cyrus and Contrarian as Holders seeking to accelerate the Notes)), yet they then delayed the matter through their own litigation strategy.[2]

---

[2] Plaintiff again insists that Cyrus and Contrarian are not "Holders" of the Notes and thus not proper Third-Party Defendants. That argument is based on Plaintiff's specious interpretation of the Indenture, under which there are no Noteholders (despite that the Indenture repeatedly uses the terms Holders and Noteholders) but merely just beneficial interest owners of a single Global Note. While Cyrus and Contrarian argue they only have "beneficial rights" a "minority" of the Note, that ignores their role in directing the Plaintiff to file this litigation. Plaintiff's argument is also belied by the ICSID litigation, in which referred to themselves as noteholders in the ICSID litigation, directly contradicting their position in this case. *See, e.g.*, ECF No. 129-5 ¶ 3 (referring to "[t]he Claimants in this action – along with the other TV Azteca noteholders"). It is further undermined

6

Finally, Plaintiff ignores the benefits that impleader will offer by proclaiming that "Defendants do not claim any prejudice from being required to bring their claims as a separate action in the District." This is not true. Defendants argued that because of the overlap between the main case and third-party claim that "it would be most efficient to adjudicate both here—particularly given that it should result in little to no delay in discovery" and that it would promote judicial economy. ECF No. 202 at 12. Defendants also argued—in connection with Plaintiff's motion to strike the Third-Party Complaint—that Defendants would be prejudiced by "forcing them to litigate closely related claims in multiple forums and the witnesses and documentary evidence will substantially overlap." ECF No. 205 at 9; *see also* ECF No. 202 at 7–8; *id*. at 2 (noting the Second Circuit favors impleader to avoid inconsistent results "from identical or similar evidence" and "the serious handicap to a defendant of a time difference between a judgment against him and a judgment [in] his favor against the third-party defendant"). Impleader rules acknowledge inherently "the benefits of consolidation"; the device exists to "eliminate the need for separate actions." *See LNC Inv. Inc. v. First Fidelity Bank,* 935 F. Supp. 1333, 1337 (S.D.N.Y. 1996); *Graham-Johnson v. City of Albany*, 2021 WL 1614763, at *8 (N.D.N.Y. Apr. 26, 2021). In this respect, the question is not whether TV Azteca will be prejudiced by bringing a separate action (it will), but rather, whether good cause exists to force a separate action despite the benefits of consolidation (it does not). *See Hicks v. Long Island R.R.*, 165 F.R.D. 377, 379 (S.D.N.Y. 1996) (noting "the benefits of more efficient litigation to be gained by permitting impleader"). Here, impleader is warranted.

---

by Plaintiff's Notice of Acceleration, in which Plaintiff referred to Cyrus, Contrarian, and others as "undersigned Holders." *See* ECF No. 48-3. If there was only one Holder of a Global Note, the Notice of Acceleration would make no sense. *Id*.

### III. THE PROPOSED CLAIM EASILY ECLIPSES THE RULE'S "OBVIOUSLY UNMERITORIOUS" STANDARD

At this preliminary stage, Rule 14's third and final factor asks only whether a proposed claim is "obviously unmeritorious." Defendants' third-party claim eclipses this standard easily.

Accepted as true, as they must be, Defendants' allegations that Contrarian and Cyrus acted recklessly by tampering with judicial proceedings in a highly polarized and volatile political environment, in which President Sheinbaum treats all companies perceived to be associated with Grupo Salinas as public enemies (ECF No. 164 at ¶¶ 32–37) state a claim under the Mexican Civil Code. *See* ECF 202 at 9.[3] For its part, Plaintiff does not even attempt to suggest otherwise. Nor could it. *See id.* at 9–11 (establishing Defendants' prospective third-party claims as actionable "noncontractual civil wrongs" constituting "illicit acts" under the Mexican Civil Code); *id*. at 10-11. Simply, Defendants' claim against Contrarian and Cyrus is actionable, easily eclipsing the "obviously unmeritorious" standard that binds this Court.

Plaintiff obscures the point by invoking the "First Amendment" (at 7) and "act of state doctrine" (at 6–7). But that fumbles two essential points. *First*, it ignores that New York choice-of-laws rules compel this Court to apply Mexican law—not domestic law—to Defendants' third-party claim. *See Curley*, 153 F.3d at 14–15; *Desarrolladora Farallon v. Cargill*, 666 Fed. App'x 16 (2d Cir. 2016). And in Mexico tampering with the judicial process amounts to an actionable tort. *See* ECF No. 202 at 11–12.

*Second*, it misconstrues the procedural posture of this motion. Defendants are not asking the Court to reverse or invalidate a "decision of the Mexican Supreme Court" or say that it "is wrong as a matter of Mexican law." ECF No. 206 at 6. Rather, Defendants challenge the actionable

---

[3] Plaintiff's Response Brief fails to dispute this, conceding the point. *See Bigsby*, 298 F. Supp. 3d at 727; *Brandon*, 705 F. Supp. 2d at 268; *see also Johnson*, 2017 WL 2312924, at *17.

8

tortious interference that led to that prejudicial result. That actionable tampering by foreign private parties is neither protected by the United States Constitution nor subject to the act of state doctrine. *See Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020) ("foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution"); *Saleh v. U.S. Dep't of Justice*, 962 F.2d 234, 239 (2d Cir. 1992) (similar for First Amendment); *see also Biggio v. Coca Cola Co.*, 239 F.3d 440, 451 (2d Cir. 2000) (the act of state doctrine merely "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed" abroad); *id*. at 453 (the party invoking the doctrine bears the burden of establishing its applicability).

Plaintiff's only other argument, presented in a footnote, questions the causal link between the Third-Party Defendants' tampering and the Defendants' damages. *See* ECF No. 206 at 7 n.6. That undeveloped point overstates the "obviously unmeritorious" standard and misreads the Third-Party Complaint. *See Wandering Inc. v. NY State*, 992 F. Supp. 2d 102, 134 (N.D.N.Y. 2014) ("Federal courts routinely decline to consider issues raised only in a footnote and in a perfunctory manner") (collecting cases); *Wilson v. N.Y.C. Police Dept.,* No. 09 Civ. 2632, 2011 WL 1215031, *12 (S.D.N.Y. Feb. 4, 2011) (declining to consider argument raised in a footnote). Besides, as this Court's precedent makes plain, the "obviously unmeritorious" bar is a low one. *See, e.g., Too, Inc. v. Kohl's Dept. Stores, Inc.*, 213 F.R.D. 138, 142 (S.D.N.Y. 2003) (permitting impleader even where the court questioned whether the alleged conduct was "too speculative or attenuated to entitle" the impleader to damages and notwithstanding "contradictions in the record concerning the nature of the proposed third party-defendants' actions"); *see also* ECF No. 202 at 6 (collecting cases applying this "liberal" standard). Here, too, the law and facts support impleader.

9

Lastly, Plaintiff argues in its Reply in Support of Its Motion to Strike Defendants' Third-Party Complaint that a recent tax "settlement" undermines the Third-Party Complaint. ECF No. 212. Not so. Plaintiff misconstrues the payment as a "settlement"—nowhere in the relevant press release is the payment called a "settlement." ECF No. 212-4. Indeed, the press release states that "we strongly disagree" but "we now have to pay even more . . . not because we are convinced or think it is fair, but because we want to stop this systematic campaign against us and move on." *Id*. This supports Defendants' third-party claim that Cyrus and Contrarian acted recklessly and demonstrates that their actions exacerbated the alleged damages in this case.

## CONCLUSION

For the foregoing reasons, the Court should grant leave to file the Third-Party Complaint and permit the claims to proceed in this action.

Dated: February 5, 2026
      New York, New York

**GREENBERG TRAURIG, LLP**

By:

*/s/ Hal S. Shaftel*
Hal S. Shaftel
Daniel Pulecio-Boek
John C. Molluzzo Jr.
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
shaftelh@gtlaw.com
pulecioboekd@gtlaw.com
molluzzoj@gtlaw.com

*Counsel for Defendants/Third-Party Plaintiffs TV Azteca, S.A.B. de C.V., et al.*

10

## CERTIFICATE OF COMPLIANCE

      Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit because it contains 3,136 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document.

Dated: New York, New York
           February 5, 2026

                                                        */s/ Hal S. Shaftel*
                                                             Hal S. Shaftel