

Hal S. Shaftel
212.801.9200
shaftelh@gtlaw.com

February 27, 2026

**VIA ECF**

Hon. Paul Gardephe
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      Re:    *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.*, 22-cv-8164

Dear Judge Gardephe:

      Pursuant to the Court's February 25, 2026 Order, we write on behalf of Defendants in response to Plaintiff's letter requesting a pre-motion conference to seek leave to make an early summary judgment motion. ECF No. 223. For at least the following reasons, Plaintiff's request should be denied.

      **A. Plaintiff's Spurious Allegations About Discovery Provide No Basis for Prematurely Moving for Summary Judgment to Avoid Discovery**

      Plaintiff irresponsibly accuses Defendants of engaging in "abusive" discovery, which is baseless posturing. As a starting matter, Plaintiff has pursued discovery on the same topics. Indeed, Plaintiff has served *more* document requests than Defendants (24 by Plaintiff, 23 by Defendants), and the same number of interrogatories. Yet, over the past two months, Plaintiff has ***not produced a single document***, forcing Defendants to move to compel. ECF No. 204. That is where the discovery abuse lies. Plaintiff has also issued four third-party subpoenas, each containing six requests for documents. Be that as it may, however, discovery matters are properly addressed by discovery motion practice. Disputes about discovery are no reason for premature summary judgment practice as a means to sidestep appropriate, indeed, essential discovery. At most, it will only result in unnecessary delay and expense insofar as the motion practice is premature under Fed. R. Civ. P. 56(d), even though Plaintiff pays lip service to wanting to expedite (albeit on its own self-serving terms).

      Defendants are entitled to pursue third-party discovery. They must develop evidence to show how many Noteholders are U.S. persons (who are forbidden from holding and enforcing the Notes) and how many seek disproportionate returns, which are illegal under Mexican law (which depends, *inter alia*, on the purchase price). This must come from third parties because Plaintiff does not have basic information key to the case, even though of course Defendants would have preferred the ease of obtaining it from Plaintiff. Defendants' third-party discovery is neatly tailored and the Court has recognized it is appropriate. *See* ECF No. 203-1 at 46:13-18 ("I tend to agree with the defendants . . . that discovery into the citizenship and the purchase price issues should be permitted if not unduly burdensome"); ECF No. 179.

Hon. Paul Gardephe
February 27, 2026
Page 2

First, the Court overruled Plaintiff's objections and approved two letters rogatory to European clearing houses likely to keep records of Noteholders and purchases. ECF No. 179. Both letters are being submitted to the respective central authorities.

Second, Defendants sought discovery from the four members of the Ad-Hoc Group, also represented by Plaintiff's counsel. The Ad-Hoc Group has produced minimal discovery (fewer than 200 documents), forcing Defendants to move to compel. ECF No. 204. Neither Plaintiff nor the Ad-Hoc Group sought protection or relief regarding Defendants' discovery requests.

Third, Defendants served a subpoena on the Ad-Hoc Group's financial advisor, which refused to produce anything. Again, Defendants had to move to compel. ECF No. 214. Neither Plaintiff nor the advisor sought protection or relief regarding Defendants' discovery requests.

Lastly, Defendants have served subpoenas on the U.S.-based parties that appear to hold Notes. Defendants were unaware of any Holders beyond the Ad-Hoc Group and, based on the Indenture, Plaintiff was supposed to keep a registry of the same (i.e., a list of Noteholders). Plaintiff now concedes it has not maintained the registry and has been sending piecemeal information identifying names of possible Noteholders. As Defendants have received names from Plaintiff, Defendants have issued a subpoena to each Holder. To date, Defendants have issued 30 such subpoenas. Many of the addresses provided by Plaintiff are wrong, and the subpoenas have not been served. For those that have been served, Defendants have only obtained documents from one party that already sold its Notes. Each of the subpoenas that have been served is narrow in scope and tailored to Defendants' defenses. Neither Plaintiff nor any of the discovery targets have sought Court protection or sought any other relief in connection with these subpoenas.

Thus, Plaintiff's "more than 100 subpoenas" rhetoric is brazenly misleading. The discovery requests to each of the four members of the Ad-Hoc Group entailed numerous subpoenas because each member holds the Notes through numerous funds and accounts. Thus, Defendants issued a subpoena to each of those funds and accounts (40 entities). Practically, however, the recipients of the discovery were *only* the four members of the Ad-Hoc Group. Indeed, Defendants received only *four* responses and objections (one for each member of the Ad-Hoc Group), not one response and objection for each fund and account. To argue that Defendants have "abused" discovery by serving "more than 100 subpoenas" is deceptive.

In short, Defendants' discovery is targeted, appropriate, and necessary, and provides no basis for Plaintiff to end-run discovery with an early summary judgment motion.

### B. Summary Judgment Now Would Be Premature and Inefficient

Courts "routinely deny summary judgment motions as premature when, as here, discovery over relevant matters is incomplete." *See Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016) (citing *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir. 1992)). Summary judgment should only be granted if "after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the

Hon. Paul Gardephe
February 27, 2026
Page 3

burden of proof." *Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks omitted) (grant of summary judgment was premature). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Id.* Further, as this Court recognized, the burden on Plaintiff is "greater in cases where discovery is incomplete." *See Indergit v. Rite Aid Corp.*, 2010 WL 1327242, at *3 (S.D.N.Y. Mar. 31, 2010) (Gardephe, J.) (denying summary judgment where discovery was incomplete).

Here, fact discovery is undeniably incomplete. Magistrate Judge Moses set fact discovery to close on May 4, 2026. ECF No. 177. Several pre-motion letters seeking to compel are pending and will be heard on March 16. *See* ECF Nos. 204, 214, 215, 218. Letters rogatory remain pending. No depositions have occurred. Expert discovery has not begun. On this record—early in discovery, with Plaintiff having produced no documents—"material issues of fact remain" and "the Court does not have an adequate factual record before it to determine" Plaintiff's proposed summary judgment motion. *Indergit*, 2010 WL 1327242, at *2.

Allowing an early, partial summary judgment motion also creates precisely the inefficiency this Court has rejected: piecemeal, successive summary judgment briefing. *Robinson v. Henschel*, 2014 WL 1257287, at *8 (S.D.N.Y. Mar. 26, 2014) (Gardephe, J.) (denying successive summary judgment as improper). As this Court noted, it does not "approve in general of the piecemeal consideration of successive motions for summary judgment because parties ought to be 'held to the requirement that they present their strongest case for summary judgment when the matter is first raised.'" *Id.* (citing *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (quoting *Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961)) (alteration in original)). Indeed, where such information is available, Defendants are not allowed "a second bite at the apple." *Henschel*, 2014 WL 1257287, at *8-9.

For these reasons, the Court should deny Plaintiff's premature request to move for summary judgment. In the event Plaintiff is allowed to seek summary judgment at this stage (it decidedly should not be), Plaintiff should not be allowed to take multiple bites at the apple through seriatim motion practice at any later date.

### C. Discovery Is Necessary on Defendants' Viable Defenses

Plaintiff asserts that Defendants' defenses "can be resolved as a matter of law." Not so. Defendants have already described their defenses at length and explained why discovery is necessary.[1] At minimum, genuine disputes of material fact exist as to central issues, including:

---

[1] Defendants do not concede that any of their affirmative defenses can be resolved at this stage.

### 1. Restriction on U.S. Noteholders and Identities of Noteholders

The restriction on U.S. persons from being Holders[2] of the Notes is explicit in the operative documents. Plaintiff simply misreads it. The Offering Circular states the Notes are available only to non-U.S. persons. *See* ECF No. 129-1 (Offering Circular Legend, "Not for distribution to any U.S. Person. This offering is available only to Non-U.S. Persons…") (all caps removed); ECF No. 129-3 (Global Note Legend, "Note . . . may not be offered, sold, pledged, or otherwise transferred" unless, among other things, the acquirer "represents that it is not a U.S. person (within the meaning of Regulation S under the Securities Act)[.]"). The Ad-Hoc Group also conceded this fact in a stipulation of facts to the Bankruptcy Court. ECF No. 127-2 ¶ 22.

That dispute requires discovery into the parties' understanding at contract formation[3], Plaintiff's and the Noteholders' compliance with the Notes' limitations, and the identities and nationalities of *all* Noteholders. Because U.S. persons cannot hold the Notes, Plaintiff cannot recover on their behalf. Plaintiff's offer to stipulate as to U.S. nationality relates only to three members of the Ad-Hoc Group (which apparently hold about half of the Notes). That stipulation solves nothing because it leaves out the other half of the Noteholders.

As to Plenisfer, the fourth Ad-Hoc Group member, Plaintiff offers no stipulation and argues that Plenisfer is undeniably not a U.S. person because the fund through which Plenisfer manages the Notes restricts U.S. persons from purchasing interests in the fund (and thus in the Notes). That is the same U.S.-person restriction at issue in Defendants' defenses. If U.S. persons were able to improperly obtain Defendants' Notes, then it is certainly possible that Plenisfer's fund has U.S. persons behind it. Yet, Plenisfer resists providing any discovery.

### 2. Mexican Usury Law and Public Policy

Mexican law applies to Defendants' usury and public-policy defenses—which cannot be waived under Mexican law. Mexican law criminalizes disproportionate returns (measured against prevailing market practices) and deems it contrary to public policy for a secondary creditor to recover more than it paid for the debt. Plaintiff seeks over $600 million for Noteholders who seemingly acquired a substantial amount of the Notes at deep discounts (up to 60%).

---

[2] Plaintiff continues to advance an outlandish interpretation of the Indenture under which there is only one Holder of a Global Note. Not only does the Indenture refer to "Holders" many times, but Plaintiff's Notice of Acceleration destroys that theory, as it identifies Cyrus, Contrarian, and others as "undersigned Holders." *See* ECF No. 48-3. If there were truly only one Holder of a single Global Note, the Notice of Acceleration would be nonsensical. *Id.*

[3] Courts allow discovery where parties dispute the meaning of conflicting contract terms. *See, e.g.*, *Garcia v. Benjamin Group Enterprise Inc.*, 800 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) (as to disputed contract language, court, "allow[ed] some discovery on the issue rather than to preclude the development of this potential claim and/or defense.").

Hon. Paul Gardephe
February 27, 2026
Page 5

Section 3.7 of the Indenture provides:

> The Company and each Subsidiary Guarantor covenants (to the fullest extent permitted by applicable law) that it will not at any time insist upon, or plead, or . . . claim or take the benefit or advantage of . . . any usury law or other law that would prohibit or forgive the Company or such Subsidiary Guarantor from paying all or any portion of the principal of or interest on the Notes . . .

ECF No. 129-4 § 3.7 (emphasis added). Critically, § 3.7 refers to "applicable law"—not New York law—and New York's usury statute is facially inapplicable because it exempts loans over $2.5 million. *See* N.Y. General Oblig. L. § 5-501(b)(6). The "applicable law" therefore logically refers to Mexican law. ECF No. 129-4 § 3.7. And if Plaintiff disputes § 3.7's meaning (or claims some kind of ambiguity), discovery is necessary as to party intent and market practices.

Plaintiff's effort to avoid expert discovery underscores why its request is improper. Defendants have retained a leading Mexican-law expert who will opine on whether the Ad-Hoc Group's discounted purchases violated Mexican law and on the legality of purchases allegedly intended to exert ownership and control over Defendants. *See* ECF No. 129-6 at 3-4 ("[Ad-Hoc Group] intended to obtain equity in TV Azteca and . . . take over the company" and to "facilitate TV Azteca's involuntary bankruptcy filing in U.S. courts"; "[Ad-Hoc Group] clearly intended to take over TV Azteca"). Without discovery, Defendants' expert cannot fully develop his opinion.

Apart from § 3.7, fact issues exist under New York's conflicts framework. New York follows the Restatement (Second) of Conflict of Laws "substantial relationship" framework. *TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp. 3d 275, 281–83 (S.D.N.Y. 2016). Where the most significant contacts are elsewhere, New York law permits courts to "disregard the parties' choice." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). Even where New York has adequate contacts, courts apply another jurisdiction's law if that state has a materially greater interest and applying New York law would be contrary to a fundamental policy of that state. *Hollett*, 224 F. Supp. 3d at 282. Discovery into such contacts is crucial—the center of gravity is Mexico, and New York's contacts are limited. *See* ECF No. 129 at 3-5.

### 3. Impossibility

Defendants assert an impossibility defense arising from the Ad-Hoc Group's conduct, including lobbying in Mexico, which led to an adverse Mexican Supreme Court ruling and the imposition of hundreds of millions of dollars in tax liability that impaired Defendants' ability to perform. *See* ECF No. 164 ¶¶ 33-34. Defendants are entitled to discovery on this defense.

### D. Conclusion

Plaintiff has no basis to misuse summary judgment to short-circuit discovery. The record is not developed, fact issues remain open for discovery, and allowing an early motion would be inefficient. Defendants respectfully request that the Court deny Plaintiff's request.

Hon. Paul Gardephe
February 27, 2026
Page 6

                                                    Respectfully,

                                                    */s/ Hal S. Shaftel*

                                                    Hal S. Shaftel

cc:     Counsel of Record (via ECF)