UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/17/26

THE BANK OF NEW YORK MELLON,

Plaintiff,

-against-

TV AZTECA, S.A.B. DE C.V., et al.,

Defendants.

TV AZTECA, S.A.B. DE C.V., et al.,

Third-Party Plaintiffs,

-against-

CYRUS CAPITAL PARTNERS, L.P. and
CONTRARIAN CAPITAL MGMT, LLC,

Third-Party Defendants.

22-CV-8164 (PGG) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

For the reasons and subject to the conditions set forth below, the Court (i) grants leave for plaintiff The Bank of New York Mellon, in its capacity as indenture trustee for TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024 (the Trustee), to file a summary judgment motion, and (ii) grants the Trustee's request to stay discovery pending the outcome of that motion.

## I.      BACKGROUND

In this action, the Trustee alleges that defendant TV Azteca, S.A.B. de C.V. (TV Azteca) and 34 TV Azteca subsidiary guarantors (the Guarantor Defendants) are in default on TV Azteca's 8.25% Senior Notes Due 2024 (the Notes), in the aggregate face amount of $400 million. *See Bank of N.Y. Mellon v. TV Azteca,* 2025 WL 2710514, at *1 (S.D.N.Y. Sept. 22, 2025). TV Azteca made semi-annual interest payments on the Notes until February 9, 2021, when it publicly announced that it would "defer" the payment due that day. *Id*. at *3. It has made no payments since then.

On August 5, 2022, the Trustee issued a notice of acceleration to TV Azteca, declaring that the entire unpaid principal amount of the debt, together with accrued and unpaid interest, was due

and payable immediately as provided in the August 9, 2017 indenture (Indenture) governing the Notes. *TV Azteca,* 2025 WL 2710514, at *3. On August 26, 2022, the Trustee commenced suit against TV Azteca and the Guarantor Defendants in New York Supreme Court, New York County, by filing a motion for summary judgment in lieu of complaint, as permitted by N.Y.C.P.L.R. (CPLR) § 3213. On September 23, 2022, defendants removed the case to this Court, invoking its diversity jurisdiction. (Dkt. 1.)

Meanwhile, on July 8, 2022, TV Azteca filed a complaint in a Mexican court, arguing that the Trustee's notice of acceleration was "not legally valid." *TV Azteca,* 2025 WL 2710514, at *3. On September 22, 2022, it filed another complaint in a different Mexican court, requesting a decree that, due to "acts of God or force majeure events" related to the Covid pandemic, performance of its payment obligations had become impossible, and thus that it was not in breach of those obligations. *Id.* at *4. Both Mexican courts issued injunctions in favor of TV Azteca. *Id.* at *4-5.

### A.    Proceedings in this Court

On September 30, 2022, defendants moved in this Court to compel the Trustee to file a complaint. (Dkt. 8.) They argued that since the case had been removed to federal court, "the CPLR no longer applies, and the [Trustee's summary judgment] motion must be denied so that the action can proceed in accordance with the Federal Rules of Civil Procedure." (Dkt. 9 at 1.) The Trustee disagreed, arguing that the removal simply transformed its CPLR 3213 motion "into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." (Dkt. 14 at 1.) In the Trustee's view, since all of the relevant facts regarding defendants' nonpayment and resulting liability were undisputed, defendants were simply attempting to delay the inevitable judgment in favor of the Trustee. (*Id.*)

On March 21, 2023, the Trustee filed a Suggestion of Bankruptcy, advising the Court that involuntary petitions for bankruptcy pursuant to chapter 11 of the Bankruptcy Code had been filed

by certain holders of the Notes against the defendants, triggering the automatic stay of this case under 11 U.S.C. § 362. (Dkt. 24.) On November 28, 2023, the parties advised the Court that the involuntary bankruptcy petitions had been dismissed. (Dkt. 30.)

On January 9, 2024, the Trustee sought leave to amend its summary judgment motion to "simplify" the case by removing its claim for a "redemption premium." (Dkt. 32.) Defendants opposed the motion on the ground that the Trustee's summary judgment motion was not a "pleading" and could not be amended pursuant to Fed. R. Civ. P. 15(a). (Dkt. 33.)

On June 14, 2024, the Trustee moved for an order enjoining TV Azteca from "continuing to prosecute, or initiating any claims in, any action in Mexico" in connection with the Indenture. (Dkt. 46.)

The Notes matured on August 9, 2024. Seven months later, on March 14, 2025, the Trustee withdrew its initial request to amend its summary judgment motion and made a new request to amend, this time to reflect the maturity of the Notes "and to omit the now-moot Redemption Premium claim." (Dkt. 70 at 1.) Defendants opposed, again arguing that a CPLR 3213 summary judgment motion is not a "pleading" and cannot be amended. (Dkt. 73.) On March 31, 2025, the Hon. Paul G. Gardephe, United States District Judge, denied the Trustee's second request for leave to amend, explaining that it had not met its burden of demonstrating that "a motion for summary judgment in lieu of complaint should be treated as a pleading" under the Federal Rules of Civil Procedure. (Dkt. 74 at 3.)

Four months after that, on July 11, 2025, the Trustee filed its single-count Complaint (Compl.) (Dkt. 80), asserting that all defendants are in breach of contract because neither TV Azteca nor the Guarantor Defendants have made any payments – of interest or principal – since 2020, and consequently now owe "the entire principal amount of the Global Note, the missed

3

interest payments, and accrued and unpaid interest on the missed principal and interest payments."

Compl. ¶¶ 60-62, 83.[1] That same day, the Trustee requested that its claims in this "straightforward

breach-of-contract action" be "adjudicated on their merits at the earliest possible opportunity."

(Dkt. 81 at 1.)

On September 22, 2025, Judge Gardephe issued the anti-suit injunction sought by the

Trustee, prohibiting TV Azteca and its affiliates from "continuing to prosecute or initiating any

claims related to the Indenture in Mexico." *TV Azteca*, 2025 WL 2710514, at *19.[2] Additionally,

he denied defendants' motion to compel the Trustee to file a complaint as moot. (Dkt. 98.)

On November 4, 2025, Judge Gardephe conducted an initial pretrial conference, after

which he directed the parties to "make submissions addressing in detail (1) their plan for discovery,

and (2) the scope of anticipated discovery." (Dkt. 124.) In their submissions, filed on November

12, 2025, the parties disagreed sharply about these issues. The Trustee took the position that "little

or no discovery is necessary here," as the facts needed to support its breach of contract claim are

undisputed, and the affirmative defenses that defendants planned to raise (discussed below) could

all be resolved as a matter of law. Tr. 11/12/25 Subm. (Dkt. 126) at 1-2. Consequently, the Trustee

sought an abbreviated discovery schedule followed by expedited summary judgment motions. *Id*.

at 2. Defendants, in contrast, argued that they would need extensive party and nonparty fact

discovery (much of it international) concerning their anticipated affirmative defenses, followed by

---

[1] The Trustee explains that TV Azteca issued a Global Note in the face amount of $400 million, pursuant to the underlying Indenture, dated as of August 9, 2017, among TV Azteca, the Guarantor Defendants, the Trustee, and The Bank of New York Mellon, London Branch, as Principal Paying Agent. *See* Compl. ¶ 45; *id*. Ex. A (Dkt. 80-1) (Indenture); *id*. Ex. B (Dkt. 80-2) (Global Note).

[2] After the anti-suit injunction was issued, defendants sought reconsideration and a stay of enforcement (Dkt. 100), which the district judge denied. (Dkt. 158.) Additionally, defendants filed notices of appeal from the order granting the anti-suit injunction and from the order denying reconsideration. (*See* Dkts. 114, 160.)

expert discovery, before summary judgment motions should be entertained. Def. 11/12/25 Subm. (Dkt. 129) at 1-5.

On November 18, 2025, the district judge referred this action to me for general pretrial management, including scheduling, discovery, and non-dispositive pretrial motions. (Dkt. 133.)

## B.    Affirmative Defenses

On November 26, 2025, defendants filed their Answer (Dkt. 148), followed by an Amended Answer (Amend. Ans.) (Dkt. 166) on December 17, 2025. Defendants do not seriously contest the Trustee's *prima facie* case. However, they assert twelve affirmative defenses, including:

- that the Trustee's claims are barred to the extent that the "Holders or beneficial owners of the Notes are U.S. persons," and because the Trustee failed to maintain "a register of the Notes, of the Holders of the Notes, of the persons with beneficial interests over the Notes, and of their transfer and exchange," *see* Amend. Ans. at 12 (Second and Third Affirmative Defenses);

- that the Indenture's New York law provision is "contrary to New York's choice of law principles" and therefore unenforceable, and, relatedly, that the Notes and the underlying Indenture are unenforceable because they violate Mexican law and public policy, specifically, Mexican usury laws, *see* Amend. Ans. at 12-13 (Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses);

- that the Trustee's claims are "barred in whole or in part by the doctrines of estoppel, waiver, and unclean hands," including by "Plaintiff's or the Holders' conspiring with the Mexican government and lobbying against Defendants and so Defendants are subject to significant tax liabilities," *see* Amend. Ans. at 13 (Ninth and Eleventh Affirmative Defenses); and

- that "Plaintiff's claims are barred in whole or in part by the doctrine of impossibility," apparently as a result of TV Azteca's "significant tax liabilities." *See* Amend. Ans. at 13 (Twelfth Affirmative Defense).

The validity of each of these defenses is sharply disputed, as discussed in more detail below.

### C.      The Trustee's First Request for Leave to Seek Summary Judgment

On December 1, 2025, the Trustee filed a pre-motion letter requesting leave to file an early summary judgment motion as to the Guarantor Defendants, arguing that since they "waived all possible defenses to liability, including the defenses that TV Azteca has claimed require discovery," the Court could, at a minimum, "address summary judgment" as to the Guarantor Defendants "regardless of any discovery allowed for TV Azteca itself." (Dkt. 153 at 1.) On December 7, 2025, the Guarantor Defendants opposed the request, arguing that all of TV Azteca's affirmative defenses remain in play for them (because "[t]he Guarantors' liability cannot exceed the amount the primary obligor owes, which is in dispute given issues regarding U.S. Noteholders and usurious returns," and because "public policy and statutory defenses – such as the prohibition on usurious recovery under Mexican law and Mexican public policy – cannot be waived"), and therefore that it would be "premature" to permit the Trustee to file a summary judgment motion prior to the completion of full fact and expert discovery. (Dkt. 157 at 3-4). On December 15, 2025, the Trustee replied, arguing, among other things, that the Guarantor Defendants "unconditionally waived all defenses, including defenses of 'invalidity, illegality or unenforceability,'" and that they are independently liable for the outstanding balance on the Global Note, "regardless of whatever defenses TV Azteca may raise." (Dkt. 161 at 2.)

### D.    Discovery Proceedings Before the Magistrate Judge

On November 24, 2025, defendants filed three motions for the issuance of letters rogatory to obtain discovery from foreign sources regarding the identities of the holders and beneficial owners of the Notes, transfers of those interests, and related matters. (Dkt. 137, 140, 143.) Defendants explained that this discovery is relevant to several of their affirmative defenses, including their contentions that the Trustee cannot recover on behalf of holders or beneficial owners who are U.S. persons; that the Trustee failed to maintain a register of the holders and beneficial owners of the Notes; and that holders and beneficial owners who purchased at a discount may be barred from recovery by Mexican usury laws. (*See*, *e.g.*, Dkt. 139 at 2-4.)

On December 17, 2025, defendants filed a Third-Party Complaint against Cyrus Capital Partners, L.P. (Cyrus) and Contrarian Capital Management, LLC (Contrarian), the "majority Holders of the Notes," asserting a single claim for negligence. Third-Party Compl. (Dkt. 164) ¶¶ 1-2, 32-37. Defendants accuse Cyrus and Contrarian of pressuring the Mexican government, through a lobbying campaign, into "imposing massive tax liabilities and penalties" against TV Azteca and its affiliates. *Id*. ¶¶ 2, 26.[3] On December 30, 2025, the Trustee served a motion to strike the Third-Party Complaint pursuant to Fed. R. Civ. P. 14(a)(4) (Dkt. 173), and asked the undersigned magistrate judge to stay discovery relating to the Third-Party Complaint pending the outcome of the motion to strike. (Dkt. 174.)

On January 6, 2026, after a case management conference, I granted two of the motions for issuance of letters rogatory (defendants withdrew the third motion); set a schedule for fact

---

[3] The "massive tax liabilities and penalties" resulted from a November 13, 2025 ruling by the Mexican Supreme Court, which rejected "several challenges that Defendants/Third-Party Plaintiffs had filed against a series of multi-hundred-million-dollar tax penalties levied by the Mexican federal tax authority (equivalent to the IRS). This effectively caused Defendants/Third-Party Plaintiffs to become indebted for over $400 million to the Mexican federal government." Third-Party Compl. ¶ 26.

discovery as to the claims and defenses raised in the Complaint and the Amended Answer; and stayed discovery as to the Third-Party Complaint. *See* 1/6/26 Order (Dkt. 177) at 1-2.[4] During the conference, the Trustee proposed that I further restrict discovery concerning a number of defendants' affirmative defenses because – in the Trustee's view – those defenses would prove to be meritless as a matter of law. *See*, *e.g.*, 1/6/26 Tr. (Dkt. 181) at 8, 24-25. Defendants argued that it is not "the province of discovery motion practice" to prejudge a possible future merits motion challenging the validity of their affirmative defenses. *Id*. at 18; *see also id.* at 32, 43. Given the record before me at that time, I declined the Trustee's proposal, *see id*. at 46, 55, and instead directed the parties to submit a joint letter outlining their proposal(s) for promptly and efficiently placing "the merits issues underlying the key defenses raised by both TV Azteca and the Guarantor Defendants" before the Court "for early resolution." 1/6/26 Order at 2-3, ¶ 8.

The parties submitted the requested joint letter on January 20, 2026 (Dkt. 198), largely reiterating the competing proposals that each side previously made to the district judge. Plaintiff maintained that this action presents numerous "purely legal issues," the early resolution of which would avoid much "needless discovery." *Id.* at 1-3. Defendants argued that, given the fact-intensive nature of their defenses, the parties should complete both fact and expert discovery "without the detour and risk of inefficiency created by front-loading certain issues." *Id*. at 3-6. Moreover, although the parties agreed in principle that certain dispositive legal issues could be

---

[4] On January 12, 2026, Cyrus and Contrarian appeared and sought leave to move to dismiss the Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 189.) On January 14, 2026, the district judge advised that he would consider the motion to dismiss after resolving the Trustee's motion to strike the Third-Party Complaint. (Dkt. 191.) On January 15, 2026, the district judge set a briefing schedule for the motion to strike. (Dkt. 193.) That motion became fully-briefed on February 5, 2026. (*See* Dkt. 211.)

decided on motions for partial summary judgment based upon stipulated facts, they were unable to agree on an appropriate set of factual stipulations. *See id*. at 3, 6.

Since then, defendants have filed three letter-motions to compel additional discovery: (1) from Contrarian, Cyrus, and a third noteholder, Plenisfer (Dkt. 204)[5]; (2) from nonparty Ducera Partners LLC (Ducera), the Ad Hoc Group's financial advisor (Dkt. 214); and (3) from the Trustee. (Dkt. 215.) All three letter-motions seek documents and information concerning the "citizenship of the Holders of the Notes" and "the question of unreasonable returns." *Id.* at 1. Additionally, although both plaintiff and defendants contend that the language of the Indenture is clear and unambiguous, defendants seek "[a]ll documents and communications concerning the negotiation and execution of the Indenture," "[a]ll documents and communications concerning Plaintiff's or the Holders' understanding or interpretation of the restriction on U.S. persons holding the Notes (or beneficial interests therein)," and other extrinsic evidence concerning the meaning of several disputed provisions of the Indenture. *Id.* at 3. All three motions are opposed. (*See* Dkts. 210, 219, 222.)

### E. The Trustee's Second Request for Leave to Seek Summary Judgment

On February 24, 2026, the Trustee filed a second pre-motion letter, addressed to the district judge, requesting leave to file an early summary judgment motion, this time as to TV Azteca, arguing that "[t]he elements of the Trustee's claim are undisputed, and binding New York law forecloses each of TV Azteca's defenses regardless of any discovery the parties may take." Tr. 2/24/26 Ltr. (Dkt. 223) at 1. Plaintiff adds that defendants' "abusive" discovery campaign "further justifies the Court permitting summary judgment now." *Id*. at 2. That same day, the Trustee asked

---

[5] Defendants state that Contrarian, Cyrus, and Plenisfer are three of the four members of the "Ad Hoc Group" of noteholders "directing this litigation." (Dkt. 204 at 1.) Defendants served two sets of subpoenas on "approximately 20 funds and accounts owned/managed by the Ad Hoc Group," but assert that they only received a handful of documents. (*Id*.)

the undersigned magistrate judge to "stay discovery pending resolution of its motion for summary judgment." Tr. 2/24/26 Stay Ltr. (Dkt. 224) at 1.

On February 27, 2026, defendants opposed both requests, writing to the district judge that "[d]isputes about discovery are no reason for premature summary judgment practice as a means to sidestep appropriate, indeed, essential discovery," Def. 2/27/26 Ltr. (Dkt. 226) at 1, and to me that "staying discovery now would prejudice Defendants and needlessly (indeed, improperly) delay resolution of active discovery disputes," because, among other things, the Trustee's contention "that Defendants' defenses are 'legally nonviable' are without merit." Def. 2/27/26 Stay Ltr. (Dkt. 227) at 2.

On March 5, 2026, Judge Gardephe expanded my reference to include both of the Trustee's requests for leave to move for summary judgment. (Dkt. 232.)

## II.    DISCUSSION

As noted above, the elements of the Trustee's *prima facie* case, including defendants' failure to make any payments on the Notes since 2020, are not in serious dispute. The question presented by the Trustee's requests for leave to seek summary judgment at this time is whether defendants' affirmative defenses can – as the Trustee argues – be efficiently resolved on summary judgment without awaiting the completion of full fact and expert discovery. After carefully considering the parties' positions, I conclude that at least some of those affirmative defenses can, in all likelihood, be resolved without further discovery, and that, as a matter of efficiency, the Trustee should be given an opportunity to seek that result and thereby streamline this case. *See generally BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*, 2024 WL 4349163, at *6-7 (S.D.N.Y. Sept. 30, 2024) ("Summary judgment is a flexible tool for streamlining a case before trial. It may be requested 'not only as to an entire case but also as to a claim, defense, or part of a claim or defense.'") (quoting Fed. R. Civ. P. 56, advisory committee's note to 2010

amendment), *reconsideration denied,* 2024 WL 5201596 (S.D.N.Y. Dec. 23, 2024), *and motion to certify appeal denied,* 2024 WL 5245007 (S.D.N.Y. Dec. 30, 2024); *Ali v. City of New York*, 2012 WL 3958154, at *3 & n.10 (S.D.N.Y. Sept. 5, 2012) (noting that "there is no general right to discovery prior to the entry of summary judgment," and collecting cases).

### A.    U.S. Persons

By way of example, the validity of the Second Affirmative Defense – and hence, the need for extensive international discovery concerning the identities and nationalities of the "ultimate beneficial owners of the Notes" (Dkt. 204 at 3) – turns on the interpretation of contract language that both plaintiff and defendants characterize as unambiguous. *See* Tr. 2/24/26 Ltr. at 2 (arguing that the defense fails under "the plain language of the Indenture"); Def. 2/27/26 Ltr. at 4 (arguing that "[t]he restriction on U.S. persons from being Holders of the Notes is explicit in the operative documents. Plaintiff simply misreads it.").

Defendants rely primarily on the face of the Global Note, which states that it is not registered under the Securities Act of 1933 and may not be offered, sold, pledged, or otherwise transferred unless the acquirer represents, among other things, "that it is not a U.S. person (within the meaning of Regulation S under the Securities Act)." Global Note at 1 (all-caps formatting in the Indenture and Global Note omitted). Defendants contend that this restriction (which was echoed in the offering circular for the Notes) prohibits the Trustee from recovering anything on behalf of holders or beneficial owners of the Notes that are U.S. persons. *See* Def. 11/12/25 Subm. at 1-2; Def. 2/27/26 Ltr. at 4. Therefore, defendants argue, they require extensive party and nonparty discovery, some of which must be conducted under the Hague Convention, into the identities and nationalities of all of the ultimate beneficial owners, "to determine the recoverable quantum of alleged damages," Def. 11/12/25 Subm. at 2, as well as "expert discovery regarding market practices in respect of the restriction." *Id*. at 3. Further, according to defendants, they should

be permitted to conduct discovery into "the parties' understanding" of the disputed "U.S. persons" language "at contract formation," Def. 2/27/26 Ltr. at 4, because parol evidence is admissible, under New York law, "where parties dispute the meaning of conflicting contract terms." *Id*. at 4 n.3 (citing *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 404 (E.D.N.Y. 2011)).

The Trustee does not deny that some of the holders or beneficial owners of the Notes are U.S. persons, and is willing to so stipulate, *see* Tr. 2/24/26 Ltr. at 3, but reads the underlying documents quite differently, arguing that only the Holder of the Global Note need be a non-U.S. person, because the ultimate investors in the 8.25% Notes "'hold' the [Global] Note only as credits to their accounts with the Clearing Agencies." Tr. 11/12/25 Subm. at 5-6; *see also* Tr. 2/24/26 Ltr. at 2 ("the sole registered 'Holder' pursuant to the plain language of the Indenture is the Common Depository for the Global Note, which Common Depository is a U.K. entity"). Moreover, according to the Trustee, the Indenture and the Global Note "unambiguously allow[] U.S. persons to be assigned beneficial interests, as long as they comply with the U.S. securities laws[.]" Tr. 11/12/25 Subm. at 8; *see also* Tr. 2/24/26 Ltr. at 2.[6] Consequently, the Trustee contends, no further discovery is required to render the validity of the Second Affirmative Defense ripe for summary judgment. Tr. 2/24/26 Ltr. at 2.

---

[6] The Trustee points to § 2.6(a) and (b) of the Indenture, which state that the Global Note shall be "registered in the name of and delivered to the Common Depositary," which may be treated "as the absolute owner of such Global Note for all purposes whatsoever." Additionally, the Trustee notes that immediately following the "U.S. persons" language in the Global Note, the document goes on to state that it may not be offered, sold, pledged, or otherwise transferred unless the acquirer agrees "that it will not offer, sell, pledge, or otherwise transfer this Note or any beneficial interest herein, except in accordance with the Securities Act and any applicable securities laws of any State of the United States," such as "pursuant to a registration statement which has become effective under the Securities Act" or "pursuant to an exemption from the registration requirements of the Securities Act provided by Rule 144[.]" Global Note at ECF pp. 2-3. This language, the Trustee argues, would make no sense if the "Note *per se* bars any U.S. persons from, acquiring beneficial interests" in the debt. Tr. 11/12/25 Subm. at 8-9.

This Court agrees that the "U.S. persons" issue can likely be decided on the present record. The only discovery that defendants claim to need for purposes of the contract interpretation question underlying the Second Affirmative Defense is discovery into "the parties' understanding at contract formation." Def. 2/27/26 Ltr. at 2. But TV Azteca *was* a party "at contract formation." It does not need discovery to put evidence of its "understanding" before the Court. More fundamentally, given the parties' agreement that the Indenture and Global Note are unambiguous, it seems unlikely such evidence would be helpful to the Court – or even admissible – as to the meaning of the relevant contracts. *See Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 987-88 (2d Cir. 1991) ("[I]f a contract is unambiguous on its face, the parties' rights under such a contract should be determined solely by the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable.") (internal quotation and citation omitted); *Garcia*, 800 F. Supp. 2d at 404 ("The parol evidence [rule] excludes admission and consideration of extrinsic evidence concerning the meaning of provisions of a written agreement or instrument – such as documents concerning the drafting history of a provision – where the relevant terms are unambiguous."); *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 570 (2002) (Under New York law, "[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide.").

Moreover, unless *all* of the holders and beneficial owners of the Notes are U.S. persons – which defendants have never asserted – the remaining discovery that defendants seek on this issue would go only to the quantum of damages recoverable by the Trustee. *See* Def. 11/12/25 Subm. at 2. As noted above, defendants have undertaken extensive nonparty discovery to determine the identities and nationalities of the "ultimate beneficial owners" of the Notes, including two requests

(thus far) for letters rogatory under the Hague Convention. It has already become clear that defendants cannot complete this discovery by May 4, 2026, which is the current deadline for the close of fact discovery. *See* 1/6/26 Order at 2.[7] However, none of it will be necessary if, as the Trustee contends, U.S. persons were permitted to purchase the Notes, or beneficial interests in the Notes, on the secondary market. Conversely, if defendants prove to be correct as a matter of contract interpretation, the Court could bifurcate proceedings and proceed to determine liability as to the non-U.S. noteholders only – at which point those non-U.S. noteholders would be powerfully motivated to volunteer information about their identities and ultimate ownership. On balance, therefore, it seems to this Court that an early summary judgment motion as to the contract interpretation issues underlying the Second Affirmative Defense (and likely the Third as well)[8] would be more efficient than requiring the Trustee and the noteholders to slog through what

---

[7] In their pending discovery motions, defendants complain that the Trustee, three nonparty noteholders, and their nonparty financial advisor asserted improper objections. (*See* Dkts. 204, 214, 215.) Even in the absence of objections from the Trustee and the noteholders, however, it seems unlikely that document discovery – never mind depositions – could be completed in the next seven weeks. Defendants have not yet received any information in response to their Hague Convention requests, which are addressed to Euroclear Bank in Belgium and Clearstream Banking in Luxembourg, seeking documents showing the names, addresses, and "ultimate beneficial owner[s]" of any and all entities that purchased or sold TV Azteca Notes from 2017 through 2025, as well as "the purchasing party, the date of purchase and the purchase price for each transaction" in the Notes over that period. (Dkt. 179 at ECF p. 8; Dkt. 180 at ECF p. 6.) As of February 27, 2026 (six weeks after the undersigned magistrate judge signed the letters rogatory), defendants advised that both requests were "being submitted to the respective central authorities" of Belgium and Luxembourg, Def. 2/27/26 Ltr. at 2, for service upon Euroclear and Clearstream.

[8] The Trustee acknowledges that § 2.3 of the Indenture requires it to "keep a register of the Notes and of their transfer and exchange," but argues that "the only registered 'Notes' for which the Trustee must maintain a registry is the Global Note," and thus that it has no responsibility to maintain a register of the beneficial owners. Tr. 11/12/25 Subm. at 6; Tr. 2/24/26 Ltr. at 3. The Trustee adds that even if it had (and breached) an obligation to keep track of the beneficial owners, the Third Affirmative Defense would not prevent it from recovering on their behalf, because the breach was not so material as to "defeat[] the object of the parties in making the contract." Tr. 11/12/25 Subm. at 7 (quoting *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997)). These issues, like those underlying the Second Affirmative Defense, require the Court to determine the meaning of contract language that both sides claim to be unambiguous.

14

promises to be a lengthy and contentious fact discovery period before those purely legal issues can be put to the Court.

### B.  Mexican Usury Law

The Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses are all premised on defendants' contention that, despite the Indenture's New York choice-of-law clause,[9] "Mexican law applies to Defendants' usury defense and public policy defense, which cannot be waived under Mexican law." Def. 11/12/25 Subm. at 3. Defendants' somewhat convoluted theory is that § 3.7 of the Indenture, in which TV Azteca covenanted *not* to "insist upon, or plead, or . . . claim or take the benefit or advantage of . . . any usury law," to the "fullest extent permitted by applicable law," must be a *sub silentio* reference to Mexican usury law, which, as a matter of Mexican public policy, cannot be waived. *Id*.; Def. 2/27/26 Ltr. at 4-5. Further, although defendants do not claim that 8.25% is usurious, they contend that because many of the holders or beneficial owners of the Notes purchased the debt "at a discounted rate," and/or "below [the Notes'] facial value," they will "make usurious returns," and "collect[] in excess of what they paid for the Notes," which is "illegal under Mexican law and contrary to Mexican public policy," *if* the Trustee is permitted to recover the full damages sought. Amend. Ans. at 12-13. More broadly, defendants argue that the substantive law of New York should not apply to any aspect of the parties' dispute because "the transaction's center of gravity clearly is Mexico." Def. 11/12/25 Subm. at 4.

Consequently, defendants seek extensive party and nonparty fact discovery concerning "the dates and prices at which the current Noteholders purchased their Notes," as well as "communications regarding the Noteholders' expected return," some of which must be conducted

---

[9] *See* Ind. § 11.7(a) ("This Indenture (including each Note guarantee) and the Notes shall be governed by, and construed in accordance with, the law of the State of New York.").

via the Hague Convention. Def. 11/12/25 Subm. at 5. Additionally, TV Azteca "plans to offer expert evidence regarding Mexican law, including Mexican legal principles concerning usurious interest rates and related public policy, as well as market rates/returns, and the reasonability of the Noteholders' expected returns." *Id*.; *see also* Def. 2/27/26 Ltr. at 5 ("Without discovery, Defendants' expert cannot fully develop his opinion.").

The Trustee characterizes defendants' reliance on Mexican law as "frivolous," Tr. 11/12/25 Subm. at 3, pointing out that New York permits parties contracting for more than $250,000 to select New York law "whether or not such contract, agreement or undertaking bears a reasonable relation to this state," N.Y. Gen. Oblig. Law § 5-1401(1), and that the New York Court of Appeals has expressly held that where § 5-1401 applies, the "need for a conflict-of-laws analysis is obviated by the terms of the parties' agreement," even if the contract does not expressly exclude New York's choice-of-law rules. *Id*. (citing *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 20 N.Y.3d 310, 312, 958 N.Y.S.2d 689, 690 (2012)); *see also* Tr. 2/24/26 Ltr. at 3.

Here too, the Trustee has the better end of the parties' debate concerning the efficacy of early summary judgment. For the same reasons outlined above, defendants' claim that they need discovery into "the intent of the parties at contract formation," Def. 11/12/25 Subm. at 3 (in this instance, as to whether the reference to "applicable law" in § 3.7 of the Indenture meant New York or Mexican law), is not persuasive, particularly given that (i) neither side has suggested that the Indenture is ambiguous, and (ii) any relevant evidence concerning TV Azteca's intent is available to defendants without discovery. The rest of the discovery that defendants seek on the Fifth through the Eighth Affirmative Defenses is both extensive and irrelevant to liability.[10] Instead, it goes to

---

[10] As noted above, defendants seek party and nonparty fact discovery, some of it requiring Hague Convention requests, concerning the economic terms on which each holder or beneficial owner of the Notes invested in those Notes. Additionally, defendants advise that they plan to present expert testimony concerning Mexican law and "prevailing market practices," *see* Def. 2/27/26 Ltr. at 4-

the quantum of damages recoverable by or on behalf of noteholders who purchased at a discount. If New York law applies, as the Trustee contends, that discovery will never be necessary. Moreover, if the Trustee is wrong, the necessary damages-related discovery can be sequenced after liability issues have been resolved. Once again, therefore, it would be more efficient to permit a summary judgment motion now than to require the parties (and numerous nonparties) to complete an extensive and expensive program of fact and expert discovery before scheduling such a motion.

### C.    Unclean Hands

As a final example, defendants' Ninth Affirmative Defense alleges in conclusory terms that the Trustee has "unclean hands," while the Eleventh Affirmative Defense elaborates on that defense by alleging that recovery on the Notes is barred by "Plaintiff's or the Holders' conspiring with the Mexican government and lobbying against Defendants and so Defendants are subject to significant tax liabilities." Amend. Ans. at 13; *see also* 1/6/26 Tr. at 15 (acknowledging that the Eleventh Affirmative Defense sounds in unclean hands).

Ordinarily, however, equitable defenses such as unclean hands are unavailing against a legal claim for breach of contract.[11] Moreover, while defendants claim that they need discovery to prove their unclean hands defense, *see* Def. 2/27/26 Ltr. at 5 ("Defendants are entitled to discovery on this defense."), they do not argue that they need discovery to litigate the threshold legal question

---

5, which, as a matter of prudence, would require the Trustee to retain its own expert(s) concerning the same topics.

[11] *See*, *e.g.*, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 607 (2d Cir. 2005) (affirming grant of summary judgment on SCA's cross-claims against Aetna, notwithstanding Aetna's unclean hands defense, because "SCA seeks damages in an action at law," but "[u]nclean hands is an equitable defense to equitable claims"); *Gala Jewelry, Inc. v. Harring,* 2006 WL 3734202, at *2 n.3 (S.D.N.Y. Dec.18, 2006) (Lynch, J.) (striking unclear hands defense because "this circuit restricts the 'unclean hands' doctrine to suits in equity, thereby categorically defeating defendant's attempted defense in this suit at law"); *Manshion Joho Ctr. Co. v. Manshion Joho Ctr., Inc.*, 24 A.D.3d 189, 190, 806 N.Y.S.2d 480, 482 (2005) ("The doctrine of unclean hands is an equitable defense that is unavailable in an action exclusively for damages.").

of whether that equitable defense is available to them.[12] I note as well that the unclean hands defense, if not resolved early, will likely engender sprawling and contentious discovery concerning the actions and motives of officials at the highest levels of the Mexican government. *See* Third-Party Compl. ¶¶ 15-29 (alleging that lobbying by the Ad Hoc Group influenced President Claudia Sheinbaum-Pardo to make "unfounded public statements attacking, disparaging and/or defaming Mr. Salinas-Pliego or Grupo Salinas in general, and/or Defendants/Third-Party Plaintiffs in particular, with regards to the dispute involving the Notes," and that these statements, in turn, "directly or indirectly resulted in the adverse November 13, 2025 decision of the Mexican Supreme Court, which is under the "control" of MORENA, President Scheinbaum's political party).[13] If there is even a modest chance that an early summary judgment motion will rule out such discovery, the Trustee should be given the opportunity to make that motion.

## D.    No Multiple Bites

I agree with defendants, however, that "Plaintiff should not be allowed to take multiple bites at the apple through seriatim motion practice at any later date." Def. 2/27/26 Ltr. at 3. Courts in our Circuit – as elsewhere – generally disapprove of "'the piecemeal consideration of successive motions for summary judgment' because parties ought to be 'held to the requirement that they

---

[12] In their recent correspondence, defendants suggest that the Eleventh Affirmative Defense relies on "impossibility" rather than unclean hands. *See* Def. 2/27/26 Ltr. at 5 ("Defendants assert an impossibility defense arising from the Ad-Hoc Group's conduct, including lobbying in Mexico, which led to an adverse Mexican Supreme Court ruling and the imposition of hundreds of millions of dollars in tax liability that impaired Defendants' ability to perform."). If so, however – and even assuming that defendants' financial difficulties would justify the assertion of an impossibility defense – defendants do not contend that the *reasons* for those financial difficulties would be relevant to impossibility. Should the impossibility defense survive summary judgment, therefore, discovery would likely be limited to the details of the defendants' allegedly straitened circumstances.

[13] TV Azteca is "perceived to be part of" Grupo Salinas, a "large corporate conglomerate" led by Ricardo Salinas-Pliego, who has been a "vocal critic of MORENA." Third-Party Compl. ¶¶ 16-18.

present their strongest case for summary judgment when the matter is first raised.'" *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (quoting *Allstate Finance Corp. v. Zimmerman,* 296 F.2d 797, 799 (5th Cir. 1961)). Consequently, the Trustee should carefully choose each claim, defense, or "part of each claim or defense" as to which it seeks summary judgment prior to full discovery, Fed. R. Civ. P. 56(a), and should not expect a "second bite at the apple," as to those claims, defenses, or issues, in the event its initial motion fails. *Robinson v. Henschel*, 2014 WL 1257287, at *8 (S.D.N.Y. Mar. 26, 2014) (Gardephe, J.).

In addition, the Trustee must take care, when preparing its statement of material undisputed facts pursuant to Local Civil Rule 56.1, to rely only on facts that are material to the issues raised by the motion and genuinely undisputed. For example, if the Trustee asserts that one or more noteholders are not U.S. persons, it must back that assertion up with admissible evidence showing that there can be "no genuine dispute" as to that fact, Fed. R. Civ. P. 56(a), and consequently "no genuine issue to be tried." Local Civ. R. 56.1(a).

Under Rule 56(d), the nonmoving party may respond to a summary judgment motion by showing, "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Defendants may of course invoke Rule 56(d) if they believe it applies, but are reminded that "[s]uch discovery . . . is not available as a matter of course." *Ali*, 2012 WL 3958154, at *3. Rather, the nonmoving party must submit an affidavit or declaration showing, with specificity, "what facts are sought and how they are to be obtained," as well as "how those facts are reasonably expected to create a genuine issue of material fact" as to the questions presented on summary judgment. *Quinn v. City of New York*, 2026 WL 160722, at *5 (2d Cir. Jan. 21, 2026) (summary order) (quoting *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023)); *see also ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, 662 F. App'x 19, 22 (2d Cir. 2016)

(summary order) (district court's grant of plaintiff's early summary judgment motion was not an abuse of discretion where defendant failed to submit an affidavit "show[ing] how discovery would lead to facts that might justify its opposition"). A mere "reference to Rule 56[d] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit." *Quinn*, 2026 WL 160722, at *5 (alterations in original) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)); *see also UBS AG, London Branch v. Greka Integrated, Inc.*, 2022 WL 2297904, at *3 (2d Cir. June 27, 2022) (summary order) ("General assertions of the need for discovery in a memorandum of law plainly do not suffice.").

### E.      Stay of Discovery

The Trustee also requests a stay of discovery pending resolution of its motion for summary judgment. District courts have "considerable discretion" to stay discovery pursuant to Fed. R. Civ. P. 26(c), upon a showing of good cause. *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 79 (S.D.N.Y. 2020). In evaluating whether the movant has demonstrated good cause, courts typically consider "(1) the breadth of discovery sought and the burden of responding to it; (2) the prejudice to the party opposing the stay; and (3) the strength of the underlying motion[.]" *See Parker v. Bursor*, 2024 WL 5119169, at *1 (S.D.N.Y. May 22, 2024) (citing *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)). For many of the same reasons touched on above, I conclude that plaintiff has demonstrated good cause for a stay.[14]

---

[14] As a threshold issue, defendants argue that since I authorized the parties to pursue discovery on January 6, 2026 – including into "citizenship" and "purchase price" issues – plaintiff's attempt to "relitigate this settled point . . . should be rejected." Def. 2/24/26 Stay Ltr. at 1. At that time, however, the case was in a different procedural posture. The Trustee had not yet sought leave to move for summary judgment as to TV Azteca, and the district judge had not yet referred that request (as well as the Trustee's earlier request for leave to move for summary judgement against the Guarantor Defendants) to me. Thus, it remained uncertain whether or when dispositive motion practice would commence. *See* 1/6/26 Tr. at 65-66 (noting that once the Court accepted a proposal

First, the discovery defendants seek is extensive – indeed, worldwide in scope. As described above, defendants seek, among other things, the identity of every holder or beneficial owner of the Notes, the dates and prices at which each Note was purchased, the purchasers' expected returns, and parol evidence concerning the contracting parties' subjective understanding – when they signed the Indenture – of its terms. Defendants already have two Hague Convention requests pending, and may well make more further requests under the Convention for additional documents or for deposition testimony. Additionally, as the Trustee notes, defendants have "signaled that they intend to take even more expansive discovery, including international discovery in Mexico about their conspiracy theory," Tr. 2/24/26 Stay Ltr. at 2, as well as expert discovery concerning, among other things, "market practices" regarding the "U.S. persons" language on which defendants rely, Mexican usury law, and the "reasonability of the Noteholders' expected returns." Def. 11/12/25 Subm. at 3-5. The Trustee argues persuasively that proceeding with such discovery at this juncture – while the parties are simultaneously engaged in briefing and arguing a dispositive motion that may resolve defendants' underlying defenses as a matter of law – would be unduly burdensome and inefficient. Tr. 2/24/26 Stay Ltr. at 1-2.

Second, a stay of discovery would not *unduly* prejudice defendants, except, potentially, with respect to their pending letters rogatory, which I address below. To be sure, the stay will "prevent the Court from addressing the discovery disputes already teed up for resolution." Def. 2/24/26 Stay Ltr. at 2. However, the only discovery disputes presently before the Court are defendants' three letter-motions to compel production of documents and information concerning the citizenship of noteholders, the prices and terms on which they acquired the Notes, and the

for a summary judgment motion on the affirmative defenses, "that might alter what we're doing in discovery as well"). That uncertainty has now been dispelled. In light of these changed circumstances, it is well within my discretion to stay (or otherwise modify) the discovery schedule.

parties' subjective intent at the time of contracting. Resolving the legal issues that give rise to those requests, through summary judgment, is likely to prove the more efficient course. As for the pending letters rogatory, I will exempt them from the stay in light of the long lead time for obtaining discovery under the Hague Convention. Additionally, I will permit the parties to request a modification of the stay, once the Trustee has served its summary judgment motion, to permit discovery as to factual issues (if any) that will not be foreclosed if the motion is successful.

Finally, I am persuaded by the parties' extensive pre-motion letter-briefing that the Trustee's motion is likely to be successful as to at least some of defendants' affirmative defenses, and therefore is likely to render at least some of the discovery sought by defendants irrelevant. Under these circumstances, it would be more efficient to stay discovery now than to require the parties to proceed on two tracks, at significant expense, while the threshold legal questions are being briefed and argued.

## III.    CONCLUSION

For the reasons set forth above, the Trustee's motions for leave to file a summary judgment motion (Dkts. 153, 223) are GRANTED. The Trustee may seek summary judgment as to some or all of the issues outlined in its pre-motion letters. It must serve its moving papers, in accordance with Local Civil Rule 56.1 and Parts IV(B) and (C) of Judge Gardephe's Individual Practices, no later than **April 17, 2026.** Defendants' opposition papers, together with any cross-motion for summary judgment on the same issues, must be served no later than **May 18, 2026**. Plaintiff's reply papers, together with its opposition to any cross-motion, must be served no later than **June 17, 2026**. Defendants' reply papers as to any cross-motion must be served no later than **July 1, 2026**.

The party serving the last reply papers must file all of the motion papers at that time in accordance with Judge Gardephe's Individual Practices.[15]

The Trustees' motion for a stay of discovery (Dkt. 224) pending summary judgment is likewise GRANTED. However, once the Trustee has served its summary judgment motion, any party may seek a modification of the discovery stay if and to the extent (i) the motion seeks summary judgment as to less than all of the claims and defenses in this action and (ii) the moving party wishes to pursue discovery as to matters relevant to claims or defenses that will not be foreclosed if the motion is successful. Additionally, defendants may continue to pursue the information they have sought by means of the two letters rogatory previously issued by this Court.

The status conference currently scheduled for April 7, 2026 is hereby ADJOURNED *sine die*. The discovery motions at Dkts. 204, 214, and 215 are hereby DENIED without prejudice to renewal once the discovery stay is lifted.

The Clerk of Court is respectfully directed to close the letter-motions at Dkts. 153, 204, 214, 215, 223, and 224.

Dated: New York, New York
      March 17, 2026

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[15] The parties may, within reason, stipulate to a different briefing schedule, but must submit their stipulation to the Court for approval.