# Exhibit 1

FEDERAL JUDICIAL BRANCH                    IFECOM                    LP2/20                    Page 1 of 46

---

## Petition for Declaration of Insolvency Proceedings
Title One of the *Ley de Concursos Mercantiles* (Insolvency Proceedings Law) (hereinafter LCM)

---

Hon. Federal District Judge in Commercial Insolvency Matters, with seat in Mexico City and Jurisdiction throughout the Mexican Republic, currently presiding.

*Select one of the seven following options by clicking the button preceding the paragraph whose content matches the situation of the merchant filing the petition, to identify the competent judge before whom it must be filed, in accordance with Articles 4, Section III and 17 of the LCM. Likewise follow only the instruction of the selected paragraph.*

Option 1 X

If the petitioner is an individual merchant, following the words "...of the *District in...*" write the name of the federal entity where the establishment is located as the principal place of business of the company and, in its absence, following the words "...*currently presiding*". Articles 4 and 17, first paragraph of the LCM.

Option 2 X

If the petitioner is the succession of an individual merchant, following the words "...of the District in..." write the name of the federal entity where the principal place of business of the company is located and, in its absence, where the administrator resides, following the words "...currently presiding". Articles 4 and 17, first paragraph of the LCM.

Option 3 X

If the petitioner is a trust affected to business activities, following the words "...of the District in..." write the name of the federal entity where the trustee is located or, if not applicable, where the principal management of the business activity to which the trust is affected is located, following the words "...currently presiding". Articles 4, Section III and 17, first paragraph of the LCM.

Option 4 X

With the caveats described in points 5 and 6, if the petitioner is an individual (natural person), following the words "...of the District in..." write the name of the federal entity where the registered office is located or, if not applicable, where the principal administration is located, following the words "...currently presiding". Articles 4, Section III and 17, first paragraph of the LCM.

Option 5 X

If the petitioner is a member merchant of a corporate group in which there exist(s) other merchant(s) in respect of which an insolvency proceeding has previously been initiated (whether ordinary insolvency, insolvency with pre-arranged restructuring plan, or pre-packaged insolvency), following the words "...of the District in..." write completely the words identifying the District Court in which the previously filed insolvency case file is registered. Articles 4, Section III and 17, second paragraph of the LCM.

Option 6 X

If the petitioner is a merchant that files for insolvency jointly with other merchant(s) that are members of the same corporate group pursuant to Article 15 Bis of the LCM, write the name of the federal entity where the registered address of the social domicile of the member merchant of the group is located under Articles 10, 11 or 20 Bis of the LCM or, in the case of invalidity of the registered address, the address of the federal entity where the principal administration is located, following the words "...currently presiding". Articles 4, Section III and 17, second paragraph of the LCM.

Option 7 X

If the petitioner is an individual merchant that files for insolvency jointly with its partners who are unlimitedly liable, pursuant to Article 14 of the LCM, write the name of the federal entity where the registered address of the individual merchant is located or, if the registered address is invalid, the address of the federal entity where the principal administration of the merchant is located, following the words "...currently presiding". Articles 4, Section III and 17, first paragraph of the LCM.

---

**Case number:**
*Click here to type text*

**Parties:**
*Click here to type text*
*Click here to type text*

**Type of proceeding:**
*Click here to type text*

*If this is a member merchant of a corporate group in which there exist(s) other merchant(s) in respect of which an insolvency proceeding has previously been initiated, enter the case number of the proceeding previously filed in the District Court prior to the one now filed, as well as the other identifying details of the parties and the type of insolvency proceeding (ordinary insolvency declaration, insolvency declaration with pre-arranged restructuring plan, or petition for insolvency declaration) from which the current proceeding derives.*



## Merchant Identification and Domiciles
Article 20, second paragraph of the LCM

**Name of the merchant:**

**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE.**

*Enter the full name of the individual or, as the case may be, the company name or corporate name of the legal entity that seeks to be declared in insolvency proceedings.*

**Merchant's domicile that determines jurisdiction:**

**Periférico Sur number 4121, colonia Fuentes del Pedregal, alcaldía Tlalpan, Postal Code 14140, Mexico City.**

*Enter the full domicile that determines jurisdiction for the District Judge before whom this petition is filed. Select one of the six following options by clicking the button preceding the option whose content matches the circumstances of the merchant that seeks to be declared in insolvency and provides the relevant information.*

### Option 1
Individual person

*Articles 4, Section III and 17, first paragraph, as well as Article 13 of the LCM.*

*Next select one of the following options by clicking the button whose content identifies the domicile indicated.*

- Domicile of the principal establishment of the company
- Domicile where the person lives, for lack of a principal establishment
- Domicile where the person lives, in the absence of a principal establishment, having suspended or terminated the operation of the company

### Option 2
Succession of an individual person who held a company

*Articles 4, Section III and 17, first paragraph, as well as Article 12 of the LCM.*

*Next select one of the following options by clicking the button preceding the paragraph whose content identifies the domicile indicated.*

- Domicile of the company that continues in operation
- Domicile of the administrator of the succession because the company suspended operations

### Option 3
Unlimitedly liable partner

*Articles 4, Section III and 17, first paragraph, as well as Article 14 of the LCM.*

*Upon selecting Option 3 the following sentence will be automatically filled in, whose content must be consistent with the domicile indicated.*

- Domicile where the person lives

### Option 4
X  Commercial company

*Articles 4, Section III and 17, first paragraph of the LCM.*

*Next select one of the following options by clicking the button preceding the paragraph whose content is consistent with the domicile indicated.*

- • Registered office
- Domicile where the principal administration of the company is located, due to invalidity of the registered office

### Option 5
Branch of a foreign company

*Articles 4, Section III and 17, first paragraph, as well as Article 16 of the LCM.*

*Upon selecting Option 5 the following sentence will be automatically filled in, whose content must be consistent with the domicile indicated.*

- Domicile of the branch where the principal administration is located

### Option 6

≈ Trust estate

Articles 4, Section III and 17, first paragraph of the LCM, as well as Articles 381 and 391 of the General Law on Negotiable Instruments and Credit Operations.

Next select one of the following options by clicking the button preceding the paragraph whose content is consistent with the domicile indicated.

> Registered office of the trustee

⚬ Domicile where the principal administration of the business activity to which the trust estate is affected is located

---

Only in the event of having selected among the six options above the 'Commercial company' option, and if the company's situation falls into one of the two following cases, provide the information indicated and click on the button whose content is associated with that situation.

Member commercial company of a corporate group in respect of which a declaration of insolvency is sought, successively with respect to other member(s) of the corporate group pursuant to Article 15 Bis of the LCM.

Select one of the two following options by clicking the button whose content identifies the option that best describes the situation of the commercial company and write the company name or corporate name following the word 'name/company name'.

⚬ controlling company of another commercial company named

Click here to type text

⚬ controlled by another commercial company named

Click here to type text

Following the words "of the commercial company", write the company name or corporate name of the legal entity whose situation in the option selected refers to the word 'name/company name'.

The domicile provided as the determinant of jurisdiction is that of the commercial company:

Click here to type text

in respect of which a proceeding has previously been filed in this court, under case file

Click here to type text

Articles 4, Section III and 17, second paragraph of the LCM.

Member commercial company of a corporate group in respect of which a declaration of insolvency is sought jointly with other member(s) of the corporate group pursuant to Article 15 Bis of the LCM.

Select one of the two following options by clicking the button whose content identifies the option that best describes the situation of the commercial company and write the company name or corporate name following the word 'name/company name'.

⚬ controlling company of another commercial company(ies) named

Click here to type text

⚬ controlled by another commercial company named

Click here to type text

The domicile provided as the determinant of jurisdiction is:

Select one of the two following options by clicking the button whose content is consistent with the domicile indicated.

**Option 1**

The petitioning company, as a member of the corporate group that includes other companies jointly sued and of which it is the controlling company. Article 4, Section III and 17, second paragraph of the LCM.

**Option 2**

The petitioning company, because it considers that, of all members of the corporate group, it is the one first falling within the provisions of Articles 10 and 11 of the LCM. Article 4, Section III and 17, third paragraph of the LCM.

**Option 3**

Another company that jointly seeks to be declared in insolvency, named *Click here to type text*, because it is considered that, of all members of the corporate group, it is the one first falling within the provisions of Articles 10 and 11 of the LCM. Article 4, Section III and 17, third paragraph of the LCM.

---

**Other domiciles of the merchant:**

**Procedural:**

Boulevard Manuel Ávila Camacho number 32, Floor 11, colonia Lomas de Chapultepec, alcaldía Miguel Hidalgo, Postal Code 11000, Mexico City.

Enter the full domicile within the jurisdiction of the District Court to be designated for receiving notifications.

Offices, facilities, establishments, branches, plants, warehouses and/or storage facilities, as well as, if the petitioner is an individual, the domicile where the person lives:

*Click here to type text*

*Enter the full domicile of each of the sales offices and business establishments of the merchant that seeks to be declared in insolvency proceedings, if any.*

**Principal administration:**

Periférico Sur number 4121, colonia Fuentes del Pedregal, alcaldía Tlalpan, Postal Code 14140, Mexico City.

*Enter the full address where the principal administration of the merchant seeking to be declared in insolvency is located, even when this is not the determinant of jurisdiction.*

## Merchant Status

*In accordance with Articles 4 and 9 of the LCM, only merchants may be declared in insolvency proceedings.*

*In terms of Section II of Article 4 of the LCM, a merchant is understood to be the individual or legal entity that holds such status pursuant to the Commercial Code and includes in this concept the trust estate that is affected to the performance of business activities.*

*In accordance with Article 12 of the LCM, the succession of the merchant may be declared in insolvency proceedings when the company of the deceased continues in operation or the creditors' actions have not prescribed.*

*Pursuant to Article 14 of the LCM, the declaration of insolvency of a commercial company determines that the unlimitedly liable partners are also considered to be declared in insolvency.*

*Select one of the six following options by clicking the button preceding the paragraph whose content matches the circumstances that apply to the person seeking to be declared in insolvency and describe in form LP2/20/Annex 12, the documents that accompany this form to certify merchant status.*

### The petitioner declares to be a merchant by reason of:

**Option 2**

    ◻ The succession of the individual who held a company that:

*If this option has been selected, next click the button preceding the circumstances of operation that affect the company of the individual who is the author of the succession.*

       ◻ Continues in operation

       ◻ Has suspended its operations and the creditors' actions have not prescribed

*Once any of the two preceding options has been selected, enter the circumstances or characteristics that, in terms of Section I of Article 3 of the Commercial Code and Section II of Article 4 of the LCM, grant merchant status to the succession of the petitioner.*

*Click here to type text*

**Option 3**

    X A company incorporated under the commercial laws;

**Option 4**

    ◻ An unlimitedly liable partner of a company;

**Option 5**

    ◻ A foreign company or agency or branch thereof, that carries out commercial acts within the national territory;

**Option 6**

    ◻ Trust estate with business activity.

*Once this option has been selected, describe the characteristics of the object of the trust that, in terms of Section II of Article 4 of the LCM, determine that the activity to which the trust estate is affected is of a business nature.*

*Click here to type text*



☐ **Small merchant**

In accordance with Article 8 of the LCM, small merchants may only be declared in insolvency proceedings when they file voluntarily and agree to the application of the LCM. An amount equivalent to 400 to 1,000 UDIs may not be attributed to any merchant equal to the one whose cumulative obligations are assessed and cancelled.

If applicable, mark with the symbol X inside the box preceding the title of this section.

**The merchant executing this petition declares to be a small merchant and expressly agrees to voluntarily submit to the application of this Law.**

**Identification and legal standing of the person promoting on behalf of the merchant and of the persons authorized pursuant to Article 1069 of the Commercial Code**

[illegible text]

☒ Legal entity or trust estate        ○ Individual

**Person(s) promoting on behalf of the merchant**

If more than one person is needed to promote on behalf of the merchant, follow these steps:

1. Click on the left margin of the row at the height of the following row in which the identification data of the persons promoting on behalf of the merchant is entered. 2. Select the row. 3. Click the 'Copy' command. 4. Position the cursor in the 'Add rows' area that appears after the last row and click the 'Paste' command.

Name:

RAFAEL RODRÍGUEZ SÁNCHEZ

Enter the full name of the individual who executes the petition for declaration of insolvency proceedings.

Capacity held:

LEGAL REPRESENTATIVE

Describe the circumstances under which the person acts, whether by their own right, as attorney-in-fact, or as legal representative.

Instrument evidencing legal standing:

Public Deed number 99,377 dated November 19, 2014, executed before Licenciado José Eugenio Castañeda Escobedo, holder of Notary Public number 211 of Mexico City, registered in the Commercial Registry under number 167,346, dated July 12, 2016, and entry number 50,686.

In this case, attach the document or documents certifying that the person has the legal standing to represent the merchant seeking to be declared in insolvency proceedings and complete form I.P2/20/Annex 16.

<<Add rows>>

**Authorized person(s)**

In accordance with Article 1069 of the Commercial Code, as applicable to the LCM, the parties may authorize persons with legal capacity to act on their behalf as authorized persons.

In the first paragraph of Article 1069, the parties may authorize persons to carry out procedural notifications and steps in any or all instances, as well as to perform any act that is strictly procedural and necessary to preserve the party's rights in the proceedings. To this end, authorized persons must accredit the legal authorizations required for the profession of attorney licensed in law.

In the Second-to-last paragraph of the same Article 1069, the parties may designate persons during the proceeding who are authorized for the purpose of notifications and service of process of the initial proceeding only, and who do not require the authorizations set forth in the preceding paragraph.

To identify the persons authorized and the scope of the authorization, provide the information requested below by clicking on a required field and entering the relevant data.

If more than one authorized person is needed, follow these steps:

1. Click on the left margin of the row at the height of the following rows in which the data of the authorized persons is entered. 2. Select the rows. 3. Click the 'Copy' command. 4. Position the cursor in the '<<Add rows>>' area that appears after the last selected area and click the 'Paste' command.

| | |
|---|---|
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors.<br>Name of the authorized person: | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors.<br>Name of the authorized person: |

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR
DE JUSTICIA
DE LA CDMX
DIRECTUM TRANSLATIONS

| Alonso Rivera Gaxiola | Béla Kálloi Romero |
|---|---|
| *Enter the full name of the authorized individual.* | *Enter the full name of the authorized individual.* |
| Professional license number: | Professional license number: |
| 2758882 | 5743541 |
| *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* | *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* |
| Scope of authorization: | Scope of authorization: |
| *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* | *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* |
| X  Third paragraph of Article 1069 of the Commercial Code | ☒  Third paragraph of Article 1069 of the Commercial Code |
| ☐  Second-to-last paragraph of Article 1069 of the Commercial Code | ☐  Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party: | Name of the authorizing party: |
| TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* | *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* |
| Name of the authorized person: | Name of the authorized person: |
| Ramón Fernández Vigil | Pedro Iván Quevedo Ramos |
| *Enter the full name of the authorized individual.* | *Enter the full name of the authorized individual.* |
| Professional license number: | Professional license number: |
| 7571118 | 6147032 |
| *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* | *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* |
| Scope of authorization: | Scope of authorization: |
| *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* | *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* |
| ☒  Third paragraph of Article 1069 of the Commercial Code | ☒  Third paragraph of Article 1069 of the Commercial Code |
| ☐  Second-to-last paragraph of Article 1069 of the Commercial Code | ☐  Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party: | Name of the authorizing party: |
| TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* | *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* |
| Name of the authorized person: | Name of the authorized person: |
| Alejandro del Castillo Ramírez | Rodrigo Lagos Scherer |
| *Enter the full name of the authorized individual.* | *Enter the full name of the authorized individual.* |
| Professional license number: | Professional license number: |
| 6024819 | 9347274 |
| *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* | *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* |
| Scope of authorization: | Scope of authorization: |
| *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* | *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* |
| ☒  Third paragraph of Article 1069 of the Commercial Code | ☒  Third paragraph of Article 1069 of the Commercial Code |
| ☐  Second-to-last paragraph of Article 1069 of the Commercial Code | ☐  Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party: | Name of the authorizing party: |
| TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* | *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* |
| Name of the authorized person: | Name of the authorized person: |
| Diego Machuca Rojas | Rafael Eugenio Plancarte Gómez |
| *Enter the full name of the authorized individual.* | *Enter the full name of the authorized individual.* |



| | |
|---|---|
| Professional license number:<br>11873770<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code | Professional license number:<br>9244100<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Andrea Jiménez Aguilar<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>15006300<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Laura Miroslava Medina Arellano<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>14772428<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Diego Roberto Espinosa Arzani<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>14772446<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Javier Hernández Sierra<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>12917838<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Daniel Ávila Monroy<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>14156013 | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Fernando Arsenio López Sánchez<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>12955959 |



DAVID SURO CÁRCAMO · PERITO TRADUCTOR · TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX · DIRECTUM TRANSLATIONS

| | |
|---|---|
| Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. | Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. |
| Scope of authorization:<br>Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.<br><br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code | Scope of authorization:<br>Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.<br><br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors. | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors. |
| Name of the authorized person:<br>Jose Damian Carvajal Arroyo<br>Enter the full name of the authorized individual. | Name of the authorized person:<br>Alfredo Vázquez Meyer<br>Enter the full name of the authorized individual. |
| Professional license number:<br>14149587<br>Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. | Professional license number:<br>Click here to type text<br>Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. |
| Scope of authorization:<br>Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.<br><br>☒ Third paragraph of Article 1069 of the Commercial Code<br>☐ Second-to-last paragraph of Article 1069 of the Commercial Code | Scope of authorization:<br>Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.<br><br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors. | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors. |
| Name of the authorized person:<br>Fernando Dueñes Arias<br>Enter the full name of the authorized individual. | Name of the authorized person:<br>Juan Pablo Reyes de la Mora<br>Enter the full name of the authorized individual. |
| Professional license number:<br>Click here to type text<br>Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. | Professional license number:<br>Click here to type text<br>Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. |
| Scope of authorization:<br>Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.<br><br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code | Scope of authorization:<br>Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.<br><br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors. | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>Enter the full name of the party authorizing, whether the merchant or one of the creditors. |
| Name of the authorized person:<br>Emilio Díaz Vázquez<br>Enter the full name of the authorized individual. | Name of the authorized person:<br>Iván Jesús Alatorre García<br>Enter the full name of the authorized individual. |
| Professional license number:<br>Click here to type text<br>Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. | Professional license number:<br>Click here to type text<br>Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law. |
| Scope of authorization: | Scope of authorization: |

Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.

☐ Third paragraph of Article 1069 of the Commercial Code

☒ Second-to-last paragraph of Article 1069 of the Commercial Code

**Name of the authorizing party:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE
*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*

**Name of the authorized person:**
Krishna Santiago Cisneros Ramos
*Enter the full name of the authorized individual.*

**Professional license number:**
Click here to type text
*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*

**Scope of authorization:**
*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*

☐ Third paragraph of Article 1069 of the Commercial Code

☒ Second-to-last paragraph of Article 1069 of the Commercial Code

**Name of the authorizing party:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE
*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*

**Name of the authorized person:**
Alan Said Merchant Granados
*Enter the full name of the authorized individual.*

**Professional license number:**
Click here to type text
*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*

**Scope of authorization:**
*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*

☐ Third paragraph of Article 1069 of the Commercial Code

☒ Second-to-last paragraph of Article 1069 of the Commercial Code

**Name of the authorizing party:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE
*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*

**Name of the authorized person:**
Iker Alonso Vega Dulac
*Enter the full name of the authorized individual.*

**Professional license number:**

*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*

**Scope of authorization:**
*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*

---

Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.

☐ Third paragraph of Article 1069 of the Commercial Code

☒ Second-to-last paragraph of Article 1069 of the Commercial Code

**Name of the authorizing party:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE
*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*

**Name of the authorized person:**
Christian Carlo Niño Martínez
*Enter the full name of the authorized individual.*

**Professional license number:**
Click here to type text
*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*

**Scope of authorization:**
*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*

☐ Third paragraph of Article 1069 of the Commercial Code

☒ Second-to-last paragraph of Article 1069 of the Commercial Code

**Name of the authorizing party:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE
*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*

**Name of the authorized person:**
Hugo Eduardo Hernández Vázquez
*Enter the full name of the authorized individual.*

**Professional license number:**
Click here to type text
*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*

**Scope of authorization:**
*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*

☐ Third paragraph of Article 1069 of the Commercial Code

☒ Second-to-last paragraph of Article 1069 of the Commercial Code

**Name of the authorizing party:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE
*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*

**Name of the authorized person:**
Marco Antonio López Gastelum
*Enter the full name of the authorized individual.*

**Professional license number:**
Click here to type text
*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*

**Scope of authorization:**
*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*

DAVID SURO CARCAMO
PERITO TRADUCTOR
TRIBUNAL SUPERIOR
DE JUSTICIA
DE LA CDMX
DIRECTUM TRANSLATIONS

| | |
|---|---|
| ☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code | ☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors*<br>Name of the authorized person:<br>Karla Gabriela Tapia Tlapanco<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br><br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted*<br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Vicente Ávila Zúñiga<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>*Click here to type text*<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Salvador Montes de Oca Mendoza<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br><br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Balfré Morales Lozano<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>*Click here to type text*<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Diego Francisco Quiroz Díaz<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br><br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br>Name of the authorized person:<br>Lilian Michelle Hernández Guzmán<br>*Enter the full name of the authorized individual.*<br>Professional license number:<br>*Click here to type text*<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br>☐ Third paragraph of Article 1069 of the Commercial Code<br>☒ Second-to-last paragraph of Article 1069 of the Commercial Code |

DAVID SURO CARCAMO<br>PERITO TRADUCTOR<br>TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX<br>DIRECTUM TRANSLATIONS

| | |
|---|---|
| Name of the authorizing party:<br>**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br><br>Name of the authorized person:<br>Lenin Escudero Calderón<br>*Enter the full name of the authorized individual.*<br><br>Professional license number:<br><br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br><br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br><br>  ☐ Third paragraph of Article 1069 of the Commercial Code<br>  ☒ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br><br>Name of the authorized person:<br>Anuar Tanus Chedraui<br>*Enter the full name of the authorized individual.*<br><br>Professional license number:<br>*Click here to type text.*<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br><br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br><br>  ☐ Third paragraph of Article 1069 of the Commercial Code<br>  ☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br><br>Name of the authorized person:<br>Laura Elena Lemus Guzmán<br>*Enter the full name of the authorized individual.*<br><br>Professional license number:<br><br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br><br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br><br>  ☐ Third paragraph of Article 1069 of the Commercial Code<br>  ☒ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br><br>Name of the authorized person:<br>Ximena Andrea Becerra Ramos<br>*Enter the full name of the authorized individual.*<br><br>Professional license number:<br>*Click here to type text.*<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br><br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br><br>  ☐ Third paragraph of Article 1069 of the Commercial Code<br>  ☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party:<br>**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br><br>Name of the authorized person:<br>Pamela Johanni Morán Herrera<br>*Enter the full name of the authorized individual.*<br><br>Professional license number:<br><br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br><br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br><br>  ☐ Third paragraph of Article 1069 of the Commercial Code<br>  ☒ Second-to-last paragraph of Article 1069 of the Commercial Code | Name of the authorizing party:<br>**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**<br>*Enter the full name of the party authorizing, whether the merchant or one of the creditors.*<br><br>Name of the authorized person:<br>Alan Santiago González Arellano<br>*Enter the full name of the authorized individual.*<br><br>Professional license number:<br>*Click here to type text.*<br>*Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.*<br><br>Scope of authorization:<br>*Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.*<br><br>  ☐ Third paragraph of Article 1069 of the Commercial Code<br>  ☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party: | Name of the authorizing party: |

DAVID SURO CÁRCAMO<br>PERITO TRADUCTOR<br>TRIBUNAL SUPERIOR DE JUSTICIA DE LA CDMX<br>DIRECTUM TRANSLATIONS

| TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
|---|---|
| *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* | *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* |
| Name of the authorized person: | Name of the authorized person: |
| Emiliano Manuel González Ballesteros | Enrique Domínguez Hernández |
| *Enter the full name of the authorized individual.* | *Enter the full name of the authorized individual.* |
| Professional license number: | Professional license number: |
| | *Click here to type text.* |
| *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* | *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* |
| Scope of authorization: | Scope of authorization: |
| *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* | *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* |
| ☐ Third paragraph of Article 1069 of the Commercial Code | ☐ Third paragraph of Article 1069 of the Commercial Code |
| ☒ Second-to-last paragraph of Article 1069 of the Commercial Code | ☒ Second-to-last paragraph of Article 1069 of the Commercial Code |
| Name of the authorizing party: | Name of the authorizing party: |
| TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* | *Enter the full name of the party authorizing, whether the merchant or one of the creditors.* |
| Name of the authorized person: | Name of the authorized person: |
| Lucca Alvar Ruiz | Paulina Mathurin Motta |
| *Enter the full name of the authorized individual.* | *Enter the full name of the authorized individual.* |
| Professional license number: | Professional license number: |
| | *Click here to type text.* |
| *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* | *Enter the data from the document certifying that the authorized person is legally entitled to practice as an attorney or licensed in law.* |
| | *[illegible text]* |
| Scope of authorization: | Scope of authorization: |
| *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* | *Mark with an X inside the box identifying the paragraph corresponding to the scope of the authorization granted.* |
| ☐ Third paragraph of Article 1069 of the Commercial Code | ☐ Third paragraph of Article 1069 of the Commercial Code |
| ☒ Second-to-last paragraph of Article 1069 of the Commercial Code | ☒ Second-to-last paragraph of Article 1069 of the Commercial Code |

---

### ☐ Consolidation of Proceedings. Section 1

*In accordance with the provisions of Articles 14, 15, and 15 Bis of the LCM, it is possible for insolvency proceedings to be consolidated when they are filed separately by members of the same corporate group by reason of the subsidiary liability relationship they share.*

*[illegible]* mark with the symbol X inside the box preceding the title of this section.

*[illegible]* information requested below and complete form LP2/20/Section 1.

*[illegible]* the box preceding the paragraph identifying the consolidation situation that updates and is applicable to the corresponding option.

☐ Consolidation of the proceeding initiated by this petition with the proceeding filed before this Court under case file _____, under case file _____, relating to the insolvency proceeding of the merchant _____, is requested, given that, of the circumstances provided for in Articles 14, 15, and 15 Bis of the LCM with respect to the petitioner, those specified in form LP2/20/Section 1 are updated.

☐ Consolidation of the proceeding(s) initiated by this petition with the proceeding(s) of the merchant(s) _____, which jointly file petitions for declaration of insolvency proceedings, is requested, given that, of the circumstances provided for in Articles 14, 15, and 15 Bis of the LCM with respect to the petitioner, those specified in form LP2/20/Section 1 are updated.



## Declaration of General Default or Imminent General Default on the Merchant's Payment Obligations. Section 2

In accordance with the provisions of Article 20 of the LCM, the merchant that considers it has incurred or that general default on its obligations is imminent, in terms of any of the grounds established in Articles 10 and 11 of this law, must declare what has occurred.

In accordance with the provisions of Article 20 Bis of the LCM, the merchant that considers it will incur in general default on its obligations in terms of any of the grounds established in Articles 10 and 11 of this law, must declare under oath of truth what is imminent.

Pursuant to the second paragraph of the aforementioned Article 20 Bis, it must be understood that any of the grounds established in Articles 10 and 11 of the LCM are imminent within a period not exceeding 90 days from this date.

Provide the information relevant to the default situation on the merchant's payment obligations, complete form LP2/20/Section 2 and attach it to this form.

Select one of the two following options by clicking the button preceding the option that corresponds to the default status on the merchant's payment obligations

| | |
|---|---|
| • The merchant declares to have defaulted on its payment obligations to two or more creditors for different reasons because, as evidenced by the content of form LP2/20/Section 2, it has incurred in the circumstance(s) of subsection(s) (I and/or II) of Article 10 of the LCM. | ○ The merchant declares under oath of truth that as of the date *Click here to type text*, it will incur in default on its payment obligations to two or more creditors for different reasons because, as evidenced by the content of form LP2/20/Section 2, it is imminent that it will be found in the circumstance(s) of subsection(s) (I and/or II) of Article 10 of the LCM. |

## Petition

In accordance with Article 20 of the LCM, the merchant that considers it has incurred or that general default is imminent on its obligations may, in this case if its filing is admitted, be opened at the stage of conciliation; except when the petitioner requests its insolvency be declared in the stage of bankruptcy, in terms of Section V and Article 43 of the LCM.

To provide the information for the formal petition to be declared in insolvency proceedings, provide the information requested below.

In the space following the phrase "The merchant..." enter the full name of the individual or the company name or corporate name of the legal entity that seeks to be declared in insolvency proceedings.

In the space following the phrase "...at the stage of..." indicate the stage that is requested to be initiated in an insolvency proceeding.

The merchant **TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**, requests to be declared in insolvency proceedings at the stage of **CONCILIATION**, pursuant to the provisions of Article 20 of the LCM, given that this petition meets all requirements and attaches the documents indicated in said article, and likewise declares that with respect to the declaration of general default on its payment obligations the requirements of the aforementioned Article 20 or 20 Bis of the LCM are met, as evidenced by the content of form LP2/20/Section 2.

## Statement of Facts

State the facts supporting the petition in a clear, accurate, and precise manner, in accordance with the provisions of Section III of Article 323 of the Federal Code of Civil Procedure, as supplementary to the LCM.

Use as many sheets as necessary.

1.- **TV AZTECA** was incorporated on June 2, 1993, originally under the corporate name of **CONTROLADORA MEXICANA DE COMUNICACIONES, S.A. DE C.V.** (hereinafter "**CMC**") with domicile in Mexico City, duration of ninety-nine years. variable capital stock, with a minimum fixed amount of $50,000.00 Pesos (fifty thousand pesos 00/100 M.N.) and unlimited maximum, with a foreigners exclusion clause.

2.- By means of an Extraordinary General Shareholders' Meeting held on July 18, 1996, the resolution was adopted, among others, to change the corporate name from **CONTROLADORA MEXICANA DE COMUNICACIONES, S.A. DE C.V.** to **TV AZTECA, S.A. DE C.V.**, amending the First Clause of its Bylaws to such effect, as recorded in public deed number 49,317 dated September 3, 1996, executed before Licenciado Armando Gálvez Pérez Aragón, Notary Public number 103 of Mexico City.

3.- By means of an Ordinary and Extraordinary General Shareholders' Meeting of TV AZTECA, S.A. DE C.V., held in Mexico City on August 19, 2010, the transformation of TV AZTECA, S.A. DE C.V. into the modality of SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE was resolved, amending to such effect the First, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Twelfth, Thirteenth, Fourteenth, Sixteenth, Eighteenth, Nineteenth, Twenty-First, Twenty-Second, Twenty-Fourth, Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, Twenty-Ninth, Thirtieth, Thirty-First, Thirty-Second, Thirty-Third, Thirty-Fourth, and Thirty-Sixth Clauses of its Bylaws.

As a consequence of the foregoing, the corporate name of the company was updated to the current terms, namely: **TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE (TV AZTECA, S.A.B. DE C.V.)**, with BMV Ticker: AZTECA CPO and LATIBEX Ticker: XTZA, as recorded in Policy number 8,970, dated August 26, 2010, granted before Licenciado Mauricio Alejandro Oropeza Estrada, Public Broker (*Corredor Público*) number 14 of Mexico City.

4.- On December 23, 2021, the **merger** of **TV AZTECA, S.A.B. DE C.V.** — *as the surviving merging company* — with the companies listed below — *as the merged companies that ceased to exist* — was recorded: (i) Administradora Grupo TVA, S.A. de C.V.; (ii) Alta Empresa II, S.A. de C.V.; (iii) Azteca Novelas, S.A.P.I. de C.V.; (iv) Azteca Telecasting, S. de R.L. de C.V.; (v) Azteca Web, S.A. de C.V.; (vi) Comercializadora en Medios de Comunicación de TV Azteca, S.A. de C.V.; (vii) Comerciacom, S.A. de C.V.; (viii) Comercializadora de Publicidad Azteca, S.A. de C.V.; (ix) Estudios Azteca, S.A. de C.V.; (x) Finbor México, S.A. de C.V.; (xi) Grupo TV Azteca, S. de C.V.; (xii) Inversora Mexicana de Producción, S.A. de C.V.; (xiii) Profesionales y Administrativos en Servicios Inmobiliarios, S.A. de C.V.; (xiv) Red Azteca Internacional, S.A. de C.V.; (xv) Televisión Azteca, S.A. de C.V.; and (xvi) TV Azteca Comercializadora, S.A. de C.V.

5.- The corporate purpose of **TV AZTECA** today is as follows:

"*[...]*"

*1.- To use, exploit, operate and manage public or private radioelectric spectrum frequency bands for telecommunications, as well as to provide public radio broadcasting and telecommunications services, through its own or third-party concessions, to carry out lease arrangements, authorizations, and permits granted by the competent authorities or through any other legally permitted form, as well as the sale and/or commercialization of audiovisual content and advertising spaces in any medium.*

*2.- Acquisition, distribution, assignment, representation, importation, exportation, use, exchange, application, or any other form of contracting of all types of events or audiovisual works, including their broadcast rights by any medium, in its own name or on behalf of or as representative of third parties, in Mexico and abroad.*

*3.- To promote, incorporate, organize, exploit, and take equity interests in the capital and assets of all types of commercial, civil, industrial, service, or any other nature companies; to transfer or negotiate such shares or equity interests and all types of securities permitted by law, both domestic and foreign, as well as to participate in their management or liquidation.*

*4. To receive from other companies and individuals all services necessary for the achievement of its activities, such as legal, tax, administrative, financial, treasury, audit, marketing, balance sheet and budget preparation, program and manual development; analysis of operating results, productivity assessment and possible financing options, as well as the preparation of studies on capital availability, among others.*

*5. To issue, subscribe, accept, endorse, and guarantee credit instruments, securities, and other documents permitted by law.*

*6. To acquire, transfer, lease, sublease, and grant the use, enjoyment, disposition, or in general the exploitation of all types of movable or immovable assets, including their parts or accessories; as well as real or personal rights thereto, when necessary or appropriate for its corporate purpose or*



for the operations of commercial or civil companies, associations, and institutions in which the company has an interest or participation.

7. To obtain and grant all types of loans, as well as to receive, as applicable, guaranties, to issue obligations and promissory notes, to accept, execute, endorse, or guarantee all types of credit instruments and other documents evidencing rights of credit; to grant sureties or guaranties of any class for obligations assumed by the company and with respect to obligations assumed by or instruments issued or accepted by third parties.

8. To register, purchase, lease, assign, renew, license, verify the use, and dispose of trademarks, patents, invention certificates, trade names, industrial designs, commercial notices, model registrations, copyrights, inventions and processes, and all other industrial and intellectual property rights.

9. In general, to carry out all types of commercial acts and enter into all types of contracts and agreements, as well as transactions of any nature that are necessary or appropriate for the fulfillment of the foregoing purposes, within the terms of the Law.

"[...]"

The facts set forth under items 1.-, 2.-, 3.-, 4.-, and 5.- are evidenced by a certified copy of Public Deed number 184,840 dated July 26, 2025, executed before Licenciado Eduardo Garduño García Villalobos, holder of Notary Public number 135 of Mexico City, attached hereto as Exhibit to Form LP 2/20/Annex 12.

## (B) SHAREHOLDER COMPOSITION OF TV AZTECA.

6.- The shareholder composition of **TV AZTECA**, as of the date of this petition, is as shown below:

| SHAREHOLDER | SHAREHOLDING PERCENTAGE |
|---|---|
| COMUNICACIONES AVANZADAS, S.A. DE C.V. | 66.54% |
| RICARDO BENJAMÍN SALINAS PLIEGO | 4.14% |
| TECNOIDEAS PARA LA VIVIENDA, S.A. DE C.V. | 5.10% |
| FONDO GLOBAL | 8.06% |
| INVESTING PUBLIC | 16.17% |
| **TOTAL** | **100.00%** |

7.- The shares representing the capital stock of **TV AZTECA** are divided into four series:

a) Series "A": There are currently 4,759,228,375 shares. These are the only shares with full voting rights. Comunicaciones Avanzadas, S.A. de C.V. (hereinafter and for procedural purposes "CASA") currently directly owns the majority of the Series "A" shares in circulation.

b) Series "D-A" and Series "D-L": There are currently 2,289,345,472 shares of each Series. The "D-A" shares and "D-L" shares have limited voting rights on the following matters: (i) extension of the duration of **TV AZTECA** beyond June 2092, (ii) early dissolution of **TV AZTECA**; (iii) change of corporate purpose of TV Azteca; (iv) change of nationality of **TV AZTECA**;

(v) the transformation of **TV AZTECA**; (vi) merger with another company, and (vii) cancellation of the registration of the "D-A" shares and "D-L" shares in the National Securities Registry and in the stock exchanges where they are listed.

c) Series "L": These shares are authorized but have not yet been issued. **TV AZTECA** expects to issue these shares in August 2037, when the D-L shares will be converted into Series "L" shares.

8.- As of this date, the authorized capital stock of **TV AZTECA** amounts to $715,870,000.00 pesos. The total number of shares representing it amounts to 10,545,934,472 shares, of which 9,337,919,319 are issued shares and 1,207,915,153 are treasury shares. This amount is in turn divided into the series indicated below as follows: Series "A" with 4,759,228,375 shares, Series "D-A" with 2,289,345,472 shares, and Series "D-L" with 2,289,345,472 shares. The foregoing is set forth as follows:

| Type | Issued Shares | Paid-in Shares | Capital Stock |
|---|---|---|---|
| Series "A" | 4,759,228,375 | 4,632,625,000 | $373,070,000.00 |
| Series "D-A" | 2,289,345,472 | 2,162,742,000 | $171,400,000.00 |
| Series "D-L" | 2,289,345,472 | 2,162,742,000 | $171,400,000.00 |
| Total | 9,337,919,319 | 8,958,109,000 | $715,870,000.00 |

The fixed capital stock of **TV AZTECA** amounts to $664,930,375.00 (Six hundred sixty-four million nine hundred thirty thousand three hundred seventy-five pesos 00/100 M.N.), which is fully subscribed and paid in and is represented by common, ordinary shares of Series "A" and limited voting shares of Series "D-A" and "D-L", all without par value.

9.- The shares of **TV AZTECA** are listed on the following stock exchanges: (i) Ordinary Participation Certificates (CPOs), each representing one Series A share, one Series D-A share, and one Series D-L share, with BMV Ticker: AZTECACPO, on the Bolsa Mexicana de Valores; and (ii) Units of 10 CPOs, Ticker: XTZA, on the Mercado de Valores de Latinoamérica ("LATIBEX").

10.- On February 27, 2026, the *Comisión Nacional Bancaria y de Valores* (National Banking and Securities Commission), through Official Letter No. 153/4640/2026, initiated the cancellation procedure for the registration of TV AZTECA's securities in the National Securities Registry (*Registro Nacional de Valores*), on the grounds set forth in said official letter, requiring TV AZTECA to carry out a public tender offer as provided under Section 1 of Article 108 of the *Ley del Mercado de Valores* (Stock Market Law), whereby TV AZTECA was required, within a maximum period of 180 calendar days from the date such requirement took effect, to fulfill the establishment of the trust referred to in Article 108, Section 1, subsection c) of the *Ley del Mercado de Valores* prior to the cancellation of the registration of the securities, and to present to the *Comisión Nacional Bancaria y de Valores* evidence of having affected said trust with the resources necessary to acquire the securities of investors considered as the general investing public. The aforementioned trust must at all times hold the aforementioned resources for a minimum period of six months from the date of cancellation of the registration of the securities in the National Securities Registry.

11.- On February 27, 2026, and in compliance with the provisions of the official letter referred to in item 14 above, TV AZTECA established the trust referred to in item 14 above, which as of March 06, 2026 was funded in the amount of $322,983,165.42 (Three hundred twenty-two million nine hundred eighty-three thousand one hundred sixty-five pesos 42/100, M.N.).

## (C) DESCRIPTION OF TV AZTECA'S BUSINESS.

12.- TV AZTECA is one of the two most important Spanish-language television content producers in the world and the second largest television content producer in Mexico based on audience and market share.

### TV AZTECA Mexican Television Channels.

13.- TV AZTECA is currently the majority shareholder of 2 (two) concessionaire companies that directly operate 180 independent over-the-air digital television channels distributed throughout the national territory. These channels are operated independently, within the programming content broadcast through their signals with diverse content according to the coverage that each of said channels has. Said channels are commercially identified in their concession titles as Azteca 7, Azteca Uno, and adn Noticias.

The channels are operated from 504 over-the-air digital television transmitters, comprising 180 main concession stations and 324 complementary units, located throughout Mexico with 24-hour, seven-days-a-week programming, including channel 26 to broadcast the programming content known as adn Noticias in Mexico City. In the case of adn Noticias programming content, the subsidiary concessionaire of TV AZTECA multi-programs it on 70 main stations with their respective complementary equipment located in the interior of Mexico, which was duly authorized at the time by the Instituto Federal de Telecomunicaciones ("IFT").

Likewise, in 2017, through multi-programming, the channel known as adn Noticias was launched, which since March 31, 2020 is broadcast on 54 main stations with their respective complementary equipment.

14.- TV AZTECA has 28 (twenty-eight) branches distributed in different parts of Mexico, of which 7 (seven) have the infrastructure to produce and broadcast local content, mainly local news and sports for each locality, for the 842 (eight hundred forty-two) concession over-the-air television transmitters, including commercial announcements, programs, and government and electoral spots, in each of them.

### Programming.

15.- TV AZTECA's capacity to provide a diverse mix of quality content is one of the main factors for maintaining and increasing the popularity of its programming and consequently its economic sustainability.

For the foregoing reasons, TV AZTECA focuses on producing and acquiring content that attracts its different audiences, considering that the development of separate identities for its channels has helped it capture an important segment of the Mexican audience and has offered its advertisers the opportunity to adjust their advertising to specific demographic groups.

16.- TV AZTECA's business model — *operationally and economically* — is sustained on 3 (three) fundamental pillars, namely:

(i) **In-House Content**: refers to original and proprietary content, developed and produced by TV AZTECA, aimed at meeting the primary needs of its audience. This allows the company to constantly adapt to the trends appearing in a market characterized by dynamism, in order to offer people the best possible offering through different platforms.

(ii) **Acquired Programming**: with the objective of maximizing the content offering and maintaining a high competitive level against its main competitors, TV AZTECA pays and/or acquires content, for example, series, films,

and others. Acquired programming is one of the most significant costs in the operation of **TV AZTECA**, and at the same time one that is indispensable for its profitability as a business.

(iii) **Strategic Alliances**: seeking to maximize its profitability, **TV AZTECA** enters into cooperation agreements with partners with whom alliances or mergers are created, and from which it develops content that is relevant to all parties.

## Content Produced by TV AZTECA

17.- TV AZTECA, through its subsidiaries, produces a variety of programs, including series, reality television, news programs, sports broadcasts, music programs, game shows, talk shows, and variety shows.

18.- TV AZTECA, through its subsidiaries, produces innovative, high-quality entertainment content to reach an ever-growing audience year after year. Among programs produced, directly or indirectly, by the company are, for example: *"Master Chef"*, *"Exatlón"*, *"Survivor"*, *"La Academia"* and *"La Voz"*.

19.- TV AZTECA's news programming, through its subsidiaries, includes

news broadcasts in morning, afternoon, and prime-time evening slots, aimed at the target audiences of its television channels. The news program *"Hechos"*, which provides a more in-depth analysis of daily domestic and international news, is one of the most relevant news programs in Mexico. Likewise, each adn Noticias news and analysis program broadcasts the news in a different style led by renowned personalities and opinion leaders. Additionally, news segments are produced for broadcast within local programming, news updates, and special programs.

20.- Sports programming produced by **TV AZTECA**, through its subsidiaries, consists primarily of broadcasts of matches of the Mexican Professional Soccer First Division tournament, as well as sports commentary programs and the production of various sporting events. Soccer is the most popular sport in Mexico and the broadcasts of Primera División matches generate large audiences. TV AZTECA — *directly or indirectly* — holds the broadcast rights for home matches of 6 (six) Primera División teams commercially known as *"Liga MX"*.

21.- During 2023, the costs incurred by **TV AZTECA** for in-house content production amounted to approximately $6,797,000,000 (Six billion seven hundred ninety-seven million pesos M.N.).

22.- During 2024, the costs incurred by **TV AZTECA** for in-house content production amounted to approximately $8,008,000,000 (Eight billion eight million pesos M.N.).

23.- During 2025, the costs incurred by **TV AZTECA** for in-house content production amounted to approximately $7,976,000,000 (Seven billion nine hundred seventy-six million pesos M.N.).

## Acquired Programming

24.- Content acquisition enables **TV AZTECA** to maximize its content offering and maintain a high competitive level against its main competitors — *such as "TELEVISA"* —, however, it also gives rise to significant costs, which are indispensable for its profitability as a business.

25.- TV AZTECA purchases programming from approximately 30 (thirty) different distributors, in order to respond to the different audience needs; a substantial portion of the acquired programming comes from major studios such as: Buena Vista Internacional (Disney), Sony Pictures, Universal, as well as various independent providers, such as Gussi.

26.- TV AZTECA's acquired programming includes primarily internationally recognized films and series. Programs that are not in Spanish and are purchased for TV AZTECA's channels are dubbed into Spanish prior to delivery through payment of an additional fee to the distributor for this service.

27.- TV AZTECA also enters into contracts to broadcast sports programming, including matches from the FIFA World Cup, the Olympic Games, and games of the National Football League (NFL). Likewise, TV AZTECA enters into contracts for the broadcast of special events such as Miss Universe and the Academy Awards, among others.

28.- Acquired programming in 2023, 2024, and 2025 constitutes approximately 39%, 40%, and 38%, respectively, of prime-time combined weekday programming hours broadcast on TV AZTECA's channels for each of the aforementioned years.

29.- During 2023, the costs incurred by TV AZTECA for content acquisition amounted to approximately $2,540,000,000 (Two billion five hundred forty million pesos M.N.).

30.- During 2024, the costs incurred by TV AZTECA for content acquisition amounted to approximately $2,307,000,000 (Two billion three hundred seven million pesos M.N.).

31.- During 2025, the costs incurred by TV AZTECA for content acquisition amounted to approximately $2,485,000,000 (Two billion four hundred eighty-five million pesos M.N.).

### Digital Initiatives.

32.- Starting in 2018, TV AZTECA initiated a review and consolidation phase of its digital initiatives. The objective was to assess the status of ongoing digital projects — including platforms, technological tools, providers, and monetization models — and to define a more structured strategy for the company's digital growth.

As a result of this process, a roadmap was established focused on three main areas: (i) Expanding content distribution on digital platforms; (ii) Increasing audience reach in digital environments; and (iii) Developing new monetization models associated with those audiences.

33.- During the period 2018–2024, various initiatives were implemented to strengthen the company's digital ecosystem.

One of the first relevant stages was the development of *"second screen"* experiences, designed to complement television broadcasting with additional digital content and real-time audience interaction. These initiatives included digital experiences associated with programs such as *"La Academia"*, as well as the creation of complementary digital shows related to content such as *"Venga la Alegría"*, *"MasterChef"*, and other entertainment formats.

Podcasts and digital conversation spaces were also developed within these initiatives, aimed at expanding audience interaction on digital platforms while programs were being broadcast on television.

34.- In parallel, during the digital coverage of the 2018 Russia World Cup, content associated with live events was strengthened and new digital distribution formats were tested. During this same period, exclusive agreements were established with

Facebook for the distribution of digital content, which allowed the reach of these experiences to be expanded to audiences on social platforms.

35.- Subsequently, the digital strategy continued to evolve through the launch of new digital sites, with the objective of expanding the distribution of informational and entertainment content in digital environments.

As a result of these initiatives, the company achieved the top position in Comscore digital audience measurements, also recording sustained growth on social networks.

36.- To strengthen digital capabilities, technological tools aimed at audience data management and analysis were also implemented. Among these initiatives are the implementation of a Data Lake (centralized data repository) and a Customer Data Platform (CDP), tools that allow audience information to be organized and advertising segmentation to be improved.

Likewise, digital distribution channels were expanded through the development of FAST channels (Free Ad-Supported Streaming TV) and the creation of applications for CTV platforms such as Roku, Google TV, and Fire TV, enabling content to be available on new devices and digital platforms.

37.- The growth of digital audiences enabled the strengthening of the company's digital commercial model. During this period, a commercial structure focused on digital advertising was developed, which allowed the commercialization of audiences on digital platforms to be increased.

As a result, revenues associated with digital advertising recorded significant growth during the analyzed period, including commercial activations related to high-impact events such as the 2018 Russia World Cup and the Paris 2024 Olympic Games.

38.- The development of these digital initiatives has involved the collaboration of various strategic partners and specialized providers, who have contributed to enabling technological, operational, and commercial capabilities.

39.- Among these collaborations, agreements stand out for content distribution with

platforms such as Claro Video during events such as the Paris Olympic Games, as well as commercial agreements with streaming platforms such as Tubi and Pluto.

<u>Main Costs of TV AZTECA.</u>

40.- The most significant variable operating costs of **TV AZTECA** are related to its programming, whether produced in-house, co-produced, or acquired. The cost of in-house produced content varies considerably depending on the type of programming. Additionally, the production of live series and entertainment is more expensive relative to the production of other types of programs.

The programming, production, and transmission costs for **TV AZTECA**'s 2025 fiscal year amounted to approximately $10,461,000,000 (Ten billion four hundred sixty-one million pesos M.N.), while in 2024 they amounted to approximately $10,316,000,000 (Ten billion three hundred sixteen million pesos M.N.).

41.- Given the foregoing, if **TV AZTECA** does not effectively manage the costs of programming produced in-house or acquired through exhibition rights, its programming costs may increase at a higher rate than advertising revenues. If such costs increase substantially, **TV AZTECA**'s operating results may be adversely affected.

## Main Revenues of TV AZTECA.

42.- TV AZTECA generates revenues through various sources, including among others: (i) advertising sales; (ii) content sales by the company, both within and outside Mexico; and (iii) the organization of sporting events.

43.- The main revenue source of **TV AZTECA** derives from advertising sales to its clients and/or advertisers, which are closely related to programming, whether produced or acquired, given that advertising rates depend on the quality and/or popularity of programming broadcast by **TV AZTECA**.

44.- In 2025, the most important advertisers of **TV AZTECA** were: Procter & Gamble México, Genomma, Lab Internacional, Frabel, Bayer de México, Bimbo, Cervezas Cuauhtémoc Moctezuma, Nueva Elektra del Milenio, Havas Media, Mondeléz México, Deremate.Com de México. The ten most important advertisers of **TV AZTECA** together with its subsidiaries represented approximately 14% of **TV AZTECA**'s net revenues. The termination of **TV AZTECA**'s relationship with any of its main advertisers could affect its operating results.

45.- National advertising represented approximately 68% (Sixty-eight percent) of **TV AZTECA**'s total net sales in 2024 and 2025, which demonstrates that it is the main revenue source of **TV AZTECA**, year after year.



## (D) MACROECONOMIC AND POLITICAL CONTEXT.

46.- The macroeconomic context of recent years—*2018 to 2025*—resulted in **TV AZTECA** failing to deliver the expected results; in fact, various circumstances caused its results to be negative during 2020 and even in subsequent years, which has impacted its financial situation, including in the long term. This context is explained below:

(a) **PUBLIC AND POLITICAL PRESSURE:** It should be noted that there was an increase in public, institutional, and media pressure regarding: (i) the collection of existing tax debts owed by **TV AZTECA**; the tax component ceased to be an abstract contingency and became a certain and imminent risk to the company's operational continuity; and (ii) the liabilities arising from the notes issued by the Company in the United States.

### (i) Tax Liabilities.

In fact, **TV AZTECA** was facing litigation over debts or loans determined by the tax authority for the following amounts: (i) $3,902,000,000.00 (Three billion nine hundred two million pesos M.N.) for Income Tax for the 2009 fiscal year (including fines and surcharges); and (ii) $4,790,000,000.00 (four billion seven hundred ninety million pesos 00/100 M.N.) corresponding to income tax for the 2013 fiscal year (including fines and surcharges).

This situation became particularly risky for the viability of **TV AZTECA**, given that the Federal Tax Code empowers the tax authority to enforce loans through administrative enforcement proceedings, as well as mechanisms with immediate cash flow impact, such as: (i) the freezing of the taxpayer's bank deposits (Article 156-Bis), and (ii) the seizure of cash on hand, with the withdrawal of up to a certain percentage of cash receipts, and the possibility of converting the seizure into administratorship (Articles 164 and 165).

*In this context, public and institutional pressure—by increasing the risk of tax enforcement and immediate cash flow disruption   forced the company to prioritize liquidity to avoid critical operational disruptions.*

Therefore, faced with the imminence of enforcement measures and the potential loss or restriction of cash, the company was compelled to obtain and/or use additional and urgent financing **to address its tax liabilities and mitigate the risk of operational paralysis.**

This directly impacted the company's viability as a productive entity: **the withdrawal or immobilization of cash and/or the increase in financial liabilities (interest costs, guarantees, maturities) reduced the ability to meet ordinary operating obligations (salaries, supplies, broadcasting, critical suppliers) and raised the risk of default to various creditors.**



This context compelled **TV AZTECA** to secure urgent financing—*with the consequences that this entails*—from Alter Bank LTD in the amount of up to $5,000,000,000.00 (Five billion pesos 00/100 M.N.); as a defensive and indispensable measure aimed at preserving: (i) operational continuity; (ii) job stability; and (iii) the integrity of assets strategic to operations; however, at the same time, it increased the company's liabilities, deteriorated its capital structure, and reduced its financial maneuverability, contributing to the worsening of its state of insolvency.

In conclusion, tax pressure and the real risk of administrative enforcement were determining factors in the worsening of the general failure to meet obligations provided for in Article 10 of the Commercial Bankruptcy Law and forced the company to file for commercial bankruptcy with the clear objective of: (i) preserving the company as a productive unit; (ii) collectively organizing the treatment of liabilities; (iii) avoid isolated enforcement actions that would jeopardize the continuity of the business; and (iv) ensure equitable treatment of all creditors.

### (ii) Liabilities Arising from Notes Issued in the United States.

Regardless of whether the liabilities arising from the notes issued in the United States constitute commercial obligations of the Merchant and are subject to the negotiation and enforcement mechanisms inherent in their contractual framework, it is a public and well-known fact that such liabilities transcended the strictly private sphere and escalated to a level of government dialogue and positioning, with material effects on the Company's operating environment, reputation, and litigation risk.

In particular, various funds/holders linked to said issuance—*or to the subsequent acquisition of those instruments on the secondary market*—sought direct dialogue with the Government of Mexico to resolve debts attributed to **TV AZTECA**, linking their claims to domestic legal proceedings and, furthermore, initiating or maintaining international arbitration against the Mexican State regarding the same dispute.

Furthermore, as a result of the public pressure exerted by these funds/holders, the President herself made public statements regarding the need for TV AZTECA to fulfill its obligations to the funds/creditors in the United States, and even expressed her willingness to meet with those creditors in that country, in a context where the litigation over unpaid notes was explicitly referenced.

This set of events demonstrates that funds/holders not only generated market pressure and cross-border litigation but also political and institutional pressure: (i) simply by involving the Mexican government in international arbitration with a potential impact on public resources and economic foreign policy; (ii) due to the incentive to contain defense/arbitration costs and reputational damage to the country; and (iii) due to public scrutiny resulting from statements by the Executive Branch and media coverage. This increased the risk of disputes escalating, positions hardening, and sources of financing and counterparties being affected, impacting the viability of isolated private solutions



and reinforcing the need for an orderly and comprehensive process to restructure **TV AZTECA.**

That said, the issuer's financial situation cannot be analyzed in isolation from the liabilities arising from the notes issued in the U.S. market, **as the dispute regarding those instruments transcended the strictly private and contractual sphere,** escalating to a level of public and institutional engagement.

This context produced two legally relevant effects:

**(I) Institutional and Reputational Pressure:** Public statements and media coverage of TV AZTECA's liabilities created an environment of institutional pressure that impacted: (i) the perception of the company's risk; (ii) the availability of financing; and (iii) the stability of ongoing private negotiations.

**(II) Worsening of the State of Generalized Default:** The risk of accelerated obligations increased, refinancing alternatives were reduced, and the company's negotiating position vis-à-vis other creditors deteriorated.

In summary, a contagion effect spread to liabilities other than notes, and the Company faced a scenario in which the private restructuring of its liabilities became materially unfeasible, not only due to its lack of liquidity but also due to the systemic pressure generated around one of its most significant liabilities.

In this case, bankruptcy is a necessary response to a scenario of comprehensive deterioration, in which the public and institutional pressure generated by the funds/bondholders accelerated the inability to timely meet all due and maturing obligations.

In a scenario where a group of creditors is attempting to internationalize the dispute, generate institutional pressure, and position themselves in a de facto privileged position, the principle of equality in bankruptcy proceedings can only be preserved by subjecting all creditors to a universal proceeding such as the one requested.

Nevertheless, the company has been engaged in negotiations with these creditors since 2021 with the aim of restructuring its financial obligations, which has not been possible.

Despite: (i) the company's willingness at all times to negotiate a restructuring agreement beneficial to the parties; and (ii) having held meetings with a group of creditors and engaged in a formal mediation process, it was not possible to reach financial restructuring agreements with the creditors.

The complexity of these negotiations, coupled with the negative evolution of the adverse market environment, has increased the financial pressure on the company.



**(b) STRUCTURAL TRANSFORMATION OF THE MEDIA INDUSTRY.** Among the main factors that have put pressure on TV AZTECA is a broader phenomenon affecting the media industry in general: the structural decline of the advertising market in free-to-air television, a trend observable globally that has significantly altered the sector's economics.

### (a) Changes in audiovisual consumption habits

Over the past two decades, the global media sector has undergone a profound transformation. Digitalization, the expansion of broadband internet, and the proliferation of mobile devices have changed the way audiences consume content.

Today, a significant portion of audiovisual consumption takes place through digital video distribution platforms, including *streaming* services and online platforms such as Netflix, YouTube, and Amazon Prime Video.

This shift has gradually displaced the traditional model of linear programming—typical of broadcast television—in favor of on-demand content, personalized consumption, and audiovisual formats distributed via social media.

As a result, audiences worldwide have become fragmented, and the number of viewers concentrated on a few channels has decreased significantly.

### (b) Shift of Advertising Investment Toward Digital Media.

The business model of broadcast television—of which TV AZTECA is a part—has historically depended on the sale of advertising slots.

In recent years, however, a growing portion of global advertising spending has shifted toward digital platforms, which offer precise audience targeting, detailed campaign performance measurement, and the ability to adjust spending immediately.

Technology companies such as Google, Meta Platforms, and TikTok have captured an increasingly larger share of the global advertising market.

As a result, the growth of advertising spending on broadcast television has slowed in various markets, including Mexico. And this shift toward digital platforms has accelerated in recent years due to the COVID-19 pandemic

(c) COVID-19: The arrival of the COVID-19 pandemic in Mexico prevented TV AZTECA from generating the expected revenue during 2020 and to date. One of the main negative consequences of the pandemic, not only for society but for the entire



television industry in Mexico, was the decline in revenue due to reduced advertising spending by customers—*which will be discussed in more detail later*—as well as the accelerated growth in the consumption of "Over-The-Top" streaming services—*which will also be discussed in more detail later*—such as *"Netflix," "Disney+," "Amazon,"* and others.

### (a) COVID-19 and advertising in the media.

Beyond the growth and central role of access to news and entertainment content during the various stages of lockdown and social distancing caused by the measures and actions implemented by our federal and local governments, the media economy was definitively and severely impacted by the COVID-19 pandemic.

According to data from PriceWaterhouseCoopers (PWC) in its study titled *"Global Media and Entertainment Report 2021,"* 2020 saw a decline in revenue across the entire television industry, primarily due **to the contraction of the advertising market**.

Likewise, according to the report in question, the crisis in the advertising market—the main source of revenue for most of the media industry—was severe worldwide, but Latin America was the region that suffered the most, with broadcast revenue not expected to recover to pre-pandemic levels until 2025—*which has not even happened* yet.

Another disruptive change caused by the pandemic in this sector was that online advertising revenue surpassed that of television advertising, a market that had traditionally maintained its leadership.

In light of this, the digital advertising sector accelerated its growth, making it increasingly difficult for traditional media, such as television, to compete in the *online* advertising market alongside giants like *"Google"* and *"Facebook,"* which account for approximately 68% of total online advertising revenue.[2]

### (b) Growth of "Over-The-Top" streaming services.

Another indirect consequence of the COVID-19 pandemic, which continues to affect the situation to this day, is the exponential growth in audience consumption of *streaming* services.

---

[1] Available at the following web address
https://www.pwc.com/gx/en/industries/tmt/media/outlook/segment-findings.html

[2] "THE IMPACT OF THE COVID-19 PANDEMIC ON THE SUSTAINABILITY OF THE MEDIA IN LATIN AMERICA" CHANGES AND TRANSFORMATIONS IN PRODUCTION MODELS, REVENUE SOURCES, AND PRODUCTS OF LATIN AMERICAN MEDIA," United Nations Educational, Scientific and Cultural Organization and UNESCO Regional Office for Science in Latin America and the Caribbean, UNESCO Montevideo.

FEDERAL JUDICIARY IFECOM LP2/20 Page 31 of 46

"Over The Top"[3], which include platforms such as "*Netflix*," "*Amazon Prime Video*," "*Apple TV+*," "*Claro Video*," "*Disney+*," "*Hulu*," and "*HBO Max*," among others.

The exponential growth of these video-on-demand *streaming* platforms, driven by the COVID-19 pandemic, solidified their position in the market and, of course, brought new competitors to the table for traditional television providers such as TV AZTECA.

While platforms like Netflix took the lead in the audiovisual market throughout the second half of the past decade, the pandemic facilitated the entry of new competitors and, with it, an explosion of content and revenue for this transformative entertainment model, in which new catalogs such as those offered by "*Disney+*," "*HBO Max*," and "*Paramount+*" have established themselves.

These on-demand audiovisual content platforms not only compete directly for the audience of traditional television providers but also for television advertising revenue, which, as previously noted, is one of the main sources of income for traditional television providers such as **TV AZTECA.**

As noted by the Federal Telecommunications Institute in its "*Study of OTT Digital Platforms*"[4], operators of OTT Digital Platforms may offer digital communication, connection, and linking services to different user groups, so that these groups may engage in communication activities and/or exchange audiovisual or audio content, without charging them monetary compensation, but with the goal of attracting the largest number of users on one side of the platform who can be exposed to advertising and, thereby, selling airtime, ad slots, and "*banners*" to another group on the platform (advertisers).

In this regard, digital advertising follows principles similar to advertising on "traditional" platforms, such as broadcast TV, driven by competition for consumer attention. Generally speaking, advertisers are willing to pay higher rates when their message can reach a larger audience. However, advertising in digital markets has given rise to new ways of reaching specific audiences, enabling improved targeted advertising, which has directly impacted the advertising revenue of traditional television providers such as **TV AZTECA.**

**(d) IMPACT OF THE ADVERTISING DECLINE ON TV AZTECA'S BUSINESS MODEL:** TV AZTECA's business model has historically been based on

---

[3] This is the term used in the film and TV industry to define platforms that offer audiovisual content over the internet.
[4] Available at the following web address:
http://www.ift.org.mx/sites/default/files/contenidogeneral/competenciaeconomica/plataformasdigitalesott.pdf



monetization of audiences through the sale of television advertising.

Unlike other media groups that have diversified their revenue streams—for example, through *streaming* service subscriptions—**the company remains heavily reliant on traditional advertising revenue.**

This means that any contraction in the advertising market directly impacts its ability to generate operating cash flow.

That said, audience fragmentation has reduced the relative value of television ratings as a commercial indicator.

For many years, broadcast television offered advertisers the ability to reach massive audiences simultaneously. Today, digital campaigns allow for more precise targeting of specific audiences.

Consequently, effective prices for television advertising slots have faced downward pressure, especially among younger demographic segments.

The global broadcast television industry has experienced an annual decline of 4% (four percent) in recent years; during the COVID-19 period, the industry fell by 30% (thirty percent). In Mexico, the industry has not yet recovered to pre-pandemic levels in real terms.

(e)    **EXTERNAL OPERATIONAL FACTORS AFFECTING PROFITABILITY:** Among other factors, rising content costs, volatility in the advertising market, and the contraction of government spending in the advertising market have been a significant factor in the decline of **TV AZTECA's** financial situation, as explained below:

### (a) Increase in content costs.

The competitive landscape of the audiovisual sector has also changed in terms of costs. Global digital platforms have significantly increased their investment in original content, which has raised costs associated with creative talent, broadcasting rights, and audiovisual production.

For free-to-air television companies—*such as TV AZTECA*—competing for audiences requires maintaining significant levels of investment in content, whether films or major sporting events, which puts pressure on margins when advertising revenue does not grow at the same pace.

The cost of producing proprietary content has also increased in recent years due to inflationary effects; from 2018 to 2025, inflation rose by 38.8% (thirty-eight point eight percent) over the period.



### (b) Volatility of the Advertising Market.

Advertising spending tends to react quickly to economic cycles; it is one of the most cyclically sensitive budget items within corporate cost structures.

From a macroeconomic perspective, *advertising spend* tends to behave as procyclical discretionary spending: during phases of economic expansion, companies increase their media investments to capture demand and gain market share, while, in periods of contraction or slowdown, advertising and/or *marketing* budgets are often among the first to face cuts, as they are perceived as variable costs that can be dispensed with in the short term. **This directly affects media outlets whose primary source of revenue is advertising.**

For media outlets whose business model depends largely on advertising revenue—broadcast television, radio, print media—this dynamic implies structural exposure to the volatility of the economic cycle, directly translating fluctuations in business activity into their revenue streams.

In the specific case of **TV AZTECA**, this cyclical vulnerability is amplified by the profound structural transformations the television industry is undergoing both globally and domestically. The accelerated migration of audiences toward *streaming* platforms and digital content has fragmented audience *share*, eroding pricing power in traditional advertising slots.

At the same time, advertisers have been shifting an increasing portion of their budgets toward digital channels with measurable performance—*programmatic advertising, social media,* and search—which offer greater granularity in targeting and more precise ROI metrics. The confluence of these structural factors with an unfavorable macroeconomic environment creates a multiplier effect on the volatility of the company's commercial revenue, compromising both the volume and the average price of the *ad spots* agreed upon.

This deterioration in the advertising demand environment is taking place against a backdrop of sustained economic stagnation. In real terms, Mexico's GDP recorded an average annual growth rate of just 0.77% during the period from 2018 to 2025, an expansion insufficient to sustain the dynamism of the advertising market.

In an environment of low growth in disposable income and widespread business caution, **advertising investment decisions are scaled back or postponed, reducing the effective size of the market to which TV AZTECA—and traditional media in general—have access to monetize their audiences.**

### (c) Contraction of government spending in the advertising market.



Starting in 2018, the Mexican government implemented an austerity policy as the guiding principle of its public spending consolidation strategy, under the premise of eliminating expenditures deemed superfluous within the government budget.

Within this framework of rationalizing current spending, the government's advertising investment was identified as one of the most opaque and least technically justified budget items, leading to systematic and sustained cuts throughout the six-year term.

This public policy decision had direct and quantifiable implications for the revenues of traditional media outlets, given that historically the Mexican government had been one of the most significant advertisers in the national media ecosystem, allocating considerable budgetary resources to purchasing advertising space on broadcast television, radio, and in print media as a mechanism for institutional communication.

The magnitude of the adjustment is significant from both a financial and sectoral perspective: it is estimated that government spending on advertising accumulated a decline of approximately **36% in real terms during the period between 2019 and 2024**, representing a structural—rather than merely cyclical—contraction of a revenue source that for decades operated as a relatively stable and predictable flow for licensed media outlets.

For companies such as **TV AZTECA**, whose commercial revenue base was already facing pressures stemming from audience fragmentation and the reorientation of corporate *adspend* toward digital platforms, the withdrawal of the State as a large-scale advertiser acted as an additional demand shock, reducing the total volume of advertising investment available in the free-to-air television market and intensifying pressure on its rates and advertising inventory occupancy levels.

(f) **CONTRACTION OF THE GLOBAL AND NATIONAL ECONOMY:** Mexico's economy is vulnerable to economic cycles and slowdowns in the U.S. economy and elsewhere in the world.

Financial turmoil or an increase in risks related to investment in emerging economies could limit foreign investment in Mexico and adversely affect the Mexican economy.

Although Mexico, the United States, and other governments have taken measures to increase liquidity in financial markets, there can be no assurance that these measures will lead to sustained growth in the general business environment in which TV AZTECA operates, and TV AZTECA cannot predict the impact that any future economic crisis may have on **TV AZTECA's** operating results and financial condition.

For example, demand for advertising may decline, on the one hand, because consumers may reduce their spending on products advertised on **TV AZTECA** and, on the other hand,



since advertisers may reduce their advertising expenditures. **Additionally, consumer demand generally declines during economic crises.**

(g) INFLATION AND INTEREST RATES: Declines in the growth of the Mexican economy, high inflation rates, and high interest rates in Mexico, as applicable, have had an adverse effect on **TV AZTECA's** operations. The slower the growth of the Mexican economy, the slower the growth in advertising spending. If inflation in Mexico reaches high levels and economic growth slows, **TV AZTECA's** operating results, financial condition, and the market price of its securities are adversely affected.

Any unfavorable fluctuation in interest rates has an adverse effect on **TV AZTECA**, as the amount of interest owed may increase with respect to its current and future liabilities and debts.

Furthermore, any significant increase in Mexico's inflation rate could adversely affect **TV AZTECA's** financial position and operating results, as inflation could erode consumer purchasing power, which in turn may impair the ability of TV AZTECA's advertisers to purchase advertising time on its channels.

(h) CONVERGENCE OF FACTORS EXPLAINING THE FINANCIAL DETERIORATION: Thus, TV AZTECA's financial deterioration is the result of the convergence of several factors:

- **Structural transformation of the media industry and audience fragmentation.**
- **Shift of advertising spending toward digital platforms.**
- **Significant reliance on revenue from television advertising.**
- **Increase in production and content acquisition costs.**
- **Volatility in the advertising market associated with economic cycles.**
- **Significant financial obligations denominated in foreign currency.**
- **Complex negotiation processes with creditors.**

Taken together, these factors have affected the company's ability to generate the cash flow necessary to meet its financial obligations.

In this context, bankruptcy proceedings and an orderly restructuring of liabilities, under judicial supervision, may allow the company to adjust its financial obligations to current market conditions and those of the media sector.

The objective is to restore a balance between the company's cash flow generation capacity and its financial obligations, while preserving the continuity of its operations and the economic value of the business.

TV AZTECA's financial deterioration must be understood within a broader



scope of transformation in the media industry and significant changes in the advertising market.

The combination of these industry trends with specific financial pressures has affected the company's financial stability.

Given this situation, bankruptcy proceedings appear to be an appropriate and necessary institutional mechanism for organizing the restructuring of liabilities and enabling the company to adapt to new market conditions.

### (E) FINANCIAL SITUATION OF TV AZTECA.

47.- TV AZTECA has implemented actions and strategies to manage the economic consequences caused by the various macroeconomic events that have affected its financial situation; however, these measures have not been sufficient to improve the company's finances. Some of these actions were as follows:

(i) The adoption of cost-saving initiatives includes **the creation of a Cost Committee aimed at improving profit margins; currently, all productions and new projects undergo a detailed profitability analysis before their execution is authorized.**

(ii) Postponement of non-essential capital projects;

(iii) Review and evaluation of **the cost-benefit analysis of** existing **broadcasting rights agreements;**

(iv) Design of incentives for the sales force to carry out the necessary efforts to retain customers and increase demand for advertising space, resulting in an increase in sales commissions;

(v) When assessing the fair values of assets and liabilities, as well as their impairment, the company considered the degree of uncertainty in the economic environment when applying data and assumptions to the selected models; and

(vi) Renegotiation of real estate lease agreements, resulting in some terminations and deferrals in cash flows.

48.- Notwithstanding the measures outlined above, TV AZTECA's financial position has not improved, and it has been unable to generate sufficient cash flow to pay the principal, interest, and other amounts owed to various creditors; furthermore, there is no guarantee that market conditions will allow TV AZTECA to refinance its overdue debts without a judicial restructuring process.

49.- As noted above, the television broadcasting market in Mexico is highly competitive, and the popularity of television programs is a key factor in advertising sales—*TV AZTECA's primary source of revenue*—which is highly susceptible to change.

50.- TV AZTECA no longer faces competition only from other



traditional television providers such as "Televisa-Univisión" or "Imagen TV," but also competes—*for audiences, advertising, and content*—with:

(i) Cable television providers, such as "*Dish Mexico*," "*TotalPlay*," or "*Megacable*";

(ii) Direct-to-Home (DTH) satellite services, such as "*SKY*," "*StarTV*," or "*VeTV*";

(iii) established "*Over-The-Top*" streaming platforms, such as "*Netflix*," "*Amazon Prime Video*," or "*Disney+*," among others;

(iv) other media, such as radio, billboards, newspapers, magazines, and the Internet.

51.- TV AZTECA's main competitor in the free-to-air television market generated the majority of Mexican television advertising sales in each of the last three years, due in part to its longer history in the television industry and greater resources compared to TV AZTECA.

52.- TV AZTECA cannot guarantee that it will maintain or improve its share of the Mexican television advertising market in the future, nor can it guarantee that its costs for acquiring programming and hiring production and creative staff through its subsidiaries and/or third-party companies unrelated to TV AZTECA, or the prices at which TV AZTECA sells advertising time, will not be adversely affected by competition.

53.- Cable television distribution systems and direct-to-home ("DTH") satellite services currently represent strong competition for TV AZTECA's advertising sales, viewership, and program rights.

54.- TV AZTECA cannot guarantee that pay-TV services will not capture a larger share of Mexican viewers and the television advertising market in the future.

55.- TV AZTECA's current indebtedness has had negative consequences for its operations and viability as a business, such as the following:

a) requiring the use of a substantial portion of its cash flow to pay its debt, reducing the cash flow available for other purposes, including capital investments, marketing efforts, future growth plans, and distributions payable to its shareholders;

b) limiting its ability to obtain **additional financing** or refinance its existing debt;

c) placing **TV AZTECA** at a disadvantage relative to competitors with lower debt levels and competitors with greater access to capital resources;



d) increase its vulnerability to a slowdown in its operations or the Mexican economy in general; and

e) limit its ability to continue making cash distributions to its shareholders.

56. Everything described in this chapter, among other things, has resulted in **TV AZTECA** lacking the financial capacity to meet its financial obligations and to address or pay the liabilities it has recorded on its financial statements in accordance with the terms and conditions under which they were agreed upon; for if it were to do so—*without a judicial restructuring process*—the company would become unviable, both financially and operationally. These causes led **TV AZTECA** to the state of default in which it currently finds itself.

57.- For all of the foregoing reasons, a declaration of commercial insolvency in the conciliation stage is requested so that **TV AZTECA** may continue its ordinary operations and viability while carrying out an orderly restructuring under the Commercial Insolvency Law (LCM).

58.- Some of **TV AZTECA**'s most relevant and significant past-due liabilities are described in detail below:

### (a) PREFERRED NOTES MATURING ON AUGUST 9, 2024.

59.- On August 9, 2017, **TV AZTECA**—*in its capacity as Issuer*—its Subsidiaries—*in their capacity as Subsidiary Guarantors*—THE BANK OF NEW YORK MELLON —*in its capacity as Trustee*—and THE BANK OF NEW YORK MELLON, LONDON BRANCH—*in its capacity as Principal Paying Agent*—entered into an Issuance Agreement, the primary purpose of which was to provide financing to **TV AZTECA** in the amount of USD $400,000,000.00 (Four hundred million dollars 00/100 USCy) through the issuance of senior notes maturing on August 9, 2024 (hereinafter the "Issuance Agreement").

In addition to TV AZTECA as the issuer of the notes, the Issuance Agreement was signed by, among others, the following companies as joint and several obligors: (I) AZTECA NOVELAS II, S.A.P.I. DE C.V.; (II) EQUIPO DE FÚTBOL MAZATLÁN, S.A. DE C.V.; (III) INMOBILIARIA ROCA DEL PEDREGAL, S.A. DE C.V. (FORMERLY TELEVISIÓN AZTECA II, S.A. DE C.V.); (IV) LASIMEX, S.A. DE C.V.; (V) OPERADORA MEXICANA DE TELEVISIÓN, S.A. DE C.V.; (VI) PRODUCCIONES AZTECA DIGITAL, S.A. DE C.V.; (VII) PRODUCCIONES ESPECIALIZADAS, S.A. DE C.V.; (VIII) PRODUCCIONES DOPAMINA, S.A. DE C.V.; (IX) PUBLICIDAD ESPECIALIZADA EN MEDIOS DE COMUNICACIÓN DE TV AZTECA, S.A. DE C.V.; (X) SERVICIOS AÉREOS NOTICIOSOS, S.A. DE C.V.; (XI) SERVICIOS ESPECIALIZADOS TAZ, S.A. DE C.V.; (XII) TELEVISIÓN AZTECA III, S.A. DE C.V.; and (XIII) TELEVISORA DEL VALLE DE MÉXICO, S.A.P.I. DE C.V.

60.- TV AZTECA agreed, among other things, to pay the Holders of the Preferred Notes interest at an annual rate of 8.250% (eight point two five percent) on the principal amount of each bond, on August 9 and February 9 of each year, effective from the subscription date of each bond issued as of the date of execution of the Issuance Agreement.

61.- On August 9, 2024, the natural maturity date of the obligation to pay the notes under the Issuance Agreement was extended, without TV AZTECA and its signatory subsidiaries having the financial and economic capacity to meet the obligations assumed under the terms of said agreement.

62.- Thus, as of January 31, 2026, TV AZTECA—*as issuer and principal obligor* - owes the Holders of Notes issued under the Issuance Agreement the amount of USD $532,000,000.00 (Five hundred thirty-two million dollars 00/100 USD), a figure that in pesos—*at the exchange rate of 17.2532 to settle obligations designated in U.S. dollars published by the Bank of Mexico on January 31, 2026*—amounts to $9,178,702,400.00 (nine billion one hundred seventy-eight million seven hundred two thousand four hundred pesos 00/100 M.N.).

These past-due liabilities represent at least 36.92% (percent) of TV AZTECA's total liabilities, which are more than 30 (thirty) days past due.



FEDERAL JUDICIARY IFECOM LP2/20 Page 40 of 46

## Attachments

*[ILLEGIBLE]*

*In each of the fields, click the button that identifies the type of attachment for the accompanying documents. When, due to the nature of the business or specific legal circumstances, the documentation is not provided, click the button in the column designated "Not applicable" and indicate in the corresponding form the reasons why it is not being submitted.*

| Code | Attachment number | Attachment title | Not applicable |
|---|---|---|---|
| LP2/20 | Appendix 1 | Merchant's Financial Statements | |
| LP2/20 | Appendix 2 | Detailed report on the reasons why the merchant is in default or at risk of default on the payment of its obligations | |
| LP2/20 | Appendix 3 | List of creditors | C |
| LP2/20 | Appendix 4 | List of debtors | |
| LP2/20 | Appendix 5 | Inventory of all the merchant's goods | C |
| LP2/20 | Appendix 6 | List of lawsuits in which the merchant is a party | |
| I P2/20 | Appendix 7 | LCM  Offer to provide the guarantee referred to in Article 24 of the | C |
| LP2/20 | Appendix 8 | Resolutions of the corporate acts necessary to file for bankruptcy | C |
| LP2/20 | Appendix 9 | Proposed preliminary agreement for payment to creditors | C |
| LP2/20 | Appendix 10 | Preliminary proposal for the preservation of the company | C |
| LP2/20 | Appendix 11 | Documents proving legal status | |
| LP2/20 | Appendix 12 | Documents proving status as a merchant | |

### Registration, tax, and employment information

*For each section of Articles 43, 44, and 45 of the LCM, provide the following information if known, or state the reason why you are not providing it*

**Public Registry of Commerce:**
**Mexico City Public Registry of Property and Commerce. Commercial Folio 167,346**
*Write the name by which the entity responsible for maintaining the commercial registry in the relevant state is identified and, if applicable, provide the details under which you are registered as a business in the public commercial registry, such as folio, book, entry, registration history, or other.*

**Property Registry:**
**Mexico City Public Registry of Property and Commerce and Single Registry of Movable Security Interests**
*Enter the name by which the authority responsible for maintaining the registry of assets and/or guarantees in the relevant state is identified, and, if applicable, provide the registration details related to the assets or rights of the merchant's company, such as folio, book, entry, registration history, or other.*

**Federal Taxpayer Registry:**
**TAZ960904V78**
*Enter the merchant's Federal Taxpayer Registry number*

**Union(s) to which the workers are affiliated:**
**The employees of TV AZTECA, COMPANY BURSÁTIL DE CAPITAL VARIABLE are not affiliated with any union**
*Enter the full name and address of the union or unions to which, if applicable, the merchant's employees are affiliated*

**Union representative:**
**TV AZTECA, ANONYMOUS COMPANY BURSÁTIL WITH VARYING CAPITAL has no union representative**
*Please provide the full name and address of the representative.*



## Additional Information

*For written submissions: provide the following information*

**Date the company was incorporated:**
June 2, 1993.
*Enter the date the company was incorporated*

**Number of employees registered with the company:**
111 (one hundred eleven)
*Enter the number of employees the company has*

**Economic activity of the company:**
**(i) Mass media; (q) Cultural and sports recreation services, and other recreational services; and (s) Other services except government activities.**
*Indicate the category to which the company belongs, according to the following classification:*

    a. Agriculture, animal husbandry and farming, forestry, fishing, and hunting
    b. Mining
    **c. Generation, transmission, distribution, and sale of electricity; supply of water and natural gas via pipelines to the end consumer**
    d. Construction
    e. Manufacturing
    f. Wholesale trade
    g. Retail trade
    h. Transportation, postal services, and warehousing
    **i. Mass media**
    j. Financial and insurance services
    k. Real estate services and rental of tangible and intangible goods
    l. Professional, scientific, and technical services
    m. Corporate
    n. Business support services, waste management, and remediation services
    o. Educational services
    p. Health and social assistance services
    **q. Cultural, sports, and recreational services**
    r. Temporary accommodation and food and beverage preparation services
    **s. Other services, except government activities**
    t. Legislative, governmental, judicial, and international and extraterritorial activities

## Controlling and Controlled Companies

*In accordance with the provisions of Article 15 of the Commercial Bankruptcy Law.*

*In the case of parent companies, indicate whether you have one or more of the directly and indirectly controlled companies that make up the corporate group*

AZTECA NOVELAS II, S.A.P.I. DE C.V.; EQUIPO DE FUTBOL MAZATLÁN, S.A. DE C.V.; INMOBILIARIA ROCA DEL PEDREGAL, S.A. DE C.V. (FORMERLY TELEVISIÓN AZTECA II, S.A. DE C.V.); LASIMEX, S.A. DE C.V.; OPERADORA MEXICANA DE TELEVISIÓN, S.A. DE C.V.; PRODUCCIONES AZTECA DIGITAL, S.A. DE C.V.; PRODUCCIONES ESPECIALIZADAS, S.A. DE C.V., PRODUCCIONES DOPAMINA, S.A. DE C.V., PUBLICIDAD ESPECIALIZADA EN MEDIOS DE COMUNICACIÓN DE TV AZTECA, S.A. DE C.V., SERVICIOS AÉREOS NOTICIOSOS, S.A. DE C.V., SERVICIOS ESPECIALIZADOS TAZ, S.A. DE C.V., TELEVISIÓN AZTECA III, S.A. DE C.V. TELEVISORA DEL VALLE DE MEXICO, S.A.P.I. DE C.V., AZTECA COMUNICACIONES PERÚ, S.A.C., MOE MULTIOPCIONES DE SERVICIOS ADMINISTRATIVOS, S.A. DE C.V., PROMOTORA DE TORNEOS Y ESPECTÁCULOS PÚBLICOS, S.A. DE C.V., AZTECA RECORDS, S.A. DE



C.V., ALTA EMPRESA, S.A. DE C.V., SERVICIOS LOCALES DE PRODUCCIÓN, S.A. DE C.V., S.C.I. DE MÉXICO, S.A. DE C.V.,

PRODUCTORA DE TELEVICIÓN REGIONAL DE TV AZTECA, S.A. DE C.V., TV AZTECA GLOBAL, S.L.U., CORPORACIÓN DE ASESORÍA TÉCNICA Y DE PRODUCCIÓN, S.A. DE C.V., MULTIMEDIA ESPECTÁCULOS Y ATRACCIONES, S.A. DE C.V., SPECIALIZED AVIATION CONSULTING, S.A. DE C.V., INCOTEL, S.A., FUTURE TELEVISION SERVICES AND MAINTENANCE, S.A. DE C.V., TVA GUATEMALA, S.A., TV AZTECA HONDURAS, S.A. DE C.V., REDES OPTICAS, S.A.C., AZTECA SPORT RIGHTS, LLC, EDITORIAL MANDARINA, S.A. DE C.V., COMERCIALIZADORA DE TELEVISIÓN DE HONDURAS, S.A. DE C.V., STATIONS GROUP, LLC, NORTHSTAR MCALLEN LICENSE, LLC, SERVICIOS FORANEOS DE ADMINISTRACIÓN, S.A. DE C.V., GANADOR AZTECA, S.A.P.I. DE C.V., OPERADORA GANADOR TV AZTECA, S.A. DE C.V., DOPAMINE ENTERTAINMENT, INC., AND MAZATLÁN PROMOTORA DE FUTBOL, S.A. DE C.V.



FEDERAL JUDICIARY IFECOM LP2/20 Page 43 of 46

---

### Additional Requests

*In the resolution below, please list as many additional requests as you deem appropriate, in accordance with the form and its sections, for use in the bankruptcy proceedings.*

*Use one box for each request and as many pages as necessary*

---

## REQUEST FOR PRECAUTIONARY MEASURES

Pursuant to Articles 7, 8, 25, 26, 37, 38, 43, and other relevant and applicable provisions of the Commercial Bankruptcy Law, as well as Articles 1168 and related provisions of the Commercial Code (which apply on a supplementary basis), and in compliance with Articles 14 and 16 of the Constitution, I request **that the following preliminary injunctions be issued**, which shall remain in effect throughout the commercial insolvency proceedings and are necessary and appropriate to preserve the estate and ensure the effectiveness of the proceedings:

1.- The immediate suspension of all enforcement, attachment, **seizure, intervention, and/or precautionary measures against the assets and rights of TV AZTECA**, in order to preserve the estate and safeguard the continuity of the Merchant's operations as a going concern and as a productive unit.

2.- The suspension of all effects of the attachments currently in place on the goods and rights of TV AZTECA, in accordance with the provisions of Article 37, Section VIII of the LCM, as this is a measure of a nature analogous to that requested in the preceding paragraph.

3.- The immediate suspension of all current or future enforcement proceedings regarding any obligation, guarantee, and/or encumbrance entered into by TV AZTECA and/or any third party in its favor, the foregoing to ensure the viability of the bankruptcy proceedings and the Merchant's business as a going concern, preventing certain creditors from obtaining undue advantages to the detriment of the universality of creditors.

4.- The immediate suspension of any current or future Administrative Enforcement Proceedings against TV AZTECA, including, without limitation, those arising from **tax claims, seizures, administrative attachments, cash seizures, or any act of tax enforcement.**

The foregoing is based on Article 11 of the Commercial Bankruptcy Law, in order to preserve the integrity of the bankruptcy estate and prevent irreversible damage to the assets essential for the Merchant's ordinary operations.

5.- The prohibition on TV AZTECA from making payments to its creditors or to third parties,



jointly and severally liable parties, sureties, and guarantors, with respect to obligations that were due prior to the date of admission of this petition for commercial insolvency or that are due in the future, excluding those payments and expenses essential to maintaining the company's ordinary operations.

6.- The prohibition on suspending, revoking, rescinding, terminating, and/or **canceling agreements**—whether preliminary or final—pending execution to which TV AZTECA or any of its affiliated entities or subsidiaries with which it conducts its ordinary operations is a party, as they constitute a single economic entity, until such time as the Conciliator—*whomever is appointed*—opposes or does not oppose their enforcement in accordance with the provisions of Articles 25, 26, 91, and 92 of the LCM.

7.- The order to deem null and void any contractual provision in legal acts to which TV AZTECA is a party that, as a result of the filing of a petition or claim for commercial insolvency, or its declaration, establishes modifications that worsen the terms of the agreements for the Merchant, in accordance with the provisions of Article 87 of the LCM.

8.- The prohibition on suspending, revoking, terminating, canceling, modifying, limiting, or affecting, in whole or in part, any concession, permit, license, authorization, registration, enrollment, enabling title, or any other right granted in favor of TV AZTECA or any of its affiliated entities or subsidiaries with which it conducts its ordinary operations—as they constitute a single economic entity—and which is related to the Merchant's ordinary operations, ensuring its continuity as a going concern and productive unit.

9.- The suspension of any judicial, administrative, contractual, or extracontractual proceeding intended to deprive TV AZTECA and its respective subsidiaries—as they constitute a single economic entity—of the use, enjoyment, or exercise of any right, good, or asset of any nature, or to restrict their use or exercise, the foregoing to ensure the viability of the bankruptcy proceedings and the Merchant's business as a productive unit.

10.- A prohibition on each and every financial institution in the country where TV AZTECA maintains open accounts from transferring, disposing of, seizing, freezing, discounting, deducting, withholding, offsetting, and/or using the funds held in such accounts or forming part of the Estate in such accounts, in order to preserve the bankruptcy estate and safeguard the continuity of the Merchant's operations as a going concern and as a productive unit.

11.- The suspension of all enforcement proceedings against the Merchant's assets and/or rights, specifically any action aimed at enforcing the Standby Letter of Credit (SBLC) issued by Banco Nacional de Comercio Exterior, S.N.C., Institución de Banca de Desarrollo (BANCOMEXT), on behalf of and for the account of TV Azteca, S.A.B. de C.V., in favor of The Bank of New York Mellon, in the amount of USD $13,852,106.00 (thirteen million eight hundred fifty-two thousand one hundred six dollars of the United States of America 00/100).

To that end, we respectfully request that **this order be personally served upon BANCOMEXT**, in its capacity as the issuing institution of the aforementioned SBLC.



## GROUNDS AND JUSTIFICATION FOR THE REQUESTED PRECAUTIONARY MEASURES

The requested precautionary measures are legally and materially indispensable given the nature of **TV AZTECA**, its business model, and the structure of its liabilities, as evidenced below:

**(A) Purpose of the Commercial Insolvency Proceedings and Protection of** the **Public Interest:** Article 1 of the Commercial Insolvency Law (LCM) establishes that insolvency proceedings are a matter of public policy and are intended to preserve the company and secure the highest possible payment to creditors.

In the case of **TV AZTECA**, the preservation of the company as a productive unit impacts not only domestic creditors but also financial markets, employees, strategic suppliers, and regulated sectors. Allowing isolated enforcement actions would frustrate the legal purpose of the proceedings even before they can fulfill their primary objective; therefore, the injunctions are necessary instruments to ensure the actual effectiveness of the insolvency proceedings.

**(B) The Court's Authority to Issue Precautionary Orders:** Article 11, Section II, of the LCM empowers the Court to issue the precautionary orders it deems necessary to protect the estate and the interests of creditors.

In the present case, this authority must be exercised immediately and broadly, given that: (i) There are financial creditors with the capacity to initiate and/or continue actions in multiple jurisdictions; (ii) The risk of accelerated enforcement may trigger cross-default clauses; and (iii) There are potential enforcement proceedings that may affect the company's operating liquidity as a productive unit.

**(C) Prima facie case or** *fumus boni iuris*: This Petition for a Declaration of Commercial Bankruptcy is based on the fulfillment of the conditions set forth in Article 10 of the LCM, relating to widespread default on payment obligations.

The existence of past-due financial liabilities, pressure for acceleration from bondholders, and the potential activation of enforcement mechanisms constitute objective elements



that lend sufficient credibility to the action sought, justifying the issuance of precautionary measures without prejudging the declaration of insolvency.

(D) **Peril in Delay**: The risk is not hypothetical, but real and imminent. In the case at hand, as described in the relevant chapter, TV AZTECA faces a real risk that its creditors, among other things: (i) will seek pre-judgment attachments in Mexico or abroad; and/or (ii) will enforce security interests that constitute strategic assets for the Merchant's ordinary operations.

Furthermore, any action that impairs TV AZTECA's cash flows could result in an immediate loss of value, affecting not only the Merchant but also each and every one of its creditors.

(E) **Proportionality**: The requested precautionary measures: (i) Are suitable for preventing the fragmentation of the estate; (ii) Are necessary in light of the imminence of multiple enforcement actions; and (iii) Are proportional, as they seek only to preserve the Merchant's financial position while the admissibility of the insolvency proceeding is resolved.

| Place and date of filing |
| --- |
| Mexico City, March 9, 2026.<br>*Enter the state where the District Court is located, as well as the day, month, and year the petition is filed* |

| Name and signature of the person(s) filing on behalf of the merchant |
| --- |
| RAFAEL RODRÍGUEZ SÁNCHEZ. [ILLEGIBLE SIGNATURE APPEARS]<br>*Write the full name of the petitioner(s), who must, if applicable, sign by hand or, if available, insert their electronic signature.* |

FEDERAL JUDICIARY IFECOM LP2/20 Page 1 of 4

---

### Section 2

### Statement of Non-Compliance or Imminent Generalized Non-Compliance in the Payment of Obligations

[ILLEGIBLE TEXT APPEARS]

| The merchant declares that they have incurred at least one of the following circumstances: | The merchant declares under oath that it is imminent that they will incur at least one of the following circumstances: |
|---|---|

In the table opposite the scenarios listed in Article 10, mark with an "X" the scenario(s) to which an "X" response applies regarding the merchant filing for bankruptcy.

From Article 10 of the LCM

| | |
|---|---|
| I. Of the past-due payment obligations, those that have been past due for at least thirty days represent 35% or more of all payment obligations owed by the merchant as of the date the petition for bankruptcy was filed; | X |
| II. The merchant does not have assets such as: cash on hand and demand deposits; time deposits and investments maturing no later than 90 calendar days after the date of filing the petition; customers and accounts receivable maturing no later than 90 calendar days after the date of filing the petition; and securities for which regular buying and selling transactions are recorded in the relevant markets, which could be sold within a maximum of 30 banking business days, and whose valuation as of the date of filing the petition is known, to cover at least 80% of its obligations due as of the date of filing the petition for bankruptcy. | ⊔ |

### Explanation of Reasons

The debtor states that the selected conditions are currently met or are imminent for the reasons explained below:

1.- TV AZTECA, based on its financial information, states that, as of the date of filing this application, it is in general default on the payment of its obligations, specifically falling under the scenario set forth in Article 10, Section I of the LCM.

2.- TV AZTECA states that it has defaulted on its payment obligations to two or



more distinct creditors, whose obligations are at least 30 (thirty) days past due and represent at least 35% (thirty-five percent) of all obligations for which it is responsible. I hereby provide evidence of the foregoing:

(a) **TV AZTECA** has failed to meet its payment obligations to two or more different creditors;

(b) The obligations of **TV AZTECA** and/or its liabilities as of January 31, 2026, amount to a total of $24,858,585,289.00 (Twenty-four billion eight hundred fifty-eight million five hundred eighty-five thousand two hundred eighty-nine pesos 00/100 M.N.).

(c) It has obligations that are past due—*by more than thirty days*—in the total amount of $15,034,803,165.00 (Fifteen billion thirty-four million eight hundred three thousand one hundred sixty-five pesos 00/100 M.N.).

(d) The overdue obligations—*for more than thirty days*—represent more than 35% (thirty-five percent) of all obligations owed by **TV AZTECA**; in fact, they represent approximately 60% (sixty percent) of its obligations.

3.- Although TV AZTECA already falls under the circumstances provided for in Article 10 of the Commercial Bankruptcy Law, as the widespread default in the payment of its obligations has materialized in accordance with the objective parameters established in said provision, it is important to note, under solemn oath, that the Merchant's current financial situation demonstrates, furthermore, a scenario of imminent default with respect to additional obligations.

4.- Indeed, a review of projected cash flows, liquidity position, maturity schedule, and liability structure reveals that the Company lacks the actual and sufficient capacity to meet various obligations in a timely manner, which allows for a reasonable anticipation of a worsening of the already existing widespread default.

In particular, obligations such as those incurred with ALTER BANK LTD will mature in the short term; this loan was indispensable to address the tax contingency referred to in the preceding paragraphs and whose characteristics are identified in the subsequent paragraphs.



FEDERAL JUDICIARY IFECOM LP2/20 Page 3 of 4

5.- As previously stated, on January 29, 2026, ALTER BANK LTD, acting as arranger, *initial lender, administrative agent*, and *collateral agent*; and TV AZTECA, acting as *borrower*, entered into a Simple *Loan Agreement* for an amount of up to $5,000,000,000.00 (five billion pesos 00/100, legal tender of the United Mexican States) (hereinafter, for the sake of brevity, the "ALTER Loan").

Said ALTER Loan was acquired by the company as additional and urgent financing to address the tax liability and mitigate the risk of operational paralysis, as mentioned above.

6.- On March 6, 2026, ALTER BANK LTD, acting as arranger, *initial lender, administrative agent*, and *collateral agent*; and TV AZTECA, as *borrower*, entered into an amendment and restatement agreement to the Loan agreement.

7.- This liability represents approximately 16% (sixteen percent) of TV AZTECA's total liabilities.

8.- The lack of structural liquidity, coupled with the absence of available sources of financing and the pressure of maturing liabilities, creates an objective, real, and not merely hypothetical probability of default with respect to such obligations.

This imminent risk is not a conjecture, but a direct consequence of: (i) insufficient operating cash flow; (ii) restrictions on credit lines; (iii) the acceleration or potential acceleration of financial obligations; and (iv) the material impossibility of refinancing liabilities under ordinary market conditions.

Thus, the initiation of these insolvency proceedings not only responds to the formal fulfillment of the requirements of Article 10 of the Commercial Insolvency Law, but also to the urgent need to prevent further deterioration of the company's estate, preserve the company as a productive unit, and ensure an orderly, collective, and equitable treatment



toward all of its creditors.

9.- In this context, the imminence of further defaults reinforces the appropriateness and necessity of commercial insolvency proceedings as a mechanism for the preventive protection of the balance between the Merchant and its creditors, avoiding individual enforcement actions that could exacerbate the insolvency.

*Explain separately, summarizing in each case the causes and circumstances that led to the merchant being in, or likely to be in, the situations you selected. Use as many pages as necessary.*

**Name and signature of the person(s) filing on behalf of the merchant**

RAFAEL RODRÍGUEZ SÁNCHEZ. [ILLEGIBLE SIGNATURE APPEARS]

*Write the full name of the petitioner(s), and, if applicable, sign by hand or, if available, insert your electronic signature.*



I, the undersigned, **Mr. David Suro**, authorized by the **Superior Court of Justice of Mexico City** (*Tribunal Superior de Justicia de la Ciudad de México*) to practice as English and Spanish Official Expert Translator, as set forth in **Resolution 42-04/2024**, published in its Gazette for Legal Notices & Advertisements (*Boletín Judicial*) on **23 February 2024** issue No. **34**, **Tome CCIII**, page **34**, and listed in the *Register of Auxiliary Official Experts for the Public Administration* under No. **161**, **DO CERTIFY** that this document consisting of _46_ (_"forty six"_) page (s), is an accurate translation to the best of my knowledge, of the source document that I had at sight. Mexico City ___June___, ___05___, 2026.                    DIRECTUM TRANSLATIONS



# Original Document
# in Spanish

LP2/20

Hoja 1 de 46

# Solicitud de declaración en concurso mercantil
## Título Primero de la Ley de Concursos Mercantiles (en adelante LCM)

C. Juez de Distrito en Materia de Concursos Mercantiles, con residencia en la Ciudad de México y Jurisdicción en toda la República Mexicana, en Turno.

**Expediente:**
Haga clic aquí para escribir texto.

**Partes:**
Haga clic aquí para escribir texto.

Haga clic aquí para escribir texto.

**Tipo de procedimiento:**
Haga clic aquí para escribir texto.

Sólo si se trata de comerciante integrante de un grupo societario en el que exista(n) otro(s) comerciante(s) respecto del (de los) cual(es) se haya iniciado previamente un procedimiento de concurso mercantil, escriba el número del expediente, previamente radicado en el Juzgado de Distrito ante el cual se presenta la solicitud, así como los demás datos de identificación de las partes y el tipo de procedimiento de concurso mercantil ya sea derivado de una solicitud de declaración en concurso mercantil ordinario, de una solicitud de declaración en concurso mercantil con plan de reestructura previo o de una demanda de declaración de concurso mercantil.

Elige una sola de las siete opciones siguientes pulsando el botón que antecede al párrafo cuyo contenido describa la situación que priva respecto del comerciante solicitante, para identificar al juez competente que debe conocer de su solicitud, de conformidad con lo establecido por los artículos 4°, fracción III y 17 de la LCM. Así mismo siga únicamente la instrucción del párrafo elegido.

**Opción 1**  ○
Si el solicitante es un comerciante persona física, a continuación de las palabras "...de Distrito en..." escriba el nombre de la entidad federativa en la que se localice el establecimiento principal de su empresa y, en su defecto, en donde tenga su domicilio, seguido de las palabras "...en turno.". Artículos 4° y 17 párrafo primero, de la LCM.

**Opción 2**  ○
Si la solicitante es la sucesión de un comerciante persona física, a continuación de las palabras "...de Distrito en..." escriba el nombre de la entidad federativa en la que se localice el establecimiento principal de la empresa y, en su defecto, en donde tenga su domicilio el albacea, seguido de las palabras "...en turno.". Artículos 4° y 17 párrafo primero de la LCM.

**Opción 3**  ○
Si la solicitante es patrimonio fideicomitido afecto a la realización de actividades empresariales, a continuación de las palabras "...de Distrito en..." escriba el nombre de la entidad federativa en la que se localice el domicilio social de la fiduciaria o el domicilio donde se tiene la administración principal de la actividad empresarial a la que esté afecto el patrimonio fideicomitido, seguido de las palabras "...en turno.".

**Opción 4**  ●
Con las salvedades descritas en los siguientes puntos 5 y 6, si el solicitante es un comerciante persona moral, a continuación de las palabras "...de Distrito en..." escriba el nombre de la entidad federativa en la que se localice su domicilio social o en caso de irrealidad de éste, al de la entidad federativa en donde tenga la administración principal su empresa, seguido de las palabras "...en turno." Artículos 4° fracción III y 17, párrafo primero de la LCM.

**Opción 5**  ○
Si el solicitante es un comerciante integrante de un grupo societario en el que consta(n) otro(s) comerciante(s) respecto del (de los) cual(es) se haya iniciado previamente un procedimiento de concurso mercantil derivado de una solicitud de declaración en concurso mercantil ordinario, de una solicitud de declaración en concurso mercantil con plan de reestructura previo o de una demanda de declaración de concurso mercantil, a continuación de las palabras "...de Distrito en...", escriba las palabras complementarias del nombre del Juzgado de Distrito en el que esté radicado el expediente del concurso mercantil previamente iniciado. Artículos 4° fracción III y 17 párrafo segundo de la LCM.

**Opción 6**  ○
Si el solicitante es un comerciante que pide su concurso mercantil, conjuntamente con otro(s) comerciante(s) con quien(es) integra un mismo grupo societario conforme al artículo 15 Bis de la LCM, escriba el nombre de la entidad federativa en la que se localice el domicilio social del comerciante integrante de grupo societario que se ubique primero en los supuestos de los artículos 10, 11 o 20 Bis de la LCM o, en caso de irrealidad del domicilio social, el de la entidad federativa en donde éste tenga la administración principal seguido de las palabras "...en turno." Artículos 4°, fracción III y 17, párrafo tercero de la LCM.

**Opción 7**  ○
Si el solicitante es un comerciante persona moral que solicita su concurso mercantil, conjuntamente con sus socios ilimitadamente responsables conforme al artículo 14 de la LCM, escriba el nombre de la entidad federativa en la que se localice el domicilio social del comerciante persona moral, en caso de irrealidad del domicilio social, el de la entidad federativa en donde tenga la administración principal ese comerciante, seguido de las palabras "...en turno." Artículo 4°, fracción III y 17, párrafo primero de la LCM.

## Identificación y domicilios del comerciante
### Artículo 20, párrafo segundo de la LCM

Nombre del comerciante:  **TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE.**

Escriba completo el nombre de la persona física o en su caso la denominación o razón social de la persona moral que solicita ser declarada en concurso mercantil

Domicilio del comerciante que determina competencia:

Escriba completo el domicilio que determina competencia por ser el de la jurisdicción del Juez de Distrito ante quien se presenta la solicitud.

Periférico Sur número 4121, colonia Fuentes del Pedregal, alcaldía Tlalpan, Código Postal 14140, Ciudad De México.

Elija una sola de las seis opciones siguientes pulsando en el botón que antecede al título de la opción cuyo contenido se identifica con la situación del comerciante que solicita ser declarado en concurso mercantil y proporcione la información que corresponda.

### Opción 1

○  Persona física
Artículos 4°, fracción III y 17, párrafo primero, así como 13 de la LCM.

A continuación elija una sola de las tres opciones pulsando en el botón que antecede al párrafo cuyo contenido se identifica con el domicilio que señala.

○  Domicilio del establecimiento principal de la empresa
○  Domicilio donde vive, por carecer de establecimiento principal
○  Domicilio donde vive, en defecto del establecimiento principal, al haber suspendido o terminado la operación de su empresa



### Opción 2

○  Sucesión de persona física titular de una empresa
Artículos 4°, fracción III y 17, párrafo primero, así como 12 de la LCM.

A continuación elija una sola de las opciones pulsando en el botón que antecede el párrafo cuyo contenido se identifica con el domicilio que señala.

○  Domicilio de la empresa que continúa en operación
○  Domicilio del albacea de la sucesión porque la empresa suspendió operaciones

### Opción 3

○  Socio ilimitadamente responsable
Artículos 4°, fracción III y 17, párrafo primero, así como 14 de la LCM.

Al elegir esta opción 3 automáticamente se marcará la frase siguiente, cuyo contenido debe identificarse con el domicilio que señala

○  Domicilio donde vive

### Opción 4

◉  Sociedad mercantil
Artículos 4°, fracción III y 17, párrafo primero de la LCM.

A continuación elija una sola de las opciones pulsando en el botón que antecede el párrafo cuyo contenido se identifica con el domicilio que señala.

◉  Domicilio social
○  Domicilio en donde se tiene la administración principal de la empresa, ante la irrealidad del domicilio social

**Opción 5**

Sucursal de sociedad extranjera

Artículos 4°, fracción III y 17, párrafo primero, así como 16 de la LCM.

[Al elegir esta opción se automáticamente... la mostrará... frase siguiente... cuyo contenido debe identificarse con el domicilio que señala.]

Domicilio de la sucursal en donde se tiene la administración principal

**Opción 6**

Patrimonio fideicomitido

Artículos 4°, fracción III y 17, párrafo primero, de la LCM así como 381 y 391 de la Ley General de Títulos y Operaciones de Crédito.

[A continuación elija una sola de las opciones presentadas en el cuadro que antecede al párrafo cuyo contenido se identifica con el domicilio que señala.]

Domicilio social de la fiduciaria

Domicilio en donde se tiene la administración principal de la actividad empresarial a la que está afecto el patrimonio fideicomitido

[Sólo en el evento de haber elegido entre las seis opciones anteriores la de "Sociedad mercantil" y que respecto de ésta se actualice alguna de las... el botón que antecede a... cuyo contenido ... con la situación societaria que guarda y proporcione la información que se solicita.]

Sociedad mercantil integrante de un grupo societario respecto de la cual se demanda sea declarada en concurso mercantil, sucesivamente respecto de otra(s) integrante(s) del grupo societario conforme al artículo 15 Bis de la LCM:

[texto ilegible]

controladora de otra sociedad mercantil denominada

[Haga clic aquí para escribir texto]

controlada por otra sociedad mercantil denominada

Haga clic aquí para escribir texto

[Después de las palabras "... de la sociedad mercantil " escriba... la persona moral... texto ilegible]

El domicilio proporcionado como determinante de competencia es el de la sociedad mercantil

Haga clic aquí para escribir texto

respecto de la cual está previamente presentado un procedimiento de concurso mercantil en ese juzgado, bajo el expediente

Haga clic aquí para escribir texto

Artículos 4°, fracción III y 17, párrafo segundo de la LCM.

Sociedad mercantil integrante de un grupo societario respecto de la cual se demanda sea declarada en concurso mercantil, conjuntamente con otra(s) integrante(s) del grupo societario conforme al artículo 15 Bis de la LCM.

[texto ilegible]

controladora de otra(s) sociedad(es) mercantil(es) denominada(s)

Haga clic aquí para escribir texto

controlada por otra sociedad mercantil denominada

Haga clic aquí para escribir texto

El domicilio proporcionado como determinante de competencia es de:

[texto ilegible]

**Opción 1**

La sociedad solicitante, integrante del grupo societario del que forman parte otras sociedades demandadas conjuntamente y del que es controladora. Artículo 4°,

Case 1:22-cv-08164-PGG-BCM    Document 247-1    Filed 06/08/26    Page 53 of 99

fracción III y 17, párrafo segundo de la LCM.

**Opción 2**

◌ La sociedad solicitante, porque considera que, de todas las integrantes del grupo societario, es la que se ubica primero en los supuestos de los artículos 10, 11 de la LCM. Artículo 4º, fracción III y 17, párrafo tercero de la LCM.

**Opción 3**

◌ Otra sociedad que solicita conjuntamente ser declarada en concurso mercantil, denominada Haga clic aquí para escribir texto, porque se considera que, de todas las integrantes del grupo societario, es la que se ubica primero en los supuestos de los artículos 10, 11 de la LCM. Artículo 4º, fracción III y 17, párrafo tercero de la LCM.

---

Otros domicilios del comerciante:

Procesal:

Boulevard Manuel Ávila Camacho número 32, Piso 11, colonia Lomas de Chapultepec, alcaldía Miguel Hidalgo, Código Postal 11000, Ciudad de México.

Ese es el domicilio dentro de la jurisdicción del Juzgado de Distrito, debe designar para recibir notificaciones

Social, oficinas, establecimientos, sucursales, plantas, almacenes y/o bodegas, así como, si se trata de persona física el domicilio en donde vive:

Haga clic aquí para escribir texto.

Se debe precisar el domicilio de cada una de las oficinas, sucursales y demás inmuebles del comerciante que solicita ser declarado en concurso mercantil si los hay.

Administración principal:

Periférico Sur número 4121, colonia Fuentes del Pedregal, alcaldía Tlalpan, Código Postal 14140, Ciudad De México.

Es el domicilio principal y único en el que tenga su administración principal el comerciante que solicita ser declarado en concurso mercantil, aun cuando éste no sea el único para efectos de competencia.

## Calidad de comerciante

De conformidad con lo dispuesto por los artículos 4 y 9 de la LCM, sólo los comerciantes podrán ser declarados en concurso mercantil.

En términos de lo dispuesto en la fracción II del artículo 4 de la LCM, por comerciante se entiende a la persona física o moral que tenga ese carácter conforme al Código de Comercio e incluye en ese concepto al patrimonio fideicomitido cuando se afecte a la realización de actividades empresariales.

De conformidad con lo dispuesto por la fracción V del artículo 4 de la LCM, la sucesión del comerciante podrá ser declarada en concurso mercantil cuando la empresa de la cual era titular continúe en operación o suspendidas sus operaciones no hayan prescrito las acciones de los acreedores.

Conforme a lo establecido en el artículo 14 de la LCM, la declaración de concurso mercantil de una sociedad determina que los socios ilimitadamente responsables sean considerados para todos los efectos en el concurso mercantil.

Elija una sola de las seis opciones siguientes pulsando el botón que antecede al párrafo que se identifica con las circunstancias que se actualizan respecto de la persona que solicita ser declarada en concurso mercantil y describa en el formato LP2-20/Anexo 12, los documentos que acompañe para acreditar la calidad de comerciante.

El (la) solicitante manifiesta ser comerciante en razón de que es:

### Opción 1

○ Una persona física con capacidad legal para ejercer el comercio y hace de él su ocupación ordinaria;

### Opción 2

○ La sucesión de la persona física titular de una empresa que:

En caso de haber elegido esta opción, a continuación pulse el botón que antecede a las circunstancias de operación que privan sobre la empresa de la persona física autora de la sucesión.

   ○ Continúa en operación
   ○ Ha suspendido sus operaciones y no han prescrito las acciones de los acreedores

Conforme se nos haya elegido alguna de las dos opciones anteriores, a continuación exprese las circunstancias o características que, en términos de lo previsto por la fracción II del artículo 3 del Código de Comercio y la fracción II del artículo 4° de la LCM, dan calidad de comerciante a la persona física autora de la sucesión solicitante.

Haga clic aquí para escribir texto

### Opción 3

◉ Una sociedad constituida con arreglo a las leyes mercantiles;

### Opción 4

○ Un socio ilimitadamente responsable de una sociedad;

### Opción 5

○ Una sociedad extranjera o agencia o sucursal de ésta, que ejerce actos de comercio dentro del territorio nacional;

### Opción 6

○ Patrimonio fideicomitido con actividad empresarial.

Solamente que se haya elegido esta opción, a continuación describa las características del objeto del fideicomiso que, en términos de lo previsto por la fracción II del artículo 4 de la LCM, determinen que la actividad a que está afecto el patrimonio fideicomitido, es empresarial.

Haga clic aquí para escribir texto

☐ **Pequeño comerciante**

De conformidad con lo establecido por el artículo 5º de la LCM, los pequeños comerciantes sólo podrán ser declarados en concurso mercantil, cuando acepten o se sometan voluntariamente y por escrito a la aplicación de la LCM. Se entiende como pequeño comerciante a aquel cuyas obligaciones vigentes y vencidas, en conjunto, no excedan el equivalente de 400,000 UDIS al momento de la solicitud o demanda.

Si es el caso, marque con el símbolo X dentro del cuadro que antecede al título de este apartado.

El comerciante que suscribe la presente solicitud, manifiesta ser pequeño comerciante y acepta expresamente someterse voluntariamente a la aplicación de la presente Ley.

---

**Identificación y personalidad de quien promueve por el comerciante y de las personas autorizadas en términos del artículo 1069 del Código de Comercio**

Ponga el botón que a continuación la frase que identifica el tipo de persona física que corresponde al comerciante que solicita ser declarado en concurso mercantil.

⦿ Persona moral o patrimonio fideicomitido          ○ Persona física

**Persona(s) que promueve(n) por el comerciante**

Si necesita anexar otra o otras personas que promueven por el comerciante, observe los siguientes pasos.

1. Dé clic con el mouse izquierdo a la altura de la siguiente recuadro en el que se insertan los datos de identificación de personas que promueven por el comerciante.
2. Elija el comando "Copiar".
3. Posicione el cursor en el "Área de pegado" que aparece en seguida del área seleccionada.
4. Elija el comando "Pegar".

**Nombre:**
RAFAEL RODRÍGUEZ SÁNCHEZ.

Escriba aquí el nombre de la persona física que presenta la solicitud de declaración de concurso mercantil.

**Carácter que ostenta:**
REPRESENTANTE LEGAL.                                                              ↗

De la forma o carácter bajo la cual actúa ya sea por su propio derecho como apoderado o representante legal.

**Instrumento con el que acredita personalidad:**
Escritura Pública número 99,377 de fecha 19 de noviembre de 2014, otorgada ante la Fe del licenciado José Eugenio Castañeda Escobedo titular de la Notaría Pública número 211 de la Ciudad de México, Inscrita en el Folio Mercantil número 167,346, con fecha 12 de julio de 2016 y número de entrada 50,686.

En su caso, describa el documento en el que conste que tiene facultades para representar al comerciante que solicita ser declarado en concurso mercantil y de ser el caso forma LFT 20 inciso 10.

<<Área de pegado>>

---

**Persona(s) autorizada(s)**

De conformidad con lo dispuesto por el artículo 1069 del Código de Comercio de aplicación supletoria a la LCM, las partes podrán autorizar personas con capacidad legal para actuar en nombre de autorizante.

En términos del párrafo 4 del artículo 1069 las partes podrán autorizar para oír notificaciones e imponerse de los autos, así como para interponer cualquier recurso que proceda, ofrecer e intervenir en el desahogo de pruebas, alegar en las audiencias, pedir se dicte sentencia para evitar la consumación del término de caducidad por inactividad procesal y realizar cualquier acto que resulte ser necesario para la defensa de los derechos del autorizante. Para ello deberán acreditar encontrarse legalmente autorizados para ejercer la profesión de abogado o licenciado en Derecho.

En términos del penúltimo párrafo del artículo 1069, las partes podrán designar personas solamente autorizadas para oír notificaciones e imponerse de los autos, a quien no gozará de las demás facultades a que se refiere el párrafo anterior.

Para identificar a las personas que autoriza, en el anterior párrafo proporcione la información que a continuación se solicita, un recuadro por cada persona autorizada y tantas hojas como sean necesarias.

Si necesita anexar otra o otras personas autorizadas observe los siguientes pasos.

1. Dé clic en el margen izquierdo de la hoja a la altura de los siguientes recuadros, en los que se insertan los datos de identificación de personas autorizadas.
2. Elija el comando "Copiar".
3. Posicione el cursor en el "Área de pegado" que aparece en seguida del área seleccionada.
4. Elija el comando "Pegar".

| Nombre del autorizante: | Nombre del autorizante: |
|---|---|
| TV AZTECA, SOCIEDAD ANÓNIMA | TV AZTECA, SOCIEDAD ANÓNIMA |

PODER JUDICIAL DE LA FEDERACIÓN   IFECOM   I22/20   Hoja 7 56 46

| BURSÁTIL DE CAPITAL VARIABLE | BURSÁTIL DE CAPITAL VARIABLE |
|---|---|
| **Nombre del autorizado:** Alonso Rivera Gaxiola | **Nombre del autorizado:** Béla Kálloi Romero |
| **Cédula profesional:** 2758882 | **Cédula profesional:** 5743541 |
| **Alcance de la autorización:** ☒ Tercer párrafo del artículo 1069 del Código de Comercio ☐ Penúltimo párrafo del artículo 1069 del Código de Comercio | **Alcance de la autorización:** ☒ Tercer párrafo del artículo 1069 del Código de Comercio ☐ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| **Nombre del autorizado:** Ramón Fernández Vigil | **Nombre del autorizado:** Pedro Iván Quevedo Ramos |
| **Cédula profesional:** 7571118 | **Cédula profesional:** 6147032 |
| **Alcance de la autorización:** ☒ Tercer párrafo del artículo 1069 del Código de Comercio ☐ Penúltimo párrafo del artículo 1069 del Código de Comercio | **Alcance de la autorización:** ☒ Tercer párrafo del artículo 1069 del Código de Comercio ☐ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| **Nombre del autorizado:** Alejandro del Castillo Ramírez | **Nombre del autorizado:** Rodrigo Lagos Scherer |
| **Cédula profesional:** 6024819 | **Cédula profesional:** 9347274 |
| **Alcance de la autorización:** ☒ Tercer párrafo del artículo 1069 del Código de Comercio ☐ Penúltimo párrafo del artículo 1069 del Código de Comercio | **Alcance de la autorización:** ☒ Tercer párrafo del artículo 1069 del Código de Comercio ☐ Penúltimo párrafo del artículo 1069 del Código de Comercio |

| Nombre del autorizante:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | Nombre del autorizante:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
|---|---|
| Nombre del autorizado:<br>Diego Machuca Rojas | Nombre del autorizado:<br>Rafael Eugenio Plancarte Gómez |
| Cédula profesional:<br>11873770 | Cédula profesional:<br>9244100 |
| Alcance de la autorización:<br>☒ Tercer párrafo del artículo 1069 del Código de Comercio<br>☐ Penúltimo párrafo del artículo 1069 del Código de Comercio | Alcance de la autorización:<br>☒ Tercer párrafo del artículo 1069 del Código de Comercio<br>☐ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| Nombre del autorizante:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | Nombre del autorizante:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| Nombre del autorizado:<br>Andrea Jiménez Aguilar | Nombre del autorizado:<br>Laura Miroslava Medina Arellano |
| Cédula profesional:<br>15006300 | Cédula profesional:<br>14772428 |
| Alcance de la autorización:<br>☒ Tercer párrafo del artículo 1069 del Código de Comercio<br>☐ Penúltimo párrafo del artículo 1069 del Código de Comercio | Alcance de la autorización:<br>☒ Tercer párrafo del artículo 1069 del Código de Comercio<br>☐ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| Nombre del autorizante:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE | Nombre del autorizante:<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE |
| Nombre del autorizado:<br>Diego Roberto Espinosa Arzani | Nombre del autorizado:<br>Javier Hernández Sierra |
| Cédula profesional:<br>14772446 | Cédula profesional:<br>12917838 |
| Alcance de la autorización:<br>☒ Tercer párrafo del artículo 1069 del Código de Comercio<br>☐ Penúltimo párrafo del artículo 1069 del Código de Comercio | Alcance de la autorización:<br>☒ Tercer párrafo del artículo 1069 del Código de Comercio<br>☐ Penúltimo párrafo del artículo 1069 del Código de Comercio |

Nombre del autorizante:
**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**
Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores

Nombre del autorizado:
Daniel Ávila Monroy
Escriba completo el nombre de la persona física autorizada

Cédula profesional:
14156013
Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho

Alcance de la autorización:
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☒ Tercer párrafo del artículo 1069 del Código de Comercio
☐ Penúltimo párrafo del artículo 1069 del Código de Comercio

Nombre del autorizante:
**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**
Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

Nombre del autorizado:
Fernando Arsenio López Sánchez
Escriba completo el nombre de la persona física autorizada

Cédula profesional:
12955959
Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

Alcance de la autorización:
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☒ Tercer párrafo del artículo 1069 del Código de Comercio
☐ Penúltimo párrafo del artículo 1069 del Código de Comercio

Nombre del autorizante:
**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**
Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

Nombre del autorizado:
Jose Damian Carvajal Arroyo
Escriba completo el nombre de la persona física autorizada

Cédula profesional:
14149587
Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho

Alcance de la autorización:
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☒ Tercer párrafo del artículo 1069 del Código de Comercio
☐ Penúltimo párrafo del artículo 1069 del Código de Comercio

Nombre del autorizante:
**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**
Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

Nombre del autorizado:
Alfredo Vázquez Meyer
Escriba completo el nombre de la persona física autorizada.

Cédula profesional:
Haga clic aquí para escribir texto.
Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

Alcance de la autorización:
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.

☐ Tercer párrafo del artículo 1069 del Código de Comercio
☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

Nombre del autorizante:
**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**
Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

Nombre del autorizado:
Fernando Dueñes Arias
Escriba completo el nombre de la persona física autorizada

Cédula profesional:
Haga clic aquí para escribir texto.
Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho

Alcance de la autorización:
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☐ Tercer párrafo del artículo 1069 del Código de Comercio

Nombre del autorizante:
**TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**
Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

Nombre del autorizado:
Juan Pablo Reyes de la Mora
Escriba completo el nombre de la persona física autorizada

Cédula profesional:
Haga clic aquí para escribir texto.
Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho

Alcance de la autorización:
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☐ Tercer párrafo del artículo 1069 del Código de Comercio

Case 1:22-cv-08164-PGG-BCM    Document 247-1    Filed 06/08/26    Page 59 of 99

| ☒ Penúltimo párrafo del artículo 1069 del Código de Comercio | ☒ Penúltimo párrafo del artículo 1069 del Código de Comercio |
|---|---|
| **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores. | **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores. |
| **Nombre del autorizado:** Emilio Díaz Vázquez Escriba completo el nombre de la persona física autorizada. | **Nombre del autorizado:** Iván Jésus Alatorre García Escriba con pleno el nombre de la persona física autorizada. |
| **Cédula profesional:** Haga clic aquí para escribir texto. Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho | **Cédula profesional:** Haga clic aquí para escribir texto. Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho |
| **Alcance de la autorización:** Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere. | **Alcance de la autorización:** Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere. |
| ☐ Tercer párrafo del artículo 1069 del Código de Comercio ☒ Penúltimo párrafo del artículo 1069 del Código de Comercio | ☐ Tercer párrafo del artículo 1069 del Código de Comercio ☒ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores. | **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores. |
| **Nombre del autorizado:** Krishna Santiago Cisneros Ramos Escriba completo el nombre de la persona física autorizada. | **Nombre del autorizado:** Christian Carlo Niño Martínez Escriba completo el nombre de la persona física autorizada. |
| **Cédula profesional:** Haga clic aquí para escribir texto. Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho | **Cédula profesional:** Haga clic aquí para escribir texto. Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho |
| **Alcance de la autorización:** Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere. | **Alcance de la autorización:** Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere. |
| ☐ Tercer párrafo del artículo 1069 del Código de Comercio ☒ Penúltimo párrafo del artículo 1069 del Código de Comercio | ☐ Tercer párrafo del artículo 1069 del Código de Comercio ☒ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores. | **Nombre del autorizante:** TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores. |
| **Nombre del autorizado:** Alan Said Merchant Granados Escriba completo el nombre de la persona física autorizada. | **Nombre del autorizado:** Hugo Eduardo Hernández Vázquez Escriba completo el nombre de la persona física autorizada. |
| **Cédula profesional:** Haga clic aquí para escribir texto. Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho | **Cédula profesional:** Haga clic aquí para escribir texto. Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho |
| **Alcance de la autorización:** Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere. | **Alcance de la autorización:** Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere. |

| | |
|---|---|
| ☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio | ☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio |

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Iker Alonso Vega Dulac

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

**Alcance de la autorización:**
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

---

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Marco Antonio López Gastelum

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

**Alcance de la autorización:**
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

---

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Karla Gabriela Tapia Tlapanco

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

**Alcance de la autorización:**
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

---

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Vicente Ávila Zuñiga

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

**Alcance de la autorización:**
Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

---

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Salvador Montes de Oca Mendoza

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

**Alcance de la autorización:**

---

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Balfré Morales Lozano

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

**Alcance de la autorización:**

| | |
|---|---|
| refiere al alcance de la autorización que confiere.<br>☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio | refiere al alcance de la autorización que confiere.<br>☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| **Nombre del autorizante:**<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.*<br><br>**Nombre del autorizado:**<br>Diego Francisco Quiroz Díaz<br>*Escriba completo el nombre de la persona física autorizada.*<br><br>**Cédula profesional:**<br>Haga clic aquí para escribir texto.<br>*Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.*<br><br>**Alcance de la autorización:**<br>*Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.*<br><br>☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio | **Nombre del autorizante:**<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.*<br><br>**Nombre del autorizado:**<br>Lilian Michelle Hernández Guzmán<br>*Escriba completo el nombre de la persona física autorizada.*<br><br>**Cédula profesional:**<br>Haga clic aquí para escribir texto.<br>*Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.*<br><br>**Alcance de la autorización:**<br>*Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.*<br><br>☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| **Nombre del autorizante:**<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.*<br><br>**Nombre del autorizado:**<br>Lenin Escudero Calderón<br>*Escriba completo el nombre de la persona física autorizada.*<br><br>**Cédula profesional:**<br>Haga clic aquí para escribir texto.<br>*Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.*<br><br>**Alcance de la autorización:**<br>*Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.*<br><br>☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio | **Nombre del autorizante:**<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.*<br><br>**Nombre del autorizado:**<br>Anuar Tanus Chedraui<br>*Escriba completo el nombre de la persona física autorizada.*<br><br>**Cédula profesional:**<br>Haga clic aquí para escribir texto.<br>*Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.*<br><br>**Alcance de la autorización:**<br>*Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.*<br><br>☐ Tercer párrafo del artículo 1069 del Código de Comercio<br>☒ Penúltimo párrafo del artículo 1069 del Código de Comercio |
| **Nombre del autorizante:**<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.*<br><br>**Nombre del autorizado:**<br>Laura Elena Lemus Guzmán<br>*Escriba completo el nombre de la persona física autorizada.*<br><br>**Cédula profesional:**<br>Haga clic aquí para escribir texto.<br>*Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.* | **Nombre del autorizante:**<br>TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE<br>*Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.*<br><br>**Nombre del autorizado:**<br>Ximena Andrea Becerra Ramos<br>*Escriba completo el nombre de la persona física autorizada.*<br><br>**Cédula profesional:**<br>Haga clic aquí para escribir texto.<br>*Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.* |

**Alcance de la autorización:**

Marque con el símbolo X dentro de cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☑ Penúltimo párrafo del artículo 1069 del Código de Comercio

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores

**Nombre del autorizado:**
Pamela Johanni Morán Herrera

Escriba completo el nombre de la persona física autorizada

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

---

**Alcance de la autorización:**

Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores

**Nombre del autorizado:**
Alan Santiago González Arellano

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

---

**Alcance de la autorización:**

Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☑ Penúltimo párrafo del artículo 1069 del Código de Comercio

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores

**Nombre del autorizado:**
Emiliano Manuel González Ballesteros

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

---

**Alcance de la autorización:**

Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores

**Nombre del autorizado:**
Enrique Domínguez Hernández

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en derecho.

---

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Lucca Alvar Ruiz

Escriba completo el nombre de la persona física autorizada

**Cédula profesional:**
Haga clic aquí para escribir texto

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en

---

**Nombre del autorizante:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE

Escriba completo el nombre de la parte que autoriza, sea el comerciante o alguno de los acreedores.

**Nombre del autorizado:**
Paulina Mathurin Motta

Escriba completo el nombre de la persona física autorizada.

**Cédula profesional:**
Haga clic aquí para escribir texto.

Escriba los datos del documento que acredita que la persona autorizada está legalmente facultada para ejercer la profesión de abogado o licenciado en

**Alcance de la autorización:**

Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere a alcance de la autorización que confiere.

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☑ Penúltimo párrafo del artículo 1069 del Código de Comercio

**Alcance de la autorización:**

Marque con el símbolo X dentro del cuadro que identifica el párrafo que se refiere al alcance de la autorización que confiere.

☐ Tercer párrafo del artículo 1069 del Código de Comercio

☒ Penúltimo párrafo del artículo 1069 del Código de Comercio

---

☐ **Acumulación de procedimientos. Sección 1**

De conformidad con lo establecido por los artículos 14, 15 y 15 Bis de la LCM, es posible que se tramiten acumulados pero por cuerda separada los procedimientos de concurso mercantil de una o más de dos en razón de la situación de relación corporativa o de responsabilidad limitada que guarden.

Si es el caso, marque con el símbolo X dentro del cuadro que antecede al título de este apartado.

Proporcione la información que se solicita a continuación y llene el formato LP2/20/Sección 1.

Pulse el botón que antecede al párrafo que identifica a la situación de acumulación que se actualiza y complemente la información que corresponda.

○ Se pide acumulación del procedimiento que se inicie con esta solicitud al procedimiento radicado ante ese Juzgado haga clic aquí para escribir texto, bajo el expediente Haga clic aquí para escribir texto, relativo al procedimiento de concurso mercantil del comerciante Haga clic aquí para escribir texto toda vez que, de los supuestos previstos por los artículos 14, 15 y 15 Bis de la LCM, respecto de la solicitante se actualizan los que se especifican en el formato LP2/20/Sección 1.

○ Se pide acumulación del procedimiento que se inicie con esta solicitud al (a los) procedimiento(s) del (de los) comerciante(s) Haga clic aquí para escribir texto .que se inicie(n) respecto de las solicitudes de declaración de concurso mercantil que el(los) mismo(s), conjuntamente presenta(n), toda vez que, de los supuestos previstos por los artículos 14, 15 y 15 Bis de la LCM, respecto de la solicitante se actualizan los que se especifican en el formato LP2/20/Sección 1.

## Manifestación de incumplimiento o inminencia de incumplimiento generalizado en el pago de obligaciones del comerciante. Sección 2

De conformidad con lo dispuesto por el artículo 20 de la LCM, el comerciante que considere que ha incurrido en el incumplimiento generalizado de sus obligaciones, en términos de cualquiera de los supuestos establecidos en los artículos 10 de la misma ley, deberá manifestar que eso sucede

De conformidad con lo dispuesto por el artículo 20 Bis de la LCM, el comerciante que considere que incurrirá en el incumplimiento generalizado de sus obligaciones en términos de cualquiera de los supuestos establecidos en los artículos 10 de la misma ley, deberá manifestar bajo protesta de decir verdad, que es inminente que sucederá

Según el contenido del párrafo segundo del citado artículo 20 Bis, por inminente, debe entenderse que cualquiera de los supuestos establecidos en los artículos 10 de la LCM, se actualizará dentro de los 90 días siguientes a la solicitud

Para aportar la información conducente a la situación de incumplimiento en las obligaciones de pago que guarda el comerciante, llene el formato LP2/20/Sección 2 y proporcione la información que a continuación se solicita

Elija una sola de las dos posibles figuras pulsando el botón que antecede a la situación que guarda el estado de incumplimiento de obligaciones del comerciante

| | Después de la frase "... que el día ___" escriba la fecha en que el comerciante presume, que cualquiera de los dos supuestos del artículo 10 de la LCM, se actualizará de manera inevitable. |
|---|---|
| ⊙  El comerciante manifiesta que ha incumplido en sus obligaciones de pago a dos o más acreedores distintos porque, como se aprecia del contenido del formato LP2/20/Sección 2, ha incurrido en el (los) supuesto(s) de la(s) fracción(es) (I y/o II) del artículo 10 de la LCM. | ○  El comerciante manifiesta bajo protesta de decir verdad que el día *haga clic aquí para escribir texto.*, incurrirá en incumplimiento de sus obligaciones de pago a dos o más acreedores distintos porque, como se aprecia del contenido del formato LP2/20/Sección 2, es inminente que se encuentre en el (los) supuesto(s) de la(s) fracción(es) (I y/o II) del artículo 10 de la LCM. |

### Solicitud

Si de conformidad con lo dispuesto por el artículo 20 o 20 Bis de la LCM, el comerciante considera que ha incurrido o que es inminente que incurra en el incumplimiento generalizado de sus obligaciones en términos de cualquiera de los supuestos establecidos en el artículo 10 de la misma ley, podrá solicitar ser declarado en concurso mercantil y que, en caso de ser fundado, se abrirá en etapa de conciliación, salvo que el propio comerciante solicite su declaración en quiebra, en términos de lo dispuesto por la fracción V del artículo 43 de la LCM.

Para aportar la información conducente a la solicitud formal de ser declarado en concurso mercantil, proporcione la información que a continuación se solicita

En el espacio que aparece a continuación de la frase " El comerciante " escriba completo el nombre de la persona física o, en su caso, la denominación o razón social de la persona moral que solicita ser declarada en concurso mercantil.

En el espacio que aparece a continuación de la frase " en etapa de " especifique si solicita que, de considerarse fundada la declaración en concurso mercantil, se abra en etapa de conciliación o en quiebra.

El comerciante **TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE,** solicita ser declarado en concurso mercantil en etapa de **CONCILIACIÓN**, en términos de lo dispuesto por el artículo 20 de la LCM, toda vez que la solicitud reúne los requisitos y se adjuntan los documentos que se indican en ese artículo, asimismo manifiesta que respecto del incumplimiento generalizado de sus obligaciones de pago reúne los requisitos exigidos por el citado artículo 20 o 20 bis de la LCM, como se aprecia del contenido del formato LP2/20/Sección 2.

## Narración de hechos

A continuación hace los hechos en que funda s... pe... de manera sucinta, con claridad y precisión de conformidad con lo establecido por la fracción III del inciso 322 del Código Federal de Procedimientos Civiles, de aplicación supletoria a la LGM.

... estas hojas como sean necesarias

1.- **TV AZTECA**, fue constituida en fecha 2 de junio del 1993, originalmente bajo la denominación de **CONTROLADORA MEXICANA DE COMUNICACIONES, S.A. DE C.V.** (en lo sucesivo "CMC") con domicilio en la Ciudad de México, duración de noventa y nueve años, capital social variable, con un mínimo fijo de $50,000.00 Pesos (cincuenta mil pesos 00/100 M.N.) y máximo ilimitado, con cláusula de exclusión de extranjeros.

2.- Mediante Asamblea General Extraordinaria de Accionistas, de fecha 18 de julio de 1996, se tomó, entre otros, el acuerdo de cambiar la denominación de la moral **CONTROLADORA MEXICANA DE COMUNICACIONES, S.A. DE C.V.** por la de **TV AZTECA, S.A. DE C.V.**, reformando al efecto la Cláusula Primera de sus Estatutos Sociales, lo cual se hizo constar en la escritura pública número 49,317 de fecha 3 de septiembre de 1996, otorgada ante la fe del Licenciado Armando Gálvez Pérez Aragón, Notario Público número 103 de la Ciudad de México.

3.- Mediante Asamblea General Ordinaria y Extraordinaria de Accionistas de TV AZTECA, S.A. DE C.V., celebrada en la ciudad de México el día 19 de agosto del 2010, se acordó la transformación de TV AZTECA, S.A. de C.V., a la modalidad de SOCIEDAD ANONIMA BURSÁTIL DE CAPITAL VARIABLE, modificándose para tal efecto las Cláusulas Primera, Cuarta, Sexta, Séptima, Octava, Novena, Décima Segunda, Décima Tercera, Décima Cuarta, Décima Sexta Décima Octava, Décima Novena, Vigésima Primera, Vigésima Segunda, Vigésima Cuarta, Vigésima Sexta, Vigésima Séptima, Vigésima Octava, Vigésima Novena, Trigésima, Trigésima Primera, Trigésima Segunda, Trigésima Tercera, Trigésima Cuarta y Trigésima Sexta de sus Estatutos Sociales.

Como consecuencia de lo anterior, la denominación social de la empresa quedó en los términos actuales, a saber: **TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE** (TV AZTECA, S.A.B. DE C.V.), con Clave de Cotización BMV: AZTECA CPO y Clave de Cotización LATIBEX: XTZA, lo cual se hizo constar en la Póliza número 8,970, de fecha 26 de agosto del 2010, otorgada ante el Licenciado Mauricio Alejandro Ompeza Estrada, Corredor Público número 14 de la Ciudad de México.

4.- Con fecha 23 de diciembre de 2021, se hizo constar la **fusión** de **TV AZTECA, S.A.B. DE C.V.** – *como sociedad fusionante que subsistió* – con las sociedades que a continuación se enlistan – *como sociedades fusionadas que desaparecieron* –: (i) Administradora Grupo TVA, S.A. de C.V.; (ii) Alta Empresa II, S.A. de C.V.; (iii) Azteca Novelas, S.A.P.I. de C.V.; (iv) Azteca Telecasting, S. de R.L. de C.V.; (v) Azteca Web, S.A. de C.V.; (vi) Comercializadora en Medios de Comunicación de TV Azteca, S.A. de C.V.; (vii) Comerciacom, S.A. de C.V.; (viii) Comercializadora de Publicidad Azteca, S.A. de C.V.; (ix) Estudios Azteca, S.A. de C.V.; (x) Finbor México, S.A. de C.V.; (xi) Grupo TV Azteca, S.A. de

C.V.; **(xii)** Inversora Mexicana de Producción, S.A. de C.V.; **(xiii)** Profesionales y Administrativos en Servicios Inmobiliarios, S.A. de C.V.; **(xiv)** Red Azteca Internacional, S.A. de C.V.; **(xv)** Televisión Azteca, S.A. de C.V.; y **(xvi)** TV Azteca Comercializadora, S.A. de C.V.

5.- El objeto social de **TV AZTECA** hoy es el siguiente:

*"[...]*

*1.- Usar, aprovechar, explotar y operar bandas de frecuencias del espectro radioeléctrico y redes públicas o privadas de telecomunicaciones, así como prestación de servicios públicos de radiodifusión y telecomunicaciones, a través de concesiones propias o de terceros, llevar a cabo arrendamientos de concesiones, autorizaciones y permisos otorgados por las autoridades competentes o mediante cualquier otra figura permitida por la ley, así como la venta y/o comercialización de contenidos audiovisuales y espacios publicitarios en cualquier medio.*

*2.- Adquisición, distribución, cesión, representación, importación, exportación, uso, intercambio, aplicación o cualquier otra forma de contratación de todo tipo de eventos u obras audiovisuales, incluyendo sus derechos de difusión por cualquier medio, a nombre propio o en nombre o representación de terceros, en México y en el extranjero.*

*3.- Promover, constituir, organizar, explotar y tomar participación en el capital y patrimonio de todo género de sociedades mercantiles, civiles, asociaciones o empresas industriales, comerciales de servicios o de cualquier otra índole; enajenar o negociar tales acciones o participaciones y todo tipo de título valor permitido por la ley tanto nacionales como extranjeras, así como participar en su administración o liquidación.*

*4. Recibir de otras sociedades y personas, todos aquellos servicios que sean necesarios para el logro de sus actividades, tales como servicios legales, fiscales, administrativos, financieros, de tesorería, auditoría, mercadotecnia, preparación de balances y presupuestos, elaboración de programas y manuales; análisis de resultados de operación, evaluación de información sobre productividad y de posibles financiamientos, así como la preparación de estudios acerca de la disponibilidad de capital, entre otros.*

*5. Emitir, suscribir, aceptar, endosar y avalar títulos de crédito, valores mobiliarios y otros documentos que la Ley permita.*

*6. Adquirir, enajenar, arrendar, subarrendar, y otorgar el uso, goce, disposición o en general la explotación de toda clase de bienes muebles o inmuebles, incluyendo sus partes o accesorios; así como, derechos reales o personales sobre ello, que sean necesarios o convenientes para su objeto social o para las operaciones de las sociedades mercantiles o civiles, asociaciones e instituciones, en las que la sociedad tenga interés o participación.*

*7. Obtener y conceder todo tipo de préstamos, así como recibir, en su caso, garantías, emitir obligaciones y pagarés, aceptar, girar, endosar o avalar toda clase de títulos de crédito y otros documentos que amparen derechos de crédito; otorgar fianzas o garantías de cualquier clase contraídas por la sociedad y respecto de las obligaciones contraídas o de los títulos emitidos o aceptados por terceros.*

*8. Registrar, comprar, arrendar, ceder, renovar, licenciar, comprobar el uso y disponer de marcas, patentes, certificados de invención, nombres comerciales, dibujos industriales, avisos comerciales, registros de modelos,*

*derechos de autor, invenciones y procesos y todos los demás derechos de propiedad industrial e intelectual.*

*9. En general, realizar todo género de actos de comercio y celebrar todo tipo de contratos y convenios, así como operaciones de cualquier naturaleza que sean necesarios o convenientes para la realización de los objetos anteriores, en los términos de Ley.*

*[...]"*

Los hechos marcados con los numerales 1.-, 2.-, 3.-, 4.- y 5.- se acreditan con copia certificada de la Escritura Pública número 184,840 de fecha 26 de julio de 2025, otorgada ante la Fe del licenciado Eduardo Garduño García Villalobos titular de la Notaría Pública número 135 de la Ciudad de México, misma que se exhibe adjunta al Formato *LP 2/20/Anexo 12.*

### (B) COMPOSICIÓN ACCIONARIA DE TV AZTECA.

6.- La composición accionaria de **TV AZTECA**, a la fecha de la presente solicitud, es la que se muestra a continuación:

| ACCIONISTA | PORCENTAJE ACCIONARIO |
|---|---|
| COMUNICACIONES AVANZADAS, S.A. DE C.V. | 66.54% |
| RICARDO BENJAMÍN SALINAS PLIEGO | 4.14% |
| TECNOIDEAS PARA LA VIVIENDA, S.A. DE C.V. | 5.10% |
| FONDO GLOBAL | 8.06% |
| PÚBLICO INVERSIONISTA | 16.17% |
| TOTAL | 100.00% |

7.- Las acciones representativas del capital social de **TV AZTECA** están divididas en cuatro series:

a) Serie "A": Actualmente existen 4,759,228,375 acciones. Éstas son las únicas acciones que gozan de derechos de voto plenos. Comunicaciones Avanzadas, S.A. de C.V. (en lo sucesivo y por economía procesal "CASA"), actualmente es propietaria directa de la mayoría de las acciones Serie "A" en circulación.

b) Serie "D-A" y Serie "D-L": Existen actualmente 2,289,345,472 acciones de cada Serie. Las acciones "D-A" y las acciones "D-L" tienen derechos de voto limitado a los siguientes asuntos: (i) prórroga de la duración de **TV AZTECA** después de junio de 2092, (ii) disolución anticipada de **TV AZTECA** ; (iii) cambio de objeto social de TV Azteca; (iv) cambio de nacionalidad de **TV AZTECA** ;

(v) la transformación de **TV AZTECA** ; (vi) fusión con otra sociedad, y (vii) cancelación del registro de las acciones "D-A" y acciones "D-L" en el Registro Nacional de Valores y en las bolsas de valores donde éstas se encuentren listadas.

c) Serie "L": Estas acciones están autorizadas, pero aún no han sido emitidas. **TV AZTECA** espera emitir estas acciones en agosto de 2037, cuando las acciones D-L serán convertidas en acciones "L".

8.- A la fecha, el monto del capital social autorizado de **TV AZTECA** asciende a $715,870,000.00 pesos. El número total de acciones que lo representan asciende a 10,545,934,472 acciones, de las cuales 9,337,919,319 se encuentran emitidas y 1,207,915,153 son acciones de tesorería. Este monto total de acciones a su vez está dividido en las series señaladas como se menciona a continuación: Serie "A" con 4,759,228,375 acciones, Serie "D-A" con 2,289,345,472 acciones y Serie "D-L" con 2,289,345,472 acciones. Lo anterior, se integra de la siguiente manera:

| Tipo | Acciones Emitidas | Acciones Pagadas | Capital Social |
|---|---|---|---|
| Serie "A" | 4,759,228,375 | 4,632,625,000 | $373,070,000.00 |
| Serie "D-A" | 2,289,345,472 | 2,162,742,000 | $171,400,000.00 |
| Serie "D-L" | 2,289,345,472 | 2,162,742,000 | $171,400,000.00 |
| Total | 9,337,919,319 | 8,958,109,000 | $715,870,000.00 |

El capital social fijo de **TV AZTECA** asciende a la cantidad de $664'930,375.00 (Seiscientos sesenta y cuatro millones mil novecientos treinta mil trescientos setenta y cinco pesos 00/100 M.N.), el cual se encuentra representado totalmente suscrito y pagado y se representa por en acciones comunes, ordinarias, de la Serie "A" y por acciones de voto limitado de las Series "D-A" y "D-L", todas sin expresión de valor nominal.

9.- Las acciones de **TV AZTECA** están inscritas en las siguientes bolsas de valores: (i) Certificados de Participación Ordinarios (CPO's), cada uno representa una acción A, una acción D-A y una acción D-L, con la Clave de Pizarra AZTECACPO, en la Bolsa Mexicana de Valores, y (ii) Unidades de 10 CPO's, Clave de Pizarra XTZA, en el Mercado de Valores de Latinoamérica ("LATIBEX").

10.- Con fecha 27 de febrero de 2026, la Comisión Nacional Bancaria y de Valores mediante Oficio No. 153/4640/2026 inició el procedimiento de cancelación de la inscripción de los valores de **TV AZTECA** en el Registro Nacional de Valores con motivo de las causas que en dicho oficio se indicaron, exceptuando a **TV AZTECA** a llevar a cabo la oferta pública de adquisición a que se refiere la fracción I del artículo 108 de la Ley del Mercado de Valores debiendo **TV AZTECA**, dentro del plazo máximo de 180 días naturales contados a partir de que surtió efectos dicho requerimiento a cumplir con la constitución del fideicomiso a que se refiere el artículo 108 fracción I, inciso c) de la Ley del Mercado de Valores de manera previa a la cancelación de la inscripción de los valores debiendo presentar a la Comisión Nacional Bancaria y de Valores evidencia de haberse afectado a dicho fideicomiso los recursos

necesarios para adquirir los valores de los inversionistas considerados como gran público inversionista. El fideicomiso mencionado deberá contar en todo momento con los recursos mencionados durante un periodo mínimo de seis meses contados a partir de la fecha de cancelación de la inscripción de los valores en el Registro Nacional de Valores.

11.- Con fecha 27 de febrero de 2026, y en cumplimiento de lo establecido en el oficio a que se refiere el inciso 14 anterior, TV AZTECA constituyó el fideicomiso a que se refiere el inciso 14.- anterior, mismo que con fecha 06 de marzo de 2026 fue fondeado con la cantidad de $322,983,165.42 (trescientos veintidós millones novecientos ochenta y tres mil ciento sesenta y cinco pesos 42/100, M.N.).

## (C) DESCRIPCIÓN DEL NEGOCIO DE TV AZTECA.

12.- TV AZTECA es una de las dos productoras más importantes de contenido en español para televisión en el mundo y la segunda productora de contenido para televisión más grande de México con base en participación de audiencia y de mercado.

Canales de Televisión Mexicana de TV AZTECA.

13.- TV AZTECA actualmente es la accionista mayoritaria de 2 (dos) sociedades concesionarias que operan directamente 180 canales independientes de televisión digital terrestre distribuidos a lo largo del territorio nacional. Estos canales son operados en forma independiente, dentro de los cuales se difunde a través de sus señales diverso contenido atendiendo a la cobertura que cada uno de dichos canales tiene. A dichos canales se les reconoce para efectos de identificación comercial en sus títulos de concesión como Azteca 7, Azteca Uno y adn Noticias.

Los canales se operan desde 504 transmisores digitales de televisión al aire, siendo 180 estaciones principales concesionadas y 324 equipos complementarios, ubicados en todo México con programación las 24 horas del día, siete días a la semana, incluyendo el canal 26 para transmitir el contenido programático conocido como adn Noticias en la Ciudad de México. En el caso del contenido programático de adn Noticias, la concesionaria filial de TV AZTECA lo multi programa en 70 estaciones principales con sus respectivos equipos complementarios ubicados en el interior de México, lo cual fue autorizado en su momento por el Instituto Federal de Telecomunicaciones ("IFT").

Asimismo, en 2017 se lanzó por medio de la multiprogramación, el canal denominado adn Noticias que desde el 31 de marzo de 2020 se transmite en 54 estaciones principales con sus respectivos equipos complementarios.

14.- TV AZTECA cuenta con 28 (veintiocho) sucursales distribuidas en distintas partes de México, de las cuales 7 (siete) cuentan con la infraestructura para producir y difundir en contenidos locales, principalmente noticias y deportes de cada localidad para los 842 (ochocientos cuarenta y dos) transmisores de televisión abierta concesionados, incluyendo anuncios comerciales, programas y spots gubernamentales y electorales, en cada uno de ellos.

## Programación.

15.- La capacidad de **TV AZTECA** para proporcionar una mezcla diversa de contenido de calidad es uno de los principales factores para mantener y aumentar la popularidad de su programación y consecuentemente su sostenibilidad económica.

Por lo anterior, **TV AZTECA** se centra en producir y adquirir contenidos que atraigan a sus diferentes audiencias, considerando que el desarrollo de identidades separadas para sus canales la ha ayudado a captar una parte importante de la audiencia mexicana y ha ofrecido a sus anunciantes la oportunidad de ajustar sus anuncios a grupos demográficos específicos.

16.- El modelo de negocios de **TV AZTECA** – *operativa y económicamente* – se sostiene en base a 3 (tres) pilares fundamentales, a saber:

(i) **Contenidos Propios**: corresponde a contenidos originales y propios, desarrollados y producidos por **TV AZTECA**, los cuales se dirigen a atender las principales necesidades de su audiencia. Esto le permite a la sociedad adaptarse constantemente a las tendencias que aparecen en un mercado caracterizado por el dinamismo, para ofrecer a las personas la mejor oferta posible a través de distintas plataformas.

(ii) **Programación Comprada**: con el objetivo de maximizar la oferta de contenido y mantener un alto nivel competitivo frente a sus principales competidores, **TV AZTECA** paga y/o compra contenido, por ejemplo, series, películas, eventos deportivos y otros. La programación comprada es uno de los costos más significativos en la operación de **TV AZTECA**, y al mismo tiempo uno indispensable para su rentabilidad como negocio.

(iii) **Alianzas Estratégicas**: buscando maximizar su rentabilidad, **TV AZTECA** celebra acuerdos de cooperación con socios con los que se crean alianzas o fusiones y; a partir de las mismas, desarrolla contenidos que resultan relevantes para todas las partes.

## Contenido Producido por TV AZTECA

17.- **TV AZTECA**, a través de sus filiales, produce una variedad de programas, incluyendo series, telerrealidad, noticiarios, transmisiones deportivas, programas musicales, programas de concursos, "*talk shows*" y programas de mucha variedad.

18.- **TV AZTECA**, a través de sus filiales, produce contenido de entretenimiento innovador y de alta calidad para llegar a un mayor número de audiencia año con año. Entre programas producidos, directa o indirectamente, por la sociedad se encuentran, por ejemplo: "*Master Chef*, "*Exatlón*", "*Survivor*", "*La Academia*" y "*La Voz*".

19.- La programación noticiosa de **TV AZTECA**, a través de sus filiales, incluye

noticiarios en horario matutino, vespertino y estelar nocturno, dirigidos a las audiencias objetivo de sus canales de televisión. El noticiario "*Hechos*", que presenta un análisis más profundo de las noticias diarias, nacionales e internacionales es uno de los noticieros más relevantes en México. Asimismo, cada programa de noticias y análisis de la barra de adn Noticias transmite las noticias con un estilo diferente de la mano de reconocidas personalidades y líderes de opinión. Adicionalmente, se producen espacios noticiosos para ser transmitidos dentro de la programación local, cortes informativos y programas especiales.

20.- La programación deportiva producida por **TV AZTECA**, a través de sus filiales, consta principalmente de transmisiones de los partidos del torneo de la Primera División de Futbol Soccer Profesional Mexicano, así como programas de comentarios deportivos y producción de distintos eventos deportivos. El futbol soccer es el deporte más popular en México y las transmisiones de los partidos de la Primera División generan grandes audiencias. **TV AZTECA** – *directa o indirectamente* – tiene los derechos de transmisión para los partidos locales de 6 (seis) equipos de la Primera División conocida comercialmente como "*Liga MX*".

21.- Durante el año 2023, los costos en que incurrió TV AZTECA, por la producción de contenido propio ascendieron a aproximadamente la cantidad de $6,797'000,000 (Seis mil setecientos noventa y siete millones de pesos M.N.).

22.- Durante el año 2024, los costos en que incurrió **TV AZTECA**, por la producción de contenido propio ascendieron a aproximadamente la cantidad de $8,008'000,000 (Ocho mil ocho millones de pesos M.N.).

23.- Durante el año 2025, los costos en que incurrió **TV AZTECA**, por la producción de contenido propio ascendieron a aproximadamente la cantidad de $7,976'000,000 (Siete mil novecientos setenta y seis millones de pesos M.N.).

### Programación Comprada

24.- La compra de contenidos permite a **TV AZTECA** maximizar su oferta de contenidos y mantener un alto nivel competitivo frente a sus principales competidores – *como "TELEVISA"* –, sin embargo, también implica la generación de altos costos, mismos que son indispensables para su rentabilidad como negocio.

25.- **TV AZTECA** compra programación de aproximadamente 30 (treinta) distintos distribuidores, con la finalidad de responder a las distintas necesidades de la audiencia, una parte substancial de la programación comprada proviene de grandes estudios como: Buena Vista Internacional (Disney), Sony Pictures, Universal, así como diferentes proveedores independientes, como es el caso de Gussi.

26.- La programación comprada de **TV AZTECA** incluye principalmente películas y series reconocidas a nivel mundial. Los programas que no están en idioma español, y son comprados para los canales de **TV AZTECA**, son doblados al español antes de la entrega mediante el pago al distribuidor una

cuota adicional por este servicio.

27.- TV AZTECA también celebra contratos para transmitir programación deportiva, incluyendo los partidos del Mundial de Futbol Soccer, Juegos Olímpicos y los partidos de la Liga Nacional de Fútbol Americano (NFL por sus siglas en inglés). Asimismo, TV AZTECA celebra contratos para la transmisión de eventos especiales tales como Miss Universo y los Premios Oscar, entre otros.

28.- La programación comprada en los años 2023, 2024 y 2025, constituye aproximadamente el 39%, 40% y 38% de las horas de programación en horario estelar combinada entre semana, transmitida en los canales de TV AZTECA, por cada uno de los años antes señalados.

29.- Durante el año 2023, los costos en que incurrió TV AZTECA por la compra de contenido ascendieron aproximadamente a la cantidad de $2,540'000,000 (Dos mil quinientos cuarenta millones de pesos M.N.).

30.- Durante el año 2024, los costos en que incurrió TV AZTECA por la compra de contenido ascendieron aproximadamente a la cantidad de $2,307'000,000 (Dos mil trescientos siete millones de pesos M.N.).

31.- Durante el año 2025, los costos en que incurrió TV AZTECA por la compra de contenido ascendieron aproximadamente a la cantidad de $2,485'000,000 (Dos mil cuatrocientos ochenta y cinco millones de pesos M.N.).

Iniciativas Digitales.

32.- A partir de 2018, TV AZTECA inició una etapa de revisión y consolidación de las iniciativas digitales. El objetivo fue evaluar el estado de los proyectos digitales en curso —incluyendo plataformas, herramientas tecnológicas, proveedores y modelos de monetización— y definir una estrategia más estructurada para el crecimiento digital de la empresa.

Como resultado de este proceso se estableció una hoja de ruta enfocada en tres ejes principales: (i) Ampliar la distribución de contenido en plataformas digitales; (ii) Incrementar el alcance de audiencias en entornos digitales; y (iii) Desarrollar nuevos modelos de monetización asociados a dichas audiencias.

33.- Durante el periodo 2018-2024 se implementaron diversas iniciativas para fortalecer el ecosistema digital de la compañía.

Una de las primeras etapas relevantes fue el desarrollo de experiencias de *"second screen"*, diseñadas para complementar la transmisión televisiva con contenido digital adicional e interacción en tiempo real con la audiencia. Estas iniciativas incluyeron experiencias digitales asociadas a programas "La Academia", así como la creación de shows digitales complementarios relacionados con

contenidos como "Venga la Alegría", "MasterChef" y otros formatos de entretenimiento.

Dentro de estas iniciativas también se desarrollaron podcasts y espacios de conversación digital, orientados a ampliar la interacción con la audiencia en plataformas digitales mientras los programas se transmitían en televisión.

34.- De manera paralela, durante la cobertura digital del Mundial de Rusia 2018 se fortalecieron los contenidos asociados a eventos en vivo y se experimentó con nuevos formatos de distribución digital. En este mismo periodo se establecieron acuerdos exclusivos con Facebook para la distribución de contenidos digitales, lo que permitió ampliar el alcance de estas experiencias hacia audiencias en plataformas sociales.

35.- Posteriormente, la estrategia digital continuó evolucionando mediante el lanzamiento de nuevos sitios digitales, con el objetivo de ampliar la distribución de contenido informativo y de entretenimiento en entornos digitales.

Como resultado de estas iniciativas, la compañía alcanzó la primera posición en mediciones de audiencia digital de Comscore, registrando además crecimiento sostenido en redes sociales.

36.- Para fortalecer las capacidades digitales, también se implementaron herramientas tecnológicas orientadas al manejo y análisis de datos de audiencia. Entre estas iniciativas se encuentran la implementación de un Data Lake (repositorio centralizado de datos) y una Customer Data Platform o CDP, herramientas que permiten organizar información de audiencias y mejorar la segmentación publicitaria.

Asimismo, se expandieron los canales de distribución digital mediante el desarrollo de canales FAST (canales de streaming gratuitos financiados con publicidad) y la creación de aplicaciones para plataformas de CTV como Roku, Google TV y Fire TV, permitiendo que el contenido esté disponible en nuevos dispositivos y plataformas digitales.

37.- El crecimiento de audiencias digitales permitió fortalecer el modelo comercial digital de la compañía. Durante este periodo se desarrolló una estructura comercial enfocada en publicidad digital, lo que permitió incrementar la comercialización de audiencias en plataformas digitales.

Como resultado, los ingresos asociados a publicidad digital registraron un crecimiento significativo durante el periodo analizado, incluyendo activaciones comerciales relacionadas con eventos de alto impacto como el Mundial de Rusia 2018 y los Juegos Olímpicos de París 2024.

38.- El desarrollo de estas iniciativas digitales ha implicado la colaboración con diversos socios estratégicos y proveedores especializados, quienes han contribuido a habilitar capacidades tecnológicas, operativas y comerciales.

39.- Entre estas colaboraciones destacan acuerdos para la distribución de contenido con

plataformas como Claro Video durante eventos como los Juegos Olímpicos de París, así como acuerdos comerciales con plataformas de streaming como Tubi y Pluto.

## Principales Costos de TV AZTECA.

40.- Los costos de operación variables más importantes de **TV AZTECA** se relacionan con su programación ya sea producida internamente, coproducida o adquirida. El costo del contenido producido internamente varía de manera considerable dependiendo del tipo de programación. Adicionalmente, la producción de series y entretenimiento en vivo es más cara en relación con la producción de otras clases de programas.

Los costos de programación, producción y transmisión del año 2025 de **TV AZTECA** ascendieron a aproximadamente $10,461'000,000 (Diez mil cuatrocientos sesenta y uno millones de pesos M.N), mientras que en el año 2024 ascendieron a aproximadamente $10,316'000,000 (Diez mil trescientos dieciséis millones de pesos M.N.).

41.- Dicho lo anterior, si **TV AZTECA** no administra efectivamente los costos de la programación producida internamente o comprada a través de derechos de exhibición, es posible que sus costos de programación aumenten en una proporción mayor que los ingresos de publicidad. Si dichos costos aumentan sustancialmente, los resultados de operación de **TV AZTECA** pueden verse afectados negativamente.

## Principales Ingresos de TV AZTECA.

42.- **TV AZTECA** genera ingresos por medio de diversas fuentes, como lo son, entre otros: (i) las ventas de publicidad; (ii) la venta de contenido de la compañía, dentro y fuera de México; y (iii) la organización de eventos deportivos.

43.- La principal fuente de ingresos de **TV AZTECA** deriva de las ventas de publicidad a sus clientes y/o anunciantes, las cuales se encuentran íntimamente relacionadas con la programación, ya sea producida o comprada, visto que los costos de publicidad dependen de la mayor y/o mejor programación transmitida por **TV AZTECA**.

44.- En el año 2025, los anunciantes más importantes de TV AZTECA fueron: Procter & Gamble México, Genomma, Lab Internacional, Frabel, Bayer de México, Bimbo, Cervezas Cuauhtemoc Moctezuma, Nueva Elektra del Milenio, Havas Media, Mondelez México, Deremate.Com de México. Los diez anunciantes más importantes de TV AZTECA en conjunto con sus filiales representaron aproximadamente 14% de los ingresos netos de TV AZTECA. La terminación de la relación de TV AZTECA con cualquiera de sus anunciantes principales podría afectar sus resultados de operación.

45.- La publicidad nacional representó aproximadamente el 68% (Sesenta y ocho por ciento) de las ventas totales netas de **TV AZTECA** en los años 2024 y 2025, lo que evidencia que ésta es la principal fuente de ingresos de **TV AZTECA**, año con año.

## (D) CONTEXTO MACROECONOMICO Y POLÍTICO.

46.- El contexto macroeconómico de los últimos años – 2018 a 2025 –, tuvo como consecuencia que **TV AZTECA** no presentara los resultados que se esperaban, de hecho, diversas circunstancias ocasionaron que durante el año 2020 e incluso en años posteriores, sus resultados fueran negativos, lo cual ha incidido en su situación financiera, inclusive a largo plazo. Dicho contexto se explica a continuación:

(a) **PRESIÓN PÚBLICA Y POLÍTICA:** Debe decirse que existió un incremento de la presión pública, institucional y mediática con relación a: **(i)** el cobro de adeudos fiscales existentes a cargo de TV AZTECA, el componente fiscal dejó de ser una contingencia abstracta y se convirtió en un riesgo cierto e inminente para la continuidad operativa de la sociedad; y **(ii)** los pasivos derivados de los bonos emitidos por la Comerciante en Estados Unidos.

### (i) Créditos Fiscales.

En efecto, TV AZTECA enfrentaba litigios por adeudos o créditos determinados por la autoridad fiscal, por las siguientes sumas: **(i)** $3,902,000,000.00 (Tres mil novecientos dos millones de pesos M.N.) por concepto de Impuesto Sobre la Renta del ejercicio fiscal 2009 (incluyendo multas y recargos); y **(ii)** $4,790,000,000.00 (Cuatro mil setecientos noventa millones de pesos 00/100 M.N.) correspondientes al Impuesto Sobre la Renta del ejercicio fiscal 2013 (incluyendo multas y recargos).

Lo anterior se tornó especialmente riesgoso para la viabilidad de **TV AZTECA**, visto que el Código Fiscal de la Federación faculta a la autoridad fiscal a ejecutar créditos fiscales mediante el procedimiento administrativo de ejecución, así como mecanismos con impacto inmediato en tesorería, como: **(i)** la inmovilización de depósitos bancarios del contribuyente (artículo 156-Bis), y **(ii)** la intervención de la negociación con cargo a la caja, con retiro de hasta un porcentaje de los ingresos percibidos en efectivo, y la posibilidad de convertir la intervención en administración (artículos 164 y 165).

En este contexto, la presión pública e institucional —*al incrementar el riesgo de ejecución fiscal y de afectación inmediata de caja*— obligó a la sociedad a priorizar liquidez para evitar disrupciones operativas críticas.

Por ello, ante la inminencia de medidas de cobro coactivo y la potencial pérdida/restricción de caja, la sociedad se vio compelida a obtener y/o utilizar financiamiento adicional y urgente para atender el pasivo fiscal y mitigar el riesgo de paralización operativa.

Esto impactó directamente la viabilidad como unidad productiva: la detraída o inmovilización de caja y/o el aumento de pasivos financieros (costos por intereses, garantías, vencimientos) redujo la capacidad de cumplir obligaciones ordinarias de operación (salarios, insumos, transmisión, proveedores críticos) y elevó el riesgo de incumplimiento a diversos acreedores.

Dicho contexto orilló a **TV AZTECA** a adquirir un financiamiento urgente – *con las consecuencias que ello implica* – Alter Bank LTD por la cantidad de hasta $5,000'000,000.00 (Cinco mil millones de pesos 00/100 M.N.); ello como una medida defensiva e indispensable orientada a preservar: (i) la continuidad operativa; (ii) la estabilidad laboral; y (iii) la integridad de activos estratégicos para la operación; sin embargo, a la par, incrementó el pasivo de la Sociedad, deterioró su estructura de capital y redujo su capacidad de maniobra financiera, contribuyendo al agravamiento del estado de insolvencia.

En conclusión, la presión fiscal y el riesgo real de ejecución administrativa constituyeron factores determinantes en el agravamiento del incumplimiento generalizado de obligaciones previsto en el artículo 10 de la Ley de Concursos Mercantiles y obligó a la comerciante a solicitar su declaración en concurso mercantil con el claro objetivo de: (i) preservar la empresa como unidad productiva; (ii) ordenar colectivamente el tratamiento de pasivos; (iii) evitar ejecuciones aisladas que comprometan la continuidad del negocio; y (iv) garantizar un tratamiento equitativo frente a todos los acreedores.

### (ii) Pasivos por Bonos emitidos en Estados Unidos.

Con independencia de que los pasivos derivados de los bonos emitidos en Estados Unidos constituyen obligaciones mercantiles a cargo de la Comerciante y se encuentran sujetos a los mecanismos de negociación y ejecución propios de su régimen contractual, es un hecho público y notorio que dichos pasivos trascendieron del ámbito estrictamente privado y escalaron a un plano de interlocución y posicionamiento gubernamental, con efectos materiales en el entorno operativo, reputacional y de riesgo de litigio de la Sociedad.

En particular, diversos fondos/tenedores vinculados a dicha emisión —*o a la adquisición posterior de esos instrumentos en el mercado secundario*— solicitaron diálogo directo con el Gobierno de México para la solución de adeudos atribuidos a **TV AZTECA**, asociando sus reclamaciones a actuaciones judiciales internas y, además, impulsando o manteniendo un arbitraje internacional contra el Estado mexicano en torno al mismo conflicto.

Adicionalmente, derivado de la presión pública ejercida por dichos fondos/tenedores, la propia Titular del Ejecutivo Federal realizó manifestaciones públicas relativas a la necesidad de que **TV AZTECA** cumpliera sus obligaciones frente a los fondos/acreedores en Estados Unidos, e incluso se reportó su disposición a reunirse con dichos acreedores en ese país, en un contexto donde se alude expresamente al litigio por bonos impagados.

Este conjunto de hechos evidencia que fondos/tenedores no solo generaron presión de mercado y litigio transfronterizo, sino también presión político-institucional: (i) por el solo hecho de involucrar al Estado mexicano en un arbitraje internacional con potencial impacto en recursos públicos y política exterior económica; (ii) por el incentivo de contener costos de defensa/arbitraje y ruido reputacional país; y (iii) por el escrutinio público derivado de pronunciamientos del Ejecutivo y cobertura mediática. Lo anterior incrementó el riesgo de aceleración de controversias, endurecimiento de posturas, y afectación a fuentes de financiamiento y contrapartes, incidiendo en la viabilidad de soluciones privadas

TV AZTECA.

Dicho ello, la situación financiera de la comerciante no puede analizarse de manera aislada respecto de los pasivos derivados de los bonos emitidos en el mercado estadounidense, por cuanto el conflicto relativo a dichos instrumentos trascendió el ámbito estrictamente privado y contractual, escalando a un plano de interlocución pública e institucional.

Este contexto produjo dos efectos jurídicamente relevantes:

(I) Presión Institucional y Reputacional: Las manifestaciones públicas y la cobertura mediática de los pasivos de TV AZTECA generaron un entorno de presión institucional que impactó: (i) la percepción de riesgo de la empresa; (ii) la disponibilidad de financiamiento; y (iii) la estabilidad de negociaciones privadas en curso.

(II) Agravamiento del estado de Incumplimiento Generalizado de Obligaciones: Se incrementó el riesgo de aceleración de obligaciones, se redujeron alternativas de refinanciamiento, se deterioró la posición de potencial negociación frente a otros acreedores.

En resumen, se generó un efecto contagio sobre pasivos distintos a los bonos y la Comerciante enfrentó un escenario en el cual la reestructuración privada de sus pasivos resultó materialmente inviable, no sólo por su insuficiencia de liquidez, sino también por la presión sistémica generada alrededor de uno de sus pasivos más relevantes.

En este caso, el concurso mercantil es una respuesta necesaria ante un escenario de deterioro integral, en el que la presión pública e institucional generada por los fondos/tenedores de bonos aceleró la imposibilidad de cumplir oportunamente con la totalidad de obligaciones exigibles y próximas a vencer.

En un escenario en el que un grupo de acreedores intenta internacionalizar el conflicto, generar presión institucional y posicionarse en situación de privilegio fáctico, el principio de igualdad concursal sólo puede preservarse mediante la sujeción de todos los acreedores a un procedimiento universal, como el que se solicita.

No obstante ello, la empresa ha sostenido procesos de negociación desde 2021 con dichos acreedores con el objetivo de reestructurar sus obligaciones financieras, lo que no ha sido posible.

A pesar de: (i) la disposición de la compañía en todo momento de negociar un acuerdo de reestructura benéfico para las partes; y (ii) haber sostenido reuniones con grupo de acreedores, y un proceso formal de mediación, no se logró llegar a acuerdos de reestructura financiera con los acreedores.

La complejidad de estas negociaciones, sumada a la evolución negativa del entorno adverso del mercado, ha incrementado la presión financiera sobre la compañía.

### (b) TRANSFORMACIÓN ESTRUCTURAL DE LA INDUSTRIA DE MEDIOS.

Entre los principales factores que han presionado a TV AZTECA destaca un fenómeno más amplio que afecta a la industria de medios en general: el declive estructural del mercado publicitario en televisión abierta, una tendencia observable a nivel global que ha modificado de forma significativa la economía del sector.

#### (a) Cambios en los hábitos de consumo audiovisual

En las últimas dos décadas el sector de medios en el mundo ha experimentado una transformación profunda. La digitalización, la expansión del internet de banda ancha y la multiplicación de dispositivos móviles cambiaron la forma en que las audiencias consumen contenidos.

Hoy una parte relevante del consumo audiovisual se realiza a través de plataformas digitales de distribución de video, incluidos servicios de streaming y plataformas en línea como Netflix, YouTube y Amazon Prime Video.

Este cambio ha desplazado gradualmente el modelo tradicional de programación lineal —propio de la televisión abierta— hacia esquemas de contenido bajo demanda, consumo personalizado y formatos audiovisuales distribuidos a través de redes sociales.

Como consecuencia, las audiencias en todo el mundo se han fragmentado y el número de espectadores concentrados en unos pocos canales ha disminuido de manera significativa.

#### (b) Migración de la Inversión Publicitaria hacia Medios Digitales.

El modelo económico de la televisión abierta – del que forma parte TV AZTECA – ha dependido históricamente de la venta de espacios publicitarios.

En los últimos años a nivel mundial, sin embargo, una parte creciente del gasto publicitario se ha trasladado hacia plataformas digitales, que ofrecen segmentación precisa de audiencias, medición detallada del desempeño de campañas y la posibilidad de ajustar la inversión de forma inmediata.

Empresas tecnológicas como Google, Meta Platforms y TikTok han captado una porción cada vez mayor del mercado publicitario global.

Como resultado, el crecimiento del gasto publicitario en televisión abierta se ha desacelerado en diversos mercados, incluido el mexicano. Y esta migración a espacios digitales tuvo una aceleración en los años recientes a partir de la Pandemia de COVID-19

(c) COVID-19: La llegada de la pandemia de COVID-19 a México, impidió a TV AZTECA generar los ingresos esperados durante el año 2020 y hasta la fecha. Una de las principales consecuencias negativas que trajo la referida pandemia, no solo para la sociedad, sino para toda la

industria de la televisión en México, fue la disminución en los ingresos debido a una menor inversión publicitaria por parte de los clientes – *sobre lo cual se abundará más adelante* –, así como el crecimiento intensificado del consumo de los servicios de Streaming *"Over The Top"* – *sobre lo cual también se abundará más adelante* –, como lo son las plataformas de *"Netflix"* *"Disney+"*, *"Amazon"*, entre otras.

### (a) COVID-19 y publicidad en medios de comunicación.

Más allá del crecimiento y centralidad en el acceso a contenidos noticiosos y de entretenimiento durante las distintas etapas del aislamiento y distanciamiento social ocasionados por las medidas y acciones implementadas por nuestros gobiernos Federal y Locales, la economía de los medios de comunicación fue gravemente afectada por la pandemia de COVID-19 de forma definitiva.

Según los datos de la empresa PriceWaterhouseCoopers (PWC), en su estudio denominado *"Informe Global de Medios y Entretenimiento 2021"*[1], el año 2020 registró una caída en los ingresos de toda la industria de la Televisión, principalmente, por **la retracción del mercado publicitario**.

Asimismo, según el informe en comento, la crisis del mercado publicitario, **principal fuente de ingresos de la mayor parte de la industria de los medios de comunicación** fue de gran tamaño en todo el mundo, **pero América Latina fue la región que más lo sufrió**, siendo que se espera que los ingresos por transmisión no se recuperarán a los niveles previos a la pandemia hasta el año 2025 – *lo que incluso no ha sucedido* –.

Otro de los cambios disruptivos que causó la pandemia en este sector fue que los ingresos de publicidad en Internet superaron a los de publicidad en televisión, mercado que, tradicionalmente, mantenía su liderazgo.

Con relación a lo anterior, el sector digital de la publicidad aceleró su crecimiento, por ello a los medios de comunicación tradicionales, como lo es la Televisión, se les hizo más difícil competir en el mercado de publicidad online junto a los gigantes como *"Google"* y *"Facebook"* que concentran alrededor del 68% total de la facturación publicitaria por internet.[2]

### (b) Crecimiento de los servicios de streaming *"Over The Top"*.

Otra de las consecuencias indirectas de la pandemia de Covid-19, que sigue afectando a la fecha es el crecimiento exponencial del consumo por parte de la audiencia de los servicios de *streaming*

---

[1] Consultable en la siguiente dirección de internet:

https://www.pwc.com/gx/en/industries/tmt/media/outlook/segment-findings.html

[2] *"EL IMPACTO DE LA PANDEMIA DEL COVID-19 EN LA SOSTENIBILIDAD DE LOS MEDIOS DE COMUNICACIÓN EN AMÉRICA LATINA" CAMBIOS Y TRANSFORMACIONES EN LOS MODELOS DE PRODUCCIÓN, FUENTES DE INGRESO Y PRODUCTOS DE LOS MEDIOS LATINOAMERICANOS*, Organización de las Naciones Unidas para la Educación, la Ciencia y la Cultura y Oficina Regional de Ciencias de la UNESCO para América Latina y el Caribe, UNESCO Montevideo.

*PODER JUDICIAL DE LA FEDERACIÓN*    IFE247    *Hoja 31 de 46*

"*Over The Top*"[3], entre los cuales se encuentran plataformas como "*Netflix*", "*Amazon Prime Video*", "*Apple TV+*", "*Claro Video*", "*Disney+*"; "*Hulu*", y "*HBO Max*", entre otros.

El crecimiento exponencial de dichas plataformas de video vía *streaming*, a causa de la pandemia de Covid-19, significó su consolidación en el mercado de las audiencias y desde luego la introducción de nuevos competidores para los proveedores tradicionales de televisión como lo es TV AZTECA.

Si bien a lo largo de la segunda mitad de la década pasada, plataformas como Netflix se adelantaron en el posicionamiento del mercado audiovisual, la pandemia facilitó la incursión de nuevas competidoras y con ella la explosión de contenidos e ingresos para este revulsivo modelo de entretenimiento en el que se han consolidado nuevos catálogos como los que ofrecen "*Disney+*", "*HBO Max*" y "*Paramount+*".

Dichas plataformas de contenido audiovisual, bajo demanda, no solo compiten directamente por la audiencia de los proveedores de televisión tradicional, sino que además lo hacen con relación a la publicidad en televisión, que como ya se ha dicho es uno de los principales generadores de ingresos de los proveedores de televisión tradicional como lo es TV AZTECA.

Como refiere el Instituto Federal de Telecomunicaciones, en su "*Estudio de Plataformas Digitales OTT*"[4], los operadores de Plataformas Digitales OTT pueden ofrecer servicios digitales de comunicación, conexión y enlace a diferentes grupos de usuarios, con el objeto de que éstos tengan actividades de comunicación y/o intercambien contenidos audiovisuales o de audio, sin cobrarles contraprestaciones monetarias, pero con el objetivo de atraer al mayor número de usuarios de un lado de la plataforma que puedan ser expuestos a publicidad y, con ello, vender tiempo, espacios y "*banners*" para otro grupo en la plataforma (los anunciantes).

Al respecto, la publicidad digital sigue principios similares a la publicidad en plataformas "tradicionales", como TV Abierta, impulsada por la competencia por la atención del consumidor. En términos generales, los anunciantes están dispuestos a pagar tarifas más altas cuando su mensaje puede llegar a una audiencia más grande. Sin embargo, la publicidad en los mercados digitales ha dado lugar a nuevas formas de llegar a públicos específicos, permitiendo mejorar la publicidad dirigida, lo que ha impactado directamente en los ingresos por publicidad de los proveedores de televisión tradicional como lo es TV AZTECA.

(d) IMPACTO DEL DECLIVE PUBLICITARIO EN EL MODELO DE NEGOCIO DE TV AZTECA: El modelo de negocio de TV AZTECA se ha sustentado históricamente en la

---

[3] Es el término utilizado en la industria del cine y la TV para definir a las plataformas que ofrecen contenidos                        audiovisuales                        por                        internet.

[4] Consultable en la siguiente dirección de internet:

http://www.ift.org.mx/sites/default/files/contenidogeneral/competenciaeconomica/plataformasdigitaleso tt.pdf

monetización de audiencias mediante la venta de publicidad televisiva.

A diferencia de otros grupos de medios que han diversificado sus fuentes de ingreso —por ejemplo, mediante suscripciones a servicios de streaming— la empresa mantiene una dependencia significativa de los ingresos publicitarios tradicionales.

Esto implica que cualquier contracción en el mercado publicitario impacta directamente su capacidad de generar flujo operativo.

Dicho ello, la fragmentación de audiencias ha reducido el valor relativo del rating televisivo como indicador comercial.

Durante muchos años la televisión abierta ofrecía a los anunciantes la posibilidad de alcanzar audiencias masivas de forma simultánea. Hoy las campañas digitales permiten llegar a públicos específicos con mayor precisión.

En consecuencia, los precios efectivos de los espacios publicitarios televisivos han enfrentado presiones a la baja, especialmente en segmentos demográficos más jóvenes.

La industria de la Televisión Abierta a nivel mundial ha tenido una caída anual de 4% (cuatro por ciento) en los últimos años, durante el periodo Covid la industria cayó un 30% (treinta por ciento). La industria en México en términos reales no ha recuperado aún los niveles prepandemia.

(e)    **FACTORES OPERATIVOS EXTERNOS QUE AFECTAN LA RENTABILIDAD:** Entre otros factores, el aumento en costos de contenido, la volatilidad del mercado publicitario y la contracción del gasto gubernamental en el mercado publicitario han sido un factor importante en el declive de la situación financiera de **TV AZTECA**, como se explica a continuación:

(a) Aumento en los costos de contenido.

El entorno competitivo del sector audiovisual también ha cambiado en términos de costos. Las plataformas digitales globales han incrementado de forma considerable su inversión en contenido original, lo que ha elevado los costos asociados a talento creativo, derechos de transmisión y producción audiovisual.

Para las empresas de televisión abierta – *como lo es TV AZTECA* – competir por audiencias implica mantener niveles relevantes de inversión en contenido, ya sean películas o eventos deportivos relevantes, lo que presiona los márgenes cuando los ingresos publicitarios no crecen al mismo ritmo.

También el costo de producción de contenido propio se ha incrementado en los últimos años por efectos inflacionarios de 2018 a 2025 la inflación aumentó un 38.8% (treinta y ocho punto ocho por ciento) en el periodo.

### (b) Volatilidad del Mercado Publicitario.

El gasto en publicidad suele reaccionar con rapidez a los ciclos económicos, es una es una de las partidas presupuestarias con mayor sensibilidad cíclica dentro de las estructuras de costos corporativos.

Desde una perspectiva macroeconómica, el *advertising spend* tiende a comportarse como un gasto discrecional procíclico: durante fases de expansión económica, las empresas incrementan sus inversiones en medios para capturar demanda y ganar participación de mercado, mientras que, en periodos de contracción o desaceleración, los presupuestos de publicidad y/o *marketing* suelen ser de los primeros en sufrir recortes, al ser percibidos como costos variables prescindibles en el corto plazo. Esto afecta directamente a los medios cuya principal fuente de ingresos es la publicidad.

Para los medios de comunicación cuyo modelo de negocio depende mayoritariamente de los ingresos por publicidad —televisión abierta, radio, prensa— esta dinámica implica una exposición estructural a la volatilidad del ciclo económico, trasladando directamente las fluctuaciones de la actividad empresarial hacia sus líneas de ingresos.

En el caso particular de **TV AZTECA**, esta vulnerabilidad cíclica se ve amplificada por las transformaciones estructurales profundas que atraviesa la industria televisiva a nivel global y doméstico. La migración acelerada de las audiencias hacia plataformas de *streaming* y contenidos digitales ha fragmentado el *share* de atención, erosionando el poder de fijación de precios en los espacios publicitarios tradicionales.

Simultáneamente, los anunciantes han reorientado crecientes fracciones de sus presupuestos hacia canales digitales de rendimiento medible —*programmatic advertising*, redes sociales, *search*— que ofrecen mayor granularidad en la segmentación y métricas de retorno sobre inversión más precisas. La confluencia de estos factores estructurales con un entorno macroeconómico desfavorable genera un efecto multiplicador sobre la volatilidad de los ingresos comerciales de la compañía, comprometiendo tanto el volumen como el precio promedio de los *spots* contratados.

Este deterioro del entorno de demanda publicitaria se enmarca en un contexto de estancamiento económico sostenido. En términos reales, el PIB de México registró una tasa de crecimiento promedio anual de apenas 0.77% durante el periodo comprendido entre 2018 y 2025, una expansión insuficiente para sostener el dinamismo del mercado publicitario.

En un entorno de baja expansión del ingreso disponible y cautela empresarial generalizada, las decisiones de inversión en publicidad se contraen o se postergan, reduciendo el tamaño efectivo del mercado al que **TV AZTECA** —y los medios tradicionales en general— tienen acceso para monetizar sus audiencias.

### (c) Contracción del gasto gubernamental en el mercado publicitario.

A partir de 2018, el gobierno mexicano implementó una política de austeridad como eje rector de su estrategia de consolidación del gasto público, bajo la premisa de eliminar dispendios considerados superfluos dentro del presupuesto gubernamental.

Dentro de este marco de racionalización del gasto corriente, la inversión publicitaria del Estado fue identificada como una de las partidas de mayor opacidad y menor justificación técnica, lo que derivó en recortes sistemáticos y sostenidos a lo largo del sexenio.

Esta decisión de política pública tuvo implicaciones directas y cuantificables sobre los ingresos de los medios de comunicación tradicionales, dado que históricamente el gobierno mexicano había representado uno de los anunciantes más relevantes del ecosistema mediático nacional, destinando recursos presupuestarios considerables a la contratación de espacios en televisión abierta, radio y prensa como mecanismo de comunicación institucional.

La magnitud del ajuste resulta significativa desde una perspectiva financiera y sectorial: se estima que el gasto gubernamental en publicidad acumuló una caída de aproximadamente 36% en términos reales durante el periodo comprendido entre 2019 y 2024, lo que representa una contracción estructural y no meramente coyuntural de una fuente de ingresos que durante décadas operó como un flujo relativamente estable y predecible para los medios concesionados.

Para empresas como **TV AZTECA**, cuya base de ingresos comerciales ya enfrentaba presiones derivadas de la fragmentación de audiencias y la reorientación del *adspend* corporativo hacia plataformas digitales, la retirada del Estado como anunciante de gran escala actuó como un choque de demanda adicional, reduciendo el volumen total de inversión publicitaria disponible en el mercado de televisión abierta y acentuando la presión sobre sus tarifas y niveles de ocupación de inventario publicitario.

(f) CONTRACCIÓN DE LA ECONOMÍA MUNDIAL Y NACIONAL: La economía de México es vulnerable a los ciclos económicos y a las desaceleraciones en la economía de los Estados Unidos y en cualquier parte del mundo.

La problemática financiera o un aumento en los riesgos relacionados con la inversión en economías emergentes podrían limitar la inversión extranjera en México y afectar adversamente la economía mexicana.

A pesar de que México, Estados Unidos y otros gobiernos han tomado medidas para incrementar liquidez en los mercados financieros, no puede existir ninguna seguridad respecto a que esas medidas lleven al entorno empresarial general en el que **TV AZTECA** opera a un crecimiento sostenido y **TV AZTECA** no puede predecir el impacto que cualquier crisis económica en el futuro pueda tener en los resultados de operación y condición financiera de **TV AZTECA**.

Por ejemplo, la demanda de publicidad puede decrecer, por una parte, porque los consumidores pueden reducir sus gastos en productos que se anuncian en **TV AZTECA** y, por otra parte,

porque los anunciantes puedan reducir los gastos de publicidad. Adicionalmente, la demanda de consumidores generalmente decrece durante las crisis económicas.

(g) INFLACIÓN Y TASAS DE INTERES: Las disminuciones en el crecimiento de la economía mexicana, las altas tasas de inflación y las altas tasas de interés en México, en su caso, han tenido un efecto adverso sobre las operaciones de TV AZTECA. Entre más lento sea el crecimiento de la economía mexicana, más lento es el crecimiento del gasto en publicidad. Si la inflación en México registra niveles elevados y el crecimiento económico se vuelve lento, los resultados de operación de TV AZTECA, su situación financiera y el precio de mercado de sus valores se ven afectados.

Cualquier fluctuación desfavorable en las tasas de interés tiene un efecto adverso sobre TV AZTECA, debido a que la cantidad de intereses adeudados puede aumentar con respecto a sus pasivos y adeudos actuales y futuros.

Por su parte, cualquier aumento importante en la tasa de inflación en México podría afectar adversamente la situación financiera y los resultados de operación de TV AZTECA ya que la inflación podría dañar el poder adquisitivo del consumidor, que a su vez puede perjudicar la capacidad de los anunciantes de TV AZTECA para adquirir tiempo publicitario en sus canales.

(h) CONVERGENCIA DE FACTORES QUE EXPLICAN EL DETERIORO FINANCIERO: Así, el deterioro financiero de TV AZTECA es resultado de la convergencia de varios factores:

- Transformación estructural de la industria de medios y fragmentación de audiencias.
- Migración del gasto publicitario hacia plataformas digitales.
- Dependencia significativa de ingresos provenientes de publicidad televisiva.
- Incremento en costos de producción y adquisición de contenidos.
- Volatilidad del mercado publicitario asociada a ciclos económicos.
- Obligaciones financieras relevantes en moneda extranjera.
- Procesos complejos de negociación con acreedores.

En conjunto, estos elementos han afectado la capacidad de la empresa para generar el flujo de efectivo necesario para atender sus compromisos financieros.

En este contexto, el concurso mercantil y una reestructura ordenada de pasivos, bajo supervisión judicial, puede permitir a la empresa ajustar sus obligaciones financieras a las condiciones actuales del mercado y del sector de medios.

El objetivo es restablecer un equilibrio entre la capacidad de generación de flujo de la empresa y sus obligaciones financieras, preservando al mismo tiempo la continuidad de sus operaciones y el valor económico del negocio.

El deterioro financiero de TV AZTECA debe entenderse dentro de un contexto más

La combinación de estas tendencias sectoriales con presiones financieras específicas ha afectado la estabilidad económica de la empresa.

Ante este escenario, el concurso mercantil aparece como una vía institucional idónea y necesaria para ordenar la reestructura de pasivos y permitir que la empresa se adapte a las nuevas condiciones del mercado.

## (E) SITUACIÓN FINANCIERA DE TV AZTECA.

47.- TV AZTECA ha implementado acciones y estrategias para gestionar las consecuencias económicas ocasionadas, por los diversos eventos macroeconómicos que han afectado su situación financiera, sin embargo, dichas medidas no han sido suficientes para lograr una mejoría en las finanzas de la sociedad. Algunas de dichas acciones fueron las siguientes:

(i) La adopción de iniciativas de ahorro de costos y gastos incluyen la creación de un Comité de Costos con la finalidad de mejorar los márgenes de utilidad, actualmente todas las producciones y nuevos proyectos pasan por un análisis detallado de rentabilidad antes de autorizar su ejecución.

(ii) Aplazamiento de proyectos de capital no esenciales;

(iii) Revisión y evaluación del costo-beneficio de los contratos de derechos de exhibición que se mantienen suscritos;

(iv) Diseño de incentivos a la fuerza de ventas para llevar a cabo los esfuerzos necesarios para retener clientes e incrementar la demanda de espacios publicitarios, se generó un incremento en las comisiones sobre ventas;

(v) Al evaluar los valores razonables de los activos y pasivos, así como su deterioro, la compañía consideró el grado de incertidumbre en el entorno económico al aplicar los datos y supuestos en los modelos seleccionados; y

(vi) Renegociación de los contratos de arrendamiento de inmuebles, resultando algunas bajas y diferimiento en los flujos.

48.- No obstante las medidas enunciadas con anterioridad, la Situación Financiera de TV AZTECA no ha mejorado y le ha sido imposible generar suficiente flujo de efectivo para pagar el monto principal, intereses y otras cantidades adeudadas a diversos de sus acreedores; siendo que no existe garantía de que las condiciones de mercado permitirán a TV AZTECA refinanciar sus adeudos vencidos sin un proceso de reestructura judicial.

49.- Como se ha anticipado, la transmisión televisiva en México es altamente competitiva y la popularidad de los programas de televisión es un factor importante en las ventas de publicidad – *principal fuente de ingresos de TV AZTECA* –, el cual es fácilmente susceptible a cambios.

50.- TV AZTECA ya no solo se enfrenta a la competencia que le importan otros

proveedores de televisión tradicionales como lo son Televisa/Univisión, mismo que también compiten – *por audiencias, publicidad y contenidos* –:

    (i)    Los Proveedores de televisión por cable, como lo es *"Dish México"*; *"TotalPlay"* o *"Megacable"*;

    (ii)    Servicios de Satélite Directo al Hogar (por sus siglas en inglés servicios *"DTH"*), como lo es *"SKY"*; *"StarTV"* o *"VeTV"*;

    (iii)    las ya consolidadas plataformas de streaming *"Over The Top"*, como lo son *"Netflix"*, *"Amazon Prime Video"* o *"Disney–"*, entre otras.

    (iv)    otros medios de comunicación, tales como, radio, espectaculares, periódicos, revistas e Internet.

51.- El mayor competidor de **TV AZTECA** en el mercado de la televisión abierta generó la mayor parte de las ventas de publicidad en televisión mexicana en cada uno de los tres últimos años, debido en parte a que cuenta con más antigüedad en la industria de la televisión y con mayores recursos en comparación con **TV AZTECA**.

52.- **TV AZTECA** no puede asegurar que mantendrá o mejorará su participación en el mercado mexicano de publicidad en televisión en el futuro, ni puede asegurar que sus costos para obtener programación y contratar personal de producción y creativo a través de sus subsidiarias y/o de empresas terceras no relacionadas con **TV AZTECA**, o los precios a los que **TV AZTECA** vende tiempo publicitario, no se vean afectados de manera adversa por la competencia.

53.- Los sistemas de distribución de televisión por cable y servicios de satélite directo al hogar ("DTH") representan, hoy en día, una fuerte competencia para las ventas de publicidad, audiencias y derechos de programas de **TV AZTECA**.

54.- **TV AZTECA** no puede asegurar que los servicios de televisión de paga no obtendrán una participación más importante de los televidentes mexicanos y del mercado de publicidad en televisión en el futuro.

55.- El endeudamiento actual de **TV AZTECA**, ha traído consecuencias negativas en cuanto a su operación y viabilidad como negocio, tales como las siguientes:

    a)    requerir la utilización de una parte sustancial de su flujo de efectivo para pagar su deuda, reduciendo el flujo de efectivo disponible para otros fines, incluyendo inversiones de capital, esfuerzos de comercialización, planes de crecimiento futuro y distribuciones pagaderas a sus accionistas;

    b)    limitar su capacidad para obtener financiamiento adicional o refinanciar su deuda existente;

    c)    colocar a **TV AZTECA** en una desventaja relativa a competidores con menores niveles de deuda y competidores con mayor acceso a recursos de capital;

d) aumentar su vulnerabilidad a menor dinamismo en sus operaciones o la economía mexicana en general; y

e) limitar su capacidad para continuar con distribuciones en efectivo a sus accionistas.

56.- Todo lo narrado en el presente capítulo, entre otras cosas, ocasionó que **TV AZTECA** no cuente con la capacidad económica para hacer frente a sus obligaciones pecuniarias y afrontar o pagar los pasivos que registra financieramente en los términos y condiciones en que fueron pactados, pues de hacerlo – *sin un proceso judicial de reestructura* – la misma sería inviable, tanto económica, como operativamente. Dichas causas llevaron a **TV AZTECA** al estado de incumplimiento en que se encuentra.

57.- Por todo lo anterior, es que se solicita la declaración de Concurso Mercantil en etapa de conciliación a efecto de que **TV AZTECA** pueda continuar con su operación ordinaria y viabilidad, mientras lleva a cabo una reestructura ordenada bajo la LCM.

58.- Algunos de los pasivos vencidos más relevantes y significativos de **TV AZTECA** se describen detalladamente a continuación:

(a) BONOS PREFERENTES CON VENCIMIENTO AL 9 DE AGOSTO DE 2024.

59.- El día 9 de agosto de 2017, **TV AZTECA** – *en su calidad de Emisora* – sus Subsidiarias – *en su calidad de Garantes Subsidiarios* –, THE BANK OF NEW YORK MELLON – *en su calidad de Fiduciario* – y THE BANK OF NEW YORK MELLON, LONDON BRANCH – *en su calidad de Agente de Pago Principal* – celebraron un Contrato de Emisión, cuyo objeto principal fue el financiamiento de TV AZTECA por la cantidad de USD $400'000,000.00 (Cuatrocientos millones de dólares 00/100 USCy) a través de la emisión de bonos preferentes con vencimiento al día 9 de agosto de 2024 (en lo sucesivo el "Contrato de Emisión").

Dicho Contrato de Emisión fue suscrito además de **TV AZTECA** como emisora de los bonos, por, entre otras, las siguientes empresas como obligadas solidarias: (I) AZTECA NOVELAS II, S.A.P.I. DE C.V.; (II) EQUIPO DE FÚTBOL MAZATLÁN, S.A. DE C.V.; (III) INMOBILIARIA ROCA DEL PEDREGAL, S.A. DE C.V. (ANTES TELEVISIÓN AZTECA II, S.A. DE C.V.); (IV) LASIMEX, S.A. DE C.V.; (V) OPERADORA MEXICANA DE TELEVISIÓN, S.A. DE C.V.; (VI) PRODUCCIONES AZTECA DIGITAL, S.A. DE C.V.; (VII) PRODUCCIONES ESPECIALIZADAS, S.A. DE C.V.; (VIII) PRODUCCIONES DOPAMINA, S.A. DE C.V.; (IX) PUBLICIDAD ESPECIALIZADA EN MEDIOS DE COMUNICACIÓN DE TV AZTECA, S.A. DE C.V.; (X) SERVICIOS AÉREOS NOTICIOSOS, S.A. DE C.V.; (XI) SERVICIOS ESPECIALIZADOS TAZ, S.A. DE C.V.; (XII) TELEVISIÓN AZTECA III, S.A. DE C.V. y (XIII) TELEVISORA DEL VALLE DE MÉXICO, S.A.P.I. DE C.V.

60.- TV AZTECA se obligó, entre otras cosas, a pagar a los Tenedores de los Bonos Preferentes intereses a razón de una tasa anual del 8.250 % (ocho punto doscientos cincuenta por ciento) sobre la suma principal de cada bono, los días 9 de agosto y 9 de febrero de cada año, a partir de la fecha suscripción de cada uno de los bonos emitidos desde la fecha de suscripción del Contrato de Emisión.

61.- El día 9 de agosto de 2024, se actualizó el vencimiento natural de la obligación de pago de los bonos al amparo del Contrato de Emisión, sin que **TV AZTECA** y sus subsidiarias firmantes tuvieran la capacidad financiera y económica para hacer frente a las obligaciones asumidas en términos de dicho contrato.

62.- Así, al 31 de enero de 2026, **TV AZTECA** - *como emisora y obligada principal* - adeuda a los Tenedores de Bonos emitidos al amparo del Contrato de Emisión la cantidad de USD $532,000,000.00 (Quinientos treinta y dos millones de dólares 00/100 USD), cifra que en pesos - *al tipo de cambio 17.2532 para solventar obligaciones denominadas en dólares de los EE.UU.A. publicado por el Banco de México con fecha del 31 de enero 2026* - asciende a la cantidad de $9,178,702,400.00 (Nueve mil ciento setenta y ocho millones setecientos dos mil cuatrocientos pesos 00/100 M.N.).

Dichos pasivos vencidos representan, al menos, el 36.92% (por ciento) del pasivo total de TV AZTECA, mismo que tiene mucho más de 30 (treinta) días de haber vencido.

PODER JUDICIAL DE LA FEDERACIÓN      IFECOM      LP2/20

## Anexos

De conformidad con lo dispuesto por el artículo 20 de la LCM, además de presentarse en la forma que se indica y de contener lo que en esos artículos se prevé, la solicitud de concurso mercantil debe acompañarse de los anexos que se relacionan en este apartado. Para cada uno de ellos se ha diseñado por lo menos una certificación cisterna certificada na, como, en su caso, para indicar y organizar la información que deben contener.

Uso de los formatos diseñados para cada caso.

En cada uno de los renglones pulse el botón que identifique el título del anexo de los documentos que acompaña. Cuando por la naturaleza del comerciante o circunstancias particulares, no se presenta la documentación, pulse el botón que se encuentra en la columna denominada "No aplica" en el formato correspondiente que no se exhibe.

| Clave | Número del anexo | | Título del anexo | No aplica |
|-------|------------------|---|------------------|-----------|
| LP2/20 | Anexo 1 | | Estados financieros del comerciante | |
| LP2/20 | Anexo 2 | | Memoria razonada de las causas que sitúan al comerciante en incumplimiento o inminente incumplimiento en el pago de sus obligaciones | |
| LP2/20 | Anexo 3 | | Relación de acreedores | |
| LP2/20 | Anexo 4 | | Relación de deudores | |
| LP2/20 | Anexo 5 | | Inventario de todos los bienes del comerciante | |
| LP2/20 | Anexo 6 | | Relación de juicios en los cuales el comerciante sea parte | |
| LP2/20 | Anexo 7 | | Ofrecimiento de otorgar la garantía a que se refiere el artículo 24 de la LCM | |
| LP2/20 | Anexo 8 | | Acuerdos de los actos corporativos necesarios para solicitar la declaración en concurso mercantil | |
| LP2/20 | Anexo 9 | | Propuesta de convenio preliminar de pago a acreedores | |
| LP2/20 | Anexo 10 | | Propuesta preliminar de conservación de la empresa | |
| LP2/20 | Anexo 11 | | Documentos con los que se acredita personalidad | |
| LP2/20 | Anexo 12 | | Documentos con los que acredita el carácter de comerciante | |

## Información registral, fiscal y laboral

Para dar cumplimiento de artículos 43, 44 y 45 de la LCM, proporcione la siguiente información asociada o manifieste la razón por la que no la proporciona.

**Registro público de comercio:**
Registro Público de la Propiedad y del Comercio de la Ciudad de México. Folio Mercantil 167,346

Escriba el nombre con el que se identifique a la autoridad encargada de llevar el registro de comercio en la entidad federativa de que se trate, y en su caso, proporcione los datos con los que se encuentre inscrito el comerciante o en el registro público de comercio como folio, libro, partida, antecedente registral u otro.

**Registro de bienes:**
Registro Público de la Propiedad y del Comercio de la Ciudad de México y Registro Único de Garantías Mobiliarias

Escriba el nombre con el que se identifique a la autoridad encargada de llevar el registro de bienes y o garantías en la entidad federativa de que se trate, y en su caso, proporcione los datos de registro que se relacionan con el bien o la propiedad del comerciante como tipo, libro, partida, antecedente registral u otro.

**Registro federal de contribuyentes:**
TAZ960904V78

Escriba el Registro Federal de Contribuyentes del comerciante.

**Sindicato(s) al (a los) que se encuentran afiliados sus trabajadores:**
Los trabajadores de TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE no se encuentran afiliados a ningún sindicato

Escriba el nombre completo y domicilio de la agrupación o agrupaciones sindicales a las que en su caso, se afiliados los trabajadores del comerciante.

**Representante sindical:**
TV AZTECA, SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE no tiene ningún representan sindical

Escriba el nombre completo del representante sindical.

## Información adicional

Para alguna aspecto de la empresa...

Fecha de constitución de la empresa:
2 de junio de 1993.
Escriba la fecha de constitución de la empresa

Número de trabajadores registrados en la empresa:
111 (ciento once)
Escriba el número de trabajadores que tiene la empresa

Actividad económica de la empresa:
(i) Información en medios masivos; (q)
Servicios de esparcimiento culturales y
deportivos, y otros servicios recreativos; y
(s) Otros servicios excepto actividades
gubernamentales.

Indique la categoría a la que pertenece la empresa, según la siguiente clasificación:

   a. Agricultura, cría y explotación de animales, aprovechamiento forestal, pesca y caza
   b. Minería
   c. Generación, transmisión, distribución y comercialización de energía eléctrica, suministro
      de agua y de gas natural por ductos al consumidor final
   d. Construcción
   e. Industrias manufactureras
   f. Comercio al por mayor
   g. Comercio al por menor
   h. Transportes, correos y almacenamiento
   i. Información en medios masivos
   j. Servicios financieros y de seguros
   k. Servicios inmobiliarios y de alquiler de bienes muebles e intangibles
   l. Servicios profesionales, científicos y técnicos
   m. Corporativos
   n. Servicios de apoyo a los negocios y manejo de residuos, y servicios de remediación
   o. Servicios educativos
   p. Servicios de salud y de asistencia social
   q. Servicios de esparcimiento culturales y deportivos, y otros servicios recreativos
   r. Servicios de alojamiento temporal y de preparación de alimentos y bebidas
   s. Otros servicios excepto actividades gubernamentales
   t. Actividades legislativas, gubernamentales, de impartición de justicia y de organismos
      internacionales y extraterritoriales

## Sociedades controladoras y controladas

De acuerdo a lo establecido en el artículo 15 de la Ley de Concursos Mercantiles.

Para el caso de sociedades controladoras indicar el nombre de las empresas controladas directa e indirectamente que integran el grupo societario

AZTECA NOVELAS II, S.A.P.I. DE C.V.; EQUIPO DE FUTBOL MAZATLÁN, S.A. DE C.V.;
INMOBILIARIA ROCA DEL PEDREGAL, S.A. DE C.V. (ANTES TELEVISIÓN AZTECA II, S.A. DE
C.V.); LASIMEX, S.A. DE C.V.; OPERADORA MEXICANA DE TELEVISIÓN, S.A. DE C.V.;
PRODUCCIONES AZTECA DIGITAL, S.A. DE C.V.; PRODUCCIONES ESPECIALIZADAS, S.A.
DE C.V., PRODUCCIONES DOPAMINA, S.A. DE C.V.; PUBLICIDAD ESPECIALIZADA EN
MEDIOS DE COMUNICACIÓN DE TV AZTECA, S.A. DE C.V.; SERVICIOS AÉREOS
NOTICIOSOS, S.A. DE C.V.; SERVICIOS ESPECIALIZADOS TAZ, S.A. DE C.V.; TELEVISIÓN
AZTECA III, S.A. DE C.V. TELEVISORA DEL VALLE DE MÉXICO, S.A.P.I. DE C.V., AZTECA
COMUNICACIONES PERÚ, S.A.C., MOE MULTIOPCIONES DE SERVICIOS
ADMINISTRATIVOS, S.A. DE C.V., PROMOTORA DE TORNEOS Y ESPECTÁCULOS
PUBLICOS, S.A. DE C.V., AZTECA RECORDS, S.A. DE C.V., ALTA EMPRESA, S.A. DE C.V.,
SERVICIOS LOCALES DE PRODUCCIÓN, S.A. DE C.V., S.C.I. DE MÉXICO, S.A. DE C.V.,

PODER JUDICIAL DE LA FEDERACIÓN          IFECOM          LP2/20          **Hoja 42 de 46**

PRODUCTORA DE TELEVISIÓN REGIONAL DE TV AZGTECA, S.A. DE C.V., TV AZTECA GLOBAL, S.L.U., CORPORACIÓN DE ASESORÍA TÉCNICA Y DE PRODUCCIÓN, S.A. DE C.V., MULTIMEDIA ESPECTÁCULOS Y ATRACCIONES, S.A. DE C.V., ASESORÍA ESPECIALIZADA EN AVIACIÓN, S.A. DE C.V., INCOTEL, S.A., SERVICIOS Y MANTENIMIENTO DEL FUTURO EN TELEVISIÓN, S.A. DE C.V., TVA GUATEMALA, S.A., TV AZTECA HONDURAS, S.A. DE C.V., RHDES OPTICAS, S.A.C. AZTECA SPORT RIGHTS, LLC, EDITORIAL MANDARINA, S.A. DE C.V., COMERCIALIZADORA DE TELEVISIÓN DE HONDURAS, S.A. DE C.V., STATIONS GROUP, LLC. NORTHSTAR MCALLEN LICENSE, LLC, SERVICIOS FORANEOS DE ADMINISTRACIÓN, S.A. DE C.V. GANADOR AZTECA, S.A.P.I. DE C.V., OPERADORA GANADOR TV AZTECA S.A. DE C.V., DOPAMINE ENTERTAINMENT, INC Y MAZATLÁN PROMOTORA DE FUTBOL, S.A. DE C.V.

**Peticiones adicionales**

En el recuadro siguiente escriba cuantas peticiones adicionales a las que se prevén en el formato y sus secciones, juzgue convenientes, en relación con los bienes al trámite del concurso mercantil.

Utilice un recuadro por cada petición y tantas hojas como sean necesarias.

## SOLICITUD DE PROVIDENCIAS PRECAUTORIAS

Con fundamento en los artículos 7, 8, 25, 26, 37, 38, 43 y demás relativos y aplicables de la Ley de Concursos Mercantiles, así como en los artículos 1168 y correlativos del Código de Comercio (de aplicación supletoria), y en observancia de los artículos 14 y 16 constitucionales, solicito se decreten las siguientes providencias precautorias, mismas que se deberán mantener vigentes durante todo el procedimiento de concurso mercantil y que son necesarias e idóneas para preservar la Masa y asegurar la eficacia del procedimiento:

1.- La suspensión inmediata de todo procedimiento de ejecución, embargo, aseguramiento, intervención y/o providencia precautoria en contra los bienes y derechos de **TV AZTECA**, en aras de preservar la masa concursal y salvaguardar la continuidad de las operaciones de la Comerciante como negocio en marcha y como una unidad productiva.

2.- La suspensión de todos los efectos de los embargos actualmente trabados sobre los bienes y derechos de **TV AZTECA**, lo anterior en términos de lo dispuesto por el artículo 37, fracción VIII de la LCM y al tratarse de una medida de naturaleza análoga a la solicitada en el párrafo que precede.

3.- La suspensión inmediata de todo procedimiento de ejecución, actual o futuro, de cualquier obligación, garantía y/o gravamen suscrito por **TV AZTECA** y/o cualquier tercero en su favor, lo anterior para garantizar la viabilidad del procedimiento concursal y el negocio de la Comerciante como una unidad productiva, evitando que determinados acreedores obtengan ventajas indebidas en perjuicio de la universalidad de los acreedores.

4.- La suspensión inmediata de cualquier Procedimiento Administrativo de Ejecución actual o futuro en contra de **TV AZTECA**, incluyendo, sin limitar, aquellos derivados de créditos fiscales, aseguramientos, embargos administrativos, intervenciones con cargo a caja o cualquier acto de ejecución fiscal.

Lo anterior, con fundamento en el artículo 11 de la Ley de Concursos Mercantiles, a fin de preservar la integridad de la masa concursal y evitar la afectación irreversible de los activos esenciales para la operación ordinaria de la Comerciante.

5.- La prohibición a **TV AZTECA** de hacer pagos a sus acreedores o de terceros, obligados

la presente solicitud de concurso mercantil o por vencerse, debiendo excluirse aquellos pagos y gastos indispensables para mantener la operación ordinaria de la empresa.

6.- La prohibición de suspender, revocar, rescindir, terminar y/o cancelar contratos, preparatorios o definitivos, pendientes de ejecución de los que sea parte **TV AZTECA** o cualquiera de sus entidades afiliadas o subsidiarias con las que se lleva a cabo sus operaciones ordinarias al tratarse de un mismo ente económico, hasta en tanto el Conciliador *-que sea designado –* se oponga o no a su cumplimiento en términos de lo dispuesto por los artículos 25, 26, 91 y 92 de la **LCM**.

7.- La orden de tener como no puesta cualquier estipulación contractual en los actos jurídicos en los que **TV AZTECA** sea parte, que, con motivo de la presentación de una solicitud o demanda de concurso mercantil, o de su declaración, establezca modificaciones que agraven para el Comerciante los términos de los contratos, lo anterior en términos de lo dispuesto por el artículo 87 de la **LCM**.

8.- La prohibición de suspender, revocar, rescindir, cancelar, modificar, limitar o afectar, total o parcialmente, cualquier concesión, permiso, licencia, autorización, registro, inscripción, título habilitante o cualquier otro derecho otorgado a favor de **TV AZTECA** o cualquiera de sus entidades afiliadas o subsidiarias con las que se lleva a cabo sus operaciones ordinarias al tratarse de un mismo ente económico y que guarde relación con la operación ordinaria de la Comerciante, asegurando su continuidad como negocio en marcha y unidad productiva.

9.- La suspensión de cualquier procedimiento, judicial, administrativo, contractual o extracontractual, que tenga por objeto privar a **TV AZTECA**, y sus respectivas subsidiarias, al tratarse de un mismo ente económico, del uso, disfrute o ejercicio de cualquier derecho, bien o activo, de cualquier naturaleza, o restringirle su uso o ejercicio, lo anterior para garantizar la viabilidad del procedimiento concursal y el negocio de la Comerciante como una unidad productiva.

10.- La prohibición a todas y cada una de las Instituciones Financieras del país en las que **TV AZTECA** mantenga cuentas aperturadas de transferir, disponer, embargar, detener, descontar, deducir, retener, compensar y/o utilizar los recursos que se encuentren administrados en dichas cuentas o sean parte del patrimonio en dichas cuentas, en aras de preservar la masa concursal y salvaguardar la continuidad de las operaciones de la Comerciante como negocio en marcha y como una unidad productiva.

11.- La suspensión de todo procedimiento de ejecución contra los bienes y/o derechos de la Comerciante, en específico cualquier acto tendiente a hacer efectiva la Standby Letter of Credit (SBLC) emitida por el Banco Nacional de Comercio Exterior, S.N.C., Institución de Banca de Desarrollo (BANCOMEXT), por orden y cuenta de TV Azteca, S.A.B. de C.V., en favor de The Bank of New York Mellon, por un monto de USD $13,852,106.00 (trece millones ochocientos cincuenta y dos mil ciento seis dólares de los Estados Unidos de América 00/100).

Al efecto, desde este momento se solicita respetuosamente que la presente medida sea notificada personalmente a BANCOMEXT, en su carácter de institución emisora de la referida SBLC.

PROCEDENCIA Y JUSTIFICACIÓN DE LAS PROVIDENCIAS PRECAUTORIAS SOLICITADAS

Las providencias precautorias solicitadas resultan jurídica y materialmente indispensables atendiendo a la naturaleza **TV AZTECA**, su modelo de negocio y la estructura de su pasivo, como se evidencia a continuación:

(A) <u>Finalidad del Concurso Mercantil y protección del Interés Público:</u> El artículo 1 de la LCM establece que el concurso es de orden público y tiene por objeto conservar la empresa y procurar el mayor pago posible a los acreedores.

Tratándose de **TV AZTECA**, la preservación de la empresa como unidad productiva no sólo impacta a los acreedores nacionales, sino a mercados financieros, trabajadores, proveedores estratégicos y sectores regulados. Permitir ejecuciones aisladas frustraría la finalidad legal del procedimiento antes incluso de que pueda cumplir con su objetivo primordial; por ello las providencias precautorias son instrumentos necesarios para garantizar la eficacia real del procedimiento concursal.

(B) <u>Facultad de su Señoría para dictar Providencias Precautorias:</u> El artículo 11, fracción II, de la LCM faculta a su Señoría para dictar las providencias precautorias que estime necesarias para proteger la Masa y los intereses de los acreedores.

En el presente caso, dicha facultad debe ejercerse de manera inmediata y amplia, dado que: (i) Existen acreedores financieros con capacidad de iniciar y/o continuar acciones en múltiples jurisdicciones; (ii) El riesgo de ejecución acelerada puede detonar cláusulas cruzadas (cross-default); y (iii) Existen posibles procedimientos de ejecución que pueden afectar liquidez operativa de la empresa como unidad productiva.

(C) <u>Apariencia del Buen Derecho o *fumus boni iuris*:</u> La presente Solicitud de Declaración de Concurso Mercantil se sustenta en la actualización de los supuestos previstos por el artículo 10 de la LCM, relativos al incumplimiento generalizado en el pago de obligaciones.

La existencia de pasivos financieros vencidos, presión de aceleración por parte de tenedores de bonos y potencial activación de mecanismos de ejecución constituyen elementos

objetivos que dotan de verosimilitud suficiente a la acción intentada, justificando el dictado de providencias precautorias sin prejuzgar sobre la declaración de concurso.

(D) **Peligro en la Demora:** El riesgo no es hipotético, sino real e inminente. En el caso que nos ocupa, tal y como se narró en el capítulo correspondiente, **TV AZTECA** enfrenta un riesgo real de que sus acreedores, entre otras cosas: **(i)** intenten embargos precautorios en México o en el extranjero; y/o **(ii)** ejecuten garantías que constituyen activos estratégicos para la operación ordinaria de la Comerciante.

Asimismo, cualquier acto que perjudique flujos financieros de **TV AZTECA** puede provocar una pérdida inmediata de valor, afectando no sólo al Comerciante, sino a todos y cada uno de sus acreedores.

(E) **Proporcionalidad:** Las providencias precautorias solicitadas: **(i)** Son idóneas para evitar la fragmentación de la masa; **(ii)** Son necesarias ante la inminencia de acciones de ejecución múltiple; y **(iii)** Son proporcionales, pues sólo buscan preservar el estado patrimonial de la Comerciante mientras se resuelve la procedencia del concurso.

| Lugar y fecha de presentación |
|---|
| Ciudad de México a 9 de marzo de 2026. |

| Nombre y firma de quien(es) promueve(n) por el comerciante |
|---|
| RAFAEL RODRÍGUEZ SÁNCHEZ. |

## Sección 2
### Manifestación de incumplimiento o inminencia de incumplimiento generalizado en el pago de obligaciones

De conformidad con lo dispuesto en el artículo 20 de la LCM, el comerciante que considere que ha incurrido en el incumplimiento generalizado de sus obligaciones en términos de cualquiera de los supuestos establecidos en los artículos 10 de la misma ley, deberá manifestar que eso sucede.

De conformidad con lo dispuesto por el artículo 20 bis de la LCM, el comerciante que considere que incurrirá en el incumplimiento generalizado de sus obligaciones en términos de cualquiera de los supuestos establecidos en los artículos 19 de la misma ley, deberá manifestar bajo protesta de decir verdad que es inminente que ello sucederá.

Para el contenido del primer recuadro es válido el artículo 20, es por consiguiente, debe encontrarse que cualquiera de los supuestos establecidos en los artículos 10 de la LCM se actúa y además se tienen válidas... [ilegible] ... bis 2002.

En cada una de las dos opciones siguientes puede elegirse la opción que antecede a la situación que se trate el estado de incumplimiento de obligaciones del comerciante.

|  |  |
|---|---|
| El comerciante manifiesta, que ha incurrido en al menos alguno de los supuestos siguientes: | El comerciante manifiesta bajo protesta de decir verdad que es inminente que incurrirá en al menos alguno de los supuestos siguientes: |

Deberá en cuadro que se encuentra frente los supuestos del artículo 10 marcar con el símbolo X en el o los que se actualicen respecto del momento en que se encuentra a la declaración de concurso mercantil.

Del artículo 10 de la LCM

I. De las obligaciones de pago vencidas, las que tienen por lo menos treinta días de haber vencido, representan el 35 % o más de todas las obligaciones de pago a su cargo a la fecha en que se haya presentado la solicitud de concurso mercantil, ☒

II. No tiene activos tales como: efectivo en caja y depósitos a la vista; depósitos e inversiones a plazo cuyo vencimiento no sea superior a 90 días naturales posteriores a la fecha de presentación de la solicitud; clientes y cuentas por cobrar cuyo plazo de vencimiento no sea superior a 90 días naturales posteriores a la fecha de presentación de la solicitud; y títulos valores para los cuales se registren regularmente operaciones de compra y venta en los mercados ☐ relevantes, que pudieran ser vendidos en un plazo máximo de 30 días hábiles bancarios, cuya valuación a la fecha de la presentación de la solicitud sea conocida, para hacer frente a por lo menos el 80% de sus obligaciones vencidas a la fecha de presentación de la solicitud de concurso mercantil.

### Explicación de motivos

El comerciante manifiesta que los supuestos seleccionados se actualizan o es inminente que se actualizarán por los motivos que a continuación se explican:

1.- TV AZTECA, con base en su información financiera, manifiesta que, al día de la presentación de la presente solicitud, se encuentra en incumplimiento generalizado en el pago de sus obligaciones, ubicándose específicamente en el supuesto consignado en el artículo 10 fracción I de la LCM.

2.- TV AZTECA manifiesta que ha incumplido sus obligaciones de pago frente a dos o

más acreedores distintos, cuyas obligaciones tienen por lo menos 30 (treinta) días de haber vencido y representan, al menos, el 35% (treinta y cinco por ciento) de todas las obligaciones a su cargo. A continuación, me permito evidenciar lo anterior:

(a) TV AZTECA ha incumplido sus obligaciones de pago a dos o más acreedores distintos;

(b) Las obligaciones a cargo de TV AZTECA y/o sus pasivos al 31 de enero de 2026, ascienden a la cantidad total de $24,858'585,289.00 (Veinticuatro mil ochocientos cincuenta y ocho millones quinientos ochenta y cinco mil doscientos ochenta y nueve pesos 00/100 M.N.).

(c) Tiene obligaciones vencidas – *por más de treinta días* – por la cantidad total de $15,034'803,165.00 (Quince mil treinta y cuatro millones ochocientos tres mil ciento sesenta y cinco pesos 00/100 M.N.).

(d) Las obligaciones vencidas – *por más de treinta días* – representan más del 35% (treinta y cinco por ciento) de todas las obligaciones a cargo de TV AZTECA, de hecho, representan aproximadamente el 60% (sesenta por ciento) de sus obligaciones.

3.- No obstante que TV AZTECA ya se ubica en los supuestos previstos por el artículo 10 de la Ley de Concursos Mercantiles, al actualizarse el incumplimiento generalizado en el pago de sus obligaciones conforme a los parámetros objetivos establecidos en dicho precepto, resulta relevante señalar, bajo formal protesta de decir verdad, que la situación financiera actual de la Comerciante evidencia, además, un escenario de incumplimiento próximo respecto de obligaciones adicionales.

4.- En efecto, de la revisión de los flujos proyectados, posición de liquidez, calendario de vencimientos y estructura de pasivos, se advierte que la Sociedad carece de capacidad real y suficiente para hacer frente oportunamente a diversas obligaciones, lo cual permite anticipar razonablemente un agravamiento del incumplimiento generalizado ya existente.

Particularmente, en el corto plazo vencerán obligaciones como las contraídas con ALTER BANK LTD, cuyo crédito fue indispensable para poder hacer frente a la contingencia fiscal a que se ha referido en párrafos que preceden y cuyas características se identifican en párrafos subsecuentes.

5.- Como ya se dijo, con fecha 29 de enero de 2026, ALTER BANK LTD, como agente estructurador ("*arranger*"), acreditante inicial ("*initial lender*"), agente administrativo ("*administrative agent*") y agente de garantías ("*collateral agent*"); y TV AZTECA, como acreditado ("*borrower*"), celebraron un Contrato de Apertura de Crédito Simple ("*loan agreement*") por la cantidad de hasta $5,000,000,000.00 (cinco mil millones de pesos 00/100, moneda de curso legal de los Estados Unidos Mexicanos) (en los sucesivo y por economía procesal el "Crédito ALTER").

Dicho Crédito ALTER fue adquirido por la compañía como financiamiento adicional y urgente para atender el pasivo fiscal y mitigar el riesgo de paralización operativa, como se refirió en líneas anteriores.

6.- Con fecha 06 de marzo de 2026, ALTER BANK LTD, como agente estructurador ("*arranger*"), acreditante inicial ("*initial lender*"), agente administrativo ("*administrative agent*") y agente de garantías ("*collateral agent*"); y TV AZTECA, como acreditado ("*borrower*"), celebraron un convenio modificatorio y de reexpresión al Contrato de Crédito.

7.- Dicho pasivo representa, aproximadamente el 16% (dieciséis por ciento) del pasivo total de TV AZTECA.

8.- La falta de liquidez estructural, aunada a la ausencia de fuentes de financiamiento disponibles y a la presión de pasivos exigibles, genera una probabilidad objetiva, real y no meramente hipotética de incumplimiento respecto de dichas obligaciones.

Este riesgo inminente no constituye una conjetura, sino una consecuencia directa de: (i) la insuficiencia de flujo operativo; (ii) la restricción en líneas de crédito; (iii) la aceleración o potencial aceleración de obligaciones financieras; y (iv) la imposibilidad material de refinanciar pasivos en condiciones ordinarias de mercado.

Así, la promoción del presente procedimiento concursal no sólo responde a la actualización formal de los supuestos del artículo 10 de la Ley de Concursos Mercantiles, sino también a la necesidad urgente de evitar un deterioro mayor del patrimonio social, preservar la empresa como unidad productiva y garantizar un tratamiento ordenado, colectivo y equitativo

frente a la totalidad de sus acreedores.

9.- En este contexto, la inminencia de nuevos incumplimientos refuerza la procedencia y necesidad del concurso mercantil como mecanismo de tutela preventiva del equilibrío entre la Comerciante y sus acreedores, evitando ejecuciones individuales que pudieran agravar la insolvencia.

En caso de ser necesario y respecto de cada uno de ellos, las causas y circunstancias que dieron lugar a que el comerciante se encuentre o sea inminente que se encuentre en el supuesto que específicó. Utilice tantas hojas, como sean necesarias.

**Nombre y firma de quien(es) promueve(n) por el comerciante**

**RAFAEL RODRÍGUEZ SÁNCHEZ.**

Escriba el nombre completo del (los) promovente(s) omitir(los) deberán poner su autógrafa, o bien en caso con rúbrica, mandar su firma electrónica.