# Exhibit 9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE BANK OF NEW YORK MELLON,
SOLELY IN ITS CAPACITY AS TRUSTEE
FOR THE TV AZTECA, S.A.B. DE C.V. 8.25%
SENIOR NOTES DUE 2024,

                Plaintiff,

       v.

TV AZTECA, S.A.B. DE C.V.; ALTA
EMPRESA, S.A. DE C.V.; ASESORÍA
ESPECIALIZADA EN AVIACIÓN, S.A. DE
C.V.; AZTECA RECORDS, S.A. DE C.V.;
AZTECA SPORTS RIGHTS LLC;
EQUIPO DE FUTBOL MAZATLAN, S.A. DE
C.V.; GANADOR AZTECA, S.A.P.I. DE C.V.;
MAZATLAN PROMOTORA DE FUTBOL,
S.A. DE C.V.; OPERADORA MEXICANA DE
TELEVISIÓN, S.A. DE C.V.;
PRODUCCIONES AZTECA DIGITAL, S.A.
DE C.V.; PRODUCCIONES DOPAMINA, S.A.
DE C.V.; PRODUCCIONES
ESPECIALIZADAS, S.A. DE C.V.;
PRODUCTORA DE TELEVISIÓN
REGIONAL DE TV AZTECA, S.A. DE C.V.;
PROMOTORA DE FUTBOL ROJINEGROS,
S.A. DE C.V.; PUBLICIDAD
ESPECIALIZADA EN MEDIOS DE
COMUNICACIÓN DE TV AZTECA, S.A. DE
C.V.; S.C.I. DE MÉXICO, S.A. DE C.V.;
SERVICIOS AÉREOS NOTICIOSOS, S.A. DE
C.V.; SERVICIOS ESPECIALIZADOS TAZ,
S.A. DE C.V.; SERVICIOS Y
MANTENIMIENTO DEL FUTURO EN
TELEVISIÓN, S.A. DE C.V.;  CORPORACIÓN
DE ASESORÍA TÉCNICA Y DE
PRODUCCIÓN, S.A. DE C.V.; EDITORIAL

Case No. 1:22-cv-08164-PGG

Hon. Paul G. Gardephe

Hon. Barbara Moses

**AMENDED COMPLAINT**

MANDARINA, S.A. DE C.V.; MULTIMEDIA, ESPECTÁCULOS Y ATRACCIONES, S.A. DE C.V.; SERVICIOS FORÁNEOS DE ADMINISTRACIÓN, S.A. DE C.V.; SERVICIOS LOCALES DE PRODUCCIÓN, S.A. DE C.V.; AZTECA INTERNATIONAL CORPORATION; STATIONS GROUP LLC; TV AZTECA HONDURAS, S.A. DE C.V.; COMERCIALIZADORA DE TELEVISIÓN DE HONDURAS, S.A. DE C.V.; INCOTEL S.A.; TVA GUATEMALA S.A.; LASIMEX, S.A. DE C.V.; TV AZTECA GLOBAL, S.L.U.; AZTECA COMUNICACIONES PERÚ, S.A.C.; REDES OPTICAS, S.A.C.; TELEVISORA DEL VALLE DE MÉXICO, S.A. DE C.V.,

Defendants.

Plaintiff The Bank of New York Mellon ("BNY Mellon" or the "Trustee"), solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024 (the "Notes"), for its Complaint against TV Azteca, S.A.B. de C.V. ("TV Azteca"), and Alta Empresa, S.A. de C.V.; Asesoría Especializada En Aviación, S.A. de C.V.; Azteca Records, S.A. de C.V.; Azteca Sports Rights LLC; Equipo de Futbol Mazatlan, S.A. de C.V.; Ganador Azteca, S.A.P.I. de C.V.; Mazatlan Promotora de Futbol, S.A. de C.V.; Operadora Mexicana de Televisión, S.A. de C.V.; Producciones Azteca Digital, S.A. de C.V.; Producciones Dopamina, S.A. de C.V.; Producciones Especializadas, S.A. de C.V.; Productora de Televisión Regional de TV Azteca, S.A. de C.V.; Promotora de Futbol Rojinegros, S.A. de C.V.; Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V.; S.C.I. de México, S.A. de C.V.; Servicios Aéreos Noticiosos, S.A. de C.V.; Servicios Especializados Taz, S.A. de C.V.; Servicios y Mantenimiento del Futuro en Televisión, S.A. de C.V.; Corporación de Asesoría Técnica y de Producción, S.A.

2

de C.V.; Editorial Mandarina, S.A. de C.V.; Multimedia, Espectáculos y Atracciones, S.A. de C.V.; Servicios Foráneos de Administración, S.A. de C.V.; Servicios Locales de Producción, S.A. de C.V.; Azteca International Corporation; Stations Group LLC; TV Azteca Honduras, S.A. de C.V.; Comercializadora de Televisión de Honduras, S.A. de C.V.; Incotel S.A.; TVA Guatemala S.A.; Lasimex, S.A. de C.V.; TV Azteca Global, S.L.U.; Azteca Comunicaciones Perú, S.A.C.; Redes Opticas, S.A.C.; Televisora del Valle de México, S.A. de C.V. (the "Guarantors"), alleges as follows:

**~~NATURE OF THE ACTION~~**

**NATURE OF THE ACTION**

1.      This is a breach of contract action arising out of Defendants' failure to pay hundreds of millions of dollars in principal and interest that they owe under the Notes.

2.      TV Azteca issued $400,000,000 of the Notes and sold them to investors under an Indenture it executed with the Trustee in 2017.  In that Indenture, and in the Global Note attached to the Indenture, TV Azteca unconditionally promised to make regularly scheduled interest payments to holders of the Notes.  TV Azteca also unconditionally promised to pay the Notes' principal in full when the Notes matured in August 2024.  And the Guarantors – all TV Azteca ~~subsidiaries~~Subsidiaries – backed up that promise with an unconditional guarantee of payment.

3.      TV Azteca and the Guarantors have defaulted on their obligations.  Beginning in February 2021, TV Azteca failed to make any interest payments when they came due.  When the Notes matured in August 2024, TV Azteca failed to pay the Notes' principal in full.  And TV Azteca's Guarantors have also failed to make good on their guarantee.

4.      To remedy Defendants' payment defaults, the Trustee brings this suit as trustee of an express trust to recover all amounts due by TV Azteca and the Guarantors for the benefit of the holders of the Notes.

**PARTIES**

5.      The Trustee also brings this amended complaint to enforce four other critical protections in the Indenture included to ensure the Notes would be repaid. TV Azteca promised to cause new Subsidiaries to guarantee those Notes so that TV Azteca and the Subsidiary Guarantors would comprise at least 85% of TV Azteca's and its Subsidiaries' consolidated total assets and EBITDA. TV Azteca also agreed to strict limits on when it could incur additional debt. It also promised that, if it did incur a lien on any of its assets going forward, the Notes would receive a lien of the same priority. And TV Azteca promised that it would only incur intercompany debt if it agreed that such debt would vote consistent with the Notes in any Mexican bankruptcy proceeding.

6.      TV Azteca's recent bankruptcy filing in Mexico has revealed that TV Azteca broke all of these promises. On March 10, 2026, TV Azteca filed a *concurso mercantil* proceeding (the "*concurso*") in Mexico to restructure its debts. The Trustee only recently obtained a copy of TV Azteca's *concurso* petition after TV Azteca repeatedly refused to hand over that filing. The reason why is clear. TV Azteca's petition reveals that TV Azteca created new Subsidiaries that now hold its most valuable assets but failed to cause those Subsidiaries to guarantee the Notes; TV Azteca incurred hundreds of millions of dollars in secured debt shortly before filing bankruptcy; TV Azteca failed to give the Notes similar priority to its other secured debt; and TV Azteca incurred intercompany debt without first agreeing that such debt would vote with the Notes in the *concurso*

4

plan it appears poised to file.  Taken together, these flagrant breaches of the Indenture are part of a transparent scheme by TV Azteca to reduce the recovery on the Notes in the *concurso.*

7.    The place to enforce those promises is this Court.  To induce investors to loan it hundreds of millions of dollars, TV Azteca agreed to the exclusive jurisdiction of the state and federal courts in this State.  TV Azteca should be held to its bargain.  The Trustee accordingly seeks declaratory and injunctive relief requiring TV Azteca to comply with its promises.

### PARTIES

5.8.    BNY Mellon is a New York chartered bank with its principal place of business in New York, New York.

6.9.    TV Azteca is a corporation organized under the laws of the United Mexican States ("Mexico") with its principal place of business in Mexico.

7.10.    Alta Empresa, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

8.11.    Asesoría Especializada En Aviación, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

9.12.    Azteca Records, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

10.13.  Azteca Sports Rights LLC, a/k/a Azteca Sport Right LLC, is a limited liability corporation organized under the laws of Delaware.  Azteca Sports Rights has three members – TV Azteca, Impulsora de NegociasNegocios Omega, S.A. de C.V., and Comunicaciones Avanzadas, S.A. de C.V. – each of which is incorporated in Mexico and maintains its principal place of business in Mexico.

11.14.  Equipo de Futbol Mazatlan, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

12.15.  Ganador Azteca, S.A.P.I. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

13.16.  Mazatlan Promotora de Futbol, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

14.17.  Operadora Mexicana de Televisión, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

15.18.  Producciones Azteca Digital, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

16.19.  Producciones Dopamina, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

17.20.  Producciones Especializadas, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

18.21.  Productora de Televisión Regional de TV Azteca, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

19.22.  Promotora de Futbol Rojinegros, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

20.23.  Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

21.24.  S.C.I. de México, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

22.25.  Servicios Aéreos Noticiosos, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

23.26.  Servicios Especializados Taz, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

24.27.  Servicios y Mantenimiento del Futuro en Televisión, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

25.28.  Corporación de Asesoría Técnica y de Producción, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

26.29.  Editorial Mandarina, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

27.30.  Multimedia, Espectáculos y Atracciones, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

28.31.  Servicios Foráneos de Administración, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

29.32.  Servicios Locales de Producción, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

30.33.  Azteca International Corporation is a Delaware corporation with its principal place of business in California.

31.34.  Stations Group LLC is a limited liability corporation organized under the laws of Delaware.  Stations Group LLC has one member – Azteca International Corporation – which is incorporated in Delaware and maintains its principal place of business in California.

32.35.  TV Azteca Honduras, S.A. de C.V. is a corporation organized under the laws of Honduras with its principal place of business in Honduras.

33.36. Comercializadora de Televisión de Honduras, S.A. de C.V. is a corporation organized under the laws of Honduras with its principal place of business in Honduras.

34.37. Incotel S.A. is a corporation organized under the laws of Guatemala with its principal place of business in Guatemala.

35.38. TVA Guatemala S.A. is a corporation organized under the laws of Guatemala with its principal place of business in Guatemala.

36.39. Lasimex, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

37.40. TV Azteca Global, S.L.U. is a corporation organized under the laws of Spain with its principal place of business in Spain.

38.41. Azteca Comunicaciones Perú, S.A.C. is a corporation organized under the laws of Peru with its principal place of business in Peru.

39.42. Redes Opticas, S.A.C. is a corporation organized under the laws of Peru with its principal place of business in Peru.

40.43. Televisora del Valle de México, S.A. de C.V. is a corporation organized under the laws of Mexico with its principal place of business in Mexico.

41.44. All Defendants other than TV Azteca itself are subsidiariesSubsidiaries and affiliates of TV Azteca.

## JURISDICTION AND VENUE

42.45. This Court has jurisdiction under 28 U.S.C. § 1332(a)(3) because this action is between citizens of different States in which citizens of foreign states are additional parties, and because the amount in controversy exceeds $75,000.

8

43.46. This Court has personal jurisdiction over TV Azteca and the Guarantors because the parties irrevocably consented and submitted to this Court's jurisdiction for any action arising out of or relating to the Notes or Indenture and agreed that any such suit may be brought in this Court. Indenture (attached as Exhibit A) § 11.7(b)(i), (iii).

44.47. Venue is proper because TV Azteca and the Guarantors waived, "to the fullest extent permitted by applicable law," any objection to venue in this District. Indenture, Ex. A § 11.7(b)(ii). Venue is also proper under 28 U.S.C. § 1391(f)(1) because a substantial part of the events and omissions giving rise to this claim arose in this District. Moreover, TV Azteca and the Guarantors waived any defense that this Court would be an inconvenient forum for this action. Indenture, Ex. A § 11.7(b)(ii).

## FACTUAL ALLEGATIONS

**I.      The Indenture**

**I.      The Indenture's Payment Obligations**

### A.      TV Azteca's Payment Obligations

45.48. The Indenture is a contract entered into as of August 9, 2017 among TV Azteca, the Guarantors, the Trustee, and The Bank of New York Mellon, London Branch, as principal paying agent.

46.49. The Indenture is governed by the laws of the State of New York. Ex. A § 11.7(a).

47.50. The Indenture is, and at all relevant times was, a valid, binding agreement.

48.51. The Bank of New York Mellon is the Trustee under the Indenture, and has been the Trustee continuously since the date of the Indenture and the Global Note. Ex. A at 1.

49.52.  TV Azteca issued the Notes pursuant to the Indenture.  The Notes were issued in global note form with the fully registered "Global Note," attached as Exhibit B.  "The terms" of the Global Note "include those stated in the Indenture."  Ex. B at 7.

50.53.  Under the Global Note and Indenture, TV Azteca promised to pay the principal sum of $400,000,000 on August 9, 2024 (the "Maturity Date").  TV Azteca also promised to make semi-annual interest payments on February 9 and August 9 of each year at the rate of 8.250% per annum on any outstanding and unpaid principal or interest.  Global Note, Ex. B at 7, § 1.

51.54.  Overdue principal and interest continues to accrue interest at the same 8.25% rate without regard to any applicable grace periods.  Ex. A at § 3.1(b); Ex. B at 7, § 1.  TV Azteca lacks authority under the Indenture to defer or change the due date of any interest or principal payment without the consent of a majority of Holders of the Notes.  *Cf.* Ex. A. at §§ 6.4, 9.2(a).

**B.      The Guarantors' Payment Obligations**

52.55.  The Guarantors "fully, unconditionally and irrevocably" guaranteed the Notes "jointly and severally with each other," guaranteeing "full and punctual payment when due" to each Noteholder and the Trustee, "whether at maturity, by acceleration, by redemption or otherwise."  Indenture, Ex. A § 10.1(a).

53.56.  As part of that guaranty, the Guarantors waived any "reduction, limitation, impairment, or termination" or any "defense of setoff, counterclaim, recoupment, or termination whatsoever or by reason of the invalidity, illegality, or unenforceability of the Guaranteed Obligations or otherwise."  Indenture, Ex. A § 10.1(g).  Further, the Guarantors agreed that their guaranty is one of payment, not collection, and waived any right to demand that the Trustee first look to TV Azteca or its assets for satisfaction of TV Azteca's debts before seeking payment of that amount from the Guarantors.  *Id.* § 10.1(b)-(c).

54.57.  In fact, the Guarantors agreed to be bound as primary obligors, not merely sureties, and waived any right to notice of default of TV Azteca's obligations.  Indenture, Ex. A § 10.1(a), (c).  As such, the Trustee would be entitled to immediately enforce TV Azteca's obligations against the Guarantors if TV Azteca defaulted, without first giving any notice or demand to the Guarantors.

55.58.  However, Section 10.1(i) also states, that without "limitation of any other right which any Holder has at law or in equity," the Guarantors promised to pay any unpaid obligations of the companyCompany upon written demand by the Trustee.  Indenture, Ex. A § 10.1(i).  Such notice is effective upon notice to TV Azteca, which, under Sections 11.1(a) and 11.1(e) of the Indenture, constitutes notice to each of the Guarantors.

### C.       Remedies Upon Events ofPayment Default

56.59.  Under the Indenture, either "default in the payment when due of the principal" owed, or "default for 30 consecutive days or more in the payment when due of interest" constitute an "Event of Default."  Indenture, Ex. A § 6.1(a).

57.60.  If an Event of Default occurs and continues, the Trustee or the holders of at least 25% in principal amount of the Notes that are outstanding may, by notice in writing to TV Azteca, accelerate the Notes and "declare the unpaid principal of (and premium, if any) and accrued and unpaid interest on all the Notes to be immediately due and payable."  Indenture, Ex. A § 6.2(a).

58.61.  In an Event of Default, the Trustee may pursue any available remedy to collect the payment of principal and interest on the Notes or to enforce the performance of any provision of the Notes or Indenture.  Indenture, Ex. A, § 6.3(a).  Among other remedies, the Trustee may seek judgment as trustee of an express trust against TV Azteca and the Guarantors for the "whole amount then due," including principal and interest.  Indenture, Ex. A §§ 6.1(a), 6.8.

11

59.62.  TV Azteca and the Guarantors further agreed to indemnify the Trustee against all losses and costs, including without limitation, reasonable attorney's fees and expenses, incurred by it without negligence, willful misconduct, or bad faith on its part in connection with its acceptance and administration of the trust and its performance of its duties under the Indenture, including the costs and expenses of enforcing this Indenture against TV Azteca and the Guarantors, as well as the cost of collecting the amounts due.  Indenture, Ex. A §§ 6.8, 7.7(a)-(b), 10.1(a).

## H.    TV Azteca's Breaches of the Indenture

### D.    Defendants' Payment Default

60.63.  On February 9, 2021, TV Azteca failed to make the scheduled interest payment, in whole or in part, required by the Indenture and Global Note.  Since then, TV Azteca has failed to make any scheduled interest payments, including the payments due on August 9, 2021, February 9, 2022, August 9, 2022, February 9, 2023, August 9, 2023, February 9, 2024, August 9, 2024, and February 9, 2025.

61.64.  TV Azteca also failed to repay the Notes' $400 million in principal, in whole or in part, when the Notes matured on August 9, 2024.

62.65.  The Guarantors also have not made any of the Notes' interest or principal payments that TV Azteca missed, despite their unconditional guarantee to do so.

63.66.  TV Azteca's (and the Guarantors') failure to make the required interest payments when due, and failure to cure that non-payment within 30 days (or, in fact, at any time thereafter), constituted an Event of Default under the Indenture.  TV Azteca's (and the Guarantors') failure to repay the Notes' principal when it became due likewise constituted an Event of Default.

64.67.  On at least March 22, 2021 and March 29, 2022, the Trustee sent TV Azteca additional notices of Events of Default pursuant to the Indenture based on TV Azteca's failure to

12

make required interest payments on February 9, 2021, August 9, 2021, and February 9, 2022.  In each of those notices of default, the Trustee also made demand upon the Guarantors to pay all unpaid amounts owed by TV Azteca.

65.68.  On May 3, 2022, the holders of more than 25% of the aggregate principal amount of outstanding Notes issued a notice of acceleration to TV Azteca and the Trustee pursuant to and in accordance with Section 6.2 of the Indenture.  Indenture, Ex. A § 6.2(a).  The holders' Notice of Acceleration specified that the missed interest payments were continuing Events of Default and stated that it was a "notice of acceleration" under Section 6.2 of the Indenture.

66.69.  Three days later, the Trustee sent TV Azteca a letter further advising TV Azteca that the requisite number of holders had accelerated the Notes' principal and accrued and unpaid interest because of the ongoing Events of Default.

67.70.  In addition to the holders' Notice of Acceleration, the Trustee issued a separate Notice of Acceleration on August 5, 2022.  The Trustee's notice was sent to TV Azteca and the Guarantors in accordance with Section 6.2 of the Indenture.  That notice stated that the three initial missed interest payments (February 2021, August 2021, and February 2022) were Events of Default under the Indenture and stated that it was a "notice of acceleration" within the meaning of Section 6.2 of the Indenture.  Notice of Acceleration (attached as Exhibit C).  TV Azteca acknowledged receipt of the August 5 Notice of Acceleration on August 9, 2022.

68.71.  As a result of the holders' and Trustee's respective notices of acceleration, the Notes—including the unpaid interest and principal—were thus "immediately due and payable" on August 5, 2022.  Indenture, Ex. A § 6.2(a).

69.72.  The notices of acceleration and Events of Default have not been waived by a majority of holders pursuant to Sections 6.2(b) and 6.4, respectively, of the Indentures.

13

70.73.  Each of the notices of acceleration and of Events of Default also constituted written demand to the Guarantors pursuant to Sections 10.1(a), 11.1(a), and 11.1(e) of the Indenture.

71.74.  Despite the notices of acceleration, and despite the Notes' maturity date in August 2024, neither TV Azteca nor the Guarantors have made any payment with respect to the Notes since August 9, 2020.

72.75.  Under the Global Note and Indenture, interest continues to accrue on the unpaid principal and the defaulted interest at the Notes' interest rate of 8.25%.

73.76.  As of the date of this Amended Complaint, TV Azteca and the Guarantors now owe more than $580640 million under the Notes, including principal, missed interest payments, and accrued interest on the defaulted principal and interest without regard to any applicable grace periods.

**E.    TV Azteca's Partial Admission of Liability**

77.    On March 10, 2026, TV Azteca filed a petition to begin a *concurso mercantil* insolvency proceeding in the First Bankruptcy Court in Mexico City, Mexico.  A *concurso* is a type of proceeding under Mexican law in which the debtor (here, TV Azteca) seeks to reorganize its debts and/or liabilities due to its insolvency.

78.    The *concurso* petition admits that the Notes are valid.  It lists them with TV Azteca's other legitimate liabilities (and, in fact, relies on the Notes specifically to obtain *concurso* protections from the Mexican courts).  The *concurso* petition also admits that, as of January 31, 2026, TV Azteca owes the full amount of principal and semi-annual interest payments to the "Holders" of the Notes.  Those statements in a pleading are judicial admissions that are binding upon TV Azteca in this case.  Further, if TV Azteca's *concurso* petition is accepted by the Mexican court, TV Azteca will be judicially estopped from denying the validity of the Notes in this case.

14

79.    However, TV Azteca's *concurso* petition omits approximately $100 million of accrued interest and incorrectly lists the liability associated with the Notes as $532 million.  TV Azteca's petition also omits this action from a list of pending litigation.

## II.    TV Azteca's Other Breaches of the Indenture

### A.    TV Azteca's Breach of the Guarantor Provisions

#### 1.    *TV Azteca's Obligation To Name Subsidiaries as Guarantors*

80.    Under Section 10.1(b) of the Indenture, TV Azteca must cause nearly all new Subsidiaries, with limited exceptions, to execute a Supplemental Indenture guaranteeing the Notes.  This ensures that TV Azteca cannot circumvent its obligations to repay the Notes and Subsidiaries' guarantees simply by creating new Subsidiaries.

81.    In Section 10.1(b), TV Azteca made two overlapping promises to name new Subsidiaries as guarantors.  *First*, TV Azteca promised to name any existing or future subsidiary that is deemed a "Restricted Subsidiary" as a guarantor if it makes up over 5% of TV Azteca's consolidated assets *or* earnings.  Every TV Azteca Subsidiary is presumptively Restricted unless TV Azteca complies with the Indenture's requirements for designating that Subsidiary as "Unrestricted."  Indenture § 1.1.  When the Notes were issued, TV Azteca did not have any "Unrestricted" Subsidiaries.

82.    TV Azteca may name Subsidiaries as "Unrestricted" only in very limited situations.  Among other requirements, TV Azteca is forbidden from designating an Unrestricted Subsidiary if: (i) a Default or Event of Default has occurred or is continuing at the time the Unrestricted Subsidiary is designated, Indenture § 3.13(a)(1); (ii) TV Azteca does not meet the Indenture's requirements to incur additional debt, including having a Consolidated Leverage Ratio less than 3.5 to 1.0, *id.* § 3.13(a)(2); *see also id.* § 3.9(a); or (iii) TV Azteca does not meet the Indenture's

15

requirements to make an Investment in the Subsidiary equal to the Subsidiary's Net Assets, *id.* § 3.13(a)(1), (c); *id.* at 17 (definition of "Investment").

83.    In addition, TV Azteca must follow procedural requirements to name a Subsidiary as "Unrestricted."  Any such designation "must be evidenced by resolutions of the Board of Directors of [TV Azteca], delivered to the Trustee certifying compliance" with Indenture provisions restricting designation of Unrestricted Subsidiaries.  Indenture § 3.13(e).

84.    In Section 10.1(b), TV Azteca promised to "cause any existing or future Restricted Subsidiary" to guarantee the Notes if either (i) the Subsidiary represents at least 5% of TV Azteca's consolidated assets as of the last date of any fiscal quarter *or* (ii) the Subsidiary represents at least 5% of TV Azteca's consolidated EBITDA for any twelve-month period ending as of the last day of any fiscal quarter.  Indenture §§ 10.1(b), 10.6.  If a Subsidiary meets either of those thresholds, TV Azteca must "promptly" cause that Subsidiary to, on a senior basis, execute a Supplemental Indenture guaranteeing the Notes and provide the Trustee with an Officers' Certificate and Opinion of Counsel.  Indenture § 10.6.

85.    *Second*, TV Azteca agreed to a backstop so that nearly all its Subsidiaries would guarantee the Notes, whether those Subsidiaries were "Restricted" or not.  In Section 10.1(b), TV Azteca promised to "at all times cause" TV Azteca and its Subsidiaries guaranteeing the Notes to represent "at least 85% of the consolidated total assets" as of the last date of each fiscal quarter and "at least 85% of Consolidated EBITDA" for the twelve-month period ending as of the last day of each fiscal quarter.  Indenture § 10.1(b).

### 2.    *TV Azteca's Failure To Name Subsidiaries as Guarantors*

86.    TV Azteca has breached the Indenture's guarantor provisions.  Since the Notes issued in 2017, TV Azteca created multiple Subsidiaries (as defined in the Indenture), including

16

Televisión Azteca II, S.A. de C.V. ("TVA II"),[1] Televisión Azteca III, S.A. de C.V. ("TVA III"), and Azteca Novelas II, S.A.P.I. de C.V. ("Azteca Novelas II"). TV Azteca owned 100% of those Subsidiaries when they were created. Upon information and belief, TV Azteca is, and at all relevant times has been, the 100% owner of those Subsidiaries.

87. Each of TV Azteca's newly created Subsidiaries were and have remained "Restricted Subsidiaries" under the Indenture at the time of their formation and at all relevant times thereafter. Each of these Subsidiaries was created after 2019. TV Azteca has not been able to incur new debt under Section 3.9 – and has therefore been unable to designate Unrestricted Subsidiaries under Section 3.13(a) – since at least 2019, when it failed to satisfy the Indenture's required debt leverage ratio. *See* Indenture §§ 3.13(a)(2), 3.9(a).

88. In addition, TV Azteca's default on the Notes since February 2021 independently bars TV Azteca from naming any new subsidiaries as Unrestricted. TV Azteca has never cured that default or made any payment on the Notes since February 2021.

89. TV Azteca also did not satisfy the procedural requirements under the Indenture to designate these subsidiaries as "Unrestricted." TV Azteca has never provided the Trustee with any board resolutions naming these Subsidiaries as "Unrestricted," let alone resolutions certifying compliance with the Indenture's provisions for such a designation. In addition, TV Azteca's *concurso* petition lists forty Subsidiaries but inexplicably lists only thirteen by name as Guarantors of the Notes.

90. Moreover, even if these Subsidiaries could have been named as "Unrestricted," and even if those Subsidiaries did not independently meet the 5% thresholds under Section 10.1(b),

---

[1] The *concurso* petition also refers to this entity as Inmobiliaria Roca del Pedregal, S.A. de C.V.

17

TV Azteca would still be required to name them as Guarantors. TV Azteca's *concurso* filings show that as of December 31, 2024, non-Guarantor Subsidiaries – including TVA III – are valued at well above 15% of TV Azteca's total assets.

91.    In fact, TV Azteca admitted that certain non-Guarantor Subsidiaries – including TVA II, TVA III, and Azteca Novelas II – should be Guarantors of the Notes by identifying them as such in its *concurso* petition. Yet TV Azteca has never provided the Trustee with a Supplemental Indenture, officer's certificate, or opinion of counsel demonstrating it caused TVA II, TVA III, Azteca Novelas II, or any of its other new Subsidiaries to guarantee the Notes.

92.    Worse, the *concurso* petition reveals that TV Azteca transferred substantial assets to certain non-Guarantor Subsidiaries. For example, TVA III now appears to own and operate TV Azteca's most valuable broadcasting assets, including its concessions, as well as TV Azteca's main offices and studios in Mexico City. TV Azteca is in the broadcasting business, and its broadcasting concessions granted by the Mexican government are among its most valuable assets. TV Azteca repeatedly acknowledged this when marketing the Notes to investors, and its *concurso* petition describes how its revenues come mainly from television advertisement sales. TV Azteca's breach of its guarantor obligations is, upon information and belief, part of a concerted scheme to move its most valuable assets out of the reach of investors in the Notes.

3.    *The Irreparable Harm to the Trustee from TV Azteca's Breaches*

93.    Having all Subsidiaries that meet certain criteria guarantee the Notes is a specifically bargained for protection in the Indenture. Absent specific performance, that protection will be irretrievably lost for at least three reasons.

18

94.    *First*, unless and until the relevant Subsidiaries, including TVA III, sign a Supplemental Indenture, the Trustee cannot enforce their obligations under the Notes, including in TV Azteca's pending *concurso* proceeding or in *concurso* proceedings of its Guarantors.

95.    *Second*, other creditors of TV Azteca will be able to approve a plan in the *concurso* that may result in the sale of Subsidiaries (such as TVA III) or their assets.  Those creditors would include entities with purported liens on the Subsidiaries' assets, such as AlterBank and Numchi.  In fact, TV Azteca has already proposed selling TVA III's assets in the *concurso* to satisfy other purported debts.  Such a sale would remove those Subsidiaries and their assets from TV Azteca's control and prevent the Trustee from enforcing TV Azteca's obligation to cause such Subsidiaries to guarantee the Notes.

96.    *Third*, without the Subsidiaries guaranteeing the Notes, the Trustee cannot assert its rights under the Indenture against non-Guarantor Subsidiaries in Mexico, including in separate *concurso* proceedings that such Subsidiaries may file.  This risk is particularly serious because TV Azteca has stated its Subsidiaries are insolvent.  In fact, in its capacity as shareholder of its Subsidiaries, TV Azteca has already agreed to vote in favor of its Subsidiaries filing their own *concursos* if such a vote occurs.

**B.    TV Azteca's Breach of Restrictions on Additional Debt**

97.    The Indenture also restricts TV Azteca and its Subsidiaries from incurring additional debt beyond the Notes.

98.    With limited exceptions not relevant here, the Indenture mandates that TV Azteca "shall not, and shall not cause or permit any of its Restricted Subsidiaries to, directly or indirectly, Incur any Indebtedness" unless, "at the time of and immediately after giving *pro forma* effect to the Incurrence thereof and the application of the proceeds therefrom, the Consolidated Leverage

19

Ratio of the Company and its Restricted Subsidiaries would not have been greater than 3.5 to 1.0." Indenture § 3.9(a). TV Azteca has not provided the Trustee the calculation of this ratio since 2019, despite being required to do so under the Indenture. *See* Indenture § 3.18(a). The most recent calculation showed that this ratio was equal to 5.7x – well above the 3.5x threshold.

99. TV Azteca's *concurso* petition reveals that it breached Section 3.9(a). That filing shows that TV Azteca has approximately $1.35 billion (23.3 billion Mexican pesos) of total outstanding Indebtedness, a massive increase from the $562 million of total debt reported on December 31, 2024.

100. TV Azteca hid this new debt from the Trustee. Prior to filing its *concurso* petition, TV Azteca did not report to the Trustee any new debt incurred after 2020. TV Azteca also repeatedly failed to provide financial statements to the Trustee as required by Section 3.18 of the Indenture, which would have revealed this new debt.

101. In one egregious example, TV Azteca borrowed over $230 million in secured debt just weeks before filing its *concurso* petition. On January 29, 2026, TV Azteca entered into a credit agreement with AlterBank, a St. Lucian entity with no history of lending to TV Azteca or making any loans of a similar size, and whose prior owners and affiliates previously engaged in fraud and sanctions evasion. The credit agreement permits TV Azteca to borrow up to $290 million and purports to secure the loan with valuable assets that, upon information and belief, include broadcast assets transferred to non-Guarantor Subsidiaries.

102. On March 6, 2026, less than a week before filing the *concurso* petition, TV Azteca and AlterBank amended their credit agreement. As of the *concurso* petition date, TV Azteca purportedly owes $236 million under the AlterBank credit agreement. The AlterBank credit

20

agreement has a July 2026 maturity date, despite TV Azteca knowing that it would be undergoing insolvency proceedings at that time.

103. TV Azteca's extensive new borrowings violate the Indenture's restrictions on incurring additional Indebtedness. Indenture § 3.9(a). When considering the AlterBank debt and TV Azteca's poor financial performance since 2019, TV Azteca's Consolidated Leverage Ratio increased further beyond the threshold that would allow TV Azteca to incur additional Indebtedness.

### C. Restrictions on Liens and Security Interests

104. Section 3.15 of the Indenture restricts TV Azteca and its Restricted Subsidiaries from incurring any liens against or upon any of their respective properties or assets, including capital stock of any Restricted Subsidiary. Indenture § 3.15(a). Prior to incurring any lien to secure any other Indebtedness, TV Azteca and its Subsidiaries must first secure the Notes, Note Guarantees, and all other amounts due under the Indenture, equally and ratably with such Indebtedness. Indenture § 3.15(a); *see also id.* § 3.10.

105. In addition, the Indenture provides that TV Azteca "shall not permit" any Restricted Subsidiary that is not already a Guarantor to guarantee any debt of TV Azteca or secure any such debt with a lien on the Restricted Subsidiary's assets, unless effective provision is made to guarantee or secure the Notes "on an equal and ratable basis with such Guarantee or Lien." Indenture § 3.10. Any guarantee of other Indebtedness (*i.e.*, Indebtedness other than the Notes) must also be subordinated and junior in right of payment to the guarantee of the Notes. *Id.* §§ 3.9(b)(2), 3.10.

106. TV Azteca has breached these provisions as well. TV Azteca's *concurso* petition revealed that it has more than $340 million of purported secured loans that subordinate the Notes,

21

despite failing to secure the Notes.  When the Notes were issued, TV Azteca did not have **any** secured debt.

107.    In particular, the *concurso* petition lists two large secured loans: (i) the $290 million AlterBank credit agreement (with $236 million outstanding), and (ii) a $109 million loan originally from TV Azteca's affiliate, Banco Azteca, which was later assigned to an entity named Numchi Services.[2]  Both the AlterBank and the Numchi loans are secured by liens on the same assets, which, upon information and belief, include valuable broadcast assets that TV Azteca transferred to non-Guarantor Subsidiaries.  In fact, TV Azteca disputes the transfer of the loan from Banco Azteca to Numchi, despite TV Azteca and Banco Azteca being part of the same corporate family, which is yet another reason to suspect that the loan was fraudulent and/or designed to frustrate recovery on the Notes.

108.    TV Azteca identified the secured AlterBank and Numchi loans in the *concurso* petition as being senior to the Notes.  The Notes are listed as unsecured obligations, being of equal priority with over 1,100 other unsecured creditor claims.

109.    The *concurso* petition includes a proposed creditor plan stating that the beneficial owners of the Notes will receive a haircut of "up to 90%" of the face value of their holdings.  The plan also states that secured creditors, such as AlterBank, are likely to recover significantly more, including through the potential sale of broadcasting assets securing those loans.

110.    The liens granted to AlterBank and Numchi do not qualify as "Permitted Liens."  The Indenture defines "Permitted Liens" to include categories such as statutory mechanic's liens,

---

[2] TV Azteca defaulted on the Banco Azteca loan in 2023.  TV Azteca never provided the Trustee with notice of the default, despite the Indenture requiring such notice.  Banco Azteca allegedly assigned the defaulted loan to Numchi in 2024.

liens for customs duties or taxes, liens existing on the issue date, and liens in favor of TV Azteca. None of those categories apply to the AlterBank and Numchi loans.

111.   To date, TV Azteca has failed to secure the Notes in accordance with the Indenture's requirements.  Indenture § 3.15(a); *see also id.* § 3.10.

**D.      Restrictions on Intercompany Debt Voting**

112.   The Indenture also places restrictions on intercompany debt, including restrictions designed to prevent TV Azteca from using such debt to manipulate the *concurso* proceeding.

113.   Like U.S. Chapter 11 bankruptcies, in a *concurso* proceeding the debtor proposes a plan of reorganization that is voted on by creditors.  However, as a general matter, the restrictions on how intercompany debt claims can vote in support of a *concurso* plan are looser than the restrictions on such voting in a Chapter 11.  Thus, before the Indenture was executed, U.S. creditors had faced *concurso* plans that were approved only through collusive intercompany voting.  *See, e.g., In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1068 (5th Cir. 2012).

114.   To guard against this risk, the Indenture places strict limits on how intercompany claims can vote in any *concurso*.  In Section 3.9 of the Indenture, TV Azteca agreed not to incur any new debt either between itself and any Restricted Subsidiary,[3] or any debt between Restricted Subsidiaries, unless both TV Azteca itself and the relevant Restricted Subsidiary "agree to vote such Indebtedness, or provide their consents in connection with such Indebtedness, in any Mexican Restructuring, in a manner that is consistent with the vote of, or the consents provided by, the holders of the Notes and other unaffiliated creditors of the same class as the Notes."  Indenture

---

[3] These restrictions do not, by their terms, apply to "Unrestricted Subsidiaries."  However, as explained above, TV Azteca has not and could not have named any of its Subsidiaries as "Unrestricted."  *See* ¶¶ 81-83, 87-89, *supra*.

23

§ 3.9(b)(6)(z).  The Indenture defines "Mexican Restructuring" to specifically include *concurso* proceedings.

115.    TV Azteca's *concurso* petition reveals that TV Azteca has hundreds of millions of dollars of intercompany Indebtedness, comprising over 15% of TV Azteca's Indebtedness. However, TV Azteca never informed the Trustee of this intercompany debt, let alone provide any agreements or consents to vote such debt consistent with the Notes.  Further, on June 4, 2026, the Trustee's Mexican restructuring counsel sent a letter to TV Azteca's restructuring counsel via DHL (and subsequently sent via email on June 5, 2026) requesting that TV Azteca agree to honor this provision.  As of the filing of this Amended Complaint, TV Azteca's counsel has not responded.

**E.      TV Azteca's Breach of Its Reporting Obligations**

116.    TV Azteca's breaches of those provisions have only been possible because TV Azteca has flouted its obligation to provide the Trustee with information about its financial condition and its compliance with the Indenture.

117.    The Indenture imposes broad financial reporting obligations on TV Azteca and its Subsidiary Guarantors.  As long as the Notes are outstanding, TV Azteca and each Subsidiary Guarantor must provide the Trustee with consolidated audited financial statements prepared in accordance with International Financial Reporting Standards ("IFRS") every year, and consolidated unaudited financial statements prepared in accordance with IFRS every quarter. Indenture § 3.18(a)(i)-(ii).

118.    TV Azteca and each Subsidiary Guarantor must also provide the Trustee with a copy of any public filing with any securities exchange or securities regulatory agency or authority that would reasonably be material to Holders.  Indenture § 3.18(a)(iii).  And TV Azteca and each Subsidiary Guarantor must also deliver to the Trustee each year a certificate of compliance with

all of their respective obligations under the Indenture, which shall also state whether any Default or Event of Default occurred over the prior year.  Indenture § 3.5.

119.    TV Azteca has repeatedly breached the Indenture's reporting provisions.  Neither TV Azteca nor any Guarantor Subsidiary have provided the Trustee with the detailed financial information required by Section 3.18 of the Indenture since providing that information for the year ending December 31, 2019.

120.    By failing to provide that information under Section 3.18, TV Azteca has also failed to meet its obligation to calculate the "Consolidated Leverage Ratio of the Company and its Restricted Subsidiaries for such period, together with an appropriate footnote or other disclosure providing in reasonable detail the calculation of such ratio."  Indenture § 3.18.  Indeed, TV Azteca has not provided the Trustee with the required Consolidated Leverage Ratio calculations since the calculation for 2019.

121.    TV Azteca (and each Subsidiary Guarantor) are also required to provide the Trustee on an annual basis with "an Officers' Certificate certifying compliance with all of their respective obligations under this Indenture and stating whether or not any Default or Event of Default has occurred during the previous fiscal year."  Indenture § 3.5.  None of TV Azteca or any Subsidiary Guarantor has furnished the required Officers' Certificate for any of the fiscal years 2020, 2021, 2022, 2023, 2024, or 2025.

## COUNT I

### Breach of Contract Against All Defendants (Default on the Notes)

74.122.         All foregoing paragraphs are incorporated by reference herein.

75.123.         The Global Note and the Indenture are valid and enforceable contracts executed by TV Azteca and the Guarantors.

76.124.    TV Azteca and the Guarantors failed to make payments due on February 9, 2021, August 9, 2021, February 9, 2022, or any time thereafter, as required by the terms of the Global Note and the Indenture.

77.125.    Each of TV Azteca's failures to make its required interest payments, and its continuing default for 30 consecutive days after each missed payment, constituted Events of Default.

78.126.    To date, none of TV Azteca or any of the Guarantors have cured, in whole or in part, any of the missed payments that constitute Events of Default.

79.127.    The Notes' principal and all unpaid interest on the Notes accrued to date became immediately due and payable no later than August 5, 2022 as a result of the Events of Default caused by TV Azteca's and the Guarantors' missed (and uncured) interest payments and the holders' and Trustee's respective notices of acceleration relating to those Events of Default.

80.128.    Under the Global Note and Indenture, TV Azteca and the Guarantors remain obligated to pay interest on accrued and unpaid principal and interest at the Notes' stated interest rate of 8.25% until those amounts due are paid or reduced to judgment.

81.129.    In addition to the Notices of Acceleration, the Notes' principal and all unpaid interest and interest accrued to date thereon also became due when the Notes matured on August 9, 2024.

82.130.    TV Azteca and the Guarantors have failed to pay any principal owed under the Notes and have failed to pay any missed or accrued interest since at least February 2021.

83.131.    TV Azteca and the Guarantors therefore owe the entire principal amount of the Global Note, the missed interest payments, and accrued and unpaid interest on the missed principal and interest payments.

26

84.132.    TV Azteca's and the Guarantors' failure to pay principal when due also constitute an Event of Default.

85.133.    Under Sections 6.8, 7.7(b), and 10.1(a) of the Indenture, TV Azteca and the Guarantors are also liable to indemnify the Trustee for all costs and expenses incurred in enforcing the Indenture and TV Azteca and the Guarantors' breaches thereof, including reasonable attorney's fees and expenses and costs of collection.

## COUNT II

### Breach of Contract Against TV Azteca (Specific Performance of Guarantor Provisions and Declaratory Judgment)

134.    All foregoing paragraphs are incorporated by reference herein.

135.    The Indenture and the Global Note are valid and enforceable contracts executed by TV Azteca.

136.    The Trustee has performed its obligations under the Indenture and Global Note.

137.    The Trustee is expressly authorized to "enforce the performance of any provision of the Notes or this Indenture." Indenture § 6.3(a).

138.    Section 10.1(b) of the Indenture requires that, for any Restricted Subsidiary that "(A) as of the last date of any fiscal quarter and with respect to the Company and its Subsidiaries, individually represents at least 5% of the consolidated total assets of the Company and its Subsidiaries, as determined in accordance with IFRS, or (B) for any twelve-month period ending as of the last day of any fiscal quarter, individually represents at least 5% of the Consolidated EBITDA of the Company," TV Azteca must cause that Restricted Subsidiary to become a Subsidiary Guarantor by signing a Supplemental Indenture in accordance with Section 10.6.

27

139.     Section 10.1(b) of the Indenture independently requires TV Azteca to "at all times" cause TV Azteca and the "then-existing Subsidiary Guarantors, collectively, to represent (y) as of the last date of each fiscal quarter, at least 85% of the consolidated total assets of the Company and its Subsidiaries, as determined in accordance with IFRS, and (z) for the twelve-month period ending as of the last day of each fiscal quarter, at least 85% of Consolidated EBITDA."

140.     TV Azteca's fiscal quarters end, and at all relevant times have ended, on March 31, June 30, September 30, and December 31 of each year.

141.     TV Azteca's non-Guarantor Subsidiaries, including TVA III, have been Restricted Subsidiaries at all relevant times from its formation to present.

142.     TV Azteca's *concurso* filing shows that, as of no later than December 31, 2024, TVA Restricted Subsidiaries, such as TVA III, individually represent at least 5% of either the consolidated total assets of TV Azteca and its Subsidiaries, as determined in accordance with IFRS, or at least 5% of consolidated EBITDA, for the twelve-month period January 1, 2024 to December 31, 2024.

143.     TV Azteca's *concurso* filing also shows that, as of no later than December 31, 2024, TV Azteca's Subsidiaries that have not yet provided the Trustee a Supplemental Indenture guaranteeing the Notes collectively held more than 15% of the consolidated total assets of TV Azteca and its Subsidiaries, as determined in accordance with IFRS, and more than 15% of consolidated EBITDA for the twelve-month period ending December 31, 2024.

144.     TVA III's value of over $500 million on TV Azteca's balance sheet as of December 30, 2024, shows that it holds TV Azteca's most valuable assets, including its broadcast assets, and easily satisfies the financial thresholds in Section 10.1(b) for being a Subsidiary Guarantor.

145.    TV Azteca can perform its obligations under Sections 10.1(b) and Section 10.6 of the Indenture.  TV Azteca wholly owns or otherwise has sufficient ownership to unilaterally control each of the above-referenced Subsidiaries.  TV Azteca has the ability and authority to require each entity to execute a Supplemental Indenture and to otherwise comply with the Indenture's requirements.  Indeed, TV Azteca caused each of its Subsidiaries to sign the original Indenture when initially issuing the Notes.

146.    Specific performance here is warranted because the Trustee has no adequate remedy at law.  Absent TV Azteca causing TVA III and other Subsidiaries to guarantee the Notes, the Trustee is unable to enforce the Notes against those entities.  Meanwhile, those Subsidiaries' other creditors are able to assert claims against those Subsidiaries, leading to the potential loss of specific guarantees, securities, or assets provided in the Indenture to satisfy the Notes.  And absent specific performance, TV Azteca may sell the Subsidiaries, including as part of a proposed *concurso* plan, placing them outside the control of TV Azteca and frustrating the ability to enforce the guarantor provision in the future.  Those Subsidiaries may also themselves file for *concurso* protection, which may prevent the Trustee from being able to exercise its right to cause the Subsidiaries to guarantee the Notes, and without a valid guarantee, the Trustee may be unable to participate in the *concurso* proceedings for such Subsidiaries.

147.    In addition, declaratory relief is warranted.  There is a justiciable, present, and actual controversy between the Trustee and TV Azteca as to the proper interpretation and application of Sections 10.1(b) and 10.6 of the Indenture.

148.    A declaration by this Court is necessary to clarify the parties' rights.

149.     Section 10.6 of the Indenture requires TV Azteca to cause any Subsidiary satisfying one of the criteria set forth in Section 10.1(b) of the Indenture to be a Guarantor Subsidiary of the Notes by executing a Supplemental Indenture.

150.     The *concurso* filing reveals that certain non-Guarantor Subsidiaries, including TVA III, represent at least 5% of the consolidated total assets of the Company.  The *concurso* filing also reveals that TV Azteca's non-Guarantor Subsidiaries collectively held more than 15% of the consolidated total assets of TV Azteca and its Subsidiaries.

151.     The Trustee is entitled to a declaration that, under Sections 10.1(b) and 10.6 of the Indenture, TV Azteca must promptly cause all Subsidiaries satisfying any condition in Section 10.1(b) to be Guarantor Subsidiaries of the Notes.

152.     Under Sections 6.8, 7.7(b), and 10.1(a) of the Indenture, TV Azteca and the Guarantors are also liable to indemnify the Trustee for all costs and expenses incurred in enforcing the Indenture and remedying TV Azteca and the Guarantors' breaches thereof, including reasonable attorney's fees and expenses and costs of collection.

## COUNT III

### Declaratory Judgment Against TV Azteca (Additional Indebtedness)

153.     All foregoing paragraphs are incorporated by reference herein.

154.     There is a justiciable, present, and actual controversy between the Trustee and TV Azteca as to the proper interpretation and application of Section 3.9 of the Indenture.

155.     A declaration by this Court is necessary to clarify the parties' rights.

156.     The Indenture forbids TV Azteca and its Restricted Subsidiaries from incurring additional Indebtedness unless TV Azteca meets specific requirements outlined in the Indenture, including a Consolidated Leverage Ratio that is not greater than 3.5 to 1.0.

30

157.    The *concurso* filing reveals that TV Azteca incurred additional Indebtedness, including without limitation the AlterBank and Numchi loans, without meeting those requirements.  The additional Indebtedness does not meet the limited exceptions under Section 3.9(b) of the Indenture.

158.    The Trustee is entitled to a declaration that TV Azteca's incurrence of additional Indebtedness, including through the AlterBank and Numchi loans, is a violation of Section 3.9 of the Indenture.

159.    Under Sections 6.8, 7.7(b), and 10.1(a) of the Indenture, TV Azteca and the Guarantors are also liable to indemnify the Trustee for all costs and expenses incurred in enforcing the Indenture and TV Azteca and the Guarantors' breaches thereof, including reasonable attorney's fees and expenses and costs of collection.

## COUNT IV

### Declaratory Judgment Against TV Azteca (Restrictions on Liens)

160.    All foregoing paragraphs are incorporated by reference herein.

161.    There is a justiciable, present, and actual controversy between the Trustee and TV Azteca as to the proper interpretation and application of Sections 3.10 and 3.15(a) of the Indenture.

162.    A declaration by this Court is necessary to clarify the parties' rights.

163.    The Indenture forbids TV Azteca and its Restricted Subsidiaries from incurring any liens against or upon any of their respective properties or assets, including capital stock of any Restricted Subsidiary.  Indenture § 3.15(a).  Prior to incurring any lien to secure any Indebtedness, TV Azteca and its Subsidiaries must first secure the Notes, Note Guarantees, and all other amounts due under the Indenture, equally and ratably with such Indebtedness.  *Id.* § 3.15(a); *see also id.* § 3.10.

31

164.    According to its *concurso* petition, TV Azteca incurred liens in connection with both the AlterBank and Numchi loans.

165.    To date, however, TV Azteca has not secured the Notes and all other amounts due under the Indenture, equally and ratably with such Indebtedness.  Indeed, none of TV Azteca or any of its Subsidiaries have secured any part of the Notes or other amounts due under the Indenture; TV Azteca expressly identifies the Notes in its *concurso* petition as unsecured claims.

166.    The Trustee is entitled to a declaration that TV Azteca's failure to secure the Notes and all other amounts due under the Indenture equally and ratably with the liens relating to the AlterBank and Numchi loans is a violation of Indenture sections 3.10 and 3.15(a).

167.    Under Sections 6.8, 7.7(b), and 10.1(a) of the Indenture, TV Azteca and the Guarantors are also liable to indemnify the Trustee for all costs and expenses incurred in enforcing the Indenture and remedying TV Azteca and the Guarantors' breaches thereof, including reasonable attorney's fees and expenses and costs of collection.

## COUNT V

### Declaratory Judgment against TV Azteca (Intercompany Debt Voting Provision)

168.    All foregoing paragraphs are incorporated by reference herein.

169.    There is a justiciable, present and actual controversy between the Trustee and Defendants as to the proper interpretation and application of Section 3.9(b)(6)(z) of the Indenture.

170.    A declaration by this Court is necessary to clarify the parties' rights.

171.    Under Section 3.9(b)(6)(z) of the Indenture, intercompany Indebtedness is permitted only if TV Azteca and the applicable Restricted Subsidiary or Subsidiaries agree that, "in any Mexican Restructuring," including a *concurso mercantil*, they will vote that intercompany

Indebtedness "in a manner consistent with the vote, or the consents provided by, the holders of the Notes and other unaffiliated creditors of the same class as the Notes." Indenture § 3.9(b)(6)(z).

172.    TV Azteca has incurred substantial intercompany Indebtedness of over $200 million. This intercompany Indebtedness reduces the proportion of claims represented by the Notes to under 50%, thus improperly interfering with the Trustee's role in approving a restructuring plan.

173.    TV Azteca has made clear that it will not comply with this provision by proposing a creditor plan in the *concurso* that includes a 90% haircut on the Notes – a plan investors could not possibly accept. Such a plan would only be feasible if supported by intercompany votes in violation of Section 3.9 of the Indenture. In addition, TV Azteca has not responded to the Trustee's request to comply with Section 3.9.

174.    The Trustee is entitled to a declaration that, under Indenture Section 3.9(b)(6)(z), TV Azteca must vote, and cause its Restricted Subsidiaries to vote, in any Mexican Restructuring, consistent with the vote of, or the consents provided by, the holders of the Notes and other unaffiliated creditors of the same class as the Notes.

175.    Under Sections 6.8, 7.7(b), and 10.1(a) of the Indenture, TV Azteca and the Guarantors are also liable to indemnify the Trustee for all costs and expenses incurred in enforcing the Indenture and remedying TV Azteca and the Guarantors' breaches thereof, including reasonable attorney's fees and expenses and costs of collection.

## **PRAYER FOR RELIEF**

WHEREFORE the Trustee respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A.    Declaring that the Global Note, which incorporates the Indenture, is an enforceable,

valid, and unconditional obligation owed by TV Azteca and the Guarantors;

B. Declaring that TV Azteca and the Guarantors have breached the Global Note and the Indenture by failing to make required principal and interest payments;

C. Declaring that TV Azteca breached Sections 10.1(b) and 10.6 of the Indenture by failing since 2020 to make each qualifying Subsidiary that meets at least one of the requirements of Indenture Section 10.1(b) a Subsidiary Guarantor, including without limitation, TVA III;

D. Ordering TV Azteca to specifically perform its obligations under Sections 10.1(b) and 10.6 of the Indenture to cause each applicable Restricted Subsidiary, including without limitation TVA III, to become a Subsidiary Guarantor, in the manner prescribed in and in accordance with Section 10.6 of the Indenture, including by executing a Supplemental Indenture;

E. Declaring that, under Sections 3.10 and 3.15 of the Indenture, TV Azteca was obligated to, but did not, secure the Notes on an equal and ratable basis with any other indebtedness secured by liens of any kind, including the AlterBank and Numchi loans;

F. Declaring that, under Section 3.9(b)(6)(z) of the Indenture, TV Azteca is obligated to vote, and to cause its Restricted Subsidiaries to vote, in any Mexican Restructuring, consistent with the vote of, or the consents provided by, the holders of the Notes and other unaffiliated creditors of the same class as the Notes;

~~C.~~G. Awarding damages to the Trustee in an amount to be proven at trial;

~~D.~~H. Awarding the Trustee pre-judgment and post-judgment interest;

~~E.~~I. Awarding the Trustee its reasonable attorney's fees, expenses, and costs of collection; and

~~F.~~J. Awarding the Trustee such other and further relief as the Court deems just and equitable.

34

~~July 11, 2025~~

June 8, 2026

New York, New York

Respectfully submitted.

/s/ Justin M. Ellis
Justin M. Ellis
Zachary R. Ingber
Mason E. Reynolds
Eric J. Rolston
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Tel:  (212) 607-8160
jellis@mololamken.com
~~erolston@mololamken.com~~

*Attorneys for The Bank of New York Mellon ~~("Trustee"),~~ solely in its capacity as Trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024*

35