**GT** GreenbergTraurig

Hal S. Shaftel
212.801.9200
shaftelh@gtlaw.com

June 11, 2026

**VIA ECF**

The Honorable Barbara Moses
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *The Bank of New York Mellon v. TV Azteca, S.A.B. de C.V., et al.,* 22-cv-8164

Dear Judge Moses:

On behalf of Defendants TV Azteca, S.A.B. de C.V. and certain affiliates (collectively, "TV Azteca"), we write to oppose Plaintiff's letter motion dated June 8, 2026 (ECF No. 247), which seeks leave to file a far-reaching amended complaint involving four new claims, and then to litigate them irresponsibly through trial within 45 days. The application is nonsensical, using the pretext of an emergency dispute when Plaintiff—wrongly claiming it just "uncovered" a secret scheme—knew of these issues and could have raised them long ago.

The two subjects of the proposed amendment, TV Azteca's subsidiaries' restructuring and the AlterBank loan, have been matters of public record for years and months, respectively. Even aside from what Plaintiff knew and when, the amendment is futile because the very relief it requests is improper; it seeks a set of advisory rulings to be deployed in TV Azteca's Mexican *concurso*, a proceeding committed to the Mexican courts for resolution. The only ripe controversy between the parties—payment under the Notes—is already before the Court on summary judgment, at Plaintiff's insistence. The notion that four brand-new claims, which will require discovery and analysis, can be tried in a month and a half represents not only unsound case management, but a deprivation of due process. Plaintiff cannot satisfy the "good cause" standard that governs an amendment at this stage, let alone on a hyper-expedited basis, and the amendment and proposed timing would severely prejudice Defendants for no valid reason whatsoever.

## I.    Plaintiff Does Not Come Close to Satisfying the "Good Cause" Standard

Plaintiff erroneously invokes Rule 15's "liberal" amendment standard, which does not apply. On January 6, 2026, the Court entered a Case Management Order providing that "[a]mended pleadings may not be filed . . . except with leave of the Court" and that any such motion "will be subject to the 'good cause' standard in Fed. R. Civ. P. 16(b)(4)." ECF No. 177 at 2. That follows well-settled Second Circuit precedent: "when a motion for leave to amend is brought after the time for making such motions set forth in the district court scheduling order passes . . . Fed. R. Civ. P. 16(b) governs." *Lowry v. Eastman Kodak Co.*, 14 F. App'x 27, 30 (2d Cir. 2001) (citation and quotation omitted). Good cause turns on the moving party's diligence. *Id*.

Plaintiff fails to show it was diligent—it was not. The facts it calls newly "uncovered"— the creation and capitalization of TVA III and the AlterBank loan—have long been public.

Hon. Barbara Moses
June 11, 2026
Page 2

**TVA III**. Plaintiff alleges that Defendants secretly created TVA III and "vested [it] . . . with more net assets than all of TV Azteca's other subsidiaries combined." ECF 247 at 2. There is nothing secret about this. The existence of TVA III has been publicly known, reported, and disclosed for years. TVA III was formed in 2021, and its role has never been hidden. *See* Ex. A, TV Azteca 2021 Annual Report; Annex (with translated excerpts). TV Azteca's 2022 Annual Report, available on its own website, on that of the Mexican stock exchange, and on the website of Mexico's securities regulator, described the establishment of TVA III and its role as owning TV Azteca's broadcasting assets. *See* Ex. B, TV Azteca 2022 Annual Report; Annex.

Further, even aside from the annual report and the many sources on which it is publicly available, TV Azteca's investor relations website disclosed, no later than March 2023, that TVA III "own[s] and manage[s] all of TV Azteca's broadcasting assets, as well as TV Azteca's headquarters and production studios located in Mexico City." *See* Ex. C (capture of https://www.irtvazteca.com/es/estructura-corporativa).[1]

Indeed, TV Azteca's broader corporate restructuring has been part of the record of this very case since 2022: Defendants filed a certified translation of the 2021 notarial instrument documenting the consolidation of sixteen subsidiaries into TV Azteca and the related spin-offs through which new entities were formed. ECF No. 10-1.

Plaintiff filed its Complaint on July 11, 2025—more than two years later—yet pleaded nothing about TVA III. This lengthy delay is the opposite of diligence. *See Lowry*, 14 F. App'x at 30 (no abuse of discretion in denying amendment where plaintiff "did not seek to amend . . . until five months after the new evidence surfaced," discovery had been closed, and summary judgment was pending); *see also Geo-Group Communs. v. Shah*, 2020 U.S. Dist. LEXIS 176726 (S.D.N.Y. Sep. 25, 2020) (14-month delay after discovery of new evidence was unreasonable).

**AlterBank Loan**. The AlterBank loan was likewise public. It was reported no later than April 16, 2026, nearly two months before Plaintiff moved for summary judgment. *See* Ex. E (capture of Edgar Sigler Garcia & Xochitl Herrera, *[TV Azteca loan / bankruptcy filing]*, 9fin (Apr. 16, 2026), https://www.9fin.com/insights/tv-azteca-loan-bankruptcy-filing). Plaintiff was also aware of TV Azteca's tax obligations, which forced TV Azteca to obtain a loan and pay the tax obligation to prevent the Mexican government from taking over the company. The controlling Noteholders (who direct Plaintiff) lobbied aggressively for imposition of that obligation.

Plaintiff's conduct here is the opposite of diligence. It is attempting to manufacture emergencies based on newly discovered facts where there are none for the improper purpose of having this Court issue advisory rulings that Plaintiff can try to leverage in Mexico.

---

[1] A search of this web address on archive.org confirms that the first available capture of this webpage after March 2023, dated June 2, 2023, contains the same content that is presently on the website. *See* Ex. D.

Greenberg Traurig, LLP | Attorneys at Law

One Vanderbilt Avenue | New York, New York 10017 | T +1 212.801.9200 | F +1 212.801.6400

Hon. Barbara Moses
June 11, 2026
Page 3

## II.     The Proposed Amendment is Prejudicial

The amendment would also prejudice Defendants, and Plaintiff created the very posture it now exploits. Plaintiff commenced this case in 2022 by moving for summary judgment in lieu of a complaint, inexplicably chose to wait until July 2025 to file an actual complaint, and then obtained a stay of discovery over Defendants' objection. TV Azteca's Rule 56(d) request for discovery remains pending as part of ongoing summary judgment briefing. Against that backdrop, Plaintiff hypocritically seeks to add four fact-intensive claims that require extensive discovery into subsidiary formation and asset transfers; a $290 million loan from a St. Lucia bank that Plaintiff falsely claims is "tied to criminal activity" (ECF No. 247 at 2); lien grants on Mexican broadcast concessions; and intercompany debt among more than thirty Defendants spanning multiple countries. Forcing Defendants to expend significant additional resources to conduct discovery and prepare for trial—particularly on Plaintiff's unprecedented accelerated timeline—poses extraordinary and wholly unjustified prejudice to TV Azteca.

That prejudice is further heightened because the proposed claims rest on "an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice." *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (amendment "especially prejudicial" where defendant already moved for summary judgment). The Complaint asserts a single payment default claim; the new claims allege multiple breaches on a wholly different set of facts not yet subject to discovery. *See Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 588 (S.D.N.Y. 2015) ("courts in the Second Circuit have consistently denied leave to amend . . . where discovery was complete and motions for summary judgment have been filed").

## III.    The Proposed Claims are Facially Futile

### A.  There is no live controversy; the relief sought is, at best, advisory.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), requires an actual controversy coextensive with Article III. *Han v. Fin. Supervisory Serv.*, 2017 WL 7689223, at *5 (S.D.N.Y. Oct. 6, 2017) (without an "actual controversy" the district court "lacks the power to adjudicate it") (Moses, J.), *report and recommendation adopted*, 2018 WL 791353 (S.D.N.Y. Feb. 8, 2018). Where the question is "abstract, hypothetical, or contingent," the court "must dismiss the claim for lack of subject-matter jurisdiction" and may not entertain claims resting on "future contingent events that may not occur as anticipated, or indeed may not occur at all." *Id.*

The motion is at least candid—Plaintiff seeks exactly what is off-limits. Rather than addressing an actual controversy, Plaintiff repeatedly speculates that the Mexican courts "***would welcome*** clarity from this Court" and "***would welcome*** a ruling . . . clarifying the Indenture" (ECF No. 247 at 4-5 (emphasis added)); it asks for relief reaching unidentified "subsidiaries satisfying Section 10.6's criteria" (*id*. at 3 n.8); and it grounds its requests for specific performance on events that "***may***" occur—that "TV Azteca ***may*** take actions" such as selling assets, or "***may well be able to*** approve a collusive plan . . ." *Id*. at 5 (emphasis added). The proposed pleading is similarly contingent, seeking relief because "TV Azteca ***may sell*** the Subsidiaries" and those subsidiaries "***may also . . . file*** for *concurso* protection." ECF No. 247, Ex. 5 ¶ 146; *see also id.* ¶¶ 92, 101, 107 (allegations "upon information and belief"). Proposed Count V—addressing how

Hon. Barbara Moses
June 11, 2026
Page 4

intercompany debt "must" be voted—turns on a vote that has not even occurred.

A request—like Plaintiff's—that this Court issue rulings "to a foreign tribunal about American law" is simply not a justiciable controversy. *See In re The Application of Dessaint for an Ord. Pursuant to 28 U.S.C. § 1782*, 2014 WL 12029369, at *3 (S.D.N.Y. Jan. 17, 2014) (cases referenced at oral argument did not "stand[] for the proposition that a United States court may issue an advisory opinion to a foreign tribunal about American law").[2] Thus, leave to amend is unwarranted because the proposed claims are futile.

### B. Comity weighs against adjudicating claims pending in a foreign insolvency.

The Second Circuit has "repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005). Because the "equitable and orderly distribution of a debtor's property requires assembling all claims" in a single proceeding, "American courts regularly defer to such actions." *Id.* (quoting *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999)). In *Altos Hornos*, the Second Circuit affirmed the dismissal of a declaratory judgment action brought by a U.S. lending bank against a Mexican borrower that had filed for *suspension de pagos* (an earlier version of a *concurso mercantil*). *Altos Hornos*, 412 F.3d at 424. The Second Circuit's holding is clear: deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and do not contravene the laws or public policy of the United States. *Id.* Equally important, the court held that a forum selection clause in the parties' agreement does not preclude deference on international comity grounds where such deference is otherwise warranted. *Id.* at 428-429. Once a party has commenced bankruptcy proceedings abroad and a foreign court has asserted jurisdiction over the distribution of assets, U.S. courts may—and under *Altos Hornos*, ordinarily should—defer to the foreign bankruptcy proceeding. *Id.*

Plaintiff misreads *Altos Hornos*. The court's discussion of resolving local-law issues was confined to questions of property ownership—not present here. Instead, the claims Plaintiff seeks to litigate on an expedited basis are contractual disputes about TV Azteca's alleged compliance with various Indenture provisions—precisely the kind of creditor claims that *Altos Hornos* instructs U.S. courts to leave to the foreign bankruptcy proceeding. *Altos Hornos*, 412 F.3d at 420, 426-427. Nothing in this case turns on property rights to be resolved under local law. Thus, Plaintiff's misplaced reliance on this case fails to support its motion.[3]

---

[2] Even putting aside that Plaintiff seeks impermissible advisory opinions, the DJA "does not require that" courts declare the rights of parties absent grounds for exercising equitable discretion to do so. *Han*, 2017 WL 7689223, at *6. The relief here is not meant to serve a useful and legitimate purpose; rather, Plaintiff aspires to leverage expedited rulings without factual development in this case to interfere with and confuse the Mexican *concurso* proceeding.

[3] Plaintiff misplaces reliance on *Funicular Funds, LP v. Pioneer Merger Corp.*, 700 F. Supp. 3d 49, 59 (E.D.N.Y. 2023), which dismissed on comity grounds the claim addressable in a foreign

**Greenberg Traurig, LLP | Attorneys at Law**

One Vanderbilt Avenue | New York, New York 10017 | T +1 212.801.9200 | F +1 212.801.6400

Hon. Barbara Moses
June 11, 2026
Page 5

### C.   Plaintiff misstates Mexican law and procedures.

Plaintiff is wrong not only on comity but also on Mexican law and the operation of the *concurso*. The conjecture on which Plaintiff builds its need for an amendment—that the *concurso* court "would welcome" an advisory ruling from this Court (Del Castillo Decl. ¶¶ 8–9)—is without basis. Mexican courts offer the Noteholders ample due process to raise and adjudicate issues as part of the *concurso.* It strains credulity and flies in the face of comity to argue that a plenary Mexican bankruptcy judge, in a bankruptcy system whose rulings and plans are routinely recognized and enforced by U.S. courts in Chapter 15 proceedings, cannot oversee its own process and render its own rulings, including determining which creditors may vote and how, whether there is "collusion" in voting, and whether a debtor may sell assets. *See, e.g., In re Credito Real S.A.B. de C.V., SOFOM, E.N.R.*, 677 B.R. 192, 203 (D. Del. 2026) (recognizing *concurso* proceeding in Mexico as a "foreign main proceeding" under Chapter 15); *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1041 (5th Cir. 2012) (reflecting same); *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 104 (Bankr. S.D.N.Y. 2012) (same). Those are typical tasks reserved for foreign bankruptcy judges, and we are aware of no case where a U.S. court provided advisory opinions to assist a foreign tribunal that never asked for them. Nothing prevents the Noteholders from actively participating in the *concurso* and availing themselves of the proper remedies that Mexican law offers.

### IV.   The Proposed 45-Day Proposal is Unprecedented and Contrary to Due Process

Plaintiff's demand to try four new claims in 45 days—with *all* fact and expert discovery completed in 21—is unprecedented, extraordinary, and blind not only to sensible case management but to basic due process. Plaintiff cites no case so compressing the timing for fact-intensive, multi-jurisdictional breach-of-contract claims. Due process requires notice and a meaningful opportunity to be heard. In a case seeking over $600 million, these claims—requiring international discovery—clearly cannot be adequately investigated, briefed, and tried on Plaintiff's terms. The proposed schedule would deprive TV Azteca of its rights to evaluate the claims and mount a defense.

The claimed exigency is also illusory. Plaintiff's own declarant confirms that the *concurso* conciliation period runs ***185 days*** and may be extended by up to two additional 90-day periods. Del Castillo Decl. ¶ 5. There is thus adequate time for orderly process, and any remedies for specific developments in Mexico lie in the *concurso* itself, where Plaintiff has appeared.

### V.   Conclusion

For the reasons explained, granting Plaintiff's motion would severely prejudice Defendants on a host of fronts with no legitimate justification. Plaintiff seeks to convert this case into a multi-front effort to influence a foreign proceeding—and to do so before a record is even fairly developed. Accordingly, the letter motion should be denied in its entirety.

---

bankruptcy.  The court retained one claim only because it raised a discrete New York-law question likely to be resolved quickly; here, the issues go to the heart of the *concurso*, and resolution will be no faster unless Plaintiff disregards due process by rushing to trial.

**Greenberg Traurig, LLP | Attorneys at Law**

One Vanderbilt Avenue  |  New York, New York 10017  |  T +1 212.801.9200  |  F +1 212.801.6400

Hon. Barbara Moses
June 11, 2026
Page 6

Respectfully,

*/s/ Hal S. Shaftel*

Hal S. Shaftel
Daniel Pulecio-Boek
John C. Molluzzo Jr.

cc:      Counsel of Record (via ECF)

**ANNEX**

**Translated Excerpts from TV Azteca 2021 Annual Report (dated December 31, 2021)
(Translation by DeepL.com)[1]**

Exhibit A at Pages 35-36:

TV Azteca is one of the two largest producers of Spanish-language television content in the world and the second-largest television content producer in Mexico based on audience and market share. As of March 31, 2022, CASA, which is controlled by Mr. Ricardo Benjamín Salinas Pliego, owns the majority (53.34%) of the outstanding shares of TV Azteca, and Arrendadora Internacional Azteca, which is a 99.83% subsidiary of CASA, owns 3.10% of the total outstanding shares of TV Azteca, all of which carry full voting rights. TV Azteca has six main Mexican subsidiaries (99.99% owned): **Televisión Azteca III, S.A. de C.V.**, Azteca Novelas II, S.A. de C.V., Televisión Azteca II, S.A. de C.V., Producciones Azteca Digital, S.A. de C.V., Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V., and Operadora Mexicana de Televisión, S.A. de C.V. It also has a subsidiary in Guatemala, named TVA Guatemala, S.A., and two subsidiaries in Honduras, named TV Azteca Honduras, S.A. de C.V., and Comercializadora de TV de Honduras, S.A. de C.V.

**Televisión Azteca III, S.A. de C.V.** and Azteca Novelas II, S.A. de C.V. own and operate all of TV Azteca's broadcasting assets, as well as TV Azteca's main offices and production studios located in Mexico City. **Televisión Azteca III**, S.A. de C.V. is also the holder of the concessions to operate the television channels. Most advertising payments for the TV Azteca channels were made through Estudios Azteca, S.A. de C.V., TV Azteca [1], Red Azteca Internacional, S.A. de C.V., and Comerciacom, S.A. de C.V.; the marketing of adn40 is carried out through Operadora Mexicana de Televisión, S.A. de C.V.; likewise, TV Azteca sells content to various countries, as well as four channels produced exclusively for pay-TV systems in Mexico and abroad; TVA Guatemala, S.A. handles the marketing of channels 31 and 35; furthermore, as of October 2012, TVA Guatemala, S.A., operates channel 22. For its part, Comercializadora de TV de Honduras, S.A. de C.V., handles the marketing of channel 44 in Honduras. In addition to its television broadcasting operations, TV Azteca, through Azteca Internet, manages the operation of various Spanish-language websites for internet users.

Exhibit A at Page 80:

**Corporate structure:**

As of March 31, 2022, CASA, which is controlled by Mr. Ricardo Benjamín Salinas Pliego, owns a majority (53.34%) of the outstanding shares of TV Azteca and Arrendadora Internacional Azteca, which is a subsidiary of CASA (99.83%), and owns 3.10% of the total outstanding shares of TV Azteca, all of which carry full voting rights. TV Azteca has six principal Mexican

---

[1] For ease of reference, all instances of "Televisión Azteca III, S.A. de C.V." are highlighted in bold. All other emphasis is found in the original documents.

2

subsidiaries (99.99% owned): **Televisión Azteca III, S.A. de C.V.**, Azteca Novelas II, S.A. de C.V., Televisión Azteca II, S.A. de C.V., Producciones Azteca Digital, S.A. de C.V., Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V., and Operadora Mexicana de Televisión, S.A. de C.V. It also has a subsidiary in Guatemala, named TVA Guatemala, S.A., and two subsidiaries in Honduras, named TV Azteca Honduras, S.A. de C.V., and Comercializadora de TV de Honduras, S.A. de C.V.

**Translated Excerpts from TV Azteca 2022 Annual Report (dated December 31, 2022)**
**(Translation by DeepL.com)**

Exhibit B at Page 36 (emphasis added):

TV Azteca is one of the two largest producers of Spanish-language television content in the world and the second-largest television content producer in Mexico based on audience and market share. As of March 31, 2022, CASA, which is controlled by Mr. Ricardo Benjamín Salinas Pliego, owns the majority (53.34%) of the outstanding shares of TV Azteca, and Arrendadora Internacional Azteca, which is a 99.83% subsidiary of CASA, owns 3.10% of the total outstanding shares of TV Azteca, all of which carry full voting rights. TV Azteca has six main Mexican subsidiaries (99.99% owned): **Televisión Azteca III, S.A. de C.V.**, Azteca Novelas II, S.A. de C.V., Televisión Azteca II, S.A. de C.V., Producciones Azteca Digital, S.A. de C.V., Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V., and Operadora Mexicana de Televisión, S.A. de C.V. It also has a subsidiary in Guatemala, named TVA Guatemala, S.A., two subsidiaries in Honduras, named TV Azteca Honduras, S.A. de C.V., and Comercializadora de TV de Honduras, S.A. de C.V.

**Televisión Azteca III, S.A. de C.V.** and Azteca Novelas II, S.A. de C.V. own and operate all of TV Azteca's broadcasting assets, as well as TV Azteca's main offices and production studios located in Mexico City. **Televisión Azteca III, S.A. de C.V.** and Televisora del Valle de México, S.A.P.I. de C.V. are also the holders of the concessions to operate the television channels. Most advertising payments on TV Azteca channels were made through Estudios Azteca, S.A. de C.V., TV Azteca [1], Red Azteca Internacional, S.A. de C.V., and Comerciacom, S.A. de C.V. prior to December 2021; the marketing of adn40 is carried out through Operadora Mexicana de Televisión, S.A. de C.V.; likewise, TV Azteca sells content to various countries, as well as four channels produced exclusively for pay-TV systems in Mexico and abroad; TVA Guatemala, S.A. handles the marketing of channels 31 and 35; in addition, as of October 2012, TVA Guatemala, S.A., has been operating channel 22. For its part, Comercializadora de TV de Honduras, S.A. de C.V., handles the marketing of channel 44 in Honduras. In addition to its television broadcasting operations, TV Azteca, through Azteca Internet, manages the operation of various Spanish-language websites for internet users.

Exhibit B at Pages 43-44:

**Signing of an amendment to the credit line agreement with Banco Azteca**

On March 9, 2020, the Company renewed the revolving credit facility it had entered into with its affiliate Banco Azteca on December 24, 2009, for $1,708,000, by entering into a new financing agreement stipulating an interest rate equal to the TIIE rate plus 2 percentage points and annual principal payments equivalent to 10% of the credit amount until its full repayment. As of December 31, 2021, and 2020, the outstanding balance of transaction costs amounted to $19,437 and $23,517, respectively.

3

On January 6, 2021, the Group entered into an amendment to the credit facility agreement with Banco Azteca, pursuant to which, in addition to the guarantees provided in the mortgage agreement, the Group and its subsidiaries **Televisión Azteca III, S.A. de C.V.** and Azteca Novelas II, S.A. de C.V. (prior to the merger, these were Televisión Azteca, S.A. de C.V. and Azteca Novelas, S.A.P.I. de C.V.), undertook to establish a guarantee in favor of Banco Azteca to ensure compliance with each and every one of the Company's obligations under said credit facility agreement. This guarantee was established through a trust in April 2021, the assets of which consist of certain real estate properties owned by the Group, as detailed in the amendment agreement itself.

Additionally, through said amendment agreement, it was agreed to modify the spread added to the TIIE from 2% to 2.5%, as well as to settle the debt amount on the last business day of September 2022 and 2023 at 1%, 2024 at 2%, 2025 and 2026 at 3%, 2027 at 10%, 2028 at 15%, 2029 and 2030 at 20%, and in 2031 the remaining 25%.

Exhibit B at Pages 78-79:

**Corporate structure:**

As of March 31, 2023, CASA, which is controlled by Mr. Ricardo Benjamín Salinas Pliego, owns a majority (53.34%) of the outstanding shares of TV Azteca and Arrendadora Internacional Azteca, which is a subsidiary of CASA (99.83%), and owns 3.10% of the total outstanding shares of TV Azteca, all of which carry full voting rights. TV Azteca has six principal Mexican subsidiaries (99.99%): **Televisión Azteca III, S.A. de C.V.**, Azteca Novelas II, S.A. de C.V., Televisión Azteca II, S.A. de C.V., Producciones Azteca Digital, S.A. de C.V., Publicidad Especializada en Medios de Comunicación de TV Azteca, S.A. de C.V., and peradora Mexicana de Televisión, S.A. de C.V. It also has a subsidiary in Guatemala, named TVA Guatemala, S.A., and two subsidiaries in Honduras, named TV Azteca Honduras, S.A. de C.V. and Comercializadora de TV de Honduras, S.A. de C.V.

Exhibit B at Pages 114-115:

Restructuring of Debt Payments with Banco Azteca On January 6, 2021, the Group entered into an amendment to the credit facility agreement with Banco Azteca, pursuant to which, in addition to the guarantees established in the mortgage agreement, the Group and its subsidiaries **Televisión Azteca III, S.A. de C.V.** and Azteca Novelas II, S.A.P.I. de C.V. (prior to the merger, these were Televisión Azteca, S.A. de C.V. and Azteca Novelas, S.A.P.I. de C.V.) undertake to provide a guarantee in favor of Banco Azteca to ensure compliance with each and every one of the Company's obligations under said credit facility agreement. This guarantee was established through a trust in April 2021, whose assets consist of certain real estate properties owned by the Group, as detailed in the amendment agreement itself.

Additionally, through said amendment agreement, it was agreed to modify the spread added to the TIIE from 2% to 2.5%, as well as to settle the debt amount on the last business day of September 2022 and 2023 at 1%, 2024 at 2%, 2025 and 2026 at 3%, 2027 at 10%, 2028 at 15%, 2029 and 2030 at 20%, and in 2031 the remaining 25%.

4