**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE TV AZTECA, S.A.B. DE C.V. 8.25% SENIOR NOTES DUE 2024,<br><br>Plaintiff,<br><br>v.<br><br>TV AZTECA, S.A.B. DE C.V. ET AL.,<br><br>Defendants. | Case No. 1:22-cv-08164-PGG<br><br>Hon. Paul G. Gardephe |
| TV AZTECA, S.A.B. DE C.V., ET AL.<br><br>Defendants and Third-Party Plaintiffs,<br><br>v.<br><br>CYRUS CAPITAL PARTNERS, L.P. AND CONTRARIAN CAPITAL MANAGEMENT, LLC<br><br>Third-Party Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION OR TO REFER CASE TO THE BANKRUPTCY COURT**

Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9200
Fax: (212) 801-6400

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 2

ARGUMENT ..... 8

I. The Court Should Deny Expedited Consideration Because Plaintiff Fails to Demonstrate Irreparable Harm ..... 8

II. The Court Should Not Refer this Case to the Bankruptcy Court ..... 12

A. The Referral Request is Premature and Should be Denied ..... 12

B. The Standing Order Does Not Automatically Refer This Action Because the Bankruptcy Court Lacks "Related To" Jurisdiction ..... 13

1. Section 157(a) is a Discretionary Grant, Implemented by the Standing Order, and "Automatic" Referral is Conditioned on Jurisdiction ..... 13

2. A Chapter 15 Case Creates No United States Estate, So the Rationale that Ordinarily Supplies "Related To" Jurisdiction Over a Pre-Petition Action Does Not Apply ..... 14

C. Even if Related-To Jurisdiction Existed, this Non-Core Contract Action Should Not Be Referred ..... 15

1. This is a Non-Core Proceeding ..... 15

2. Referral of a Non-Core Claim Would Waste Resources, Not Conserve Them ..... 16

3. Judicial Economy Favors this Court, Which Has Presided Over This Proceeding Since its Inception ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benton v. Maryland*,
395 U.S. 784 (1969) ... 12

*In re Celsius Network LLC*,
670 B.R. 379 (S.D.N.Y. 2025) ... 15, 16

*Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*,
No. 15-CV-9605, 2016 WL 3004516 (S.D.N.Y. Jan. 21, 2016) ... 11

*In re Credito Real, S.A.B. de C.V., SOFOM, E.N.R.*,
670 B.R. 150 (Bankr. D. Del. 2025) ... 9

*Delcon Constr. Corp. v. Bd. of Educ. of City of Yonkers, New York*,
299 B.R. 60 (S.D.N.Y. 2003) ... 13

*Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*,
905 F. Supp. 2d 526 (S.D.N.Y. 2012) ... 17

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011) ... 14, 15

*Hirschfeld v. Bd. of Elections*,
984 F.2d 35 (2d Cir. 1993) ... 11

*In re Metrofinanciera, S.A.P.I. de C.V.*,
No. 10-20666, 2010 WL 10063949 (Bankr. S.D. Tex. Sept. 24, 2010) ... 9

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir. 1993) ... 15, 16

*Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.*,
132 B.R. 4 (S.D.N.Y. 1991) ... 13, 14

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
639 F.3d 572 (2d Cir. 2011) ... 14

*Perez v. Quiros*,
No. 25-454, 2026 WL 925003 (2d Cir. Apr. 6, 2026) ... 9

*Roman Cath. Diocese of Rockville Ctr. v. Arrowood Indem. Co.*,
No. 20-CV-11011, 2021 WL 1978560 (S.D.N.Y. May 17, 2021) ... 16, 17

*Solutia Inc. v. FMC Corp.*,
No. 04-cv-2842, 2004 WL 1661115 (S.D.N.Y. July 27, 2004) ... 16

*Thomas v. City of New York*,
143 F.3d 31 (2d Cir. 1998) ... 12

**Statutes**

11 U.S.C. § 1520 .......... 17
11 U.S.C. § 1521 .......... 17
28 U.S.C. § 157(a) .......... 13

## PRELIMINARY STATEMENT

Citing no supporting rule or authority, Plaintiff yet again resorts to its now-familiar refrain: that its case requires urgent, preferential treatment, regardless of orderly case management or basic fairness to Defendants. Once again, Plaintiff burdens the docket with unnecessary and wasteful motion practice (its second request to expedite in four months), again seeking special treatment and premature rulings in place of sensible procedure.

Most importantly, no genuine emergency is presented. The *concurso*'s fair claims-recognition process is recognized by U.S. courts, subject to objection, subject to timing adjustments, and subject to judicial determination and appeal under Mexican law. Plaintiff and the Noteholders are actively participating in the *concurso*. Moreover, an expedited, non-final ruling from this Court on a contested summary judgment motion would not resolve the issue the conciliator actually identified, which concerns the claims asserted in the *concurso* regarding the AlterBank Loan and is governed by Mexican law.

Even if it existed (it does not), any purported emergency is of Plaintiff's own making. Plaintiff spent over two-and-a-half years pursuing a pre-removal motion for summary judgment in lieu of complaint under inapposite state-court procedures before reversing course and filing an operative pleading. The Noteholders also consumed several months by forcing TV Azteca into a baseless involuntary bankruptcy that was ultimately dismissed. Since then, Plaintiff repeatedly has sought departures from standard procedure: a stay of basic discovery while it pursued a vigorously contested motion for summary judgment (ECF Nos. 263-270, 298, 299) and leave to inject entirely new claims, after a discovery stay, through a pending motion to amend, coupled with a request to reduce any ensuing discovery to virtually nothing (ECF No. 286).

Turning the world on its head, Plaintiff accuses Defendants of "gamesmanship." Mot. at 1. The record shows the opposite. Defendants required Plaintiff to file an operative pleading, sought

routine discovery before summary judgment briefing, and followed established procedures in commencing a Mexican *concurso mercantil* and seeking Chapter 15 recognition in the U.S. Bankruptcy Court. Those are not dilatory tactics; they are ordinary procedural safeguards. The accusation is especially hollow because Plaintiff's own constituent Noteholders previously sought bankruptcy relief against TV Azteca.

Plaintiff's alternative request for a contingent reference to the Bankruptcy Court is equally premature and would require an advisory ruling based on stacked contingencies: *if* the Bankruptcy Court recognizes the *concurso*, and *if* it later stays this action, Plaintiff then seeks a reference of this case. Neither predicate has occurred. The Bankruptcy Court has not yet recognized the *concurso* and has not stayed this action. Indeed, Plaintiff has opposed both recognition and a stay, the very events on which its request depends. There is therefore no present dispute requiring resolution.

Even if the Court reaches the issue, the relevant considerations weigh heavily against reference. This Court has presided over this action since 2022. If and when the action proceeds, it should proceed here, in the ordinary course: not on an emergency timetable, and not in a second court.

## FACTUAL BACKGROUND

### The Notes and Indenture

On August 9, 2017, TV Azteca issued $400 million in unsecured notes (the "Notes") pursuant to an indenture dated as of August 9, 2017 ("Indenture"), for which Plaintiff serves as trustee. ECF Nos. 260-1, 260-2. Various TV Azteca subsidiaries guaranteed the Notes (the "Guarantor Defendants"). ECF No. 260-1 at 112-121 (ECF page). In February 2021, TV Azteca announced, among other things, the "deferment of the payment of the coupon corresponding to February 2021." ECF No. 48-7 (Press Release dated February 9, 2021). On March 22, 2021, and

March 29, 2022, TV Azteca received documents entitled "Notice of Event of Default" and "Notice of Continuing Events of Default," respectively. ECF Nos. 260-9, 260-10.

**Plaintiff Commences This Action and the Noteholders Pursue an Involuntary Bankruptcy, Which Stays This Action**

Plaintiff commenced this action in New York Supreme Court on August 26, 2022, against TV Azteca and Guarantor Defendants, seeking summary judgment in lieu of complaint under CPLR 3213. ECF No. 1. It sought the accelerated principal, accrued and unpaid interest, a redemption premium, and statutory prejudgment interest. *Id.* TV Azteca removed the action on diversity grounds. *Id.*

On March 20, 2023, three holders of a majority of the Notes (together with other holders of the Notes, the "Noteholders"), represented by the same counsel as Plaintiff here, filed an involuntary Chapter 11 petition against TV Azteca and its subsidiaries in the Southern District of New York. *In re TV Azteca, S.A.B. de C.V.*, No. 1:23-bk-10385-LGB (Bankr. S.D.N.Y. Mar. 20, 2023) (the "Involuntary Proceeding"). ECF No. 24. The filing automatically stayed litigation against TV Azteca under 11 U.S.C. § 362. On March 21, 2023, Plaintiff notified this Court of the involuntary petition and resulting stay, and this action was stayed. ECF Nos. 24, 28.

TV Azteca moved to dismiss the Involuntary Proceeding. *In re TV Azteca*, ECF No. 26 at 31-37. On November 20, 2023, the Bankruptcy Court granted the motion; it entered a final dismissal order on November 27, 2023. *Id.*, ECF No. 82. The automatic stay was thereafter lifted. ECF No. 61.

**Defendants Assert Third-Party Claims After TV Azteca Incurs a Substantial Tax Liability**

For over two-and-a-half years, Plaintiff declined to file a complaint in this action. Only after Defendants moved to compel Plaintiff to file a complaint (ECF No. 8) did Plaintiff file its complaint on July 11, 2025. ECF No. 80. Defendants answered the complaint on November 26,

2025, and asserted numerous affirmative defenses. ECF No. 148. On December 17, 2025, Defendants filed a Third-Party Complaint against two majority Noteholders. ECF No. 164.

As alleged in the Third-Party Complaint, on November 13, 2025, the Mexican Supreme Court affirmed a massive tax liability against TV Azteca for about eight billion Mexican pesos (over $400 million), which TV Azteca had been disputing for years. *Id.* ¶ 26. This adverse ruling followed months of intense public lobbying by the Noteholders, including efforts to influence (i) the President of Mexico, who repeatedly made clear, during press conferences, her position supporting the Noteholders over TV Azteca; and (ii) the Mexican judiciary, which is popularly elected and predominantly aligned with the President's political party, to take adverse actions against TV Azteca. *Id.* ¶¶ 15-25, 28-31.

After the tax ruling, TV Azteca faced the risk that the Mexican government would seize its operations and take its assets, including its subsidiaries. To prevent any such actions, TV Azteca paid the tax debt. ECF No. 292-7. To fund payment of the tax liability, TV Azteca obtained a loan from AlterBank Ltd (the "AlterBank Loan"). *Id.* The Indenture governing the Notes expressly requires TV Azteca to pay taxes when due. ECF No. 260-1 at § 3.4. The tax liability, the AlterBank Loan, and the payment of the tax were all publicly reported in April 2026 and known to Plaintiff and the Noteholders. ECF Nos. 292 at ¶ 10, 292-7. Neither Plaintiff nor the Noteholders have claimed in any filing to this Court that they did not know of the liability, the loan, or the payment of the tax.

**The *Concurso***

On March 10, 2026, TV Azteca filed for *concurso mercantil* in Mexico, which is analogous to a Chapter 11 bankruptcy proceeding. ECF Nos. 272 ¶ 4, 272-1. In its petition, TV Azteca listed the Notes as a contingent liability. ECF No. 272-1 at 35-36. On July 7, 2026, the *concurso* court declared TV Azteca insolvent and commenced the conciliation (reorganization) stage, during

which creditors file their proofs of claim. ECF No. 292 at ¶ 11. Plaintiff filed a proof of claim in the *concurso* on August 28, 2026. Mot. at 4. Several individual Noteholders also submitted their own proofs of claim, including the majority Noteholders that control Plaintiff. Declaration of Daniel Pulecio-Boek in Opposition to Motion ("Pulecio-Boek Decl.") Ex. A.

In September 2026, the conciliator, a non-party *concurso* officer appointed by the court and charged with safeguarding the estate and all creditors, issued a provisional list of creditors. ECF Nos. 313 at ¶ 4, 313-1, 313-2. That list includes the "Indenture Noteholders." ECF Nos. 313-1 at ECF p. 7, 313-2 at ECF p. 7. This means that the conciliator's provisional list recognized as creditors of TV Azteca the individual Noteholders that own and control the Notes. The conciliator explained that he would not provisionally recognize Plaintiff itself as a formal creditor because Plaintiff "fails to demonstrate that it is the holder of all the bonds, a fact evidenced by the individual bondholders who have separately requested recognition of their claims in these proceedings." ECF No. 313-2 at ECF p. 26.

The conciliator likewise declined, at this provisional stage, to recognize Plaintiff's separate claim for interest on defaulted interest, citing the Noteholders' competing claims and noting that the calculation of interest is subject to dispute. *Id.* at ECF p. 27. All parties have had an opportunity to challenge the conciliator's provisional list. And the conciliator's lists are subject to challenges by all parties, and to the *concurso* court's revisions and ultimate approval. *Id*. Ex. F at 27.

In addition to filing a proof of claim to attempt to get itself recognized as a creditor, Plaintiff has appeared in the *concurso* as a litigant. On August 18, 2026, Plaintiff commenced an *Incidente de ineficacia de actos en fraude de acreedores* (the "Fraudulent Transfer Claim"). ECF No. 307-1. Plaintiff brought the Fraudulent Transfer Claim under Articles 113, 114, and 115 of the *Ley de Concursos Mercantiles* ("LCM"), Mexico's bankruptcy code, which govern fraudulent transfer

claims in a Mexican *concurso*. *Id.* Plaintiff alleges that the AlterBank Loan provided to TV Azteca is a fraudulent agreement to the detriment of the Noteholders that Plaintiff purports to represent. Plaintiff asked the Mexican court to declare that "AlterBank cannot be recognized as a creditor in these bankruptcy proceedings nor can it sign the proposed bankruptcy agreement . . ." *Id.* at 37. The Fraudulent Transfer Claim is premised on the theory that the AlterBank Loan was too risky for AlterBank—in particular, that AlterBank should not have loaned money to TV Azteca because of TV Azteca's financial distress. *Id.* AlterBank has also appeared in the *concurso*. Pulecio-Boek Decl. Ex. D.

On September 2, 2026, the court-appointed conciliator filed a statement responding to the Fraudulent Transfer Claim. He concluded the challenged acts do not "fall within the scope of Articles 112, 113, 114, Section III, or 115, Section I" of the LCM. Pulecio-Boek Decl. Ex. B at 7. He further found that the AlterBank Loan proceeds appropriately paid tax liabilities, yielding MXN 1,856,303,526.00 in savings for TV Azteca, a net benefit precluding invalidity under the LCM. *Id*. He also found "no evidence" of fraudulent intent. *Id*.

As to the timeline of the *concurso*, the LCM does not provide any specific timeline for *incidentes*. Pulecio-Boek Decl. Ex. E ¶ 16. Article 267 of the LCM is the main provision that governs procedure in the course of an *incidente*. *Id*. Nothing in that Article suggests that an *incidente* occurs on an expedited timeline. *Id*. In particular, Section III of Article 267 indicates that after the parties have filed their claims and defenses, the judge will order that the parties appear for an evidentiary hearing. After the judge orders an evidentiary hearing, such hearing shall take place within 10 days of such order. *Id*. There is no deadline in the LCM for a judge to order the parties to appear for an evidentiary hearing in an *incidente*, and it is entirely within the judge's discretion. *Id*.

**TV Azteca Seeks Chapter 15 Recognition**

On September 16, 2026, TV Azteca filed a Chapter 15 Petition for Recognition of a Foreign Proceeding in the United States Bankruptcy Court for the Southern District of New York. *In re TV Azteca, S.A.B. de C.V.*, No. 26-12217 (LGB) (Bankr. S.D.N.Y.). Only TV Azteca, not the Guarantor Defendants, is a petitioner. TV Azteca has not sought provisional relief under 11 U.S.C. § 1519. The Bankruptcy Court has not yet recognized the *concurso* or imposed an automatic stay, and no stay of this action is in effect. Plaintiff has filed objections to recognition and a stay. Bankr. ECF No. 16-19.

**Plaintiff Obtains a Stay of Discovery and Moves for Summary Judgment and to Amend Its Complaint**

On January 6, 2026, the Court issued a Discovery and Case Management Order. ECF No. 177. The parties served discovery requests and responses. ECF Nos. 270-23, 270-25, 270-26, 270-27, 270-28, 270-29, 270-30. Defendants filed multiple motions to compel production of documents from Plaintiff and affiliated third parties. ECF Nos. 204, 214, 215. Defendants also moved for, and the Court issued, letters rogatory. ECF Nos. 179, 180.

While significant discovery was outstanding, Plaintiff ultimately moved, by letter, for leave to file a motion for summary judgment and to stay discovery (ECF Nos. 223, 224), which Defendants opposed (ECF Nos. 226, 227). In a 23-page Opinion and Order by Magistrate Judge Moses addressing the parties' arguments, the Court granted the stay and granted Plaintiff leave to move for summary judgment. ECF No. 241. On April 17, 2026, Plaintiff moved for summary judgment. ECF Nos. 258, 259. Defendants' opposition to the motion consisted of two memoranda of law (ECF Nos. 263, 264), two expert reports, three declarations, including over 60 exhibits (ECF Nos. 267-270), a response to Plaintiff's statement of undisputed material facts (ECF No. 265), and an authorized sur-reply (ECF Nos. 279, 283, 298). Defendants argued, among other

things, that disputed facts precluded summary judgment for Plaintiff. Defendants showed that nothing was "due and owing" to the Noteholders who acquired their interests in violation of the No-U.S. Person Requirement. *See* ECF No. 263 at 11 (under the Indenture, Plaintiff can "recover only what is 'due and owing'—and nothing is 'due and owing' to Noteholders who acquired their interests through material misrepresentations"). The Indenture's No-U.S. Person Requirement has now been affirmed by an international tribunal. ECF No. 314. Defendants also argued that Mexican usury law and public policy bar the returns that the controlling Noteholders seek. ECF No. 263 at 19-20. Defendants further showed that discovery is necessary to determine the identities of the Noteholders and the amounts, if any, properly owed to them. *Id.* at 24-25.

On June 8, 2026, after serving its opening summary judgment brief, Plaintiff filed a pre-motion letter seeking leave to file a motion to amend its complaint and requesting an expedited trial or summary disposition. ECF No. 247. The Court granted leave to move to amend, and the motion was fully briefed as of July 25, 2026. Plaintiff seeks to assert various claims against Defendants, based on (i) a corporate restructuring that occurred no later than 2022; (ii) a loan originating in 2009; (iii) the AlterBank Loan that was publicly reported in April 2026 and is now the subject of Plaintiff's Fraudulent Transfer Claim in the *concurso*; and (iv) TV Azteca's intercompany debt that has been public knowledge since 2019. ECF No. 289 at 5-7.

## ARGUMENT

### I. The Court Should Deny Expedited Consideration Because Plaintiff Fails to Demonstrate Irreparable Harm

The Federal Rules of Civil Procedure do not recognize a freestanding "motion for expedited consideration," and Plaintiff's authorities stand only for the unremarkable proposition that a court has inherent authority to manage its docket. *See* Mot. at 6. Although Plaintiff tellingly does not identify any governing standard, it rests its request on the premise that expedition is

necessary to avoid irreparable harm. Mot. at 6. That showing requires an injury that is "neither remote nor speculative, but actual and imminent." *Perez v. Quiros*, No. 25-454, 2026 WL 925003, at *1 (2d Cir. Apr. 6, 2026). Plaintiff cannot satisfy that standard for several independent reasons.

*First*, the asserted harm is entirely speculative. Plaintiff asks this Court to rule quickly so that its decision may somehow "be of use in the *concurso*" (Mot. at 1) but never explains what legal effect the decision would have there. It identifies no provision of Mexican law requiring or permitting the *concurso* court to adopt a non-final ruling of this Court. To the contrary, as Plaintiff's own Mexican-law expert has previously testified, Mexican courts can only recognize foreign judgments via a special exequatur proceeding when all appeals against the foreign judgment have been resolved and the judgment is final. ECF No. 292-10 at ¶¶ 21-25; *see also* ECF No. 293 at ¶¶ 17-18. Courts in the United States have repeatedly recognized that the *concurso* process affords creditors, including U.S. creditors, fair procedures and due process. *See In re Credito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150, 172 (Bankr. D. Del. 2025) ("[C]ourts have found that the contested Mexico *concurso* plans embodied arms-length agreements and conformed to the general distribution priorities established in the Bankruptcy Code. Mexican law also provides for due process to consider objections to a plan."); *In re Metrofinanciera, S.A.P.I. de C.V.*, No. 10-20666, 2010 WL 10063949, at *2 (Bankr. S.D. Tex. Sept. 24, 2010) ("Mexico's concurso law . . . treats all creditors and interest holders justly, provides ample due process and is procedurally fair," including to U.S. creditors).

*Second*, Plaintiff identifies no injury. The Indenture expressly contemplates that TV Azteca may seek *concurso* relief. *See* ECF No. 260-1 at §§ 2.4, 7.7(d). Plaintiff distorts the *concurso*'s provisional claims process by asserting that TV Azteca omitted more than $100 million allegedly owed to Plaintiff in a "blatant attempt to reduce the percentage of outstanding debt [Plaintiff]

controls." Mot. at 6-7. That assertion rests on neither fact nor Mexican law. TV Azteca cannot unilaterally reduce a creditor's rights in the *concurso*; a debtor's listing of claims does not determine their recognition or amount. *See* ECF No. 299 at ¶¶ 6-11. Nor has the conciliator in the *concurso* "disallow[ed]" anything, as Plaintiff contends. Mot. at 4, 7. Under the LCM, the conciliator's lists are proposals. It is the *concurso* court that determines the recognition, ranking, and priority of claims, after interested parties have had the opportunity to object, and its determination is subject to appeal. Pulecio-Boek Decl. Ex. C ¶ 27. Although Plaintiff emphasizes that it does not appear as a creditor on the provisional list, it ignores that the *Noteholders* do appear and the conciliator has provisionally recognized those claims. ECF Nos. 313-1, 313-2. Plaintiff's contention that the *concurso* will "deprive" it of rights is therefore meritless. Mot. at 6.

Plaintiff has already appeared in that proceeding, filed a proof of claim, and asserted the Fraudulent Transfer Claim challenging the AlterBank Loan. ECF 307-1; Pulecio-Boek Decl. Ex. A. Plaintiff may likewise present there any objection concerning the allegedly "improper intercompany-claim voting." Mot. at 7. Plaintiff's active participation confirms that the *concurso* provides a forum for the very issues it invokes here.

*Third*, there are no inconsistent positions to correct. *See* Mot. at 7. Defendants' position is that nothing is "due and owing" to Noteholders who are U.S. Persons or who would receive returns barred as usurious. That position has never precluded the possibility that amounts may be owed to qualifying non-U.S. Noteholders whose recoveries are not usurious. TV Azteca's statement at the October 5 conference that "[n]o one is saying that monies are not due and owing," ECF No. 312-1 at 18:3-5, is fully consistent with that position. TV Azteca listed the Notes in its *concurso* petition as a contingent liability (ECF No. 272-1 at 35-36), precisely because the amount owed, if any, is disputed here. And its objection that Plaintiff's claim is the subject of pending litigation (ECF No.

313-3 at 8-9) reflects the same view: the claim is disputed and unliquidated, and should be treated as such in the *concurso* unless and until it is resolved. ECF No. 299 at ¶¶ 6-11. That is consistency, not gamesmanship.

*Fourth*, expedition would prejudice Defendants and is unnecessary. Defendants have shown that disputed facts and outstanding discovery preclude summary judgment. ECF No. 263 at 24-25. Plaintiff's motion to amend would add four new claims based on events dating back as far as 2009 and on which it concedes discovery would be necessary. ECF No. 288 at 21-23 (seeking 45 days for fact and expert discovery); ECF No. 289 at 5-7. Plaintiff already sought expedited treatment of both motions (ECF No. 247), and that request remains pending (ECF No. 254). This motion adds nothing but speculation about a possible foreign deadline for which an expedited ruling in this case would be of no clear import. The Court should decide the pending motions in the ordinary course.

*Finally*, Plaintiff's own serial delays defeat any claim of irreparable harm. *See Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (claimed "irreparability" may not be the "product of the moving party's own delay"); *Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, No. 15-CV-9605, 2016 WL 3004516, at *1 (S.D.N.Y. Jan. 21, 2016) (a party's decision to "sit on [its] rights" negates the need for drastic, speedy relief). After removal, Plaintiff waited over two years to file a complaint. ECF Nos. 1, 80. The Noteholders' unsuccessful involuntary petition further delayed this action. ECF Nos. 28, 61. And Plaintiff moved to amend months after the AlterBank Loan was publicly reported and years after the other events upon which it bases that motion. ECF No. 289 at 5-7. Plaintiff has known of the *concurso* since March 10, 2026 (ECF No. 230), and of its claims timetable since at least July 2026, yet waited until October

7 to seek emergency relief here. *See* Mot. at 3-5. Plaintiff cannot manufacture an emergency through its own delay.[1]

## II. The Court Should Not Refer this Case to the Bankruptcy Court

In the alternative, Plaintiff asks this Court to refer the matter to the Bankruptcy Court. That request should be denied for several reasons.

### A. The Referral Request is Premature and Should be Denied

Here, the request for a referral is not even ripe. By Plaintiff's own framing, referral is sought only "*if* the bankruptcy court recognizes the *concurso* as a foreign main proceeding in the chapter 15 over [Plaintiff]'s intended objection." Mot. at 8 (emphasis added). That contingency has not occurred. No order recognizing the *concurso* has been entered and no automatic stay has attached. Indeed, the predicate for Plaintiff's own request may never come to pass—and Plaintiff is vigorously litigating against recognition and attempting to lift the automatic stay upon recognition. Bankr. ECF Nos. 16-19. A court should not issue a conditional referral order that takes effect only upon a future event the movant is simultaneously litigating against. *See Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) (a federal court "cannot entertain a claim which is based upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (citations omitted)). If the Bankruptcy Court recognizes the *concurso*, the parties can address referral against a concrete record. Deciding the question now, in the abstract, would essentially produce an advisory ruling on a hypothetical posture. *See, e.g.*, *Benton v. Maryland*, 395 U.S. 784, 788 (1969) (holding that federal courts are without power to decide "abstract or hypothetical" questions). It is inappropriate for the Court to enter a conditional, contingent referral order

[1] Plaintiff points to injunctions TV Azteca obtained in Mexico during the COVID-19 pandemic, which temporary stayed any payment obligation. Mot. at 8 at n.3. Yet those injunctions only underscore Plaintiff's own delay. Plaintiff chose to litigate those injunctions in Mexico for months despite knowing of the Indenture's forum selection clause. ECF No. 260-1 at § 11.7.

premised on an event the movant itself is trying to prevent. The request should be denied as premature.

**B. The Standing Order Does Not Automatically Refer This Action Because the Bankruptcy Court Lacks "Related To" Jurisdiction**

Plaintiff's lead theory—that the district's Amended Standing Order of Reference (the "Standing Order") refers this case to the Bankruptcy Court automatically—fails. Mot. at 8-11. That argument misstates how the Standing Order operates and skips the dispositive question of whether the Bankruptcy Court actually has jurisdiction.

1. <u>Section 157(a) is a Discretionary Grant, Implemented by the Standing Order, and "Automatic" Referral is Conditioned on Jurisdiction</u>

28 U.S.C. § 157(a) "provide[s] a district court with discretion to refer" title 11 cases and related proceedings to the Bankruptcy Court, a discretion this district exercises through the Standing Order. *See Delcon Constr. Corp. v. Bd. of Educ. of City of Yonkers, New York*, 299 B.R. 60, 61 (S.D.N.Y. 2003). Referral under the Standing Order is "immediate and automatic" only when two predicates are both satisfied—the action "falls within the terms of the [Order]" and "the bankruptcy court has jurisdiction over the matter." *Id.* Those conditions have not been met. As the court instructed in *Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.*, 132 B.R. 4 (S.D.N.Y. 1991), a case on which Plaintiff relies, "whether a matter can be referred to a bankruptcy judge under Section 157(a) and whether the matter is within the jurisdiction of the bankruptcy court involve the same inquiry." *Id.* at 7. The "automatic" label therefore collapses into the jurisdictional question; if the Bankruptcy Court has no "related to" jurisdiction, no referral under the Standing Order is possible.

2. A Chapter 15 Case Creates No United States Estate, So the Rationale that Ordinarily Supplies "Related To" Jurisdiction Over a Pre-Petition Action Does Not Apply

A proceeding is "related to" a title 11 case only if its outcome "might have any conceivable effect on the *bankruptcy estate*." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.,* 639 F.3d 572, 579 (2d Cir. 2011) (emphasis added) (citations omitted). Plaintiff's cited authority for referring a pre-petition district court action—*Pan Am*—rests expressly on 11 U.S.C. § 541, pursuant to which a pre-petition cause of action "bec[omes] property of the estate," and "any recovery inures to the benefit of the estate," so the action is "related to" the title 11 case. *Pan Am*, 132 B.R. at 8. That rationale depends on the existence of a plenary United States estate. It does not travel to Chapter 15. A Chapter 15 case is "ancillary"; the United States court "acts as an adjunct or arm of a foreign bankruptcy court," and "[w]hile plenary cases in the United States assert universal jurisdiction over a debtor's assets, Chapter 15 ancillary cases assert only territorial jurisdiction over a debtor's assets located here." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 679 (S.D.N.Y. 2011). Sections 157(b)(2)(A) and (O) likewise "require the existence of a bankruptcy estate, which is not created in a Chapter 15 proceeding." *Id.* at 683. Thus, the § 541 estate-property theory that drove *Pan Am* is unavailable, and with it the premise that this pre-petition contract action is automatically referable.

Plaintiff misplaces reliance on *Parmalat* for the proposition that related-to jurisdiction reaches an ancillary foreign proceeding. Mot. at 9-10 & n.5. But *Parmalat* arose under former 11 U.S.C. § 304 and turned on a feature absent here—the claimants there were "attempting to recover damages" that, if recovered, would "benefit the respective bankruptcy estates" abroad. *Parmalat*, 639 F.3d at 579. Whether *Parmalat* even applies remains unsettled. Congress enacted Chapter 15 to replace § 304 with a framework that leaves the administration of claims to the foreign proceeding. Further, the *Fairfield Sentry* court distinguished it in the same way it can be

distinguished here—it "involved a foreign representative seeking assets in the United States" and declined to decide if related-to jurisdiction even exists in a Chapter 15 case. *Fairfield Sentry*, 458 B.R. at 689. At bottom, Plaintiff's "automatic" theory asks this Court to assume that an independent pre-petition contract action is "related to" an ancillary Chapter 15 case that has not been recognized. Because the jurisdictional predicate is not established, the Standing Order does not refer this case automatically to the Bankruptcy Court. And the Court does not need to resolve the jurisdictional question at all, because referral would be unwarranted even if jurisdiction existed.

### C. Even if Related-To Jurisdiction Existed, this Non-Core Contract Action Should Not Be Referred

Even if "related to" jurisdiction existed, this is a pre-petition breach of contract action—a non-core proceeding the bankruptcy court cannot finally adjudicate. *In re Orion Pictures Corp*., 4 F.3d 1095, 1101-02 (2d Cir. 1993). The discretionary factors that govern the allocation of such matters, Plaintiff's desire for a prompt ruling, and the principles of judicial economy all point to this Court retaining a case it has managed since 2022 and in which summary judgment is fully briefed. Against that background, moving the matter to a court whose non-final recommendations this Court would have to review de novo anyway makes little sense. *In re Celsius Network LLC*, 670 B.R. 379, 393 (S.D.N.Y. 2025).

#### 1. <u>This is a Non-Core Proceeding</u>

As the Second Circuit squarely has held, "th[e] breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." *In re Orion Pictures Corp.*, 4 F.3d at 1102. The threshold question is whether the bankruptcy court has "constitutional authority to enter final judgment on the claims at issue," which it has only where the defendant filed a proof of claim, the right is public, or the parties consented. *In re Celsius*, 670 B.R. at 393 (citations omitted). None of these circumstances applies. Indeed, Plaintiff

concedes the point, acknowledging in a footnote that caselaw holds that "disputes over pre-petition contracts generally give rise to non-core proceedings" and that any bankruptcy court decision would be "subject to the district court's entry of final judgment" under 28 U.S.C. § 157(c)(2). Mot. at 10 n.6.[2]

2. Referral of a Non-Core Claim Would Waste Resources, Not Conserve Them

"Unlike core proceedings, non-core proceedings involve disputes over rights that are unrelated to the federal bankruptcy laws and could proceed in a court that lacks federal bankruptcy jurisdiction." *Solutia Inc. v. FMC Corp.*, No. 04-cv-2842, 2004 WL 1661115, at *2 (S.D.N.Y. July 27, 2004). Because this is a non-core proceeding, the Bankruptcy Court cannot enter final judgment, and it instead is "limited to submitting proposed findings of fact and conclusions of law for *de novo* review by the district court." *Roman Cath. Diocese of Rockville Ctr. v. Arrowood Indem. Co.*, No. 20-CV-11011, 2021 WL 1978560, at *4 (S.D.N.Y. May 17, 2021). In these circumstances, "it is generally 'inefficient to allow the proceedings to go forward, knowing that they will have to be substantially repeated.'" *In re Celsius*, 670 B.R. at 393 (quoting *Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *8); *see also In re Orion Pictures Corp.*, 4 F.3d at 1101 ("[T]he fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court."). Indeed, "[b]y litigating this non-core matter in the district court, judicial resources will be conserved." *Solutia*, 2004 WL 1661115, at *3.[3] Referral here would add a layer to this proceeding, not remove one, precisely the

[2] Plaintiff cites 28 U.S.C. § 157(c)(2), but that provision applies only with the consent of all parties. Absent consent, § 157(c)(1) limits the bankruptcy court to proposed findings and conclusions.

[3] In addition to reasons related to judicial economy, "[w]here an action involves garden variety breach of contract matters that are non-core, uniformity in bankruptcy law compels withdrawal" of those claims. *Solutia*, 2004 WL 1661115, at *4.

inefficiency the discretionary factors are meant to avoid. Referral would also serve no bankruptcy purpose. In a Chapter 15 case, the bankruptcy court does not allow, disallow, or distribute on claims; those functions belong to the foreign proceeding. *See, e.g.*, 11 U.S.C. §§ 1520-1521. The effect Plaintiff invokes, that a ruling would "liquidat[e] the amount that TV Azteca owes on the Notes," Mot. at 10, is an effect on claims administration in Mexico. It is not an effect on any matter the Bankruptcy Court would administer here.

3. Judicial Economy Favors this Court, Which Has Presided Over This Proceeding Since its Inception

Courts in this district disfavor the transfer of a case away from a court that has already devoted substantial time to the matter and is steeped in its facts and circumstances. This Court has managed this action since 2022, and Plaintiff's motion for summary judgment and motion to amend are both fully briefed and pending here. The Court best positioned to resolve those motions is the one that has lived with this case—this Court—not the Bankruptcy Court encountering it for the first time, whose work this Court would then have to review *de novo* anyway.

This is not a case where the "bankruptcy court is more familiar with the record or already has extensive experience in the matter," such that it would be "most efficient for the bankruptcy court to propose recommendations first, even though the district court ultimately would have to review them de novo." *Dynegy Danskammer*, *L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012); *see also Roman Cath. Diocese of Rockville Ctr.*, 2021 WL 1978560, at *8 ("Contract disputes are the bread and butter of district courts; bankruptcy courts do not have any specialized knowledge that will contribute to swifter resolution of the claims at issue." (citations omitted)). Indeed, Plaintiff acknowledges that this Court is "best positioned to know the most efficient course" and even flags its own intent to move to withdraw the reference. Mot. at 9 n.4. A referral that the movant expects to be followed by an immediate withdrawal motion is not

an efficiency; it is a round trip. If, as Plaintiff urges, time is of the essence, the answer is for this Court to retain and decide the pending motions, not to refer them to the Bankruptcy Court to start over again.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's motion be denied in its entirety.

Dated: New York, New York
October 21, 2026

GREENBERG TRAURIG, LLP

By: */s/Hal S. Shaftel*

Hal S. Shaftel
Daniel Pulecio-Boek
John C. Molluzzo Jr.
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
shaftelh@gtlaw.com
pulecioboekd@gtlaw.com
molluzzoj@gtlaw.com

*Counsel for Defendants/Third-Party Plaintiffs TV Azteca, S.A.B. de C.V., et al.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit because it contains 5,638 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document.

Dated: New York, New York
October 21, 2026

*/s/ Hal S. Shaftel*
Hal S. Shaftel